IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION RECEIVED

| | | |
|---|---|---|
| OLLIE GODWIN, | ) | 2007 FEB 26  A 11: 13 |
| | ) | |
| PLAINTIFF, | ) | DEBRA P. HACKETT, CLK |
| | ) | U.S. DISTRICT COURT |
| V. | ) | CASE NO: 2:07-CV-167-WHA |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | From Circuit Court of Crenshaw County |
| COMPANY OF PITTSBURGH, INC., | ) | Case No: CV05-69.80 |
| ET AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

## NOTICE OF REMOVAL

COMES NOW, pursuant to 28 U.S.C. § 1446, the Defendant AIG d/b/a National Union Fire Insurance Company of Pittsburgh, Inc. ("National") and respectfully files this Notice of Removal to remove this civil action from the Circuit Court of Crenshaw County, Alabama, wherein it was filed as CV-05-69 and subsequently remanded as CV-05-69.80, to the United States District Court for the Middle District of Alabama, Northern Division, and, in support thereof, shows unto this Honorable Court as follows:

1.     As detailed in this Notice of Removal, the Plaintiff's recent voluntary dismissal of the only non-diverse defendant, Blue Cross Blue Shield of Alabama, results in complete diversity of the remaining parties. As a result, this civil action is properly removed based on diversity of citizenship.

2.     On or about July 12, 2005, the Plaintiff filed a Complaint in the Circuit Court of Crenshaw County, Alabama, in the civil action styled Ollie Godwin v. Palomar Insurance Corporation, et al., Civil Action No. 05-69. The Summons and Complaint were served upon

1

National on July 14, 2005. Both Palomar and Godwin, other parties originally named as defendants, were served the same day.

3.    On or about August 12, 2005, National filed a Notice of Removal with this Court alleging fraudulent joinder of Palomar and Godwin – the two non-diverse defendants. Despite the Plaintiff's arguments in his Motion to Remand filed on or about September 12, 2005, this Court retained jurisdiction of this matter, dismissing Palomar and Godwin as fraudulently joined defendants.

4.    For over a year this matter stayed in federal court in front of Magistrate Judge Susan Russ Walker. During this time, written discovery was exchanged, depositions were taken, expert discovery was completed, and National filed a Motion for Summary Judgment.

5.    After substantial progress in the litigation of this matter, and after the deadline imposed by this Court for the amendment of pleadings, the Plaintiff sought for the first time to amend his Complaint to add a non-diverse defendant, Blue Cross Blue Shield of Alabama, to the case and move to remand this case to the Circuit Court of Crenshaw County, Alabama. National responded to the Plaintiff's motion requesting this Court maintain jurisdiction. However, this Court remanded this matter on the basis that the Plaintiff would not be able to accorded complete relief without the presence of Blue Cross Blue Shield of Alabama – just as the Plaintiff had argued in his motion to amend and remand. The Court noted the Plaintiff should not have to litigate his claims against Blue Cross Blue Shield of Alabama and National in two separate actions: "If the court refuses to allow joinder of Blue Cross, the plaintiff will have to proceed against it, if at all, in state court. The court concludes that the burden of having to prosecute two separate lawsuits is a significant injury, which, although it does not mandate allowing the amendment, weighs in favor of permitting the joinder of Blue Cross under the circumstances in

2

the present case." This Court further explained that it "recognizes that plaintiff's claims against Blue Cross and his claims against NUFIC are independent of each other. However, the unique circumstances of the case present claims which should, as a matter of equity, be tried in a single action. In view of the potential for inconsistent results and concerns for judicial economy, the equities weigh in favor of allowing amendment to add Blue Cross as a defendant."

6.    However, only 1 month after the remand had been granted, the Plaintiff voluntarily dismissed Blue Cross Blue Shield of Alabama from this matter without prejudice, leaving National as the only defendant, again.

7.    A true and correct copy of all process, pleadings and orders in this matter is attached hereto as **Exhibit A.**

8.    This action could have been initially filed in this Court, pursuant to 28 U.S.C. § 1332, because there was complete diversity of citizenship between the Plaintiff and the properly joined Defendant and the amount in controversy more likely than not exceeds the sum of $75,000.00, exclusive of interest and costs, as evidenced by the first removal and subsequent denial of the Plaintiff's first motion to remand.

9.    This action can again be litigated in this Court, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the Plaintiff and the remaining Defendant, National, and the amount in controversy still more likely that not exceeds the sum of $75,000.00, exclusive of interest and costs.

## DIVERSITY OF CITIZENSHIP IS PRESENT

10.    Upon information and belief, the Plaintiff is a resident of Crenshaw County, Alabama. See Complaint at ¶ 1.

11.    National is incorporated in the State of Pennsylvania with its principal place of

3

business in New York. As a result, National is not now, and was not at the time of the filing of

the Complaint, a citizen or resident of the State of Alabama within the meaning of the Acts of

Congress relating to the removal of cases.

## AMOUNT IN CONTROVERSY MEETS TRESHOLD

12.    In order to meet the $75,000 jurisdictional threshold in a case with an unspecified

claim for damages, Defendant need show only "the amount in controversy more likely than not

exceeds the [now $75,000] jurisdictional requirement." Owens, 289 F. Supp. 2d at 1327 quoting

Tapscott, 77 F.3d at 1357.

13.    In his Complaint, the Plaintiff's Complaint seeks $59,581.44 in compensatory

damages as well as punitive damages. (unnumbered paragraph following paragraph 36 in the

Complaint and unnumbered paragraph following paragraph 60 in the First Amendment to the

Complaint)

14.    Prospective punitive damages must be considered in any calculation of the

amount in controversy. See Holley Equipment Co. v. Credit Alliance Corp., 821 F.2d 1531,

1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity

cases, punitive damages must be considered, unless it is apparent to a legal certainty that such

cannot be recovered.") (internal citations omitted); Bell v. Preferred Life Assurance Soc'y, 320

U.S. 238, 240 (1943) (claims for compensatory and punitive damages should be aggregated to

determine jurisdictional amount in controversy).

15.    "In determining whether the jurisdictional level has been met, this Court may look

for guidance to recent decisions rendered in cases on the same type of suit." Bolling v. Union

National Life Insurance Co., 900 F. Supp. 400, 404 (M.D. Ala 1995). Professor George Priest of

Yale Law School has conducted an "analysis of Alabama jury verdicts of punitive damages

4

against out-of-state insurance companies." <u>Davis v. Franklin Life Insurance Co.</u>, 71 F. Supp. 2d 1197, 1199 (M.D. Ala. 1999). In his analysis, Professor Priest "concluded that, even after <u>BMW v. Gore</u>, the average punitive damage award affirmed by the Alabama Supreme Court is $874,667." <u>Id.</u>; <u>see also</u> <u>Jackson v. American Bankers Insurance Co. of Florida</u>, 976 F. Supp. 1450, 1452 (S.D. Ala. 1997) (citing similar earlier analysis by Professor Priest).

16.    For the foregoing reasons, it is more likely than not that the jurisdictional amount for diversity jurisdiction is met in this case.

17.    If any question arises as to the existence of the requisite amount in controversy, then National requests the opportunity to submit post-removal evidence in accordance with the procedure adopted by the Eleventh Circuit. <u>See</u> <u>Sierminski v. Transouth Financial Corp.</u>, 216 F.3d 945, 949 (11th Cir. 2000). In affirming the denial of Plaintiff's motion to remand, the Eleventh Circuit held that the district court properly considered Defendant's post-removal evidence including Defendant's requests for admission directed to the amount in controversy. The Eleventh Circuit explained, "[w]e align ourselves with our sister circuits in adopting a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction." <u>Id.</u>

## THE REMOVAL IS TIMELY

18.    Because this Notice of Removal is filed within thirty days of after the receipt of a motion from which it may first be ascertained that the case is one which is removable, it is timely under 28 U.S.C. §1446(b).

19.    Despite the fact that this removal comes more than one year after the initial commencement of this action, it is still timely. Because this action was initially removable (indeed, the action was removed and remained in federal court for over 14 months), the one-year

5

provision in 28 U.S.C. §1446(b) does not apply.

>As for the one-year limitation provision cited in the second paragraph, courts have held that it only apples to cases that were not removable to federal court originally filed. The Eight Circuit has noted that "the real question . . . is whether the last clause of the second paragraph of §1446(b) modifies only the second paragraph, or applies more broadly to both paragraphs of the provision, " and has held that "rules of usages and statutory construction laws inevitably to the conclusion that the one-year limitation period modifies only the second paragraph of §1446(b), and therefore only applies to cases that were not removable to federal court when originally filed." Brown v. Tokio Marine & Fire Ins. Co., 284 F.3d 871, 873 (8th Cir. 2002); see also Badon v. R.J.R. Nabisco, Inc., 224 F.3d 382, 289 (5th Cir. 2000); Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 537, 535 (6th Cir. 1999).

Carter v. Frito-Lay, Inc., 144 Fed. Appx. 815 (11th Cir. 2005.)

20.    While National has found no case directly on point in the Eleventh Circuit, this case is almost completely analogous to the Lassila case. Lassila v. Werner Co., 78 F. Supp.2d 696 (W.D. Mich. 1999). In Lassila, the plaintiffs initially filed suit in state court. The defendant removed the case based upon diversity. The plaintiffs then joined a non-diverse defendant, and the action was remanded to state court. The non-diverse defendant was then dismissed from the action. Since complete diversity was then restored, the diverse defendant renewed its notice of removal. This second removal took place over a year after the action had been initially filed in state court. The plaintiffs moved to remand, arguing the defendant's second notice of removal was untimely. The magistrate judge denied the plaintiffs' motion to remand, and the plaintiffs appealed. The court upheld the magistrate judge's decision that the defendant's second removal was timely:

>Addressing this issue, the Brierly[1] Court could not have given a more clear mandate: "We hold that the one-year limitation on removal of diversity cases applies only to those that were not initially removable ...."
>...

---

[1] See infra. The Eleventh Circuit cited Brierly in its opinion in Carter v. Frito-Lay, Inc., 144 Fed. Appx. 815 (11th Cir. 2005).

Consequently, the Court finds that the timely notice given by defendant each time
the citizenship of the parties became completely diverse and met the requirements
set forth in § 1446(b) for removal.

Id. at 699. Likewise, because this case was originally removable, and indeed was previously

removed, this second removal is timely. The removal was made within thirty days of the filing

of a motion from which it could be ascertained that the case was again removable. Since the

one-year provision does not apply to cases which were initially removable, this removal is

timely.

21.    The House Report on §1016(b)(2) of the Judicial Improvements and Access to

Justice Act, P.L. 100-702, which contained the amendment to §1446 adding the one-year

provision, explained its purpose:

Subsection (b)(2) amends 28 U.S.C. §1446(b) to *establish a one-year limit on
removal based on diversity jurisdiction as a means of reducing the opportunity
for removal after* <u>*substantial progress*</u> *has been made in state court.* The result
is a modest curtailment in access to diversity jurisdiction. The amendment
*addresses problems that arise from a change of parties as an action progresses
towards trial in state court.* The elimination of parties may create for the first
time a party alignment that supports diversity jurisdiction. Under section 1446(b),
removal is possible whenever this event occurs, so long as the change of parties
was voluntary to the plaintiff. Settlement with a diversity-destroying defendant
on the eve of trial, for example, may permit the remaining defendants to remove.
*Removal late in the proceedings may result in substantial delay and disruption.*

H.R. Rep. No. 889, 100th Cong., 2d Sess. (1988), reprinted in 1988 U.S.C.C.A.N. 59882, 6032-

33 (emphasis added). Applying the one year provision here would not further the purposes

stated by Congress. Indeed, in this case, to allow the suit to remain in state court results in delay

and disruption. This case proceeded in federal court for over a year during which time discovery

was completed and National filed a motion for summary judgment. Mr. Godwin's tactical

maneuvering is the only reason the case was remanded. In his second Motion to Remand Mr.

Godwin stated: "That the Plaintiff, through discovery, has determined that Blue Cross Blue

7

Shield of Alabama is a necessary defendant and must be joined in order for the Plaintiff to receive complete adjudication and compensation for his injuries." Further, in his Plaintiff Resubmits his Motion for Leave to Amend the Complaint, Mr. Godwin alleged: "That without joinder of Blue Cross Blue Shield of Alabama, complete relief cannot be accorded among those already parties and the Plaintiff cannot have complete adjudication of his claims." However just a month after the case was remanded, the Mr. Godwin *voluntarily* dismissed Blue Cross Blue Shield, indicating he had no real intention of pursuing Blue Cross and joined them merely to destroy diversity late in the case. Allowing this to happen flies in the face of the purpose of the one-year provision as set forth by Congress.

22.     Further, "[a] plaintiff can also be estopped from raising the one-year bar based upon equitable considerations," such as when a plaintiff acts in bad faith. Barnett v. Sylacauga Autoplex, 973 F.Supp. 1358, 1366 (N.D. Ala. 1997). "Bad faith can generally be inferred from amendment outside of the statutory bar." Id. at 1367. In this case, Mr. Godwin amended his complaint outside of the one-year bar, resulting in a remand after the case had substantially progressed in federal court. Then, 1 month later, he voluntarily dismissed the non-diverse defendant, Blue Cross Blue Shield of Alabama, thereby indicating he had no real intent of pursuing Blue Cross Blue Shield of Alabama in the state court proceeding. Such bad faith on the part of Mr. Godwin should bar him from raising the one-year provision as a defense to this removal.

### THE OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED

23.     The prerequisites for removal under 28 U.S.C. §1441 have been met.

24.     Written notice of the filing of this Notice of Removal will be given to the adverse party as required by law.

8

25.    A Notice of Filing Notice of Removal, with a copy of this Notice of Removal attached, will be filed simultaneously with the Circuit Court Clerk for the Circuit Court of Crenshaw County.

26.    The allegations of this notice are true and correct, this cause is within the jurisdiction of the United States District Court for the Middle District of Alabama, and this cause is removable to the United States District Court for the Middle District of Alabama.

27.    If any question arises as to the propriety of the removal of this action, National requests the opportunity to present a brief and oral argument in support of its position this case is removable.

WHEREFORE, National, desiring to remove this case to the United States District Court for the Middle District of Alabama, Northern Division, being the district and division of said Court for the County in which said action is pending, pray that the filing of this Notice of Removal shall effect the removal of said suit to this Court.

<p style="text-align:center"><b><u>ORAL ARGUMENT REQUESTED</u></b></p>

Respectfully submitted,

*Michelle L. Crunk*

John W. Dodson (DOD 012)
Michelle L. Crunk (CRU 017)
Attorneys for AIG d/b/a National Union Fire Insurance Company of Pittsburgh, Inc., Palomar Insurance Corporation, and Godwin Material Services, Inc.

OF COUNSEL:

FERGUSON FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243

9

## CERTIFICATE OF SERVICE

This is to certify that on this the 26th day of February , 2007 a copy of the foregoing document has been served upon counsel for all parties to this proceeding via FED EX:

Arlene M. Richardson
RICHARDSON LEGAL CENTER, LLC
P.O. Box 971
Hayneville, Alabama 36040-0971

*Michelle L. Crunk*
OF COUNSEL

COPY SENT VIA FED EX TO:
Circuit Court Clerk of Crenshaw County
P.O. Box 167
Luverne, Alabama 36049

143148

10

# EXHIBIT
# A

ELECTRONICALLY FILED
2/2/2007 5:31 PM
CIRCUIT COURT OF
CRENSHAW COUNTY, ALABAMA
JEANNIE GIBSON, CLERK

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

| | | |
|---|---|---|
| GODWIN OLLIE | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.: 24-CV-2005-000069.80 |
| | ) | |
| PALOMAR INSURANCE CORP | ) | |
| AIG/DBA NATIONAL UNION FIRE | ) | |
| GODWIN MATERIAL SERVICES | ) | |
| BLUE CROSS BLUE SHIELD | ) | |
| Defendants | ) | |

## ORDER

PLAINTIFF'S MOTION TO DISMISS filed by GODWIN OLLIE is hereby GRANTED.

BLUE CROSS BLUE SHIELD OF ALABAMA IS DISMISSED AS A PARTY DEFENDANT, WITHOUT PREJUDICE.

DONE this 2nd day of February, 2007

/s H. EDWARD MCFERRIN
_____

CIRCUIT JUDGE

ELECTRONICALLY FILED
1/25/2007 4:22 PM
CIRCUIT COURT OF
CRENSHAW COUNTY, ALABAMA
JEANNIE GIBSON, CLERK

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

| | |
|---|---|
| OLLIE GODWIN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No.: CV-05-69.80 |
| | ) |
| NATIONAL UNION FIRE INSURANCE | ) |
| COMPANY OF PITTSBURGH, INC., | ) |
| ET AL., AND BLUE CROSS BLUE | ) |
| SHEILD OF ALABAMA | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE OF DEFENDANT BLUE CROSS BLUE SHIELD OF ALABAMA, PRO TANTO

**COMES NOW** the Plaintiff, by and through his attorney of record, pursuant to Rule 41 (a) of the Alabama Rules of Civil Procedure and hereby submits his Notice of Voluntary Dismissal Without Prejudice of the Defendant Blue Cross Blue Shield of Alabama.

The Plaintiff hereby notifies the court that said voluntary dismissal shall have no force and effect upon the remaining defendants and that he intends to continue to pursue all remedies available to him against the remaining defendants.

**WHEREFORE,** Plaintiff prays that the Court Dismiss defendant Blue Cross Blue Shield of Alabama without prejudice each party to bear its own cost.

Submitted this the 25th day of January, 2007.

_____/s_____
Arlene M. Richardson
Richardson Legal Center, LLC
Post Office Box 971
Hayneville, Alabama 36040
*Attorney for Plaintiff*
arlawyer@htcnet.net

## CERTIFICATE OF SERVICE

This is to certify that on this the 25th day of January 2007, a copy of the forgoing document has been served upon counsel for all parties to this proceeding via e-filing:

John W. Dodson
Michelle L. Crunk
Ferguson, Frost & Dodson, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243
*Attorneys for Defendant*
mlc@ffdlaw.com
jwd@ffdlaw.com


Michael J. Veleziz, Esq.
Wallace, Jordan, Ratliff & Brandt, LLC
800 Shades Creek Parkway, Suite 400
Birmingham, Alabama 35209
*Michael Velezis [MV@wallacejordan.com]*


_____/s_____
Arlene M. Richardson

SENDER: *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X *Amy*                                    ☐ Agent
                                           ☐ Addressee

B. Received by ( *Printed Name* )          C. Date of Delivery

*Amy Mc*

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

BIRMINGHAM AL 35244
MAY 0 8 2007

1. Article Addressed to:

Grey Till, Registered
         Agent
BCBS of Alabama
450 Riverchase Pkwy E
Birmingham AL 35244

CV-05-69.80

3. Service Type
   ☐ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? ( *Extra Fee* )        ☐ Yes

2. Article Number
   (Transfer from service label)

7005 1820 0008 1911 0140

PS Form 3811, February 2004          Domestic Return Receipt                102595-02-M-1540

ELECTRONICALLY FILED
1/16/2007 8:45 AM
CIRCUIT COURT OF
CRENSHAW COUNTY, ALABAMA
JEANNIE GIBSON, CLERK

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

| | |
|---|---|
| OLLIE GODWIN, | ) |
| | ) |
| **PLAINTIFF,** | ) |
| | ) |
| V. | )    CASE NO:  CV-05-69.80 |
| | ) |
| NATIONAL UNION FIRE INSURANCE | ) |
| COMPANY OF PITTSBURGH, INC., | ) |
| *ET AL.,* | ) |
| | ) |
| **DEFENDANTS.** | ) |
| | ) |

### ANSWER TO FIRST AMENDMENT TO THE COMPLAINT

COMES NOW the defendant, National Union Fire Insurance Company of Pittsburgh, PA (incorrectly named in the First Amendment to the Complaint as "AIG d/b/a National Union Insurance Company" and hereinafter referred to as "NUFIC"), by and through the undersigned attorneys of record and in response to the plaintiff's First Amendment to the Complaint states as follows:

### PARTIES

1.      This paragraph makes no allegations or claims against NUFIC and therefore commands no response.

2.      NUFIC admits it is licensed to do business in Alabama and underwrote the 2004 policy made the basis of this First Amendment to the Complaint.  NUFIC denies the remainder of this paragraph.

3.      NUFIC has insufficient information and belief with which to either admit or deny the material averments of this paragraph.

4.      NUFIC has insufficient information and belief with which to either admit or deny the material averments of this paragraph.

## STATEMENT OF FACTS

5.     NUFIC admits it underwrote Truckers Occupational Accident Insurance Policy number TRK 9056434 issued to Godwin Material, Inc. (hereinafter "the Policy"). NUFIC denies all remaining material averments contained in this paragraph.

6.     Deny.

7      Admit

8.     NUFIC has insufficient information and belief with which to either admit or deny the material averments of this paragraph.

9.     NUFIC has insufficient information and belief with which to either admit or deny the material averments of this paragraph.

10.     NUFIC has insufficient information and belief with which to either admit or deny the material averments of this paragraph.

11.     NUFIC admits premiums were received for the policy. NUFIC denies the remainder of this paragraph.

12.     Deny.

13.     Deny.

14.     NUFIC admits that benefits were paid pursuant to the injury being classified as non-occupational. NUFIC denies the remaining material averments of this paragraph.

15.     Deny.

16.     NUFIC admits it denied the plaintiff's claim relating to his injury of October 27, 2004. NUFIC denies the remaining material averments of this paragraph.

17      Admit

18.     NUFIC has insufficient information and belief with which to either admit or deny the

material averments of this paragraph.

19.    NUFIC has insufficient information and belief with which to either admit or deny the material averments of this paragraph.

20.    NUFIC has insufficient information and belief with which to either admit or deny the material averments of this paragraph.

21.    NUFIC admits that it erroneously paid some benefits to the plaintiff due to an oversight.

22.    NUFIC has insufficient information and belief with which to either admit or deny the material averments of this paragraph.

23.    NUFIC contends that the plaintiff's 2004 injury does not qualify for coverage under the Policy. NUFIC has insufficient information and belief with which to admit or deny the material averments of this paragraph concerning Blue Cross Blue Shield of Alabama.

24.    NUFIC contends that the plaintiff's 2004 injury does not qualify for coverage under the Policy. NUFIC has insufficient information and belief with which to admit or deny the material averments of this paragraph concerning Blue Cross Blue Shield of Alabama.

25.    NUFIC admits it received premium payments. NUFIC has insufficient information and belief with which to admit or deny the material averments of this paragraph concerning Blue Cross Blue Shield of Alabama. NUFIC denies the remaining material averments of this paragraph.

26.    NUFIC admits that it has not paid those claims not covered under the Policy. NUFIC has insufficient information and belief with which to admit or deny the material averments of this paragraph concerning Blue Cross Blue Shield of Alabama. NUFIC denies the remaining material averments of this paragraph.

## BAD FAITH

3

27.    NUFIC realleges and incorporates by reference the responses to all previous paragraphs as if fully set forth herein.

28.    Deny.

29.    Deny.

30.    NUFIC admits AIG Life paid the plaintiff a non-occupational benefit for his November 2003 injury.  NUFIC denies the remaining material averments of this paragraph.

31.    NUFIC contends the plaintiff's 2004 injury does not qualify for benefits under the Policy.  NUFIC denies the remaining material averments of this paragraph.

32.    NUFIC admits that correspondence was sent to the plaintiff dated February 27, 2004, and February 19, 2005. NUFIC denies the remainder of this paragraph.

33.    Deny.

34.    Deny.

35.    Deny.

36.    Deny.

37.    Deny.

38.    NUFIC denies the plaintiff is entitled to punitive damages.

39.    Deny.

## BREACH OF CONTRACT
## AS TO AIG/NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, INC.

40.    NUFIC realleges and incorporates by reference the responses to paragraphs 1 – 39 as if fully set forth herein.

41.    Deny.

4

42.    NUFIC admits the Policy was issued to Godwin Material, Inc. and is an insurance contract containing rights and obligations as to each party. NUFIC denies the remaining material averments of this paragraph.

43.    Deny.

44.    Deny.

45.    Deny.

## COUNT III
## BREACH OF CONTRACT
## AS TO BLUE CROSS BLUE SHIELD OF ALABAMA, INC.

46.    NUFIC realleges and incorporates by reference the responses to paragraphs 1 – 45 as if fully set forth herein.

47.    NUFIC as insufficient information and belief with which to either admit or deny the material averments of this paragraph.

48.    NUFIC as insufficient information and belief with which to either admit or deny the material averments of this paragraph.

49.    NUFIC as insufficient information and belief with which to either admit or deny the material averments of this paragraph.

50.    NUFIC as insufficient information and belief with which to either admit or deny the material averments of this paragraph.

51.    NUFIC as insufficient information and belief with which to either admit or deny the material averments of this paragraph.

## COUNT IV
## UNJUST ENRICHMENT
## ─ ─ ─ ─ ─ ─ ─ COMPANY OF PITTSBURG, INC. AND
## ─ ─ ─ ─ ─ ─ ─ BLUE SHIELD OF ALABAMA, INC.

52.    NUFIC realleges and incorporates by reference the responses to paragraphs 1 – 51 as if fully set forth herein.

53.    NUFIC admits the plaintiff was insured under the Policy. NUFIC has insufficient information and belief with which to admit or deny the material averments of this paragraph concerning Blue Cross Blue Shield of Alabama.

54.    NUFIC has insufficient information and belief with which to admit or deny the material averments of this paragraph.

55.    NUFIC has insufficient information and belief with which to admit or deny the material averments of this paragraph.

56.    NUFIC has insufficient information and belief with which to admit or deny the material averments of this paragraph.

57.    NUFIC denies it holds money which belongs to the plaintiff. NUFIC has insufficient information and belief with which to admit or deny the material averments of this paragraph concerning Blue Cross Blue Shield of Alabama.

58.    NUFIC denies it is holding the money which should properly be paid to the plaintiff's health care providers.

59.    NUFIC denies that by keeping premiums paid it would be unjustly enriched. NUFIC has insufficient information and belief with which to admit or deny the material averments of this paragraph concerning Blue Cross Blue Shield of Alabama.

60.    NUFIC has insufficient information and belief with which to admit or deny the material averments of this paragraph.

As to the unnumbered paragraph following paragraph 60, in the First Amendment to the Complaint, NUFIC denies it in its entirety. NUFIC further denies that the plaintiff is entitled to an

6

award of damages based on the allegations in the First Amendment to the Complaint, that the plaintiff is entitled to any interest pre- or post- judgment, that the plaintiff is entitled to recover the costs of the proceeding, or that the plaintiff is entitled to any other relief at law or in equity.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

NUFIC acted in good faith at all times in its dealings with the plaintiff.

### SECOND DEFENSE

The plaintiff failed to mitigate his damages.

### THIRD DEFENSE

The plaintiff failed to meet the conditions precedent to the policy of insurance.

### FOURTH DEFENSE

NUFIC denies that it is guilty of any act, wanton or otherwise, which would give rise to a claim for punitive damages or an award of punitive damages against it.

### FIFTH DEFENSE

NUFIC says that subjection of it to unlimited punitive damage fines constitutes arbitrary and capricious punishment in violation of constitutional restrictions embodied in the Due Process Clause and the Excessive Fines Clause of the United States Constitution, as well as their counterparts in the Alabama Constitution, Article I, Sections 6 and 15.

### SIXTH DEFENSE

The plaintiff cannot recover punitive damages against NUFIC because such an award, which is penal in nature, would violate NUFIC's constitutional rights protected under the United States and Alabama Constitutions unless NUFIC is awarded the same procedural safeguards as are criminal defendants, including, but not limited to, the right to avoid self-incrimination and the

7

requirement of proof beyond a reasonable doubt.

## SEVENTH DEFENSE

The imposition of punitive damages in this case without any limitations or guidelines for the jury will violate NUFIC's rights to due process guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article I, Section 6, of the Alabama Constitution.

## EIGHTH DEFENSE

NUFIC avers that the imposition of the award of punitive damages against it based on the principles of joint and several liability amounts to an excessive fine imposed against NUFIC in violation of the rights secured to it by the Eighth Amendment and the Fourteenth Amendment of the Constitution of the United States of America.

## NINTH DEFENSE

The failure of the law of the State of Alabama to make a provision for the imposition of but one assessment of damages against a joint tortfeasor, despite differing degrees of culpability and wrong doing, and reasonably act to establish a classification against NUFIC for acts of negligence, wantonness, misrepresentation, fraud, or other wrongdoing that NUFIC did not commit, is in contradiction of the rights afforded it by the Fourteenth Amendment to the Constitution of the State of Alabama which requires that the State afford all persons equal protection of the law.

## TENTH DEFENSE

NUFIC avers that the law of the State of Alabama by imposing joint and several liability on it for the acts of other operates to create an arbitrary and capricious method and manner for the jury's assessment and determination of damages, without regard for the quality and quantity of culpability of other defendants joined in this action and thereby deprives NUFIC of its property without due process of law and contradiction of Amendments Five and Fourteen to the Constitution

of the United States of America and Article I, Section 6 of the Constitution of the State of Alabama.

## ELEVENTH DEFENSE

NUFIC avers that Section 6-11-21, Alabama Code (1975), places a maximum limit on punitive damages recoverable, if at all, by plaintiff in this case and that the decision of the Alabama Supreme Court, in holding the maximum allowable award for punitive damages passed by the Legislature and made the law of this State, to be unconstitutional as a violation of the Separation of Powers Clauses of the Constitutions of the United States and the State of Alabama.

## TWELFTH DEFENSE

NUFIC avers that the public policy of the State of Alabama as set forth in Section 6-11-21, Alabama Code (1975), established a maximum limit on punitive damages recoverable (if any) by plaintiff and that plaintiff cannot recover more than the limit established by the public policy of this state.

## THIRTEENTH DEFENSE

NUFIC denies any acts of omission or commission which give rise to plaintiff's recovery of punitive damages in this case, but should a jury award punitive damages, in a verdict of more than the maximum limit established in Section 6-11-21 of the Alabama Code (1975), it is void.

## RESERVATION OF DEFENSES

NUFIC reserves its right to amend the Answer as discovery progresses and as issues may arise.

Respectfully submitted,

/s/ John W. Dodson

| John W. Dodson | (DOD012) |
| Michelle L .Crunk | (CRU017) |

*Attorneys for AIG d/b/a National Union Fire Insurance Company of Pittsburgh, Inc.*

9

OF COUNSEL:
**FERGUSON, FROST & DODSON, LLP**
2500 Acton Road, Suite 200
Post Office Box 430189
Birmingham, Alabama 35243-0189
205-879-8722 - phone
205-879-8831 - fax


## CERTIFICATE OF SERVICE

This is to certify that on this the 16th day of January, a copy of the forgoing document has been served upon counsel for all parties to this proceeding via Alafile filing:

Arlene M. Richardson
RICHARDSON LEGAL CENTER, LLC
Post Office Box 971
Hayneville, Alabama  36040-0971


/s/ John W. Dodson
OF COUNSEL

141324

10

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

| | | |
|---|---|---|
| OLLIE GODWIN | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No.: CV-05-69.80 |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURG, INC., | ) | |
| and BLUE CROSS BLUE SHIELD OF | ) | |
| ALABAMA,  and FICTITIOUS | ) | |
| DEFENDANTS, A, B, and C, Being those | ) | |
| persons, firms, corporations, | ) | |
| and/or any other entity responsible for or | ) | |
| which carried out the acts and/or | ) | |
| omissions herein complained of with | ) | |
| respect to Plaintiff, whose names or | ) | |
| identities are otherwise unknown at this | ) | |
| time, but which will be added | ) | |
| by amendment when ascertained. | ) | |
| | ) | |
| **Defendant.** | ) | |

### SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

Notice To:     **A. GREY TILL, JR., REGISTERED AGENT**
**BLUE CROSS BLUE SHIELD OF ALABAMA**
**450 RIVERCHASE PARKWAY, EAST**
**BIRMINGHAM, AL 35244**

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written **Answer**, either admitting or denying each allegation in the **Complaint**, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

**Richardson Legal Center, LLC**
Post Office Box 971
Hayneville, AL 36040
Phone: (334) 548-5660

**THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.  YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT WITHIN A REASONABLE TIME THEREAFTER.**

_____
Clerk of Court
Date: _____

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

| | | |
|---|---|---|
| OLLIE GODWIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: CV-05-69.80 |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURG, INC., | ) | |
| and BLUE CROSS BLUE SHIELD OF | ) | |
| ALABAMA, and FICTITIOUS | ) | |
| DEFENDANTS, A, B, and C, Being those | ) | |
| persons, firms, corporations, | ) | |
| and/or any other entity responsible for or | ) | |
| which carried out the acts and/or | ) | |
| omissions herein complained of with | ) | |
| respect to Plaintiff, whose names or | ) | |
| identities are otherwise unknown at this | ) | |
| time, but which will be added | ) | |
| by amendment when ascertained. | ) | |
| | ) | |
| Defendant. | ) | |

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

Notice To:   **A. GREY TILL, JR., REGISTERED AGENT**
**BLUE CROSS BLUE SHIELD OF ALABAMA**
**450 RIVERCHASE PARKWAY, EAST**
**BIRMINGHAM, AL 35244**

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written **Answer**, either admitting or denying each allegation in the **Complaint**, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

**Richardson Legal Center, LLC**
Post Office Box 971
Hayneville, AL 36040
Phone: (334) 548-5660

**THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT WITHIN A REASONABLE TIME THEREAFTER.**

Clerk of Court
Date: ___12/21/06___

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

| | |
|---|---|
| **OLLIE GODWIN** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    Case No.: CV-05-69.80 |
| | ) |
| **NATIONAL UNION FIRE INSURANCE** | ) |
| **COMPANY OF PITTSBURG, INC.,** | ) |
| **and BLUE CROSS BLUE SHIELD OF** | ) |
| **ALABAMA,  and FICTITIOUS** | ) |
| **DEFENDANTS, A, B, and C, Being those** | ) |
| **persons, firms, corporations,** | ) |
| **and/or any other entity responsible for or** | ) |
| **which carried out the acts and/or** | ) |
| **omissions herein complained of with** | ) |
| **respect to Plaintiff, whose names or** | ) |
| **identities are otherwise unknown at this** | ) |
| **time, but which will be added** | ) |
| **by amendment when ascertained.** | ) |
| | ) |
| **Defendant.** | ) |



### FIRST AMENDMENT TO THE COMPLAINT

**COMES NOW**, the Plaintiff, Ollie Godwin, by and through the undersigned attorney of

record, and would show this Honorable court as follows:

### PARTIES

1.      The Plaintiff, Ollie Godwin, is over the age of nineteen years and is a resident of

Crenshaw County, Alabama. Hereafter referred to as Plaintiff.

2.      Defendant, AIG d/b/a National Union Insurance Company, is duly licensed with

the Alabama Secretary of State as a corporation doing business in Alabama including

Montgomery County and Crenshaw County, Alabama and is the corporation underwriter for the

Palomar Occupational Accident policy that is made the basis of this complaint.

)                                                    )

3.    Defendant Blue Cross Blue Shield of Alabama is an independent licensee of the Blue Cross Blue Shield Association duly licensed in the State of Alabama and located at 450 Riverchase Parkway East, in Birmingham, Alabama and is in the business of providing health insurance to the citizens of the State of Alabama including the Plaintiff.

4.    Defendants A, B, and C are underwriters for Defendant Palomar Insurance Corporation, employees, and/or agents of Palomar Insurance Corporation, doing business in Alabama, including Crenshaw County, Alabama and committed acts complained of herein and will be named and added appropriately when known.

## STATEMENT OF FACTS

5.    Godwin Inc., purchased an Occupational Accident Insurance Policy to insure their truck drivers, including Plaintiff, Ollie Godwin.  Policy number 9056434 is underwritten by AIG d/b/a National Union Insurance Company. (Hereinafter referred to as National Union.)

6.    The Policy became effective on May 01, 2003 and renewed on the anniversary date for years 2004 and 2005.  The Occupational Policy was such that the policy would renew every year.

7.    Plaintiff was a truck driver for Godwin Inc., and was insured under the terms of the aforementioned policy.

8.    Plaintiff, at all time mentioned herein, was also covered by a health insurance policy issued by Blue Cross Blue Shield of Alabama (hereinafter referred to as BCBS of Alabama) Contract Number XAA887493378.

9.    Said BCBS of Alabama policy was issued to Godwin Inc., and was in force to provide health coverage for Godwin Inc., truck drivers.

10.    Plaintiff was paying premiums on the National Union policy and the BCBS of Alabama policy which were deducted by Godwin Inc., from the Plaintiff's checks on a regular basis.

11.    Said premiums were paid pursuant to the terms of both policies.

12.    On or about October/November 2003 the Plaintiff suffered an occupational injury that resulted in the Plaintiff having surgery for hernia. Said Policy 9056434 has a special Hernia Coverage Rider and, pursuant to the policy terms, said injury should have been covered.

13.    Plaintiff was under dispatch at the time of his injury and Godwin Inc., wrote to National Union and reported that the Plaintiff was under dispatch.

14.    National Union ignored Godwin Inc., request and classified the Plaintiff's injury as non-occupational and did not pay his claim pursuant to the occupational classification under the policy.

15.    Plaintiff on or about October 27, 2004 was again injured while on dispatch. Said injury to his knee and hip has resulted in collapse of his left hip which required surgery.

16.    Again, National Union denied Plaintiff's claim and has refused to pay most of the Plaintiff's expenses relating to his injury of October 27, 2004 pursuant to the occupational accident Policy number 9056434.

17.    As of May 01, 2005, National Union has refused to renew/cover the Plaintiff under the policy.

18.    The Plaintiff filed claims for medical treatment with BCBS of Alabama pursuant to the terms and conditions of his health coverage policy.

19.    BCBS of Alabama refused to pay any of the Plaintiff's claims stating that the injuries were work related and not covered under his policy.

20.    That, after a period of time, BCBS of Alabama did pay the hospital charges resulting from the Plaintiff's hip surgery.

21.    That at some point thereafter, National Union also paid some of the Plaintiff's claims.

22.    Whereupon, BCBS of Alabama promptly requested a refund of the hospital and other medical expenses that they had previously paid.

23.    That both National Union and BCBS of Alabama have refused further payment on any medical charges for the Plaintiff's treatments of injuries complained of herein.

24.    That Defendant National Union contends that the Plaintiff's injuries are not work related but are sickness/disease originated, and BCBS of Alabama contends that the Plaintiff's injuries are work related and not covered under the health insurance policy.

25.    Plaintiff paid premiums on both National Union and BCBS of Alabama policies and contends that his medical treatment expenses should be covered under one of the policies.

26.    Because of both Defendants' refusal to pay his claims, the Plaintiff is left with the burden of all medical expenses incurred by his injuries.

### COUNT I
### BAD FAITH
#### AS TO AIG/NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, INC.

27.    Plaintiff repeats, realleges and incorporates by reference all of the preceding allegations of this Complaint, as if more fully set out herein.

28.    That on or about the October/November 2003 and October 27, 2004 the Plaintiff was injured in two separate accidents while he was on dispatch for Godwin Inc.

29.     Plaintiff timely gave Defendant National Union, and Fictitious Defendants A, B, and C notice of both injuries, pursuant to the terms under said policy, and made claims for benefits thereunder.

30.     Defendant National Union and Fictitious Defendants A, B, and C did pay some of the Plaintiff's expenses on his injury of October/November 2003, but they classified his injury as non-occupational whereby they would not be required to pay disability benefits because the injury had been classified as occupational.

31.     Defendant National Union and Fictitious Defendants A, B, and C have intentionally refused to pay any of the Plaintiff's expenses pertaining to his injury of October 27, 2004.

32.     Defendant National Union and Fictitious Defendants A, B, and C intentionally refused to pay the Plaintiff's claims pursuant to the terms of the policy via correspondence dated February 27, 2004 pertaining to his October/November 2003 injury and correspondence dated February 19, 2005 pertaining to the Plaintiff's October 27, 2004 injury and has denied the Plaintiff's claims without lawful justification.

33.     Defendant National Union and Fictitious Defendants A, B, and C's refusal to pay said claims was not based upon any reasonably legitimate, arguable, or debatable reason.

34.     Defendant National Union and Fictitious Defendants A, B, and C knew that there was no legitimate, arguable or debatable reason for denying the claims, when Defendants refused to pay said claims.

35.     Defendant National Union and Fictitious Defendants A, B, and C intentionally failed to investigate the claim to determine whether or not there was any lawful basis for its refusal to pay said claim.

36.     Defendant National Union and Fictitious Defendants A, B, and C's determination that the Plaintiff's injury of October/November 2003 was a non-occupational injury and that the Plaintiff's October 27, 2004 injury was caused by an underlying medical condition and not occupational related are false and unsubstantiated.

37.     Defendant National Union and Fictitious Defendants A, B, and C acted in bad faith in refusing to pay Plaintiff's claims.

38.     Plaintiff claims punitive damages of Defendant National Union and Fictitious Defendants A, B, and C.

39.     Because of Defendant National Union and Fictitious Defendants A, B, and C's refusal to pay, the Plaintiff has been damaged and caused to suffer in that he has had to bear all medical costs associated with his injuries, the Plaintiff was not paid his disability benefits due under the policy, and the Plaintiff has not, otherwise, been compensated pursuant to the terms of the policy for which he has been paying premiums.

### COUNT I I
### BREACH OF CONTRACT
### AS TO AIG/NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, INC.

40.     Plaintiff repeats, realleges and incorporates by reference all of the preceding allegations of this Complaint, as if more fully set out herein.

41.     That on or about May 01, 2003 and May 01, 2004 Defendant National Union and Fictitious Defendants A, B, and C renewed the Plaintiff's Occupational Accident Policy which covered the Plaintiff in the event of occupational accidents.

42.     That Policy Number 9056434, drafted by Defendant National Union and Fictitious Defendants A, B, and C and issued to Godwin Inc., and the Plaintiff, is a written contract of insurance between the Plaintiff and Defendant National Union and Fictitious

Defendants A, B, and C in which they agreed to certain stipulations and requirements of each party, i.e., Plaintiff would pay the monthly premiums and adhere to certain requirements in the event of a claim and Defendant National Union and Fictitious Defendants A, B, and C would pay for losses pursuant to the terms of the contract/policy.

43.     Plaintiff has performed all of the stipulations, conditions, requirements, and agreements pursuant to the terms of the contract/policy.

44.     Defendant National Union and Fictitious Defendants A, B, and C has failed and refused, and continues to fail and refuse, to fully perform their part of the contract/policy.

45.     Due to Defendant National Union and Fictitious Defendants A, B, and C's failure to perform, the Plaintiff has been damaged and caused to suffer in that he has had to bear the cost of extensive medical treatment, was not paid his disability benefits due him, has lost time from work which has caused him financial hardship, and he has not been otherwise compensated pursuant to the terms of the policy.

## COUNT I I I
## BREACH OF CONTRACT
## AS TO BLUE CROSS BLUE SHIELD OF ALABAMA, INC.

46.     Plaintiff repeats, realleges and incorporates by reference all of the preceding allegations of this Complaint, as if more fully set out herein.

47.     That at all times complained of herein, the Plaintiff was covered under a BCBS of Alabama health insurance policy issued to Godwin Material Services, Inc., with contract number XAA887493378 which would cover the Plaintiff for medical expenses that were the result of non work related sickness or injuries.

48.     That BCBS of Alabama, Contract Number XAA887493378, was drafted by Defendant BCBS of Alabama and issued to Godwin Inc., and the Plaintiff, has a written contract

of insurance between the Plaintiff and Defendant BCBS of Alabama in which BCBS of Alabama agreed to certain stipulations and requirements of each party, i.e., Plaintiff would pay the monthly premiums and adhere to certain requirements in the event of a claim and Defendant BCBS of Alabama would pay for losses pursuant to the terms of the contract/policy.

49.     Plaintiff has performed all of the stipulations, conditions, requirements, and agreements pursuant to the terms of the contract/policy.

50.     Defendant BCBS of Alabama has failed and refused, and continues to fail and refuse, to fully perform their part of the contract/policy.

51.     Due to Defendant BCBS of Alabama's failure to perform, the Plaintiff has been damaged and caused to suffer in that he will ultimately bear the cost of extensive medical treatment causing him financial hardship, and he has not been otherwise compensated pursuant to the terms of the policy;

<div align="center">

**COUNT IV**
**UNJUST ENRICHMENT**
**AS TO NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, INC. AND BLUE CROSS BLUE SHIELD OF ALABAMA, INC.**

</div>

52.     Plaintiff repeats, realleges and incorporates by reference all of the preceding allegations of this Complaint, as if more fully set out herein.

53.     That at all times herein complained of, the Plaintiff was covered under the insurance policies of National Union Fire Insurance Company of Pittsburg, Inc., and Blue Cross Blue Shield of Alabama.

54.     That the Plaintiff paid all premiums timely and in the amounts as set by the prospective insurance companies.

55.     That at the time of the Plaintiff's injury, the Plaintiff believed that National Union Fire Insurance Company of Pittsburg would be responsible to pay his medical bills and temporary disability regarding the injury because it was a work related injury.

56.     When National Union Fire Insurance Company of Pittsburg denied the Plaintiff's claim as non-occupational disease; his Blue Cross Blue Shield of Alabama health insurance policy paid the medical expenses but then requested refunds of amounts paid from the Plaintiff's medical providers.   BCBS then denied the Plaintiff's claims stating that his injury was work related.

57.     The Defendants, National Union Fire Insurance Company of Pittsburg and Blue Cross Blue Shield of Alabama both hold money which in equity and good conscience belongs to the Plaintiff.

58.     That the Defendants are holding the monies which should properly be paid to the Plaintiff's healthcare providers as agreed in the insurance companies prospective policies.

59.     That for the Defendants, National Union Fire Insurance Company of Pittsburg and Blue Cross Blue Shield of Alabama, to keep the premiums that the Plaintiff paid for the insurance coverage and not make any payments to the Plaintiff's health care providers would be an unjust enrichment for both insurance companies and would require the Plaintiff to bear the burden of his own medical treatment plus pay the insurance premiums.

60.     Due to the acts of National Union Fire Insurance Company of Pittsburg and Blue Cross Blue Shield of Alabama, the Plaintiff has incurred injury to his credit reputation and has suffered severe emotional distress and monetary damage.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff demands judgment, by a fair and impartial jury, against Defendant National Union Fire Insurance Company of Pittsburg

Inc., and Blue Cross Blue Shield of Alabama for compensatory damages in the amount of the

$59,581.44, plus pain and suffering and emotional distress in an amount to be determined by a

jury, and a determination in equity as to the unjust enrichment by the Defendants, plus all costs

associated with this legal action.

Respectfully submitted this _15_ day of December 2006.

Arlene M. Richardson, (RIC045)
Attorney for the Plaintiff

**Richardson Legal Center, L.L.C.**
P.O. Box 971
Hayneville, Alabama 36040
Telephone: (334) 548-5660
Fax: (561) 228-1085
E-mail: arlawyer@htcnet.net

## CERTIFICATE OF SERVICE

I hereby certify that on the _15_ day of December 2006, I certify that I have hereby mailed
by U.S. Postal Service the document to the following address:

Michelle L. Crunk. Esq.
Ferguson, Frost & Dodson, LLP
2500 Acton Road, Suite 200
P.O. Box 430189
Birmingham, AL 35243-0189

Arlene M. Richardson

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OLLIE GODWIN,                              )
                                           )
            Plaintiff,                     )
                                           )
    v.                                     )     CIVIL ACTION NO. 2:05CV783-SRW
                                           )     (WO)
NATIONAL UNION FIRE INSURANCE              )
COMPANY OF PITTSBURGH, INC.,               )
                                           )
            Defendant.                     )

## ORDER

Plaintiff commenced this action against defendant National Union Fire Insurance

Company of Pittsburgh, Inc. ("NUFIC") in the Circuit Court of Crenshaw County, Alabama,

on July 12, 2005, asserting bad faith and breach of contract claims arising from defendant's

failure to provide medical benefits under an insurance contract.[1]  Defendant removed the

action to this court on August 15, 2005 on the basis of diversity of citizenship.  Plaintiff is

an Alabama citizen; defendant NUFIC is a Pennsylvania corporation with a principal place

of business in New York.   This action is presently before the court on plaintiff's motion for

leave to amend the complaint (Doc. # 28) and his motion to remand (Doc. # 29), both filed

on October 25, 2006.  Plaintiff seeks leave to add claims against a new defendant, Blue Cross

Blue Shield of Alabama ("Blue Cross"), and to add an unjust enrichment claim against

defendant NUFIC.  The court concludes that the motion to amend is due to be granted in part

---

[1] Two other defendants, Palomar Insurance Corporation and Godwin Material Services, Inc.,
were dismissed by this court as fraudulently joined.



and, accordingly, that the action is due to be remanded.

## DISCUSSION

Plaintiff asserts that, at the time he suffered an injury, he was insured by NUFIC under an occupational accident policy purchased by plaintiff's employer, Godwin Materials, Inc., and was also insured by Blue Cross under a health insurance policy. According to plaintiff, NUFIC failed to pay his claim under the occupational accident policy because it classified his injury as a disease that was not work-related. Blue Cross thereafter initially paid medical bills associated with plaintiff's hip replacement surgery under plaintiff's health insurance policy; however, in July 2006 – after the deadline for amendment had passed in this case – it sought refunds from plaintiff's medical providers because it determined that plaintiff's claims were not payable due to a work-related injury coverage exclusion in the policy. Plaintiff now seeks to add state law breach of contract and unjust enrichment claims against Blue Cross in this action. Blue Cross is incorporated and has its principal place of business in Alabama (see Doc. # 33) and, thus, its joinder would destroy diversity.

28 U.S.C. § 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

> In determining whether to allow the amendment, 'the court should examine the following factors: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities.'"

Weathington v. United Behavioral Health, 41 F.Supp.2d 1315, 1318 (M.D. Ala

2

1999)(citation omitted); see also Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987). NUFIC argues that the factors identified above – the Hensgens factors – weigh against allowing the amendment, contending that plaintiff seeks to amend his complaint in an attempt to defeat diversity jurisdiction, that he has been dilatory in seeking amendment, that the absence of Blue Cross will not prevent plaintiff from obtaining full relief, and that defendant's right to choose the federal forum weighs against allowing the amendment. Defendant further asserts that plaintiff has not demonstrated good cause for seeking leave to amend after the deadline established in the court's scheduling order.

With regard to the first and second factors, defendant contends that, because plaintiff was aware at the time he filed the present complaint that he was covered under an insurance policy with Blue Cross, "there is no reason not to believe the only reason for delay in adding Blue Cross to this litigation at this point is to defeat diversity jurisdiction before trial" and, further, that plaintiff was dilatory in seeking leave to amend. (Doc. # 38, pp. 2-4). However, as plaintiff argues, he had no cause to sue Blue Cross at the time he filed the present complaint. The cause of action plaintiff now seeks to assert against Blue Cross did not arise until Blue Cross denied his claims and sought refunds from his medical providers in July 2006. The motion for leave to amend was filed three and a half months after this occurred; plaintiff asserts that during that period he was attempting to negotiate a resolution with Blue Cross. The court concludes that the present motion was not filed primarily for the purpose of defeating federal jurisdiction and that plaintiff was not dilatory in seeking leave to add

3

Blue Cross as a defendant.[2]

As to the third factor – whether the plaintiff will be significantly injured if amendment is not allowed – defendant argues that plaintiff has not demonstrated how he will be unable to obtain full relief from NUFIC without the presence of Blue Cross. NUFIC contends that plaintiff's claims can be fully adjudicated without joinder of the additional defendant. (Doc. # 38, pp. 5-6). The "full relief" standard derives from Fed. R. Civ. P. 19, which provides for joinder of a person who is subject to service of process and whose joinder will not destroy jurisdiction if "in the person's absence complete relief cannot be accorded among those already parties." Fed. R. Civ. P. 19(a). While this standard has been applied in some cases to analysis of the third Hensgens factor, "[i]t is clear from the unambiguous language of § 1447(e) that a non-diverse party need not be indispensable as defined by Fed. R. Civ. P. 19 in order for a district court to permit joinder and remand the action to state court." Heininger v. Wecare Distributors, Inc., 706 F. Supp. 860, 862 (S.D. Fla. 1989); see also Hensgens, 833 F.3d at 1182 (rejecting argument that district court may add only an indispensable party).[3] While Rule 19 should be considered, it does not control the analysis of whether joinder is proper. See Mayes v. Rappaport, 198 F.3d 457, 462 (4th Cir. 1999)("Under Section 1447(e), the actual decision on whether or not to permit joinder of a

---

[2] These circumstances also satisfy the "good cause" requirement for modifying a scheduling order under Fed. R. Civ. P. 16(b).

[3] Hensgens predates § 1447(e). However, courts continue to apply the Hensgens factors, and some courts have determined that § 1447(e) is a codification of the holding of Hensgens. See Cobb v. Delta Exports, 186 F.3d 675, 677 n. 4 (5th Cir. 1999).

4

before this court. However, the efforts expended by defendant in conducting discovery and preparing its dispositive motion in this court are not wasted in the event of remand to state court. Further, defendant's interest in retaining a federal forum must be weighed against "the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources." Hensgens, 833 F.2d at 1182. The court recognizes that plaintiff's claims against Blue Cross and his claims against NUFIC are independent of each other. However, the unique circumstances of this case present claims which should, as a matter of equity, be tried in a single action. In view of the potential for inconsistent results and concerns of judicial economy, the equities weigh in favor of allowing amendment to add Blue Cross as a defendant. See Heininger, supra, 706 F. Supp. at 862-63.

Since the court has determined that plaintiff's amendment to add Blue Cross is due to be allowed, and since the joinder of Blue Cross divests this court of jurisdiction, the court does not address the issue of whether plaintiff should be permitted, at this juncture, to add an unjust enrichment claim against NUFIC.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that plaintiff's motion for leave to amend (Doc. # 28) is GRANTED to the extent that plaintiff seeks to assert claims against defendant Blue Cross. The court here makes no determination regarding the propriety of the amendment adding an additional claim against NUFIC.

It is further ORDERED that plaintiff's motion to remand (Doc. # 29) is GRANTED,

and this action is hereby REMANDED to the Circuit Court of Crenshaw County pursuant

to 28 U.S.C. § 1447 (e) and § 1447(c) for lack of subject matter jurisdiction.

Done, this 15th day of December, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

ATTEST: A True Copy.
Certified to _____ 12-15 ____, 20 06 .
Clerk, U.S. District Court,
Middle District of Alabama

BY _____ Charlene Campbell _____
Deputy Clerk

7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| OLLIE GODWIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 2:05-cv-00783-SRW |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, INC., | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO SUBSTITUTE EXHIBIT 19 AND 7

**COMES NOW** the Plaintiff, by and through his attorney of record, and moves the Court to substitute Exhibit 19 and 7 to his Response to Defendant's Motion for Summary Judgment and in support thereof states as follows:

1.    The affidavit of Ollie Godwin contains the incorrect expiration date of the Notary Public. This is due to a clerical error and can be substituted without prejudice to the Defendants.

2.    Additionally, Counsel for the Plaintiff has realized that Exhibit 19 is incomplete. The responsive brief on page 14 quotes an e-mail correspondence between the Defendant's agent and Palomar Agent, Suzanne Adger. This e-mail was inadvertently left out of Exhibit 19 which is listed on Plaintiff's exhibit list as "E-Mail Correspondence." This evidence, which supports plaintiff's assertion, can be easily substituted without prejudice to the Defendant because the e-mail was quoted in full in Plaintiff's brief. (Exhibit 19 Attached).

3.    The Plaintiff will suffer prejudice if the exhibits are not part of the record as they support disputed material facts.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays this Court Grant his Motion to Substitute Exhibit 19 and 7.

## MOTION GRANTED

THIS _18th_ DAY OF _November_, 20 _06_

_____
**UNITED STATES MAGISTRATE JUDGE**

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| OLLIE GODWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05cv783-SRW |
| | ) | |
| NATIONAL UNION FIRE | ) | |
| INSURANCE COMPANY OF | ) | |
| PITTSBURGH, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTION

Upon consideration of defendants' response to plaintiff's motion for leave (Doc. # 38),

filed November 10, 2006, and for good cause, it is

ORDERED that plaintiff file a reply brief to defendants' response on or before

November 22, 2006.

Done, this 14th day of November, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OLLIE GODWIN,               )
                           )
        Plaintiff,          )
                           )
        v.             )     CIVIL ACTION NO. 2:05CV783-SRW
                           )
PALOMAR INSURANCE    )
CORPORATION, et al.,     )
                           )
        Defendants.    )

## ORDER

This action is presently before the court on plaintiff's motion to remand, filed on October 25, 2006. Plaintiff contends that his proposed amendment to his complaint adds a non-diverse defendant, thereby destroying subject matter jurisdiction in this court. Plaintiff seeks to add claims against Blue Cross Blue Shield of Alabama. In the proposed amendment, plaintiff alleges that Blue Cross Blue Shield of Alabama "is an independent licensee of the Blue Cross Blue Shield Association duly licensed in the State of Alabama and located at 450 Riverchase Parkway East, in Birmingham, Alabama and is in the business of providing health insurance to the citizens of the State of Alabama including the Plaintiff." (Proposed amendment, ¶ 3).

28 U.S.C. § 1332 provides that, for purposes of determining diversity jurisdiction, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated

and of the State where it has its principal place of business."[1]  Plaintiff's proposed

amendment does not clearly indicate that Blue Cross Blue Shield of Alabama is incorporated

in Alabama, or that its principal place of business is within this state.  Accordingly, it is

      ORDERED that plaintiff is DIRECTED to file, on or before November 3, 2006, a

statement indicating the state(s) of incorporation of proposed defendant Blue Cross Blue

Shield of Alabama, and the state of its principal place of business.  Defendant National Union

is DIRECTED to respond to plaintiff's statement on or before November 10, 2006, and must

indicate: (1) whether or not it concurs with plaintiff's statement concerning the citizenship

of Blue Cross Blue Shield of Alabama; and (2) whether it opposes remand.

      DONE, this 27th day of October, 2006.


                /s/ Susan Russ Walker
                SUSAN RUSS WALKER
                UNITED STATES MAGISTRATE JUDGE

---

[1] For the reasons stated in this court's earlier order on plaintiff's first motion to remand, the "direct action" provision is inapplicable.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OLLIE GODWIN,                          )
                                       )
              Plaintiff,               )
                                       )
       v.                              )        CIVIL ACTION NO. 2:05CV783-SRW
                                       )                  (WO)
NATIONAL UNION FIRE INSURANCE          )
COMPANY OF PITTSBURGH, INC.,           )
                                       )
              Defendant.               )

## ORDER

       For good cause, it is

       ORDERED that plaintiff's motion for leave to amend to add Blue Cross Blue Shield

of Alabama as a party defendant is DENIED.   The proposed amendment attached to

plaintiff's motion asserts claims against Palomar Insurance Corporation and Godwin Material

Services, Inc., defendants previously dismissed by the court as fraudulently joined.  (See

Doc. # 18).  Plaintiff may renew her motion after modifying the proposed amendment so that

it addresses only her claims against National Union and Blue Cross.

       DONE, this 24th day of October, 2006.


                                   /s/ Susan Russ Walker
                                   SUSAN RUSS WALKER
                                   UNITED STATES MAGISTRATE JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| OLLIE GODWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05cv783-SRW |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This action is presently before the court on the motion for summary judgment filed by defendant on October 6, 2006. The parties are DIRECTED to comply with the order of this court entered on December 16, 2005 (Doc. # 17), which establishes the briefing schedule.

Additionally, the parties are DIRECTED to provide the court with courtesy copies of their summary judgment briefs[1] and bound and tabbed copies of their evidentiary submissions on or before November 9, 2006.

Done, this 10th day of October, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

---

[1] Brief should be separate from the bound evidentiary submissions.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OLLIE GODWIN,               )
                                )
        Plaintiff,          )
                                )
        v.               )     CIVIL ACTION NO. 2:05cv783-SRW
                                )
NATIONAL UNION FIRE      )
INSURANCE COMPANY OF    )
PITTSBURGH, INC., et al.,     )
                                )
        Defendants.      )

## ORDER ON MOTION

Upon consideration of the parties joint motion to continue deadlines (Doc. # 19), filed July 14, 2006, and for good cause, it is

ORDERED that the motion be and hereby is GRANTED. All deadlines requested in the motion shall be in effect upon entry of this order. The pretrial conference is scheduled for January 2, 2007 at 4:15 p.m. This cause is set for trial during the term of court commencing on February 26, 2007 in Montgomery, Alabama.

Done, this 18th day of July, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

ᵣ₂₋₂₈₃₁

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| OLLIE GODWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05CV783-SRW |
| | ) | |
| PALOMAR INSURANCE | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Ollie Godwin commenced this action in the Circuit Court of Crenshaw

County, Alabama, asserting claims of bad faith and breach of contract against defendants

Palomar Insurance Corporation ("Palomar"), Godwin Material Services, Inc. ("Godwin,

Inc."), and National Union Fire Insurance Company of Pittsburg, PA ("National").

Defendants removed the action to this court, asserting that Palomar and Godwin, Inc. – both

Alabama corporations – are fraudulently joined and that this court has diversity jurisdiction.[1]

This action is presently before the court on plaintiff's motion to remand (Doc. # 9). Upon

consideration of the motion, the court concludes that it is due to be denied.

## DISCUSSION

Federal courts have a strict duty to exercise the jurisdiction conferred on them by

Congress. Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 716 (1996). However,

---

[1] Plaintiff also sues fictitious defendants. The citizenship of fictitious defendants is not considered for purposes of removal on the basis of diversity. 28 U.S.C. § 1441(a).

federal courts are courts of limited jurisdiction. Thus, with respect to motions to remand cases removed to this court pursuant to 28 U.S.C. § 1441, the law of this circuit favors remand where federal jurisdiction is not absolutely clear. In "deciding a motion to remand where the plaintiff and defendant disagree on issues of jurisdiction, questions or doubts are to be resolved in favor of returning the matter to state court." Burns v. Windsor Insurance Co., 31 F.3d 1092, 1095 (1994).

Plaintiff is an Alabama citizen. (Complaint, ¶ 1). Whether this court has diversity jurisdiction turns on two issues: (1) whether Palomar and Godwin, Inc. are fraudulently joined; and (2) whether plaintiff's cause of action against National (the only diverse defendant) is a "direct action" such that National is deemed a citizen of Alabama pursuant to 28 U.S.C. § 1332(c)(1).[2]

## Fraudulent Joinder

National may demonstrate fraudulent joinder by showing that: (1) there is no possibility that the plaintiff can prove a cause of action against the resident defendants; (2) there has been outright fraud in the pleading of jurisdictional facts; or (3) the claim against the nondiverse defendants has no real connection to the claims against the National. Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)(citations omitted). In the present case, National does not allege "outright fraud" in the pleading of jurisdictional

---

[2] Plaintiff does not contend that the amount in controversy is not satisfied. Since plaintiff asserts a bad faith claim and seeks $59,581.44 in compensatory damages and unspecified punitive damages, it is apparent from the face of the complaint that the amount in controversy is sufficient to sustain diversity jurisdiction.

2

facts or that the claims against Palomar and Godwin, Inc. have no connection with the claims

against the non-diverse defendant. Rather, National argues that there is no possibility that

plaintiff can prove his claims against the resident defendants.

The burden of the removing party is a "heavy one." B., Inc. v. Miller Brewing Co.,

663 F.2d 545, 549 (5th Cir. Unit A 1981). "The plaintiff need not have a winning case

against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid

cause of action in order for the joinder to be legitimate." Triggs, *supra*, 154 F.3d at 1287.

The Eleventh Circuit has endorsed a "summary judgment-like procedure for disposing

of fraudulent joinder claims." Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th

Cir.1989).   However, "[t]he jurisdictional inquiry 'must not subsume substantive

determination.' . . . When considering a motion for remand, federal courts are not to weigh

the merits of a plaintiff's claim beyond determining whether it is an arguable one under state

law." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).

Plaintiff's claims in this action are both based on an occupational accident insurance

policy – policy number TRK 9056434 – issued by defendant National to defendant Godwin,

Inc. to insure its truck drivers. (Complaint, ¶ 6). Plaintiff claims that defendants breached

this contract of insurance by failing to pay his claims fully (Count II) and that their failure

to pay under the policy was in bad faith (Count I).

Plaintiff concedes that defendant Palomar, as the selling agent, had no obligation to

make payment under the policy and is due to be dismissed. (Doc. # 8; see also Complaint,

¶¶ 2, 6). Palomar was not a party to the contract of insurance. (See insurance policy, Exhibit

3

A to Doc. # 4).[3]  Since it was not a party to the contract, Palomar is not a proper defendant as to plaintiff's breach of contract claim or his bad faith claim. Ligon Furniture Co., Inc. v. O.M. Hughes Ins., Inc., 551 So.2d 283, 285 (Ala. 1989).  The court concludes that there is no possibility that plaintiff can establish his claims against Palomar and, thus, that Palomar is fraudulently joined.

Godwin, Inc., plaintiff's employer, purchased the policy under which plaintiff is insured and is the policyholder. (Complaint, ¶¶ 4, 6, 8, 9; insurance policy).  However, Godwin, Inc. is not the insurer and has no obligation to the plaintiff arising from the terms of the contract of insurance.  As defendant argues, the insurance contract is not between Godwin, Inc. and the plaintiff.  Thus, Godwin, Inc. cannot breach that contract as to the plaintiff and cannot be liable for bad faith failure to pay under the terms of that contract.  Cf. Southern Medical Health Systems, Inc. v. Vaughn, 669 So.2d 98 (Ala. 1995)(breach of contract claim requires, *inter alia*, proof of "a valid contract *binding the parties in the action*" and proof of the defendant's nonperformance)(emphasis added); National Insurance Association v. Sockwell, 829 So.2d 111, 127 (Ala. 2002)(bad faith claim requires proof of an insurance contract between the parties and the defendant's breach of that contract).[4]

---

[3] Plaintiff references the insurance policy as an exhibit to his complaint; however, it was not included in the state court documents filed with the notice of removal.  Defendants filed the policy with their motions to dismiss.

[4] Plaintiff argues that Godwin, Inc. was a "conduit" between plaintiff and National Union and that Godwin, Inc. was "in a position to communicate directly with the insurance company as to whether the Plaintiff's claims were occupational related and thereby covered under the policy of insurance."  Plaintiff further argues that it has alleged that Godwin, Inc. participated in the procurement of insurance and the payment of claims. (Plaintiff's response to show cause order, Doc.

Accordingly, the court concludes that there is no possibility that plaintiff can prove his breach of contract or bad faith claim against defendant Godwin, Inc., and this defendant is also fraudulently joined.

### Direct Action

Plaintiff argues that, even if the citizenship of Palomar and Godwin, Inc. is not considered, this court nevertheless lacks jurisdiction because National is treated as a citizen of Alabama by operation of 28 U.S.C. § 1332(c)(1). The statute provides that, for purposes of determining diversity of citizenship, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, *except that in any direct action against the insurer of a policy or contract of liability insurance . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen . . . .*" 28 U.S.C. § 1332(c)(1)(emphasis added). However, the direct action provision is inapplicable in this case. First, the policy does not provide liability insurance. See Gibbs v. Metropolitan Life Ins. Co., 278 F. Supp. 2d 1269, 1271-72 (M.D. Ala. 2003)(provision inapplicable where contract does not provide liability insurance). Additionally, an action is not a direct action within the meaning of the statute "unless the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the

---

# 8, p. 2). Again, plaintiff asserts only breach of contract and bad faith claims. The facts argued by plaintiff do not overcome the requirement that – as to Godwin, Inc. – plaintiff demonstrate the existence of a contract binding the parties.

5

insured." <u>Fortson v. St. Paul Fire and Marine Ins. Co.</u>, 751 F.2d 1157, 1159 (11th Cir. 1985).

Plaintiff *is* the insured in this case, and the causes of action he seeks to assert against

National clearly would not impose liability against the insured. Further, " . . . where the suit

brought either by the insured or by an injured third party is based not on the primary liability

covered by the liability insurance policy but on the insurer's failure to settle within policy

limits or in good faith, the section 1332(c) direct action proviso does not preclude diversity

jurisdiction." <u>Id.</u>; <u>see also</u> <u>Bowers v. Continental Insurance Company</u>, 753 F.2d 1574, 1576

(11th Cir. 1985)("The general rule has always been that the direct action proviso does not

affect suits brought by an insured against his own insurer. . . . We are aware of no authority

to the contrary.").

Because the direct action provision is inapplicable in this case, there is complete

diversity of citizenship between the properly joined parties to this action.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that plaintiff's motion to remand (Doc. # 9) is DENIED.

It is further ORDERED that plaintiff's claims against defendants Palomar Insurance

Corporation and Godwin Material Services, Inc. are DISMISSED without prejudice, as these

defendants are fraudulently joined in this action.[5]

---

[5] <u>See</u> <u>Albert v. Smith's Food & Drug Centers, Inc.</u>, 356 F.3d 1242 (10th Cir. 2004)(District court erred in dismissing claims against fraudulently joined defendants with prejudice, because "[o]nce it determined that [defendants] were fraudulently joined, the district court had no jurisdiction to resolve the merits of the claims against them.").

6

It is further ORDERED that the Rule 12(b)(6) motions to dismiss filed by defendants

Palomar and Godwin (Docs. ## 4, 5) are DENIED as MOOT.

Done, this 3rd day of March, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| OLLIE GODWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05cv783-W |
| | ) | |
| PALOMAR INSURANCE | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

In the scheduling order entered on this date, the parties have been given a deadline for filing dispositive motions. Any motion for summary judgment is due on or before that deadline. The schedule for submissions in support of and opposition to the motion will proceed as set out in this Order. **Absent a showing of good cause, the dispositive motion deadline and the briefing deadlines will not be extended.** The Uniform Scheduling Order provides ample time for discovery, and the court generally does not consider failure to conduct needed discovery or the schedules of counsel to be good cause for extending the dispositive motion deadline or briefing schedule. Counsel are advised to plan accordingly.

It is ORDERED that:

1. The moving party shall file its brief and evidentiary submission simultaneously with the motion for summary judgment.

2. The opponent's brief and responsive submission shall be filed not later than 21

days thereafter.

    3. The movant's reply brief shall be filed not later than 11 calendar days after the date on which the opponent's responsive submission was due. The movant may not include any new evidentiary material with the reply brief without prior leave of court.

    4. Briefs must contain a statement of facts including specific references to the record. The court will not consider documents or parts of documents that have not been specifically cited by page number.

    Upon conclusion of the submission schedule, the court will take the motion under submission without oral argument. If the court determines that oral argument is necessary, it will set a hearing date.

    DONE, this 16th day of December, 2005.

<div style="margin-left:40%">

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

</div>

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OLLIE GODWIN,                            )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )        CIVIL ACTION NO. 2:05cv783-W
                                         )
PALOMAR INSURANCE                        )
CORPORATION, et al.,                     )
                                         )
        Defendants.                      )

**UNIFORM SCHEDULING ORDER**

**Please read this order carefully. These deadlines and responsibilities may not be changed without leave of the court. All parties are expected to comply with each and every provision of this order in a timely manner, and extensions will be granted in only extraordinary unforeseeable circumstances. The parties are also expected to comply with the Middle District's Local Rules and the Middle District's Guidelines to Civil Discovery Practice, both of which can be found at http://almd.uscourts.gov/.**

Under Rule 16, Federal Rules of Civil Procedure, as amended, the Court is required to set a schedule for the discovery and the filing of motions. Accordingly, it is ORDERED by this Court as follows:

**SECTION 1.** A pretrial hearing of this case is scheduled for 4:00 p.m. on November 3, 2006 in the chambers of United States Magistrate Judge Susan Russ Walker, Frank M. Johnson, Jr. United States Courthouse Complex, Montgomery, Alabama. The pretrial order shall be filed three business days prior to the pretrial hearing (see the attached proposed pretrial order form). This cause is set for trial during the term of court commencing on December 4, 2006in Montgomery, Alabama.

**SECTION 2.** Any dispositive motions, i.e., motions to dismiss or motions for summary judgment, shall be filed no later than August 7, 2006. A brief and all supporting evidence shall be filed with any such motion. In all briefs filed by any party relating to the motion, the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition

or document.  Failure to make such specific reference will result in the evidence not being considered by the court.

> **SECTION 3.**  On or before August 28, 2006, counsel for all parties shall conduct a face-to-face settlement conference at which counsel shall engage in good faith settlement negotiations.  If settlement cannot be reached, counsel shall also discuss whether mediation will assist the parties in reaching settlement.  Not more than **FIVE (5) DAYS** after this conference, counsel for the plaintiff shall file a pleading titled "Notice Concerning Settlement Conference and Mediation".  This pleading shall indicate whether settlement was reached and, if not, whether the parties believe mediation will assist them in resolving this case short of trial.  Information about mediation is attached to this order.

> **SECTION 4.**  Any motions to amend the pleadings and to add parties shall be filed on or before March 1, 2006.

> **SECTION 5.**  Any motion for class certification shall be filed on or before March 16, 2006.  A brief discussing the factors enumerated in Rule 23(a) and (b) of the Federal Rules of Civil Procedure shall be filed with any such motion.

> **SECTION 6.**  The failure to file a response to any motion -- either dispositive or non-dispositive – within the time allowed by the court shall indicate that there is no opposition to the motion.

> **SECTION 7.**  All discovery shall be completed on or before September 4, 2006, except that, as to any witnesses whose names are not revealed until the last day allowed under SECTION 9 or whose names are not revealed with sufficient time for the other parties to take a deposition prior to the pretrial conference, the opposing party shall have the time extended in this paragraph to allow for deposing such witnesses.

> **SECTION 8.**  The parties shall disclose to each other the identity of ANY person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence, and provide the reports of retained experts or witnesses whose duties as an employee of the party regularly involved giving expert testimony, required by Rule 26(a)(2) of the Federal Rules of Civil Procedure, as follows:

> From the plaintiff(s) -- on or before May 8, 2006.

> From the defendant(s) -- on or before July 3, 2006.

> The parties shall comply fully with all requirements of Rule 26(a)(2) in regard to disclosure of expert testimony.

2

**SECTION 9.** On or before October 13, 2006, each party shall, pursuant to the provisions of Rule 26(a)(3) of the Federal Rules of Civil Procedure, exchange the names, addresses and telephone numbers of all witnesses, except witnesses solely for impeachment purposes, separately identifying those whom the party expects to present and those whom the party may call if the need arises. The witness list should include the names of any witnesses required to be disclosed under Paragraph 8. Unless specifically agreed between the parties or allowed by the Court for good cause shown, the parties shall be precluded from calling any witness not so identified.

**SECTION 10.** On or before November 20, 2006, the parties shall, pursuant to the provisions of Rule 26(a)(3) of the Federal Rules of Civil Procedure, identify any part of a deposition or other document that a party expects to use at trial. Adverse parties shall within **ONE WEEK THEREAFTER** identify any responsive parts of depositions expected to be used, and a party shall within **THREE DAYS** of the designation of such responsive parts designate any part which is desired as a rebuttal thereto. Unless specifically agreed between the parties or allowed by the Court for good cause shown, the parties shall be precluded from using any part of a deposition or other document not so listed, with the exception of parts of depositions or documents to be used solely for the purpose of impeachment. Except to the extent written objections are served and filed on or before November 27, 2006, each party shall be deemed to have agreed that one of the conditions for admissibility under Rule 32 of the Federal Rules of Civil Procedure is satisfied with respect to any such deposition and that there is no objection to the testimony so designated.

**SECTION 11.** On or before November 20, 2006, the parties shall, pursuant to the provisions of Rule 26(a)(3) of the Federal Rules of Civil Procedure, furnish opposing counsel for copying and inspection all exhibits or tangible evidence to be used at the trial, and proffering counsel shall have such evidence marked for identification prior to trial. Unless specifically agreed between the parties or allowed by the Court for good cause shown, the parties shall be precluded from offering such evidence not so furnished and identified, with the exception of evidence to be used solely for the purpose of impeachment. <u>Except to the extent written objections are served and filed no later than November 27, 2006, the evidence shall be deemed genuine and admissible in evidence. The written objections shall set forth the grounds and legal authorities. All trial exhibits must be premarked prior to trial.</u>

**SECTION 12.** Except to the extent of any conflict with deadlines set out above, the Discovery Plan contained in the Report of Parties' Planning Meeting, filed on October 21, 2006, is adopted and incorporated herein.

**SECTION 13:** *If a jury trial*: The parties shall file any requested voir dire questions, motions in limine fully briefed, and any proposed jury instructions, together with citations of law thereon, **ON OR BEFORE TWO WEEKS PRIOR TO THE TRIAL DATE**

3

**UNLESS SAID TIME IS SHORTENED BY THE COURT ON MOTION OF EITHER PARTY.** Responses to motions in limine, with supporting briefs **SHALL BE FILED NOT LATER THAN ONE WEEK BEFORE JURY SELECTION.** Trial counsel are **DIRECTED** to review the jury questionnaire used in this court and to avoid any duplication of matters addressed therein in their voir dire questions. The jury questionnaire is available on the court's website at http://www.almd.uscourts.gov/juryinfo.htm.

**SECTION 14.** In cases involving jury trials, the term **TRIAL DATE** as used in the foregoing deadlines shall mean the date set for jury selection.

**SECTION 15.** If any party has an objection to these deadlines, the party should inform the Court within **14** days from the date of this Order; otherwise, the Court will assume that the deadlines are agreeable to all parties. Unless this Order be modified by subsequent Order of the Court, the provisions hereinabove set out are binding on the parties.

DONE, this 16th day of December, 2005.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

4

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
_____ DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. _____ |
| | ) | |
| Defendants. | ) | |

## ORDER ON PRETRIAL HEARING

This cause coming on to be heard on a regular pretrial hearing on _____,

and all parties being present in person or by counsel, the following action was thereupon

taken:

    6.      PARTIES AND TRIAL COUNSEL:


           COUNSEL APPEARING AT PRETRIAL HEARING: (same as trial counsel

or indicate if different)




    7.      JURISDICTION AND VENUE:




    8.      PLEADINGS: The following pleadings and amendments were allowed:

[Note: Sections 4 and 5 of the pretrial order are the most important because they focus specifically on the claims and defenses of the parties, and thus provide the framework for the court's preliminary and final instructions to the jury. The format for these sections is very specific and must be followed. Failure to complete these sections in the form prescribed will result in the court's rejection of the proposed pretrial order.]

4.    **PLAINTIFF(S)' CLAIMS**: [in this section, the plaintiff should specifically state the claims which are to be presented to the trier of fact and provide the court with the statutory basis for each claim and a brief statement of the facts in support of the claim. Where the basis of the claim is non-statutory, the plaintiff should provide the court with the citation of a case setting forth the elements of the claim as well as a brief statement in support of the claim.] Each claim should be separately listed.

5.    **DEFENDANT(S)' DEFENSES**: [in this section, the defendant should specifically state the affirmative defenses which are to be presented to the trier of fact and a brief statement of the facts which support those defenses. Where the defense presented is a factual defense, the defendant shall address each of the plaintiff's claims and set forth a brief factual statement of the defense to those claims.] Each defense should be separately listed.

6.    **STIPULATIONS OF FACT BY AND BETWEEN THE PARTIES:**

7.    The plaintiff(s) shall file a trial brief with the court **on or before** _____.    The defendant(s) shall file a trial brief with the court **on or before** _____.

8.    **If a jury trial:** The parties are ORDERED to file any requested voir dire questions and any proposed jury instruction, together with citations of law thereon, **ON OR BEFORE TWO WEEKS PRIOR TO THE TRIAL DATE UNLESS SAID TIME IS SHORTENED BY THE COURT ON MOTION OF EITHER PARTY**. Trial counsel are DIRECTED to review the jury questionnaire used in this court and to avoid any duplication of matters addressed therein in their voir dire questions.

9.    Any motions in limine or similar motions must be filed **not later than two weeks** prior to trial and must be accompanied by a brief. The court will not entertain motions to exclude or limit evidence thereafter. Responses to these motions shall be filed **not later than one week** prior to trial.

10.  All exhibits shall be marked prior to trial with exhibit labels, which are available from the clerk's office.  In addition to the original exhibits marked for introduction, each party shall have available copies of each photostatically reproducible exhibit as follows: (1) one copy for each opposing party and (2) one copy for the court which shall be contained in a tabbed notebook.

11.  It is ORDERED that all of the allowances and agreements contained in this order be, and the same are hereby, binding upon all parties in this case unless this order is hereafter modified by the court.

DONE this _____ day of _____, 2001.


_____
UNITED STATES MAGISTRATE JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES
MIDDLE DISTRICT OF ALABAMA

## PROGRAM OF VOLUNTARY MEDIATION

This court has established a program of voluntary mediation to assist litigants in resolving their disputes prior to trial.  The court stresses that <u>mediation is completely voluntary and confidential</u>.  The court strictly enforces the confidentiality of mediation.

The court encourages litigants to consider the salutary benefits of resolving at an early stage their dispute through voluntary mediation.  Mediation is a process of confidential negotiation through which parties may often achieve results which could not be gained through submission of their case to a jury.  Successful mediation saves the substantial time and expense involved with a trial.  Successful mediation allows parties to alleviate the risk of trial and, at the same time, permits the parties to play an active role in the final decision about their case.  The mediation process generally involves a joint meeting with all parties and counsel to discuss the case and each side's position.  After this meeting the mediator will meet with each side individually for a full discussion of that side's case.  Throughout the process the goal of the mediator is to assist the parties in negotiating a settlement.  Often the mediator will provide to the parties a frank, honest opinion about the strengths and weaknesses of their case.  Often an objective viewpoint assists parties in making good decisions about settlement.

The scheduling order entered in this case requires that not less than 14 days after the date for filing dispositive motions, counsel for the parties shall personally meet and attempt to reach settlement of the case.  If counsel in good faith cannot reach settlement, counsel are also required to consider whether mediation will assist the parties in resolving this case. Within five days after this conference counsel are to notify the trial judge in writing whether they have settled the case and, if not, whether they believe mediation will assist the parties in resolving the case.  Upon such notification, the trial judge may assign a mediator to schedule a mediation conference.  However, a judge of this court may assign a mediator at any time.

Except in extraordinary circumstances the mediator will be a judicial officer.  Under the existing internal operating understandings of this court, a nonjudicial mediator will not be assigned to a case without the knowledge and concurrence of the parties.

The court also encourages parties to consider settlement negotiations and mediation well before the time when a settlement conference is required.  <u>At any time while a case is pending</u>, the parties may seek assistance in settling their dispute through mediation.

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| OLLIE GODWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05cv783-W |
| | ) | |
| PALOMAR INSURANCE | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **O RD E R**

The parties are hereby reminded of the obligation, imposed by Rule 26(f) of the Federal Rules of Civil Procedure, to confer and to develop a proposed discovery plan. The Rule 26(f) report containing the discovery plan shall be filed as soon as practicable but not later than October 25, 2005.

The longstanding practice in this district is that dispositive motions shall be filed no later than 90 days prior to the pretrial date. If the parties seek to vary from that schedule, they should present, in the plan, specific case related reasons for the requested variance.

This case will be set for trial before the undersigned judge during one of that judge's regularly scheduled civil trial terms. The pretrial date is normally set within 4 - 6 weeks of a scheduled trial term. The dates of each judge's civil trial terms are available on the court's website, www.almd.uscourts.gov.

The court may or may not hold a scheduling conference before issuing a scheduling order. If the court holds a scheduling conference, counsel may participate in the scheduling conference by conference call.

The scheduling order entered by the court will follow the form of the Uniform Scheduling Order adopted by the judges of this court. The Uniform Scheduling Order is also available on the court's website.

The report of the parties should comply with Form 35 of the Appendix of Forms to the Federal Rules of Civil Procedure.

DONE, this 7th day of October, 2005.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OLLIE GODWIN,                          )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )          CIVIL ACTION NO. 2:05CV783-W
                                       )
PALOMAR INSURANCE                      )
CORPORATION, et al.,                   )
                                       )
          Defendants.                  )

**ORDER**

For good cause, it is

ORDERED that defendants may respond to plaintiff's motion to remand (Doc. # 9)

on or before September 23, 2005.

Done, this 13th day of September, 2005.

          /s/ Susan Russ Walker
          SUSAN RUSS WALKER
          UNITED STATES MAGISTRATE JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OLLIE GODWIN,                          )
                                       )
           Plaintiff,                  )
                                       )
      v.                               )        CIVIL ACTION NO. 2:05CV783-W
                                       )
PALOMAR INSURANCE                      )
CORPORATION, et al.,                   )
                                       )
           Defendants.                 )

**ORDER**

For good cause, it is

ORDERED that plaintiff is DIRECTED to show cause, on or before September 12,

2005 why defendants Palomar Insurance Corporation and Godwin Material Services should

not be dismissed as fraudulently joined.

Additionally, the undersigned Magistrate Judge cannot proceed in this action

without written consent from all parties. Accordingly, it is further ORDERED that all

parties are DIRECTED to execute and send to the Clerk, on or before September 12, 2005,

either the attached form consenting to Magistrate Judge jurisdiction or the form

requesting reassignment to a District Judge.[1]    **DO NOT FILE THIS FORM**

---

[1]  This order supersedes any notice the parties may have received or may hereafter
receive from the Clerk of the Court regarding consent to Magistrate Judge jurisdiction. Any
party to the lawsuit has the right to decline assignment of this case to a Magistrate Judge
and to request random reassignment of this case to a District Judge for all purposes

**ELECTRONICALLY.**

DONE, this 25th day of August, 2005.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

---

including trial and the entry of final judgment. The Magistrate Judge will not be advised
of the identity of any party requesting reassignment.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| _____, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. _____ |
| | ) | |
| _____, | ) | |
| | ) | |
| Defendant(s). | ) | |

**CONSENT TO JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE**

In accordance with the provisions of Title 28, U.S.C. § 636(c), the undersigned party or parties to the above-captioned civil matter hereby confirm in writing their consent to a United States Magistrate Judge conducting any and all further proceedings in the case, including trial, and ordering the entry of a final judgment.

_____          _____
Date                   Signature

                       _____
                       Counsel For (**print** name of all parties)

                       _____
                       Address, City, State Zip Code

                       _____
                       Telephone Number

**DO NOT FILE THIS FORM ELECTRONICALLY**

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| _____, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. _____ |
| | ) | |
| _____, | ) | |
| | ) | |
| Defendant(s). | ) | |

**REQUEST FOR REASSIGNMENT OF CASE
TO A UNITED STATES DISTRICT JUDGE**

The undersigned party hereby declines to consent to the Magistrate Judge's exercise of civil jurisdiction in this case.  The undersigned party requests reassignment of this case to a United States District Judge.

_____          _____
Date                      Signature

                          _____
                          Counsel For (**print** name of all parties)


                          _____
                          Address, City, State Zip Code


                          _____
                          Telephone Number


**DO NOT FILE THIS FORM ELECTRONICALLY**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **OLLIE GODWIN,**  ) | |
| ) | |
| **PLAINTIFF,** ) | |
| ) | |
| **V.** ) | **CASE NO:  2:05-cv-00783-SRW** |
| ) | |
| **NATIONAL UNION FIRE INSURANCE** ) | **From Circuit Court of Crenshaw County** |
| **COMPANY OF PITTSBURGH, INC.,** ) | **Case No:  CV05-69** |
| **ET AL.,** ) | |
| ) | |
| **DEFENDANTS.** ) | |
| ) | |

## ANSWER

COMES NOW the defendant, National Union Fire Insurance Company of Pittsburgh, PA (incorrectly named in the Complaint as "AIG d/b/a National Union Fire Insurance Company of Pittsburgh, PA"), by and through the undersigned attorneys of record and in response to the plaintiff's Complaint states as follows:

## PARTIES

1.      This paragraph makes no allegations or claims against the defendant and therefore commands no response.

2.      This paragraph makes no allegations or claims against the defendant and therefore commands no response.

3.      The defendant admits it is licensed to do business in Alabama and underwrote the 2004 policy made the basis of this Complaint.  The defendant denies the remainder of this paragraph.

4.      This paragraph makes no allegations or claims against the defendant and therefore

commands no response.

5.      This paragraph makes no allegations or claims against the defendant and therefore commands no response.

## STATEMENT OF FACTS

6.      Admitted.

7.      Denied.

8.      Admitted.

9.      The defendant is without knowledge or information sufficient to verify or deny the truth of the averments in this paragraph and demand strict proof thereof.

10.     Admitted.

11.     Denied.

12.     Denied.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Denied.

## COUNT ONE – BAD FAITH

18.     The defendant realleges and incorporates by reference the responses to Paragraphs 1 through 17 as if fully set forth herein.

19.     Denied.

20.     Admitted.

21.     The defendant admits that benefits were paid pursuant to the injury being

classified as non-occupational.

    22.    Denied.

    23.    Denied.

    24.    Denied.

    25.    Denied.

    26.    Denied.

    27.    Denied.

    28.    Denied.

    29.    This paragraph makes no allegations or claims against the defendant and therefore commands no response.

    30.    Denied.

### COUNT TWO – BREACH OF CONTRACT

    31.    The defendant realleges and incorporates by reference the responses to Paragraphs 1 through 30 as if fully set forth herein.

    32.    Denied.

    33.    The defendant admits the existence of a policy 9056434 issued by the defendant. The defendant denies the remainder of this paragraph .

    34.    This paragraph makes no allegations or claims against the defendant and therefore commands no response.  However, should it be determined that a response is necessary, the defendant denies the same and demands strict proof thereof.

    35.    Denied.

    36.    Denied.

As to the unnumbered paragraph following Paragraph 36 in the Complaint, the defendant

denies it in its entirety. The defendant further denies that the plaintiff is entitled to an award of damages based on the allegations in the Complaint, that plaintiff is entitled to any interest pre- or post-judgment, that plaintiff is entitled to recover the costs of the proceeding, or that plaintiff is entitled to any other relief at law or in equity.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The defendant acted in good faith at all times in its dealings with the plaintiff.

### SECOND DEFENSE

The plaintiff failed to mitigate his damages.

### THIRD DEFENSE

The plaintiff failed to meet the conditions precedent to the policy of insurance.

### FOURTH DEFENSE

The defendant denies that it is guilty of any act, wanton or otherwise, which would give rise to a claim for punitive damages or an award of punitive damages against it.

### FIFTH DEFENSE

The defendant says that subjection of it to unlimited punitive damage fines constitutes arbitrary and capricious punishment in violation of constitutional restrictions embodied in the Due Process Clause and the Excessive Fines Clause of the United States Constitution, as well as their counterparts in the Alabama Constitution, Article I, Sections 6 and 15.

### SIXTH DEFENSE

The plaintiff cannot recover punitive damages against the defendant because such an award, which is penal in nature, would violate the defendant's constitutional rights protected under the United States and Alabama Constitutions unless the defendant is awarded the same

procedural safeguards as are criminal defendants, including, but not limited to, the right to avoid self-incrimination and the requirement of proof beyond a reasonable doubt.

## SEVENTH DEFENSE

The imposition of punitive damages in this case without any limitations or guidelines for the jury will violate the defendant's rights to due process guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article I, Section 6, of the Alabama Constitution.

## EIGHTH DEFENSE

The defendant avers that the imposition of the award of punitive damages against it based on the principles of joint and several liability amounts to an excessive fine imposed against the defendant in violation of the rights secured to it by the Eighth Amendment and the Fourteenth Amendment of the Constitution of the United States of America.

## NINTH DEFENSE

The failure of the law of the State of Alabama to make a provision for the imposition of but one assessment of damages against a joint tortfeasor, despite differing degrees of culpability and wrong doing, and reasonably act to establish a classification against the defendant for acts of negligence, wantonness, misrepresentation, fraud, or other wrongdoing that the defendant did not commit, is in contradiction of the rights afforded it by the Fourteenth Amendment to the Constitution of the State of Alabama which requires that the State afford all persons equal protection of the law.

## TENTH DEFENSE

The defendant avers that the law of the State of Alabama by imposing joint and several liability on it for the acts of other operates to create an arbitrary and capricious method and

manner for the jury's assessment and determination of damages, without regard for the quality and quantity of culpability of other defendants joined in this action and thereby deprives the defendant of its property without due process of law and contradiction of Amendments Five and Fourteen to the Constitution of the United States of America and Article I, Section 6 of the Constitution of the State of Alabama.

## ELEVENTH DEFENSE

The defendant avers that Section 6-11-21, Alabama Code (1975), places the maximum limit of $250,000.00 on punitive damages recoverable, if at all, by the plaintiff in this case and that the decision of the Alabama Supreme Court, in holding the $250,000.00 maximum allowable award for punitive damages passed by the Legislature and made the law of this State, to be unconstitutional as a violation of the Separation of Powers Clauses of the Constitutions of the United States and the State of Alabama.

## TWELFTH DEFENSE

The defendant avers that the public policy of the State of Alabama as set forth in Section 6-11-21, Alabama Code (1975), established a maximum limit of $250,000.00 on punitive damages recoverable (if any) by the plaintiff and that the plaintiff cannot recover more than the limit established by the public policy of this state.

## THIRTEENTH DEFENSE

The defendant denies any acts of omission or commission which give rise to the plaintiff's recovery of punitive damages in this case, but should a jury award punitive damages, in a verdict of more than $250,000.00, it is void as the proximate result of Section 6-11-21 of the Alabama Code (1975).

## RESERVATION OF DEFENSES

The defendant reserves its right to amend the Answer as discovery progresses and as issues may arise.

Respectfully submitted,

/s/  John W. Dodson
John W. Dodson (DOD 012)
Michelle L. Crunk (CRU 017)
Attorneys for AIG d/b/a National Union Fire Insurance Company of Pittsburgh, Inc., Palomar Insurance Corporation, and Godwin Material Services, Inc.

OF COUNSEL:

FERGUSON FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243

## CERTIFICATE OF SERVICE

This is to certify that on this the 23rd day of _August_, 2005 a copy of the foregoing document has been served upon counsel for all parties to this proceeding via EMC/CF e-filing:

Arlene M. Richardson
RICHARDSON LEGAL CENTER, LLC
P.O. Box 971
Hayneville, Alabama  36040-0971

/s/  John W. Dodson
OF COUNSEL

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| OLLIE GODWIN, | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| V. | ) | **CASE NO: 2:05-cv-00783-SRW** |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | **From Circuit Court of Crenshaw County** |
| COMPANY OF PITTSBURGH, INC., | ) | **Case No: CV05-69** |
| ET AL., | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |
| | ) | |

**GODWIN MATERIAL SERVICES, INC.'S MOTION TO DISMISS**

COMES NOW the defendant, Godwin Material Services, Inc. (hereinafter referred to as "Godwin"), by and through counsel and moves this Court to dismiss it from the above-styled case and in support thereof states as follows:

1.     The plaintiff fails to state a claim against Godwin upon which relief can be granted.

2.     The Complaint states only claims of bad faith and breach of contract.

3.     Godwin was not a party to the insurance contract entered by plaintiffs and National Union Fire Insurance Company of Pittsburgh, PA and thus cannot be liable for the specific allegations in the plaintiff's Complaint.[1]

4.     The existence of a contractual relationship is a prerequisite to maintaining a claim for breach of contract or bad faith. See Employee's Benefit Association v. Grissett, 732 So. 2d 968, 975 (Ala. 1998) (holding under Alabama law, in order to establish a breach of contract, a

---

[1]     See copy of the policy attached hereto as Exhibit "A." As established in Donahue v. National Ins. Co., 838 So. 2d 1032, 1035 (Ala. 2002), a defendant may submit, refer to, and cite a relevant insurance policy in a Motion to Dismiss without converting it into a Motion for Summary Judgment if the policy is "referred to in the Complaint and essential to the plaintiff's claim."

plaintiff must prove 1) **the existence of a valid contract binding the parties in the action**; 2) his own performance under the contract; 3) the defendant's non-performance; and 4) damages) (emphasis added) and State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293, 304 (Ala. 1999) (holding under Alabama law, in order to establish a claim for bad faith, a plaintiff must prove 1) **an insurance contract between the parties and a breach thereof by the defendant**; 2) an intentional refusal to pay the insured's claim; 3)  the absence of any reasonably legitimate or arguable reason for that refusal; 4) the insurer's actual knowledge of the absence of any legitimate or arguable reason) (emphasis added).

5.     A breach of contract or bad faith claim cannot be maintained against Godwin because the insurance contract made the basis of this suit is not between Godwin and the plaintiff. As stated above, in order to maintain an action for breach of contract or bad faith, there must be a contract binding the parties.  There is no insurance contract binding Godwin and the plaintiff.  As admitted by the plaintiff in the Complaint, Godwin is the policyowner, not the insurer.  Thus no breach of contract or bad faith claim can be maintained against Godwin

6.     The proper defendant, National Union Fire Insurance Company of Pittsburgh, PA, has been named and has answered in the above-styled case.

WHEREFORE, Godwin moves this Honorable Court to dismiss it from the above-styled case.

Respectfully submitted,


 /s/  John W. Dodson
John W. Dodson (DOD 012)
Michelle L. Crunk (CRU 017)
Attorneys for AIG d/b/a National Union Fire
Insurance Company of Pittsburgh, Inc., Palomar
Insurance Corporation, and Godwin Material
Services, Inc.

OF COUNSEL:

FERGUSON FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243


## CERTIFICATE OF SERVICE

This is to certify that on this the 23rd day of __August__, 2005 a copy of the foregoing document has been served upon counsel for all parties to this proceeding via EMC/CF e-filing:

Arlene M. Richardson
RICHARDSON LEGAL CENTER, LLC
P.O. Box 971
Hayneville, Alabama 36040-0971

                                         /s/ John W. Dodson
                                        OF COUNSEL



### AMERICAN INTERNATIONAL COMPANIES®

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder:   Godwin Materials, Inc.
Policy Number:  TRK 9056434

#### TRUCKERS OCCUPATIONAL ACCIDENT INSURANCE

This Policy is a legal contract between the Policyholder and the Company.  The Company agrees to insure eligible persons of the Policyholder (herein called Insured Person(s)) against loss covered by this Policy, subject to its provisions, limitations and exclusions.  The persons eligible to be Insured Persons are all persons described in the Description of Eligible Persons section of the Master Application.

This Policy is issued in consideration of the payment of the required premium when due and the statements set forth in the signed Master Application, which is attached to and made part of this Policy and in the individual enrollment forms, if any.

This Policy begins on the Policy Effective Date shown in the Master Application.  This Policy will continue in effect, provided premiums are paid when due, until the Policy Termination Date shown in the Master Application, unless otherwise terminated as further provided in this Policy, or renewed.

#### IMPORTANT NOTICE

THIS IS NOT A WORKERS' COMPENSATION POLICY AND IS NOT A SUBSTITUTE FOR WORKERS' COMPENSATION COVERAGE.

This Policy is governed by the laws of the state in which it is delivered.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Policy:

President                          Secretary

#### PLEASE READ THIS POLICY CAREFULLY

C22382OBG(REV.11-99)

## TABLE OF CONTENTS

| | | |
|---|---|---|
| Section I | General Definitions | 3 |
| Section II | Effective and Termination Dates | 5-6 |
| | Policy Effective Date | 5 |
| | Policy Termination Date | 5 |
| | Owner-Operator's Effective Date | 5 |
| | Owner-Operator's Termination Date | 5 |
| | Contract Driver's Effective Date | 5 |
| | Contract Driver's Termination Date | 6 |
| Section III | Premium | 7 |
| | Premiums | 7 |
| | Insured Person's Premium | 7 |
| | Grace Period | 7 |
| | Waiver of Premium | 7 |
| Section IV | Benefits | 8-14 |
| | Principal Sum | 8 |
| | Deductible | 8 |
| | Accidental Death Benefit | 8 |
| | Survivor's Benefit | 8 |
| | Exposure and Disappearance | 8 |
| | Accidental Dismemberment Benefit | 8 |
| | Paralysis Benefit | 9 |
| | Temporary Total Disability Benefit | 10 |
| | Continuous Total Disability Benefit | 11 |
| | Accident Medical Expense Benefit | 12 |
| Section V | Limits of Liability | 15 |
| Section VI | Exclusions | 15 |
| Section VII | Claims Provisions | 16-17 |
| Section VIII | General Provisions | 18-20 |

SECTION I                                 GENERAL DEFINITIONS

**Administrator** means the Administrator named in the Schedule.

**Co-Owner** means a person who has partial ownership of a vehicle which is being operated by an Owner-Operator for the purpose of performing Occupational services.

**Combined Single Limit** means, with respect to any one Insured Person, the total amount of benefits that are payable under this Policy for or in connection with injury sustained as the result of any one accident. When the Combined Single Limit has been reached, no further benefits shall be payable under this Policy, with respect to that Insured Person, for or in connection with injury sustained as the result of that one accident.

**Contract Driver** means a person who: (1) drives a vehicle owned or leased by an Owner-Operator for the purpose of performing Occupational services; (2) is on file with the Company; (3) is not an employee of the Policyholder; and (4) is not an employee of an Owner-Operator, unless otherwise permitted by law.

**Contractee** means the person, firm or other entity with whom the Owner-Operator has contracted to provide Occupational services.

**Covered Loss(es)** means one or more of the losses or expenses described in Section IV of this Policy.

**Dependent Child(ren)** means the Insured Person's unmarried children, including natural children from the moment of birth, step or foster children, or adopted children, from the moment of placement in the home of the Insured Person, under age 19 (25 if attending an accredited institution of higher learning on a full-time basis) and primarily dependent on the Insured Person for support and maintenance. It also includes any unmarried Dependent Child(ren) of the Insured Person who are incapable of self-sustaining employment by reason of mental or physical incapacity, and who are primarily dependent on the Insured Person for support and maintenance.

The Company may require proof of the Dependent Child(ren)'s incapacity and dependency within 60 days before the Dependent Child(ren) reach the age limit specified above. The Company may request that satisfactory proof of the Dependent Child(ren)'s continued incapacity and dependency be submitted to the Company on an annual basis. If the requested proof is not furnished within 31 days of the request, such child(ren) shall no longer be considered Dependent Child(ren) as of the end of that 31 day period.

**Dispatch** means the period of time during which an insured operates his or her vehicle, or performs vehicle repair, while being en route to pick up a load, picking up a load, en route to deliver a load, and unloading a load.

**Functional Capacity Examination (FCE)** means a test performed by a physical therapy professional to evaluate and estimate physical limitations.

**Immediate Family Member** means a person who is related to the Insured Person in any of the following ways: Spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or placed for adoption, or stepchild).

**Injury** means bodily injury to an Insured Person caused by an Occupational accident while coverage is in force under this Policy, which results directly and independently of all other causes in a Covered Loss. All injuries sustained by an Insured Person in any one accident shall be considered a single Injury.

**Insured** means a person who: (1) is a member of an eligible class as described in the Description of Eligible Persons section of the Master Application; (2) has enrolled for coverage; and (3) has paid the required premium.

C22382DBG(REV.11-99)                         3

GENERAL DEFINITIONS (Continued)

Insured Person means an Insured.

Occupational means, with respect to an activity, accident, incident, circumstance or condition involving an Insured, that the activity, accident, incident, circumstance or condition occurs or arises out of or in the course of the Insured performing services within the course and scope of contractual obligations for the Policyholder, while under Dispatch.  Occupational does not encompass any period of time during the course of everyday travel to and from work.

Occupational Assessment means a test of vocational capabilities.  The process includes a review of medical records, injury and treatment, history and background (education, military, previous occupation(s)), evaluation of basic skills such as reading, understanding, spelling and/or math capabilities, and vocational alternatives.

Occupational Cumulative Trauma means bodily injury to an Insured caused by the combined effect of repetitive physical Occupational activities extending over a period of time, where:  (1) such condition is diagnosed by a Physician; (2) the Insured's last day of last performance of the activities causing the injury occurred during the Policy Period; and (3) such activities resulted directly and independently of all other causes in a Covered Loss.

Occupational Disease means a sickness which results in disability or death, and is caused by exposure to environmental or physical hazards during the course of the Insured's Occupational activities, where: (1) such condition is diagnosed by a Physician, and is generally accepted by the National Centers for Disease Control to be a disease caused by such hazards; (2) exposure to such hazards is not an accident but is caused or aggravated by the conditions under which the Insured performs Occupational services; (3) the Insured's last day of last exposure to the environmental or physical hazards causing such condition occurs during the Policy Period; and (4) such exposure results directly and independently of all other causes in a Covered Loss.

Owner-Operator means a person who: (1) owns or leases a vehicle which he or she is operating for the purpose of performing Occupational services; (2) is an independent contractor as defined by law; and (3) is not an employee of the Policyholder.  The term Owner-Operator will include a Co-Owner if the Co-Owner otherwise meets the definition of Owner-Operator.

Physician means a practitioner of the healing arts acting within the scope of his or her license who is not: (1) the Insured Person; or (2) an Immediate Family Member; or (3) a practitioner retained by the Policyholder or Contractee.

Pre-Existing Condition means a condition for which an Insured Person has sought or received medical advice or treatment during the twelve months immediately preceding his or her effective date of coverage under this Policy.

Schedule means the Schedule shown in the Master Application for this Policy which is attached to and made a part of this Policy.

Spouse means the Insured Person's legal spouse.

C22382DBG(REV.11-99)                    4

<u>SECTION II</u>          EFFECTIVE AND TERMINATION DATES

### Policy Effective and Termination Dates

**Policy Effective Date.** This Policy begins on *the Policy Effective Date* shown in the Master Application at 12:01 A.M. Standard Time at the address of the Policyholder where this Policy is delivered.

**Policy Termination Date.** This Policy may, at any time, be terminated by mutual written consent of the Company and the Policyholder. Otherwise, this Policy will terminate at 12:01 A.M. Standard Time at the Policyholder's address on the earliest of:
1. the Policy Termination Date shown in the Master Application, unless renewed;
2. the premium due date if premiums are not paid when due subject to the Grace Period;
3. the date specified in the written notice of the Company's intent to terminate this Policy, which will be at least 31 days after the date the Company sends such notice to the Policyholder's last known recorded address; or
4. the date specified in the written notice of the Policyholder's intent to terminate this Policy, which will be at least 31 days after the date the Policyholder sends such notice to the Company.

If the Company terminates this Policy, any unearned premium will be returned on a pro-rata basis. If the Policyholder requests termination, the Company will return any unearned premium paid on a short-rate basis. Termination will not affect any claim for a Covered Loss occurring prior to the effective date of termination.

### Owner-Operator's Effective and Termination Dates

**Owner-Operator's Effective Date.** An Owner-Operator's coverage under this Policy begins on the latest of:
1. the Policy Effective Date;
2. the date the person becomes a member of an eligible class of persons as described in the Description of Eligible Persons section of the Master Application;
3. if individual enrollment is required, the date written enrollment is received by the Policyholder; or
4. the date on which the first premium payment is paid when due.

**Owner-Operator's Termination Date.** An Owner-Operator's coverage under this Policy ends on the earliest of:
1. the date this Policy is terminated;
2. the premium due date if premiums are not paid when due;
3. the date the Owner-Operator requests, in writing, that his or her coverage be terminated; or
4. the date the Owner-Operator ceases to be a member of any eligible class(es) of persons as described in the Description of Eligible Persons section of the Master Application.

### Contract Driver's Effective and Termination Dates

**Contract Driver's Effective Date.** A Contract Driver's coverage under this Policy begins on the latest of:
1. the Policy Effective Date;
2. the date the person becomes a member of an eligible class of persons as described in the Description of Eligible Persons section of the Master Application;
3. if individual enrollment is required, the date written enrollment is received by the Policyholder; or
4. the date on which the first premium payment is paid when due.

C22382DBG(REV.11-99)          5

Case 2:05-cv-00783-SRW   Document 5-2   Filed 08/23/2005   Page 6 of 25

EFFECTIVE AND TERMINATION DATES (Continued)

**Contract Driver's Termination Date.** A Contract Driver's coverage under this Policy ends on the earliest of:

1. the date this Policy is terminated;
2. the premium due date if premiums are not paid when due;
3. the date the Contract Driver requests, in writing, that his or her coverage be terminated;
4. the date the Contract Driver ceases to be a member of any eligible class(es) of persons as described in the Description of Eligible Persons section of the Master Application; or
5. the date the Owner-Operator with respect to whom the Contract Driver is under contract ceases to be a member of any eligible class(es) of persons as described in the Schedule of the Master Application.

A change in an Insured Person's coverage under this Policy due to a change in his or her eligible class or benefit selection becomes effective on the later of: (1) the date the change in his or her eligible class or benefit selection occurs; or (2) if the change requires a change in premium, the date the first changed premium is paid. However, a change in coverage applies only with respect to accidents that occur after the change becomes effective.

Termination of coverage will not affect a claim for a Covered Loss that occurs either before or after such termination if that loss results from an accident that occurred while the Insured Person's coverage was in force under this Policy.

C22382DBG(REV.11-99)

6

| SECTION III | PREMIUM |
|---|---|

**Premiums.** Premiums are payable to the Company at the rates and in the manner described in the Premiums section of the Master Application. The Company may change the required premiums due on any Policy anniversary date, as measured annually from the Policy Effective Date, by giving the Policyholder at least 31 days advance written notice. The Company may change the required premiums as a condition of any renewal of this Policy. The Company may also change the required premiums at any time when any change affecting premiums is made in this Policy.

**Insured Person's Premium.** The Premium Rate for coverage under this Policy for each Insured Person is shown in the Schedule, and shall be payable as follows:

1. Insured Persons who are enrolled on or prior to the fifteenth of the month shall pay an amount equal to the full monthly premium. No premium shall be payable for the last full or partial month of coverage.

2. Insured Persons who are enrolled after the fifteenth of the month shall pay a premium equal to the full monthly premium beginning on the first of the month following the month during which coverage becomes effective. With respect to the last full or partial month of coverage, Insured Persons shall pay an amount equal to the monthly premium.

**Grace Period.** A Grace Period of 31 days will be provided for the payment of any premium due after the first premium. This Policy will not be terminated for nonpayment of premium during the Grace Period if the Policyholder pays all premiums due by the last day of the Grace Period. This Policy will terminate on the last day of the period for which all premiums have been paid if all premiums due are not paid by the last day of the Grace Period.

If the Company expressly agrees to accept late payment of a premium without terminating this Policy, the Company does so in accordance with the Noncompliance With Policy Requirements provision in Section VIII of this Policy. In such case, the Policyholder will be liable to the Company for any unpaid premiums for the time this Policy is in force, plus all costs and expenses (including, but not limited to, reasonable attorney fees, collection fees and court costs) incurred by the Company in the collection of all overdue amounts.

No Grace Period will be provided if the Company receives notice to terminate this Policy prior to a premium due date.

**Waiver of Premium.** Subject to this Policy remaining in force, all premiums due under this Policy with respect to an Insured Person who is receiving either a Temporary Total Disability Benefit or Continuous Total Disability Benefit under this Policy will be waived. Premiums will be waived from the first premium due date on or after the date the disability begins. Premium payments must be resumed on the premium due date next following the date the Insured Person's Temporary Total Disability Benefit or Continuous Total Disability Benefit ceases. If premium payments are not resumed on that date, the Insured Person's coverage under this Policy shall end on that date.

SECTION IV                          BENEFITS

**Principal Sum.** As applicable to each Insured Person, Principal Sum means the amount of insurance in force under this Policy on the date of the accident, as described in the Schedule.

**Deductible.** The applicable per accident Deductible Amounts shown in the Schedule per Covered Loss apply to each Insured Person sustaining a particular type of Covered Loss. For accidents where more than one Covered Loss applies, each deductible amount is applied to the total benefits payable.

**Accidental Death Benefit**

If Injury to the Insured Person results in death within the Incurral Period shown in the Schedule, the Company will pay the Principal Sum, subject to any applicable Deductible Amount for the Accidental Death Covered Loss shown in the Schedule. The Incurral Period starts on the date of the accident that caused such Injury.

**Survivor's Benefit**

If the Insured Person suffers accidental death such that an Accidental Death Benefit is payable under this Policy, the Company will pay a monthly Survivor's Benefit to the surviving Spouse, up to the Principal Sum shown in the Schedule. The Monthly Benefit Amount shall be determined by multiplying the Principal Sum by the Monthly Benefit Percentage.

If the Insured Person is not survived by a Spouse, or if the Insured Person's Spouse dies or remarries, the Company will pay or continue to pay the Survivor's Benefit to the Insured Person's surviving Dependent Children, if any. If there is more than one surviving Dependent Child, the Survivor's Benefit will be distributed equally among the surviving Dependent Children. The payment of the monthly Survivor's Benefit will end on the earliest of the following dates:
1.  the date the Spouse dies or remarries, if there are no Dependent Children;
2.  the date the last Dependent Child dies or is no longer eligible as defined in Section I of this Policy; or
3.  the date the Principal Sum has been paid.

If the Insured Person is not survived by a Spouse or any Dependent Children, the Company will pay only the Accidental Death Benefit in accordance with the Payment of Claims provision of this Policy.

**Exposure and Disappearance**

If, by reason of an accident, an Insured Person is unavoidably exposed to the elements and as a result of such exposure suffers a loss which is otherwise covered under this Policy, the loss will be considered a Covered Loss under the terms of this Policy.

If the body of an Insured Person has not been found within one year after the disappearance, forced landing, stranding, sinking or wrecking of a conveyance in which that person was an occupant, then it will be deemed, subject to all other terms and provisions of this Policy, that the Insured Person has suffered Accidental Death within the meaning of this Policy.

**Accidental Dismemberment Benefit**

If Injury to the Insured Person results in any one of the Losses specified below, within the Incurral Period shown in the Schedule (as measured from the date of the accident that caused such Injury), the Company will pay the Percentage of the Principal Sum shown below for that Loss, subject to any applicable Deductible Amount for the Accidental Dismemberment Covered Loss shown in the Schedule.

C22382DBG(REV.11-99)                          8

SECTION IV                              BENEFITS

| For Loss of: | Percentage of the Principal Sum: |
|---|---|
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| Speech and Hearing in Both Ears | 100% |
| One Arm or One Leg | 75% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Speech or Hearing in Both Ears | 50% |
| Four Fingers of Same Hand | 25% |
| Hearing in One Ear | 25% |
| Thumb and Index Finger of Same Hand | 25% |

"Loss" of a hand or foot means complete severance through or above the wrist or ankle joint. "Loss" of sight of an eye means total and irrecoverable loss of the entire sight in that eye. "Loss" of hearing in an ear means total and irrecoverable loss of the entire ability to hear in that ear. "Loss" of speech means total and irrecoverable loss of the entire ability to speak. "Loss" of an arm or leg means complete severance through or above the shoulder or hip joint. "Loss" of four fingers means complete severance through or above the metacarpophalangeal joint of all four digits. "Loss" of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

If more than one Loss is sustained by an Insured Person as a result of the same accident, only one amount, the largest, will be paid.

Paralysis Benefit

If Injury to the Insured Person results in any Type of Paralysis specified below, within the Incurral Period shown in the Schedule (as measured from the date of the accident that caused such Injury), the Company will pay the Percentage of the Principal Sum shown below for that Type of Paralysis, subject to any applicable Deductible Amount for the Paralysis Covered Loss shown in the Schedule.

| Type of Paralysis: | Percentage of the Principal Sum: |
|---|---|
| Quadriplegia | 100% |
| Paraplegia | 75% |
| Hemiplegia | 50% |
| Uniplegia | 25% |

"Quadriplegia" means the complete and irreversible paralysis of both upper and both lower limbs. "Paraplegia" means the complete and irreversible paralysis of both lower limbs. "Hemiplegia" means the complete and irreversible paralysis of the upper and lower limbs of the same side of the body. "Uniplegia" means the complete and irreversible paralysis of one limb. "Limb" means entire arm or entire leg.

If the Insured Person sustains more than one Type of Paralysis as a result of the same accident, only the largest single amount will be considered a Covered Loss.

C22382DBG(REV.11-99)                    9

SECTION IV                              BENEFITS

**Temporary Total Disability Benefit**

If Injury to the Insured Person results in Temporary Total Disability within the Commencement Period shown in the Schedule, and if the Insured Person is under age 70 on the day the Temporary Total Disability begins, the Company will pay the Temporary Total Disability Benefit specified below, subject to satisfaction of any applicable Waiting Period shown in the Schedule. The Commencement Period starts on the date of the accident that caused such Injury.
The Temporary Total Disability Benefit with respect to each week of an Insured Person's Temporary Total Disability during a Single Period of Total Disability is equal to the lesser of:

1. the Participation Percentage (as shown in the Schedule) of the Insured Person's Average Weekly Earnings; or
2. the Maximum Weekly Benefit Amount shown in the Schedule.

The Temporary Total Disability Benefit shall cease on the earliest of the following dates:
1. the date the Insured Person is no longer Temporarily Totally Disabled;
2. the date the Insured Person dies;
3. the date the Insured Person attains age 70; or
4. the date the Maximum Benefit Period shown in the Schedule has been reached.

The Temporary Total Disability Benefit with respect to less than a full Benefit Week of Temporary Total Disability equals 1/7th of the weekly Covered Loss for each day of Temporary Total Disability.

As used above in this Temporary Total Disability benefit:

**Average Weekly Earnings** means the Insured Person's average weekly compensation earned for performing Occupational services less any amounts withheld by or otherwise returned to the Policyholder, including but not limited to taxes, overhead and fuel charges. If Insured Person is paid wholly or in part by commissions, Average Weekly Earnings also include commissions based on an average of the commissions paid to the Insured Person for performing Occupational services during the 104 weeks immediately preceding the onset of Temporary Total Disability. If the Insured Person was not performing such services for the Policyholder during the entire 104 week period, commissions are based on an average of the total number of weeks the Insured Person was performing such services for the Policyholder.

**Benefit Week** means a 7-day period of time that begins on the first day of Temporary Total Disability after the Waiting Period shown in the Schedule for Temporary Total Disability and on the same day of each week thereafter.

**Maximum Benefit Period** means, with respect to Temporary Total Disability, the maximum period for which benefits shall be payable for a Temporary Total Disability Covered Loss during a Single Period of Total Disability. The length of the Maximum Benefit Period for Temporary Total Disability is shown in the Schedule.

**Single Period of Total Disability** means all periods of Temporary Total Disability due to the same or related causes (whether or not insurance has been interrupted) except any of the following which are considered separate periods of disability: (1) successive periods of Temporary Total Disability, due to entirely different and unrelated causes, separated by at least one full day during which the Insured Person is not Temporarily Totally Disabled; (2) successive periods of Temporary Total Disability, due to the same or related causes, separated by at least 6 months during which the Insured Person is not Temporarily Totally Disabled.

C22382DBG(REV.11-99)                    10

SECTION IV                                    BENEFITS

**Temporary Total Disability, Temporarily Totally Disabled** means disability that: (1) prevents an Insured Person from performing the duties of his or her regular, primary occupation; and (2) requires that, and results in, the Insured Person receiving Continuous Care.

**Continuous Care** means weekly monitoring and/or evaluation of the disabling condition by a Physician. The Company must receive proof of continuing Temporary Total Disability on a weekly basis.

### Continuous Total Disability Benefit

If Injury to the Insured Person, resulting in Temporary Total Disability, subsequently results in Continuous Total Disability, the Company will pay the Continuous Total Disability Benefit specified below, provided:
1. benefits payable for a Temporary Total Disability Covered Loss ceased solely because the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached, but the Insured Person remains disabled;
2. the Insured Person is under age 70 on the day after the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached;
3. the Insured Person has been granted a Social Security Disability Award for their disability; and
4. their disability is reasonably expected to continue without interruption until the Insured Person dies.

The Continuous Total Disability Benefit with respect to each month of an Insured Person's Continuous Total Disability is equal to four and three-tenths (4.3) times the weekly benefit for Temporary Total Disability, less the Insured Person's primary Social Security Disability Award.

The Continuous Total Disability Benefit with respect to less than a full Benefit Week of Continuous Total Disability equals 1/7th of the weekly Benefit for Temporary Total Disability for each day of Continuous Total Disability.

Benefits payable under the Temporary Total Disability Benefit before the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached, will not be considered a Continuous Total Disability Benefit.

The Continuous Total Disability Benefit shall cease on the earliest of the following dates:
1. the date the Insured Person is no longer Continuously Totally Disabled.
2. the date the Insured Person dies.
3. the date the Insured Person's Social Security Disability Award ceases.
4. the date the Insured Person attains age 70.
5. the date the Maximum Benefit Period shown in the Schedule for Continuous Total Disability has been reached.

As used above in this Continuous Total Disability benefit:

**Benefit Week** means a one-week period of time that begins on the day after the Maximum Benefit Period for Temporary Total Disability has been reached and on the same day of each week thereafter.

**Maximum Benefit Period** means, with respect to Continuous Total Disability, the maximum period for which benefits shall be payable for a Continuous Total Disability Covered Loss(es). The length of the Maximum Benefit Period for Continuous Total Disability is shown in the Schedule.

**Continuous Total Disability, Continuously Totally Disabled** means disability that: (1) prevents an Insured Person from performing the duties of any occupation for which he or she is qualified by reason of education, training or experience; and (2) requires that, and results in, the Insured Person receiving Continuous Care.

C22382OBG(REV.11-99)                          11

SECTION IV                                          BENEFITS

Continuous Care means at least monthly monitoring and/or evaluation of the disabling condition by a Physician. The Company must receive proof of continuing Continuous Total Disability on a quarterly basis.

Terms used in this Continuous Total Disability benefit, but which refer to Temporary Total Disability and are defined in the Temporary Total Disability benefit, are to be interpreted as defined in that benefit.

### Accident Medical Expense Benefit

If an Insured Person suffers an Injury that requires him or her to be treated by a Physician, within the Commencement Period shown in the Schedule, the Company will pay the Usual and Customary Charges incurred for Medically Necessary Covered Accident Medical Services received due to that Injury, up to the Maximum Benefit Amount and Maximum Benefit Period shown in the Schedule per Insured Person for all Injuries caused by a single accident, subject to any applicable Deductible Amount. The Commencement Period starts on the date of the accident that caused such Injury. The Deductible Amount for the Accident Medical Expense Benefit is the Deductible Amount shown in the Schedule, if any, which must be met from Usual and Customary Charges for Medically Necessary Covered Accident Medical Services incurred due to Injuries sustained by the Insured Person in that accident.

As used in this Accident Medical Expense Benefit provision:

Ambulatory Medical Center means a licensed public establishment with an organized staff of Physicians and permanent facilities that are equipped and operated primarily for the purpose of providing medical services or performing surgical procedures. Such establishment must provide continuous Physician and registered nursing (RN) services whenever a patient is in the facility. An Ambulatory Medical Center does not include a Hospital, a Physician's office, or a clinic.

Covered Accident Medical Service(s) means any of the following services:
1. Hospital semi-private room and board (or room and board in an intensive care unit); Hospital ancillary services (including, but not limited to, use of the operating room or emergency room); or use of an Ambulatory Medical Center;
2. services of a Physician or a registered nurse (RN);
3. ambulance service to or from a Hospital;
4. laboratory tests;
5. radiological procedures;
6. anesthetics and the administration of anesthetics;
7. blood, blood products and artificial blood products, and the transfusion thereof;
8. physical therapy, Occupational therapy, and chiropractic care, up to the Physical Therapy, Occupational Therapy and Chiropractic Care Maximum, if any, shown in the Schedule;
9. rental of Durable Medical Equipment, up to the actual purchase price of such equipment;
10. artificial limbs, artificial eyes or other prosthetic appliances;
11. medicines or drugs administered by a Physician or that can be obtained only with a Physician's written prescription; or
12. repair or replacement of Sound Natural Teeth damaged or lost as a result of Injury, up to the Dental Maximum, if any, shown in the Schedule.

Custodial Services means any services which are not intended primarily to treat a specific Injury. Custodial Services include, but shall not be limited to services: (1) related to watching or protecting the Insured Person; (2) related to performing or assisting the Insured Person in performing any activities of daily living, such as: (a) walking; (b) grooming; (c) bathing; (d) dressing; (e) getting in or out of bed; (f) toileting; (g) eating; (h) preparing foods; or (i) taking medications that can usually be self-administered; and (3) that are not required to be performed by trained or skilled medical or paramedical personnel.

C22382DBG(REV.11-99)                              12

**Durable Medical Equipment** refers to equipment of a type that is designed primarily for use, and used primarily, by people who are injured (for example, a wheelchair or a hospital bed). It does not include items commonly used by people who are not injured, even if the items can be used in the treatment of injury or can be used for rehabilitation or improvement of health (for example, a stationary bicycle or a spa).

**Hospital** means a facility that: (1) is operated according to law for the care and treatment of injured people; (2) has organized facilities for diagnosis and surgery on its premises or in facilities available to it on a prearranged basis; (3) has 24-hour nursing service by registered nurses (RN), on duty or on call; and (4) is supervised by one or more Physicians. A Hospital does not include: (1) a nursing, convalescent or geriatric unit of a hospital when a patient is confined mainly to receive nursing care; (2) a facility that is, other than incidentally, a rest home, nursing home, convalescent home or home for the aged; nor does it include any ward, room, wing or other section of the hospital that is used for such purposes; or (3) any military or veterans hospital or soldiers home or any hospital contracted for or operated by any national government or government agency for the treatment of members or ex-members of the armed forces.

**Maximum Benefit Period** means, with respect to Accident Medical Expense, the maximum period for which benefits shall be payable for Covered Accident Medical Services for or in connection with a single Accident Medical Expense Covered Loss. The length of the Maximum Benefit Period for Accident Medical Expense is shown in the Schedule.

**Medically Necessary** means that a Covered Accident Medical Service: (1) is essential for diagnosis, treatment or care of the Occupational Injury for which it is prescribed or performed; (2) meets generally accepted standards of medical practice; and (3) is ordered by a Physician and performed under his or her care, supervision or order.

**Personal Comfort or Convenience Item(s)** means those items that are not Medically Necessary for the care and treatment of the Insured Person's Occupational Injury. The term Personal Comfort or Convenience Item(s) includes, but is not limited to: (1) a private Hospital room, unless Medically Necessary; (2) television rental; and (3) Hospital telephone charges.

**Sound Natural Teeth** means natural teeth that either are unaltered or are fully restored to their normal function and are disease free, have no decay, and are not more susceptible to injury than unaltered natural teeth.

**Usual and Customary Charge(s)** means a charge that: (1) is made for a Covered Accident Medical Service; (2) does not exceed the usual level of charges for similar treatment, services or supplies in the locality where the expense is incurred (for a Hospital room and board charge, other than for a Medically Necessary stay in an intensive care unit, does not exceed the Hospital's most common charge for semi-private room and board); and (3) does not include charges that would not have been made if no insurance existed.

In addition to the Exclusions in Section VI of this Policy, Usual and Customary Charges for Covered Accident Medical Services do not include, and benefits are not payable with respect to, any expense for or resulting from:
1. repair or replacement of existing artificial limbs, artificial eyes or other prosthetic appliances or repair of existing Durable Medical Equipment unless for the purpose of modifying the item because injury has caused further impairment in the underlying bodily condition;
2. new, or repair or replacement of, dentures, bridges, dental implants, dental bands or braces or other dental appliances, crowns, caps, inlays or onlays, fillings or any other treatment of the teeth or gums;
3. new eye glasses or contact lenses or eye examinations related to the correction of vision or related to the fitting of glasses or contact lenses, unless injury has caused impairment of sight; or repair or

SECTION IV                                        BENEFITS

replacement of existing eyeglasses or contact lenses unless for the purpose of modifying the item because injury has caused further impairment of sight;

4.  new hearing aids or hearing examinations unless injury has caused impairment of hearing; or repair or replacement of existing hearing aids unless for the purpose of modifying the item because injury has caused further impairment of hearing;

5.  rental of Durable Medical Equipment where the total rental expense exceeds the usual purchase expense for similar equipment in the locality where the expense is incurred (but if, in the Company's sole judgment, Accident Medical Expense Benefits for rental of Durable Medical Equipment are expected to exceed the usual purchase expense for similar equipment in the locality where the expense is incurred, the Company may, but is not required to, choose to consider such purchase expense as a Usual and Customary Covered Accident Medical Expense Benefit in lieu of such rental expense);

6.  Custodial Services; or

7.  Personal Comfort or Convenience Items.

SECTION V                                LIMITS OF LIABILITY

**Per-Insured Person Limit of Liability.** The Per-Insured Person Limit of Liability (Combined Single Limit) stated in the Schedule will be the total limit of the Company's liability for all benefits payable under this Policy with respect to any one Insured Person arising out of Injury sustained by such individual as the result of any one accident.

**Aggregate Limit of Liability.** The Aggregate Limit of Liability stated in the Schedule will be the total limit of the Company's liability for all benefits payable under this Policy with respect to all Insured Persons arising out of Injury sustained by one or more Insured Person(s) as the result of any one accident.

If the total of such benefits exceeds the Aggregate Limit of Liability, the Company shall not be liable to any Insured Person for a greater proportion of such Insured Person's benefits than said Aggregate Limit of Liability bears to the total benefits afforded all such Insured Persons under this Policy.

SECTION VI                                EXCLUSIONS

This Policy does not cover any losses caused in whole or in part by, or resulting in whole or in part from, the following:

1. suicide or any attempt at suicide; intentionally self-inflicted injury or any attempt at intentionally self-inflicted injury;
2. sickness, disease or infections of any kind, except bacterial infections due to an accidental cut or wound, botulism or ptomaine poisoning;
3. any Pre-Existing Condition;
4. Occupational Cumulative Trauma, unless (and to the extent as) specifically provided by this Policy;
5. Occupational Disease, unless (and to the extent as) specifically provided by this Policy;
6. hernia of any kind, unless (and to the extent as) specifically provided by this Policy;
7. hemorrhoids of any kind, unless (and to the extent as) specifically provided by this Policy;
8. performing, learning to perform or instructing others to perform as a master or crew member of any vessel while covered under the Jones Act or the United States Longshore and Harbor Workers' Act, or similar coverage;
9. declared or undeclared war, or any act of declared or undeclared war;
10. full-time active duty in the armed forces, National Guard or organized reserve corps of any country or international authority. (Unearned premium for any period for which the Insured Person is not covered due to his or her active duty status will be refunded.) (Loss caused while on short-term National Guard or reserve duty for regularly scheduled training purposes is not excluded.)
11. any Injury for which the Insured Person is entitled to benefits pursuant to any workers' compensation law or other similar legislation;
12. any loss insured by employers' liability insurance;
13. accidents occurring while the Insured is working for or under contract with an entity other than the Policyholder;
14. the Insured Person being under the influence of drugs or intoxicants, unless taken under the advice of his or her Physician; or
15. the Insured Person's commission of or attempt to commit a felony; or
16. travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if the Insured Person is:
    a. riding as a passenger in any aircraft not intended or licensed for the transportation of passengers; or
    b. performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft; or
    c. riding as a passenger in an aircraft owned, leased or operated by the Policyholder; or
17. any union "stop work" action

C22362DBG(REV.11-99)                      15

## SECTION VII                    CLAIMS PROVISIONS

**Notice of Claim.** Written notice of claim must be given to the Company within 20 days after an Insured Person's loss, or as soon thereafter as reasonably possible. Notice given by or on behalf of the claimant to the Company at American International Companies®, Accident and Health Claims Division, P. O. Box 15701, Wilmington, DE 19850-5701, with information sufficient to identify the Insured Person, is deemed notice to the Company.

**Claim Forms.** The Company will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed in this Policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the Insured's name, the Policyholder's name and the Policy number.

**Proof of Loss.** Written proof of loss must be furnished to the Company within 90 days after the date of the loss. If the loss is one for which this Policy requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as the Company may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

**Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of an Insured Person will be made to the Insured Person's beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section. Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the Insured Person suffering the loss. If an Insured Person dies before all payments due have been made, the amount still payable will be paid to his or her beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at the Company's option, to any relative by blood or connection by marriage of the payee, who, in the Company's opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

The Company may pay benefits directly to any Hospital or person rendering covered services, unless the Insured Person requests otherwise in writing. Such request must be made no later than the time proof of loss is filed. Any payment the Company makes in good faith fully discharges the Company's liability to the extent of the payment made.

**Time of Payment of Claims.** Benefits payable under this Policy for any loss other than loss for which this Policy provides any periodic payment will be paid immediately upon the Company's receipt of due written proof of the loss. Subject to the Company's receipt of due written proof of loss, all accrued benefits for loss for which this Policy provides periodic payment will be paid at the expiration of each month during the continuance of the period for which the Company is liable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

C22382DBG(REV.11-99)                              16

CLAIMS PROVISIONS (Continued)

**Commutation of Losses.** It is agreed that, at the Company's option, at any time later than two years from the date of any accident resulting in a claim under this Policy, the Company may advise the Insured Person of its desire to be released from liability with respect to any such claim. In that event, the Company will appoint an actuary or appraiser to investigate, determine and capitalize such claim, and the payment by the Company of the capitalized value of such claim will constitute a complete and final release of the Company with respect to such claim.

**Sunset.** No claim made for losses sustained by Insured Persons will be considered valid and collectible in accordance with this Policy unless full details of such claim are presented to the Company within three years from the date of the accident which is the basis of such claim.

C22302DBG(REV.11-99)                           17

## SECTION VIII                              GENERAL PROVISIONS

**Entire Contract; Changes.**  This Policy, together with any riders, endorsements, amendments, applications, enrollment forms, and attached papers, if any, make up the entire contract between the Policyholder and the Company.  In the absence of fraud, all statements made by the Policyholder or any Insured Person will be considered representations and not warranties.  No written statement made by an Insured Person will be used in any contest unless a copy of the statement is furnished to the Insured Person or his or her beneficiary or personal representative.

No change in this Policy will be valid until approved by an officer of the Company.  The approval must be noted on or attached to this Policy.  No agent may change this Policy or waive any of its provisions.

**Incontestability.**  The validity of this Policy will not be contested after it has been in force for two year(s) from the Policy Effective Date, except as to nonpayment of premiums.

After an Insured Person has been insured under this Policy for two year(s) during his lifetime, no statement made by the Insured Person, except a fraudulent one, will be used to contest a claim under this Policy.  The Company may only contest coverage if the misstatement is made in a written instrument signed by the Insured Person and a copy is given to the Policyholder, the Insured Person or the beneficiary.

**Beneficiary Designation and Change.**  The Insured Person's designated beneficiary(ies) is (are) the person(s) so named by the Insured Person as shown on the Policyholder's records kept on this Policy.

A legally competent Insured Person over the age of majority may change his or her beneficiary designation at any time, unless an irrevocable designation has been made.  The change may be executed, without the consent of the designated beneficiary(ies), by providing the Company or, if agreed upon in advance by the Company, the Policyholder with a written request for change.  When the request is received by the Company or, if agreed upon in advance by the Company, the Policyholder, whether the Insured Person is then living or not, the change of beneficiary will relate back to and take effect as of the date of execution of the written request, but without prejudice to the Company on account of any payment which is made prior to receipt of the request.

Except with regard to the Survivor's Benefit described in Section IV of this Policy, if applicable, in the event that there is no designated beneficiary, or if no designated beneficiary is living after the Insured Person's death, the benefits will be paid, in equal shares, to the survivors in the first surviving class of those that follow:  The Insured Person's: (1) Spouse; (2) children; (3) parents; or (4) brothers and sisters.  If no class has a survivor, the beneficiary is the Insured Person's estate.

**Physical Examination and Autopsy.**  The Company has the right, at its own expense, to examine the person of any Insured Person whose Injury is the basis of a claim, when and as often as it may be reasonably required during the pendency of the claim.  In the case of a disability claim, the Company also has the right to require the Insured Person, at the Company's expense, to submit to an Occupational Assessment and/or a Functional Capacity Examination.   The Company may also require an autopsy where it is not prohibited by law.

**Legal Actions.**  No legal action for a claim can be brought against the Company until 60 days after receipt of proof of loss.  No legal action for a claim can be brought against the Company more than three years after the time for giving proof of loss.

**Noncompliance With Policy Requirements.**  Any express waiver by the Company of any requirements of this Policy will not constitute a continuing waiver of such requirements.  Any failure by the Company to insist upon compliance with any Policy provision will not operate as a waiver or amendment of that provision.

C22382DBG(REV 11-99)                          18

GENERAL PROVISIONS (Continued)

**Conformity With State Statutes.** Any provision of this Policy which, on its effective date, is in conflict with the statutes of the state in which the Policy was delivered, is hereby amended to conform to the minimum requirements of such laws.

**Clerical Error.** Clerical error, whether by the Policyholder, the Administrator, or the Company in keeping records pertaining to this Policy, will not: (1) invalidate coverage otherwise validly in force, or (2) continue coverage otherwise validly terminated.

**Data Required.** The Policyholder and the Administrator must maintain adequate records acceptable to the Company and provide any information required by the Company relating to this insurance.

**Audit.** The Company will have the right to inspect and audit, at any reasonable time, all records and procedures of the Policyholder, and the Administrator that may have a bearing on this insurance.

**Assignment.** This Policy is non-assignable. An Insured Person may not assign any of his or her rights, privileges or benefits under the Policy.

**Subrogation.** To the total extent the Company pays for losses incurred, the Company may assume the rights and remedies of the Insured Person relating to such loss. The Insured Person agrees to assist the Company in preserving its rights against those responsible for such loss, including but not limited to, signing subrogation forms supplied by the Company.

**Right to Recover Overpayments.** In addition to any rights of recovery, reimbursement or subrogation provided to the Company herein, when payments have been made by the Company with respect to a Covered Loss in an amount in excess of the maximum amount of payment necessary to satisfy an obligation under the terms of this Policy, the Company shall have the right to recover such excess payment, from any one or more of the following: Any person to whom such payments were made (i.e. medical providers, etc.), the Insured Person, any insurance company, or any other organization(s) which received, or should have received, the payment.

**Conditional Claim Payment.** If an Insured Person suffers a Covered Loss(es) as the result of Injuries for which, in the opinion of the Company, a third party may be liable, the Company will pay the amount of benefits otherwise payable under this Policy. However, if the Insured Person receives payment from the third party, the Insured Person agrees to refund to the Company the lesser of: (1) the amount actually paid by the Company for such Covered Loss(es); or (2) an amount equal to the sum actually received from the third party for such Covered Loss(es). If the Insured Person does not receive payment from the third party for such Covered Loss(es), the Company reserves the right to subrogate under the Subrogation clause of this Policy.

At the time such third party liability is determined and satisfied, this amount shall be paid whether determined by settlement, judgment, arbitration or otherwise. This provision shall not apply where prohibited by law.

**Offset.** The Company will have, and may exercise at any time, the right to offset any balance or balances, whether on account of premiums or otherwise, due from the Policyholder to the Company against any balance or balances, whether on account of losses or otherwise, due from the Company to the Policyholder.

**Other Insurance.** If the Insured Person incurs losses for which benefits are payable under more than one like policy issued by the Company or one of its affiliates, the coverage under this Policy is in excess of such other insurance, and will not contribute to such a loss with such other insurance. This condition does not apply to: (1) the Accident Medical Expense benefit described in Section IV of this Policy; or (2) other insurance which the Insured Person has procured to apply in excess of the coverage under this Policy.

C22382DBG(REV.11-99)                    19

GENERAL PROVISIONS (Continued)

**Plan and Exposure Changes.** The Policyholder must notify the Company of any subsidiary or affiliated company that is to be covered under this Policy. Such notice must be sent within 30 days of the acquisition of such subsidiary or affiliated company. If such notice is not provided, the newly acquired entity will not be considered a part of the Policyholder, or a covered affiliate or subsidiary, and the Insured Persons from the newly acquired entity will not be considered as Insured Persons of the Policyholder, or a covered affiliate or subsidiary for Policy purposes, until the date that notice is provided. The Company has the right to adjust premium based on the changing exposure.

**Non-Duplication of Workers' Compensation Benefits.** No benefits shall be payable under this Policy for any loss for which the Insured Person claims coverage under any workers' compensation, employers' liability, occupational disease or similar law. The Company reserves the right to recover, from the Insured Person, any benefits paid under this Policy which are subsequently claimed under any workers' compensation, employers' liability, occupational disease or similar law.

C22382OBG(REV.11-99)

**AIG** AIG Domestic Accident & Health Division
A Division of American International Companies®

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder:  Godwin Materials, Inc.
Policy Number: TRK 9056434

### HEMORRHOIDS COVERAGE RIDER

This Rider is attached to and made part of the Policy effective May 1, 2004. It applies only with respect to Hemorrhoids provided such Injury is sustained on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Hemorrhoids Coverage.** Exclusion 7 in Section VI of the Policy is hereby waived with respect to the following benefit(s):  Temporary Total Disability and Accident Medical Expense.

Any reference to an injury or accident as defined in the policy is hereby deemed to include Hemorrhoids. Benefits shall be payable for a Covered Loss caused in whole or in part by, contributed to in whole or in part by, or resulting in whole or in part from, the Insured Person's Hemorrhoids, provided such Hemorrhoids are surgically repaired while the Insured Person's coverage is in force under this Policy, subject to the following:

1.  With respect to the Temporary Total Disability Benefit the period for which such indemnity shall be payable for all periods of disability, subject to the Temporary Total Disability Benefit Waiting Period, shall not exceed the Hemorrhoids Lifetime Maximum Benefit Period shown in the Schedule.

2.  With respect to the Accident Medical Expense Benefit, benefits payable for or in connection with the Insured Person's Hemorrhoids, subject to the Accident Medical Expense Deductible Amount, if any, shall not exceed the Hemorrhoids Lifetime Maximum Benefit Amount shown in the Schedule.

**Hemorrhoid(s)** - as used in this Rider, means a mass of dilated veins in swollen tissue at the margin of the anus or nearby within the rectum.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Rider.

President                                                Secretary

C22390DBG

**AIG** AIG Domestic Accident & Health Division

A Division of American International Companies®

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder:   Godwin Materials, Inc.
Policy Number: TRK 9056434

### HERNIA COVERAGE RIDER

This Rider is attached to and made part of the Policy effective May 1, 2004.  It applies only with respect to Hernia provided such injury is sustained on or after that date.  It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Hernia Coverage.**  Exclusion 6 in Section VI of the Policy is hereby waived with respect to the following benefit(s): Temporary Total Disability and Accident Medical Expense.

Any reference to an injury or accident as defined in the policy is hereby deemed to include Hernia. Benefits shall be payable for a Covered Loss caused in whole or in part by, contributed to in whole or in part by, or resulting in whole or in part from, the Insured Person's Hernia, provided such Hernia is surgically repaired while the Insured Person's coverage is in force under this Policy, subject to the following:

1.   With respect to the Temporary Total Disability Benefit, the period for which such indemnity shall be payable for all periods of disability, subject to the Temporary Total Disability Benefit Waiting Period, shall not exceed the Hernia Lifetime Maximum Benefit Period shown in the Schedule.

2.   With respect to the Accident Medical Expense Benefit, benefits payable for or in connection with the Insured Person's Hernia, subject to the Accident Medical Expense Deductible Amount, if any, shall not exceed the Hernia Lifetime Maximum Benefit Amount shown in the Schedule.

**Hernia** - as used in this Rider, means a protrusion of an organ or part through connective tissue or through a wall of the cavity in which it is normally enclosed.  Hernia does not include diaphragmatic (hiatal) hernia.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Rider.

President                                Secretary

C22391DBG



AMERICAN INTERNATIONAL COMPANIES®

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder:  Godwin Materials, Inc.
Policy Number:  TRK 9056434

### NON-OCCUPATIONAL COVERAGE RIDER

This Rider is attached to and made part of the Policy effective May 1, 2004. It applies only with respect to accidents that occur on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Non-Occupational Coverage.**  References in the Policy to an injury or accident, where applicable, are hereby deemed to include Non-Occupational injury and Non-Occupational accident, respectively.

Benefits shall be payable for only those Covered Losses listed in the Schedule under Non-Occupational Accident Benefits, and shall be subject to the Non-Occupational Accident Benefit limitations shown therein.

**Non-Occupational** - as used in this Rider, means, with respect to an activity, accident, incident, circumstances or condition involving an Insured Person, that it does not occur or arise out of or in the course of the Insured Person performing Occupational services for the Policyholder, while under Dispatch.

**Non-Occupational Injury** - as used in this Rider, means, bodily injury caused by a Non-Occupational accident occurring while this Policy is in force as to the person whose injury is the basis of claim and resulting directly and independently of all other causes in a Covered Loss.

All injuries sustained by an Insured Person in any one accident shall be considered a single injury.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Rider.

President                           Secretary

C22393DBG

**AIG** AIG Domestic Accident & Health Division
A Division of American International Companies®

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder:    Godwin Materials, Inc.
Policy Number: TRK 9056434

### PRE-EXISTING CONDITIONS COVERAGE RIDER

This Rider is attached to and made part of the Policy effective May 1, 2004. It applies only with respect to Covered Losses that occur on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Pre-Existing Conditions Coverage.** Exclusion 3 in Section VI of the Policy is hereby waived for a Covered Loss described in Section IV of the Policy, however, in no event will benefits be payable for any Covered Losses caused in whole or in part by, or resulting in whole or in part from, any Pre-Existing Conditions, exceeding the Maximum Benefit Amount shown in the Schedule.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Rider.

President

Secretary

C22396D8G

**AIG** AIG Domestic Accident & Health Division

### Privacy Notice
**Administrative Offices**
600 King Street, Wilmington, DE 19801

#### Our Customer's Privacy Is Important to Us

We are committed to providing individuals covered by our accident and health insurance policies (our "Customers") with top-notch products backed by top-quality customer service. While information is fundamental to our ability to do this, we recognize the great importance of keeping our Customers' non-public personal information secure. Accordingly, we, the Domestic Accident and Health Division of the American International Companies® listed below, have established practices and procedures with respect to the collection and sharing of our current and former Customers' non-public personal financial and health information ("Customer Information").

#### Information Collection

We may collect information about our Customers from enrollment forms, applications, transactions, and other interactions with us or our affiliates, as well as from credit reporting agencies and other third parties. We will collect and disclose this information only in accordance with applicable laws or regulations or in response to our Customer's request for a product or service from us. The information we gather helps us identify who our Customers are, manage our relationship with them, and develop products and services that meet their needs.

#### Information Sharing

We may share Customer information with third parties under the following circumstances:

- **Affiliates:** We may share Customer information with our affiliates. These affiliates may include providers of financial services such as other insurance companies, banks, securities, broker-dealers, and insurance agents and agencies. They may also include affiliated non-financial entities such as marketing companies, e-commerce service providers, and companies providing administrative services.

  We will not share our Customer's non-public personal *financial* information with our affiliates, other than transaction or experience-related information, without first providing our Customer an opportunity to direct that such information not be shared. Furthermore, we will not share our Customer's non-public personal *health* information with affiliates except as directed or authorized by our Customer.

- **Non-Affiliates:** We may also share Customer information with non-affiliated companies for administrative purposes, the purposes of risk management, underwriting, to detect and prevent fraud, as directed or authorized by our Customer, or as otherwise permitted or required by law.

  From time to time, we may also enter into joint marketing and/or service agreements to share Customer non-public personal *financial* information with non-affiliated third parties as permitted by law. These third parties may include providers of financial products or services such as insurance companies, financial institutions, and securities firms.

The types of information we may share in these circumstances include identifying information (e.g., name or address), application information (e.g., income or assets), transactional information (e.g., premium history), and/or information received from a consumer reporting agency (e.g., credit history). Because we do not share Customer information in any other way, there is no need for an opt-out process in our privacy procedures.

#### Information Protection

We maintain physical, electronic, and procedural safeguards designed to protect Customer information and permit only authorized insurance agents, administrators, and employees who are trained in the proper handling of Customer information, to have access to that information.

We expect any non-affiliated third party that serves our Customers on our behalf to adhere to our privacy policy. Those third parties are legally bound to use our Customers' information only for the purposes for which it was provided, and to not disclose it or use it in any way. These third parties are also subject to and governed by federal and state privacy laws and regulations, and we are not responsible for their misuse of information.

#### Our Customers Can Depend on Us

We are committed to maintaining our trusted relationship with our Customers. We consider it our privilege to serve our Customers' insurance and financial needs and we value the trust they have placed in us. Our Customers' privacy is a top priority with us and thus we will continue to monitor our privacy practices in order to protect and respect their privacy and will comply with state privacy laws that require more restrictive practices than those set out in this notice.

**AIG** AIG Domestic Accident & Health Division

* National Union Fire Insurance Company of Pittsburgh, Pa. • The Insurance Company of the State of Pennsylvania
* American International South Insurance Company • American Home Assurance Company • Illinois National Insurance Company
* AIG Life Insurance Company • American International Life Assurance Company of New York
Members of American International Group, Inc.

0009.030k (3/15/02)

** TOTAL PAGE.33 **

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OLLIE GODWIN,                          )
                                       )
            PLAINTIFF,                  )
                                       )
V.                                     )    CASE NO:  2:05-cv-00783-SRW
                                       )
NATIONAL UNION FIRE INSURANCE          )    From Circuit Court of Crenshaw County
COMPANY OF PITTSBURGH, INC.,           )    Case No:  CV05-69
ET AL.,                                )
                                       )
            DEFENDANTS.                 )
                                       )

## PALOMAR INSURANCE CORPORATION'S MOTION TO DISMISS

COMES NOW the defendant, Palomar Insurance Corporation (hereinafter referred to as "Palomar"), by and through counsel, and moves this Court to dismiss it from the above-styled case and in support thereof states as follows:

1.      The plaintiff fails to state a claim against Palomar upon which relief can be granted.

2.      The Complaint states only claims of bad faith and breach of contract.

3.      Palomar was not a party to the insurance contract entered by the plaintiff and National Union Fire Insurance Company of Pittsburgh, PA and thus cannot be liable for the specific allegations in the plaintiff's Complaint.[1]

4.      Palomar sold the National policy to Godwin. See Complaint, Paragraphs 2 and 6.

5.      The law is clear in Alabama that an insurance agent cannot be held liable for the breach of an insurance contract or bad faith because the agent is not a party to the insurance

---

[1]  See copy of the policy attached hereto as Exhibit "A."  As established in Donahue v. National Ins. Co., 838 So. 2d 1032, 1035 (Ala. 2002), a defendant may submit, refer to, and cite a relevant insurance policy in a Motion to Dismiss without converting it into a Motion for Summary Judgment if the policy is "referred to in the Complaint and essential to the plaintiff's claim."

contract.  See Owens v. Life Ins. Co. of Georgia, 289 F. Supp. 2d 1319 (M.D. Ala. 2003);

Bullock v. United Benefit Ins. Co., 165 F. Supp. 2d 1255 (N.D. Ala. 2001); and Ligon Furniture

Co., Inc. v. O.M. Hughes Ins., Inc., 551 So. 2d 283 (Ala. 1989).  The existence of a contractual

relationship is a prerequisite to maintaining a claim for breach of contract or bad faith.  See

Employee's Benefit Association v. Grissett, 732 So. 2d 968, 975 (Ala. 1998) (holding under

Alabama law, in order to establish a breach of contract, a plaintiff must prove 1) **the existence of**

**a valid contract binding the parties in the action**; 2) his own performance under the contract;

3) the defendant's non-performance; and 4) damages) (emphasis added) and State Farm Fire &

Cas. Co. v. Slade, 747 So. 2d 293, 304 (Ala. 1999) (holding under Alabama law, in order to

establish a claim for bad faith, a plaintiff must prove 1)  **an insurance contract between the**

**parties and a breach thereof by the defendant**; 2) an intentional refusal to pay the insured's

claim; 3)  the absence of any reasonably legitimate or arguable reason for that refusal; 4) the

insurer's actual knowledge of the absence of any legitimate or arguable reason) (emphasis

added).   Therefore, a breach of contract or bad faith claim may not be maintained against

Palomar because it was the agent to the insurance contract and does not have the requisite

contractual relationship with the plaintiff.

     6.     The proper defendant, National Union Fire Insurance Company of Pittsburgh,

P.A., has been named and has answered in the above-styled case.

     WHEREFORE, Palomar moves this Honorable Court to dismiss it from the above-styled

case.

Respectfully submitted,


 /s/  John W. Dodson                                        .
John W. Dodson (DOD 012)
Michelle L. Crunk (CRU 017)
Attorneys for AIG d/b/a National Union Fire
Insurance Company of Pittsburgh, Inc., Palomar
Insurance Corporation, and Godwin Material
Services, Inc.



OF COUNSEL:

FERGUSON FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243



### CERTIFICATE OF SERVICE

   This is to certify that on this the 23rd day of  August  , 2005 a copy of the foregoing
document has been served upon counsel for all parties to this proceeding via United States Mail:

Arlene M. Richardson
RICHARDSON LEGAL CENTER, LLC
P.O. Box 971
Hayneville, Alabama  36040-0971



                          /s/  John W. Dodson
                         OF COUNSEL

## UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

August 24, 2005

# NOTICE OF CORRECTION

**From:**   Clerk's Office

**Case Style:** Ollie Godwin v. Palomar Insurance Corporation, et al.
**Case Number:** 2:05cv783-A

**Pleading :** #4 - Motion to Dismiss

Notice of Correction is being filed this date to advise that the referenced pleading was e-filed on 8/24/2005 without Exhibit A attached.

The pdf document for Exhibit A is attached to this notice.



AMERICAN INTERNATIONAL COMPANIES®

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder:   Godwin Materials, Inc.
Policy Number:  TRK 9056434

### TRUCKERS OCCUPATIONAL ACCIDENT INSURANCE

This Policy is a legal contract between the Policyholder and the Company. The Company agrees to insure eligible persons of the Policyholder (herein called Insured Person(s)) against loss covered by this Policy, subject to its provisions, limitations and exclusions. The persons eligible to be Insured Persons are all persons described in the Description of Eligible Persons section of the Master Application.

This Policy is issued in consideration of the payment of the required premium when due and the statements set forth in the signed Master Application, which is attached to and made part of this Policy and in the individual enrollment forms, if any.

This Policy begins on the Policy Effective Date shown in the Master Application. **This Policy will continue in effect, provided premiums are paid when due, until the Policy Termination Date shown in the Master Application, unless otherwise terminated as further provided in this Policy, or renewed.**

### IMPORTANT NOTICE

THIS IS NOT A WORKERS' COMPENSATION POLICY AND IS NOT A SUBSTITUTE FOR WORKERS' COMPENSATION COVERAGE.

This Policy is governed by the laws of the state in which it is delivered.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Policy:

President                          Secretary

### PLEASE READ THIS POLICY CAREFULLY

C22382OBG(REV.11-99)

TABLE OF CONTENTS

| | | |
|---|---|---|
| Section I | General Definitions | 3 |
| Section II | Effective and Termination Dates | 5-6 |
| | Policy Effective Date | 5 |
| | Policy Termination Date | 5 |
| | Owner-Operator's Effective Date | 5 |
| | Owner-Operator's Termination Date | 5 |
| | Contract Driver's Effective Date | 5 |
| | Contract Driver's Termination Date | 6 |
| Section III | Premium | 7 |
| | Premiums | 7 |
| | Insured Person's Premium | 7 |
| | Grace Period | 7 |
| | Waiver of Premium | 7 |
| Section IV | Benefits | 8-14 |
| | Principal Sum | 8 |
| | Deductible | 8 |
| | Accidental Death Benefit | 8 |
| | Survivor's Benefit | 8 |
| | Exposure and Disappearance | 8 |
| | Accidental Dismemberment Benefit | 8 |
| | Paralysis Benefit | 9 |
| | Temporary Total Disability Benefit | 10 |
| | Continuous Total Disability Benefit | 11 |
| | Accident Medical Expense Benefit | 12 |
| Section V | Limits of Liability | 15 |
| Section VI | Exclusions | 15 |
| Section VII | Claims Provisions | 16-17 |
| Section VIII | General Provisions | 18-20 |

## SECTION I                        GENERAL DEFINITIONS

**Administrator** means the Administrator named in the Schedule.

**Co-Owner** means a person who has partial ownership of a vehicle which is being operated by an Owner-Operator for the purpose of performing Occupational services .

**Combined Single Limit** means, with respect to any one Insured Person, the total amount of benefits that are payable under this Policy for or in connection with Injury sustained as the result of any one accident. When the Combined Single Limit has been reached, no further benefits shall be payable under this Policy, with respect to that Insured Person, for or in connection with injury sustained as the result of that one accident.

**Contract Driver** means a person who: (1) drives a vehicle owned or leased by an Owner-Operator for the purpose of performing Occupational services; (2) is on file with the Company; (3) is not an employee of the Policyholder; and (4) is not an employee of an Owner-Operator, unless otherwise permitted by law.

**Contractee** means the person, firm or other entity with whom the Owner-Operator has contracted to provide Occupational services.

**Covered Loss(es)** means one or more of the losses or expenses described in Section IV of this Policy.

**Dependent Child(ren)** means the Insured Person's unmarried children, including natural children from the moment of birth, step or foster children, or adopted children, from the moment of placement in the home of the Insured Person, under age 19 (25 if attending an accredited institution of higher learning on a full-time basis) and primarily dependent on the Insured Person for support and maintenance. It also includes any unmarried Dependent Child(ren) of the Insured Person who are incapable of self-sustaining employment by reason of mental or physical incapacity, and who are primarily dependent on the Insured Person for support and maintenance.

The Company may require proof of the Dependent Child(ren)'s incapacity and dependency within 60 days before the Dependent Child(ren) reach the age limit specified above. The Company may request that satisfactory proof of the Dependent Child(ren)'s continued incapacity and dependency be submitted to the Company on an annual basis. If the requested proof is not furnished within 31 days of the request, such child(ren) shall no longer be considered Dependent Child(ren) as of the end of that 31 day period.

**Dispatch** means the period of time during which an Insured operates his or her vehicle, or performs vehicle repair, while being en route to pick up a load, picking up a load, en route to deliver a load, and unloading a load.

**Functional Capacity Examination (FCE)** means a test performed by a physical therapy professional to evaluate and estimate physical limitations.

**Immediate Family Member** means a person who is related to the Insured Person in any of the following ways: Spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or placed for adoption, or stepchild).

**Injury** means bodily injury to an Insured Person caused by an Occupational accident while coverage is in force under this Policy, which results directly and independently of all other causes in a Covered Loss. All Injuries sustained by an Insured Person in any one accident shall be considered a single Injury.

**Insured** means a person who: (1) is a member of an eligible class as described in the Description of Eligible Persons section of the Master Application; (2) has enrolled for coverage; and (3) has paid the required premium.

C22382DBG(REV.11-99)                           3

GENERAL DEFINITIONS (Continued)

Insured Person means an Insured.

Occupational means, with respect to an activity, accident, incident, circumstance or condition involving an Insured, that the activity, accident, incident, circumstance or condition occurs or arises out of or in the course of the Insured performing services within the course and scope of contractual obligations for the Policyholder, while under Dispatch. Occupational does not encompass any period of time during the course of everyday travel to and from work.

Occupational Assessment means a test of vocational capabilities. The process includes a review of medical records, injury and treatment, history and background (education, military, previous occupation(s)), evaluation of basic skills such as reading, understanding, spelling and/or math capabilities, and vocational alternatives.

Occupational Cumulative Trauma means bodily injury to an Insured caused by the combined effect of repetitive physical Occupational activities extending over a period of time, where: (1) such condition is diagnosed by a Physician; (2) the Insured's last day of last performance of the activities causing the injury occurred during the Policy Period; and (3) such activities resulted directly and independently of all other causes in a Covered Loss.

Occupational Disease means a sickness which results in disability or death, and is caused by exposure to environmental or physical hazards during the course of the Insured's Occupational activities, where: (1) such condition is diagnosed by a Physician, and is generally accepted by the National Centers for Disease Control to be a disease caused by such hazards; (2) exposure to such hazards is not an accident but is caused or aggravated by the conditions under which the Insured performs Occupational services; (3) the Insured's last day of last exposure to the environmental or physical hazards causing such condition occurs during the Policy Period; and (4) such exposure results directly and independently of all other causes in a Covered Loss.

Owner-Operator means a person who: (1) owns or leases a vehicle which he or she is operating for the purpose of performing Occupational services; (2) is an Independent contractor as defined by law; and (3) is not an employee of the Policyholder. The term Owner-Operator will include a Co-Owner if the Co-Owner otherwise meets the definition of Owner-Operator.

Physician means a practitioner of the healing arts acting within the scope of his or her license who is not: (1) the Insured Person; or (2) an Immediate Family Member; or (3) a practitioner retained by the Policyholder or Contractee.

Pre-Existing Condition means a condition for which an Insured Person has sought or received medical advice or treatment during the twelve months immediately preceding his or her effective date of coverage under this Policy.

Schedule means the Schedule shown in the Master Application for this Policy which is attached to and made a part of this Policy.

Spouse means the Insured Person's legal spouse.

C22382DBG(REV.11-99)                                      4

SECTION II                    EFFECTIVE AND TERMINATION DATES

### Policy Effective and Termination Dates

**Policy Effective Date.** This Policy begins on the *Policy Effective Date* shown in the Master Application at 12:01 A.M. Standard Time at the address of the Policyholder where this Policy is delivered.

**Policy Termination Date.** This Policy may, at any time, be terminated by mutual written consent of the Company and the Policyholder. Otherwise, this Policy will terminate at 12:01 A.M. Standard Time at the Policyholder's address on the earliest of:
1. the Policy Termination Date shown in the Master Application, unless renewed;
2. the premium due date if premiums are not paid when due subject to the Grace Period;
3. the date specified in the written notice of the Company's intent to terminate this Policy, which will be at least 31 days after the date the Company sends such notice to the Policyholder's last known recorded address; or
4. the date specified in the written notice of the Policyholder's intent to terminate this Policy, which will be at least 31 days after the date the Policyholder sends such notice to the Company.

If the Company terminates this Policy, any unearned premium will be returned on a pro-rata basis. If the Policyholder requests termination, the Company will return any unearned premium paid on a short-rate basis. Termination will not affect any claim for a Covered Loss occurring prior to the effective date of termination.

### Owner-Operator's Effective and Termination Dates

**Owner-Operator's Effective Date.** An Owner-Operator's coverage under this Policy begins on the latest of:
1. the Policy Effective Date;
2. the date the person becomes a member of an eligible class of persons as described in the Description of Eligible Persons section of the Master Application;
3. if individual enrollment is required, the date written enrollment is received by the Policyholder; or
4. the date on which the first premium payment is paid when due.

**Owner-Operator's Termination Date.** An Owner-Operator's coverage under this Policy ends on the earliest of:
1. the date this Policy is terminated;
2. the premium due date if premiums are not paid when due;
3. the date the Owner-Operator requests, in writing, that his or her coverage be terminated; or
4. the date the Owner-Operator ceases to be a member of any eligible class(es) of persons as described in the Description of Eligible Persons section of the Master Application.

### Contract Driver's Effective and Termination Dates

**Contract Driver's Effective Date.** A Contract Driver's coverage under this Policy begins on the latest of:
1. the Policy Effective Date;
2. the date the person becomes a member of an eligible class of persons as described in the Description of Eligible Persons section of the Master Application;
3. if individual enrollment is required, the date written enrollment is received by the Policyholder; or
4. the date on which the first premium payment is paid when due.

EFFECTIVE AND TERMINATION DATES (Continued)

**Contract Driver's Termination Date.** A Contract Driver's coverage under this Policy ends on the earliest of:

1. the date this Policy is terminated;
2. the premium due date if premiums are not paid when due;
3. the date the Contract Driver requests, in writing, that his or her coverage be terminated;
4. the date the Contract Driver ceases to be a member of any eligible class(es) of persons as described in the Description of Eligible Persons section of the Master Application; or
5. the date the Owner-Operator with respect to whom the Contract Driver is under contract ceases to be a member of any eligible class(es) of persons as described in the Schedule of the Master Application.

A change in an Insured Person's coverage under this Policy due to a change in his or her eligible class or benefit selection becomes effective on the later of: (1) the date the change in his or her eligible class or benefit selection occurs; or (2) if the change requires a change in premium, the date the first changed premium is paid. However, a change in coverage applies only with respect to accidents that occur after the change becomes effective.

Termination of coverage will not affect a claim for a Covered Loss that occurs either before or after such termination if that loss results from an accident that occurred while the Insured Person's coverage was in force under this Policy.

C22382DBG(REV.11-99)                                    6

SECTION III                          PREMIUM

**Premiums.**  Premiums are payable to the Company at the rates and in the manner described in the Premiums section of the Master Application.  The Company may change the required premiums due on any Policy anniversary date, as measured annually from the Policy Effective Date, by giving the Policyholder at least 31 days advance written notice.  The Company may change the required premiums as a condition of any renewal of this Policy.  The Company may also change the required premiums at any time when any change affecting premiums is made in this Policy.

**Insured Person's Premium.**  The Premium Rate for coverage under this Policy for each Insured Person is shown in the Schedule, and shall be payable as follows:

1.  Insured Persons who are enrolled on or prior to the fifteenth of the month shall pay an amount equal to the full monthly premium. No premium shall be payable for the last full or partial month of coverage.

2.  Insured Persons who are enrolled after the fifteenth of the month shall pay a premium equal to the full monthly premium beginning on the first of the month following the month during which coverage becomes effective.  With respect to the last full or partial month of coverage, Insured Persons shall pay an amount equal to the monthly premium.

**Grace Period.**  A Grace Period of 31 days will be provided for the payment of any premium due after the first premium.  This Policy will not be terminated for nonpayment of premium during the Grace Period if the Policyholder pays all premiums due by the last day of the Grace Period.  This Policy will terminate on the last day of the period for which all premiums have been paid if all premiums due are not paid by the last day of the Grace Period.

If the Company expressly agrees to accept late payment of a premium without terminating this Policy, the Company does so in accordance with the Noncompliance With Policy Requirements provision in Section VIII of this Policy.  In such case, the Policyholder will be liable to the Company for any unpaid premiums for the time this Policy is in force, plus all costs and expenses (including, but not limited to, reasonable attorney fees, collection fees and court costs) incurred by the Company in the collection of all overdue amounts.

No Grace Period will be provided if the Company receives notice to terminate this Policy prior to a premium due date.

**Waiver of Premium.**  Subject to this Policy remaining in force, all premiums due under this Policy with respect to an Insured Person who is receiving either a Temporary Total Disability Benefit or Continuous Total Disability Benefit under this Policy will be waived.  Premiums will be waived from the first premium due date on or after the date the disability begins.  Premium payments must be resumed on the premium due date next following the date the Insured Person's Temporary Total Disability Benefit or Continuous Total Disability Benefit ceases.  If premium payments are not resumed on that date, the Insured Person's coverage under this Policy shall end on that date.

C22382DBG(REV.11-99)                          7

SECTION IV                    BENEFITS

**Principal Sum.** As applicable to each Insured Person, Principal Sum means the amount of insurance in force under this Policy on the date of the accident, as described in the Schedule.

**Deductible.** The applicable per accident Deductible Amounts shown in the Schedule per Covered Loss apply to each Insured Person sustaining a particular type of Covered Loss. For accidents where more than one Covered Loss applies, each deductible amount is applied to the total benefits payable.

## Accidental Death Benefit

If Injury to the Insured Person results in death within the Incurral Period shown in the Schedule, the Company will pay the Principal Sum, subject to any applicable Deductible Amount for the Accidental Death Covered Loss shown in the Schedule. The Incurral Period starts on the date of the accident that caused such Injury.

## Survivor's Benefit

If the Insured Person suffers accidental death such that an Accidental Death Benefit is payable under this Policy, the Company will pay a monthly Survivor's Benefit to the surviving Spouse, up to the Principal Sum shown in the Schedule. The Monthly Benefit Amount shall be determined by multiplying the Principal Sum by the Monthly Benefit Percentage.

If the Insured Person is not survived by a Spouse, or if the Insured Person's Spouse dies or remarries, the Company will pay or continue to pay the Survivor's Benefit to the Insured Person's surviving Dependent Children, if any. If there is more than one surviving Dependent Child, the Survivor's Benefit will be distributed equally among the surviving Dependent Children. The payment of the monthly Survivor's Benefit will end on the earliest of the following dates:
1. the date the Spouse dies or remarries, if there are no Dependent Children;
2. the date the last Dependent Child dies or is no longer eligible as defined in Section I of this Policy; or
3. the date the Principal Sum has been paid.

If the Insured Person is not survived by a Spouse or any Dependent Children, the Company will pay only the Accidental Death Benefit in accordance with the Payment of Claims provision of this Policy.

## Exposure and Disappearance

If, by reason of an accident, an Insured Person is unavoidably exposed to the elements and as a result of such exposure suffers a loss which is otherwise covered under this Policy, the loss will be considered a Covered Loss under the terms of this Policy.

If the body of an Insured Person has not been found within one year after the disappearance, forced landing, stranding, sinking or wrecking of a conveyance in which that person was an occupant, then it will be deemed, subject to all other terms and provisions of this Policy, that the Insured Person has suffered Accidental Death within the meaning of this Policy.

## Accidental Dismemberment Benefit

If Injury to the Insured Person results in any one of the Losses specified below, within the Incurral Period shown in the Schedule (as measured from the date of the accident that caused such Injury), the Company will pay the Percentage of the Principal Sum shown below for that Loss, subject to any applicable Deductible Amount for the Accidental Dismemberment Covered Loss shown in the Schedule.

C22382DBG(REV.11-99)                    8

SECTION IV                              BENEFITS

| For Loss of: | Percentage of the Principal Sum: |
|---|---|
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| Speech and Hearing in Both Ears | 100% |
| One Arm or One Leg | 75% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Speech or Hearing in Both Ears | 50% |
| Four Fingers of Same Hand | 25% |
| Hearing in One Ear | 25% |
| Thumb and Index Finger of Same Hand | 25% |

"Loss" of a hand or foot means complete severance through or above the wrist or ankle joint. "Loss" of sight of an eye means total and irrecoverable loss of the entire sight in that eye. "Loss" of hearing in an ear means total and irrecoverable loss of the entire ability to hear in that ear. "Loss" of speech means total and irrecoverable loss of the entire ability to speak. "Loss" of an arm or leg means complete severance through or above the shoulder or hip joint. "Loss" of four fingers means complete severance through or above the metacarpophalangeal joint of all four digits. "Loss" of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

If more than one Loss is sustained by an Insured Person as a result of the same accident, only the largest, will be paid.

**Paralysis Benefit**

If Injury to the Insured Person results in any Type of Paralysis specified below, within the Incurral Period shown in the Schedule (as measured from the date of the accident that caused such Injury), the Company will pay the Percentage of the Principal Sum shown below for that Type of Paralysis, subject to any applicable Deductible Amount for the Paralysis Covered Loss shown in the Schedule.

| Type of Paralysis: | Percentage of the Principal Sum: |
|---|---|
| Quadriplegia | 100% |
| Paraplegia | 75% |
| Hemiplegia | 50% |
| Uniplegia | 25% |

"Quadriplegia" means the complete and irreversible paralysis of both upper and both lower limbs. "Paraplegia" means the complete and irreversible paralysis of both lower limbs. "Hemiplegia" means the complete and irreversible paralysis of the upper and lower limbs of the same side of the body. "Uniplegia" means the complete and irreversible paralysis of one limb. "Limb" means entire arm or entire leg.

If the Insured Person sustains more than one Type of Paralysis as a result of the same accident, only the largest single amount will be considered a Covered Loss.

C22382DBG(REV.11-99)                    9

SECTION IV                                    BENEFITS

**Temporary Total Disability Benefit**

If Injury to the Insured Person results in Temporary Total Disability within the Commencement Period shown in the Schedule, and if the Insured Person is under age 70 on the day the Temporary Total Disability begins, the Company will pay the Temporary Total Disability Benefit specified below, subject to satisfaction of any applicable Waiting Period shown in the Schedule. The Commencement Period starts on the date of the accident that caused such Injury.

The Temporary Total Disability Benefit with respect to each week of an Insured Person's Temporary Total Disability during a Single Period of Total Disability is equal to the lesser of:

1. the Participation Percentage (as shown in the Schedule) of the Insured Person's Average Weekly Earnings; or
2. the Maximum Weekly Benefit Amount shown in the Schedule.

The Temporary Total Disability Benefit shall cease on the earliest of the following dates:
1. the date the Insured Person is no longer Temporarily Totally Disabled;
2. the date the Insured Person dies;
3. the date the Insured Person attains age 70; or
4. the date the Maximum Benefit Period shown in the Schedule has been reached.

The Temporary Total Disability Benefit with respect to less than a full Benefit Week of Temporary Total Disability equals 1/7th of the weekly Covered Loss for each day of Temporary Total Disability.

As used above in this Temporary Total Disability benefit:

**Average Weekly Earnings** means the Insured Person's average weekly compensation earned for performing Occupational services less any amounts withheld by or otherwise returned to the Policyholder, including but not limited to taxes, overhead and fuel charges. If the Insured Person is paid wholly or in part by commissions, Average Weekly Earnings also include commissions based on an average of the commissions paid to the Insured Person for performing Occupational services during the 104 weeks immediately preceding the onset of Temporary Total Disability. If the Insured Person was not performing such services for the Policyholder during the entire 104 week period, commissions are based on an average of the total number of weeks the Insured Person was performing such services for the Policyholder.

**Benefit Week** means a 7-day period of time that begins on the first day of Temporary Total Disability after the Waiting Period shown in the Schedule for Temporary Total Disability and on the same day of each week thereafter.

**Maximum Benefit Period** means, with respect to Temporary Total Disability, the maximum period for which benefits shall be payable for a Temporary Total Disability Covered Loss during a Single Period of Total Disability. The length of the Maximum Benefit Period for Temporary Total Disability is shown in the Schedule.

**Single Period of Total Disability** means all periods of Temporary Total Disability due to the same or related causes (whether or not insurance has been interrupted) except any of the following which are considered separate periods of disability: (1) successive periods of Temporary Total Disability, due to entirely different and unrelated causes, separated by at least one full day during which the Insured Person is not Temporarily Totally Disabled; (2) successive periods of Temporary Total Disability, due to the same or related causes, separated by at least 6 months during which the Insured Person is not Temporarily Totally Disabled.

C22382DBG(REV.11-99)                    10

SECTION IV                          BENEFITS

**Temporary Total Disability, Temporarily Totally Disabled** means disability that: (1) prevents an Insured Person from performing the duties of his or her regular, primary occupation; and (2) requires that, and results in, the Insured Person receiving Continuous Care.

**Continuous Care** means weekly monitoring and/or evaluation of the disabling condition by a Physician. The Company must receive proof of continuing Temporary Total Disability on a weekly basis.

Continuous Total Disability Benefit

If injury to the Insured Person, resulting in Temporary Total Disability, subsequently results in Continuous Total Disability, the Company will pay the Continuous Total Disability Benefit specified below, provided:
1. benefits payable for a Temporary Total Disability Covered Loss ceased solely because the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached, but the Insured Person remains disabled;
2. the Insured Person is under age 70 on the day after the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached;
3. the Insured Person has been granted a Social Security Disability Award for their disability; and
4. their disability is reasonably expected to continue without interruption until the Insured Person dies.

The Continuous Total Disability Benefit with respect to each month of an Insured Person's Continuous Total Disability is equal to four and three-tenths (4.3) times the weekly benefit for Temporary Total Disability, less the Insured Person's primary Social Security Disability Award.

The Continuous Total Disability Benefit with respect to less than a full Benefit Week of Continuous Total Disability equals 1/7th of the weekly Benefit for Temporary Total Disability for each day of Continuous Total Disability.

Benefits payable under the Temporary Total Disability Benefit before the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached, will not be considered a Continuous Total Disability Benefit.

The Continuous Total Disability Benefit shall cease on the earliest of the following dates:
1. the date the Insured Person is no longer Continuously Totally Disabled.
2. the date the Insured Person dies.
3. the date the Insured Person's Social Security Disability Award ceases.
4. the date the Insured Person attains age 70.
5. the date the Maximum Benefit Period shown in the Schedule for Continuous Total Disability has been reached.

As used above in this Continuous Total Disability benefit:

**Benefit Week** means a one-week period of time that begins on the day after the Maximum Benefit Period for Temporary Total Disability has been reached and on the same day of each week thereafter.

**Maximum Benefit Period** means, with respect to Continuous Total Disability, the maximum period for which benefits shall be payable for a Continuous Total Disability Covered Loss(es). The length of the Maximum Benefit Period for Continuous Total Disability is shown in the Schedule.

**Continuous Total Disability, Continuously Totally Disabled** means disability that: (1) prevents an Insured Person from performing the duties of any occupation for which he or she is qualified by reason of education, training or experience; and (2) requires that, and results in, the Insured Person receiving Continuous Care.

C22382DBG(REV.11-99)                    11

SECTION IV                                    BENEFITS

Continuous Care means at least monthly monitoring and/or evaluation of the disabling condition by a Physician. The Company must receive proof of continuing Continuous Total Disability on a quarterly basis.

Terms used in this Continuous Total Disability benefit, but which refer to Temporary Total Disability and are defined in the Temporary Total Disability benefit, are to be interpreted as defined in that benefit.


Accident Medical Expense Benefit

If an Insured Person suffers an Injury that requires him or her to be treated by a Physician, within the Commencement Period shown in the Schedule, the Company will pay the Usual and Customary Charges incurred for Medically Necessary Covered Accident Medical Services received due to that Injury, up to the Maximum Benefit Amount and Maximum Benefit Period shown in the Schedule per Insured Person for all injuries caused by a single accident, subject to any applicable Deductible Amount. The Commencement Period starts on the date of the accident that caused such Injury. The Deductible Amount for the Accident Medical Expense Benefit is the Deductible Amount shown in the Schedule, if any, which must be met from Usual and Customary Charges for Medically Necessary Covered Accident Medical Services incurred due to injuries sustained by the Insured Person in that accident.

As used in this Accident Medical Expense Benefit provision:

Ambulatory Medical Center means a licensed public establishment with an organized staff of Physicians and permanent facilities that are equipped and operated primarily for the purpose of providing medical services or performing surgical procedures. Such establishment must provide continuous Physician and registered nursing (RN) services whenever a patient is in the facility. An Ambulatory Medical Center does not include a Hospital, a Physician's office, or a clinic.

Covered Accident Medical Service(s) means any of the following services:
1. Hospital semi-private room and board (or room and board in an intensive care unit); Hospital ancillary services (including, but not limited to, use of the operating room or emergency room); or use of an Ambulatory Medical Center;
2. services of a Physician or a registered nurse (RN);
3. ambulance service to or from a Hospital;
4. laboratory tests;
5. radiological procedures;
6. anesthetics and the administration of anesthetics;
7. blood, blood products and artificial blood products, and the transfusion thereof;
8. physical therapy, Occupational therapy, and chiropractic care, up to the Physical Therapy, Occupational Therapy and Chiropractic Care Maximum, if any, shown in the Schedule;
9. rental of Durable Medical Equipment, up to the actual purchase price of such equipment;
10. artificial limbs, artificial eyes or other prosthetic appliances;
11. medicines or drugs administered by a Physician or that can be obtained only with a Physician's written prescription; or
12. repair or replacement of Sound Natural Teeth damaged or lost as a result of Injury, up to the Dental Maximum, if any, shown in the Schedule.

Custodial Services means any services which are not intended primarily to treat a specific Injury. Custodial Services include, but shall not be limited to services: (1) related to watching or protecting the Insured Person; (2) related to performing or assisting the Insured Person in performing any activities of daily living, such as: (a) walking; (b) grooming; (c) bathing; (d) dressing; (e) getting in or out of bed; (f) toileting; (g) eating; (h) preparing foods; or (i) taking medications that can usually be self-administered; and (3) that are not required to be performed by trained or skilled medical or paramedical personnel.

C22382DBG(REV.11-99)                          12

## SECTION IV                                    BENEFITS

**Durable Medical Equipment** refers to equipment of a type that is designed primarily for use, and used primarily, by people who are injured (for example, a wheelchair or a hospital bed). It does not include items commonly used by people who are not injured, even if the items can be used in the treatment of injury or can be used for rehabilitation or improvement of health (for example, a stationary bicycle or a spa).

**Hospital** means a facility that: (1) is operated according to law for the care and treatment of injured people; (2) has organized facilities for diagnosis and surgery on its premises or in facilities available to it on a prearranged basis; (3) has 24-hour nursing service by registered nurses (RN), on duty or on call; and (4) is supervised by one or more Physicians. A Hospital does not include: (1) a nursing, convalescent or geriatric unit of a hospital when a patient is confined mainly to receive nursing care; (2) a facility that is, other than incidentally, a rest home, nursing home, convalescent home or home for the aged; nor does it include any ward, room, wing or other section of the hospital that is used for such purposes; or (3) any military or veterans hospital or soldiers home or any hospital contracted for or operated by any national government or government agency for the treatment of members or ex-members of the armed forces.

**Maximum Benefit Period** means, with respect to Accident Medical Expense, the maximum period for which benefits shall be payable for Covered Accident Medical Services for or in connection with a single Accident Medical Expense Covered Loss. The length of the Maximum Benefit Period for Accident Medical Expense is shown in the Schedule.

**Medically Necessary** means that a Covered Accident Medical Service: (1) is essential for diagnosis, treatment or care of the Occupational Injury for which it is prescribed or performed; (2) meets generally accepted standards of medical practice; and (3) is ordered by a Physician and performed under his or her care, supervision or order.

**Personal Comfort or Convenience Item(s)** means those items that are not Medically Necessary for the care and treatment of the Insured Person's Occupational Injury. The term Personal Comfort or Convenience Item(s) includes, but is not limited to: (1) a private Hospital room, unless Medically Necessary; (2) television rental; and (3) Hospital telephone charges.

**Sound Natural Teeth** means natural teeth that either are unaltered or are fully restored to their normal function and are disease free, have no decay, and are not more susceptible to injury than unaltered natural teeth.

**Usual and Customary Charge(s)** means a charge that: (1) is made for a Covered Accident Medical Service; (2) does not exceed the usual level of charges for similar treatment, services or supplies in the locality where the expense is incurred (for a Hospital room and board charge, other than for a Medically Necessary stay in an intensive care unit, does not exceed the Hospital's most common charge for semi-private room and board); and (3) does not include charges that would not have been made if no insurance existed.

In addition to the Exclusions in Section VI of this Policy, Usual and Customary Charges for Covered Accident Medical Services do not include, and benefits are not payable with respect to, any expense for or resulting from:
1. repair or replacement of existing artificial limbs, artificial eyes or other prosthetic appliances or repair of existing Durable Medical Equipment unless for the purpose of modifying the item because injury has caused further impairment in the underlying bodily condition;
2. new, or repair or replacement of, dentures, bridges, dental implants, dental bands or braces or other dental appliances, crowns, caps, inlays or onlays, fillings or any other treatment of the teeth or gums;
3. new eye glasses or contact lenses or eye examinations related to the correction of vision or related to the fitting of glasses or contact lenses, unless injury has caused impairment of sight; or repair or

SECTION IV                              BENEFITS

replacement of existing eyeglasses or contact lenses unless for the purpose of modifying the item because injury has caused further impairment of sight;

4.  new hearing aids or hearing examinations unless injury has caused impairment of hearing; or repair or replacement of existing hearing aids unless for the purpose of modifying the item because injury has caused further impairment of hearing;

5.  rental of Durable Medical Equipment where the total rental expense exceeds the usual purchase expense for similar equipment in the locality where the expense is incurred (but if, in the Company's sole judgment, Accident Medical Expense Benefits for rental of Durable Medical Equipment are expected to exceed the usual purchase expense for similar equipment in the locality where the expense is incurred, the Company may, but is not required to, choose to consider such purchase expense as a Usual and Customary Covered Accident Medical Expense Benefit in lieu of such rental expense);

6.  Custodial Services; or

7.  Personal Comfort or Convenience Items.

## SECTION V        LIMITS OF LIABILITY

**Per-Insured Person Limit of Liability.** The Per-Insured Person Limit of Liability (Combined Single Limit) stated in the Schedule will be the total limit of the Company's liability for all benefits payable under this Policy with respect to any one Insured Person arising out of injury sustained by such individual as the result of any one accident.

**Aggregate Limit of Liability.** The Aggregate Limit of Liability stated in the Schedule will be the total limit of the Company's liability for all benefits payable under this Policy with respect to all Insured Persons arising out of injury sustained by one or more Insured Person(s) as the result of any one accident.

If the total of such benefits exceeds the Aggregate Limit of Liability, the Company shall not be liable to any Insured Person for a greater proportion of such Insured Person's benefits than said Aggregate Limit of Liability bears to the total benefits afforded all such Insured Persons under this Policy.

## SECTION VI        EXCLUSIONS

This Policy does not cover any losses caused in whole or in part by, or resulting in whole or in part from, the following:

1. suicide or any attempt at suicide; intentionally self-inflicted injury or any attempt at intentionally self-inflicted injury;
2. sickness, disease or infections of any kind, except bacterial infections due to an accidental cut or wound, botulism or ptomaine poisoning;
3. any Pre-Existing Condition;
4. Occupational Cumulative Trauma, unless (and to the extent as) specifically provided by this Policy;
5. Occupational Disease, unless (and to the extent as) specifically provided by this Policy;
6. hernia of any kind, unless (and to the extent as) specifically provided by this Policy;
7. hemorrhoids of any kind, unless (and to the extent as) specifically provided by this Policy;
8. performing, learning to perform or instructing others to perform as a master or crew member of any vessel while covered under the Jones Act or the United States Longshore and Harbor Workers' Act, or similar coverage;
9. declared or undeclared war, or any act of declared or undeclared war;
10. full-time active duty in the armed forces, National Guard or organized reserve corps of any country or international authority. (Unearned premium for any period for which the Insured Person is not covered due to his or her active duty status will be refunded.) (Loss caused while on short-term National Guard or reserve duty for regularly scheduled training purposes is not excluded.)
11. any injury for which the Insured Person is entitled to benefits pursuant to any workers' compensation law or other similar legislation;
12. any loss insured by employers' liability insurance;
13. accidents occurring while the Insured is working for or under contract with an entity other than the Policyholder;
14. the Insured Person being under the influence of drugs or intoxicants, unless taken under the advice of his or her Physician; or
15. the Insured Person's commission of or attempt to commit a felony; or
16. travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if the Insured Person is:
    a. riding as a passenger in any aircraft not intended or licensed for the transportation of passengers; or
    b. performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft; or
    c. riding as a passenger in an aircraft owned, leased or operated by the Policyholder; or
17. any union "stop work" action

C22382DBG(REV.11-99)          15

## SECTION VII    CLAIMS PROVISIONS

**Notice of Claim.** Written notice of claim must be given to the Company within 20 days after an Insured Person's loss, or as soon thereafter as reasonably possible. Notice given by or on behalf of the claimant to the Company at American International Companies®, Accident and Health Claims Division, P. O. Box 15701, Wilmington, DE 19850-5701, with information sufficient to identify the Insured Person, is deemed notice to the Company.

**Claim Forms.** The Company will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed in this Policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the Insured's name, the Policyholder's name and the Policy number.

**Proof of Loss.** Written proof of loss must be furnished to the Company within 90 days after the date of the loss. If the loss is one for which this Policy requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as the Company may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

**Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of an Insured Person will be made to the Insured Person's beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section. Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the Insured Person suffering the loss. If an Insured Person dies before all payments due have been made, the amount still payable will be paid to his or her beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at the Company's option, to any relative by blood or connection by marriage of the payee, who, in the Company's opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

The Company may pay benefits directly to any Hospital or person rendering covered services, unless the Insured Person requests otherwise in writing. Such request must be made no later than the time proof of loss is filed. Any payment the Company makes in good faith fully discharges the Company's liability to the extent of the payment made.

**Time of Payment of Claims.** Benefits payable under this Policy for any loss other than loss for which this Policy provides any periodic payment will be paid immediately upon the Company's receipt of due written proof of the loss. Subject to the Company's receipt of due written proof of loss, all accrued benefits for loss for which this Policy provides periodic payment will be paid at the expiration of each month during the continuance of the period for which the Company is liable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

CLAIMS PROVISIONS (Continued)

**Commutation of Losses.** It is agreed that, at the Company's option, at any time later than two years from the date of any accident resulting in a claim under this Policy, the Company may advise the Insured Person of its desire to be released from liability with respect to any such claim. In that event, the Company will appoint an actuary or appraiser to investigate, determine and capitalize such claim, and the payment by the Company of the capitalized value of such claim will constitute a complete and final release of the Company with respect to such claim.

**Sunset.** No claim made for losses sustained by Insured Persons will be considered valid and collectible in accordance with this Policy unless full details of such claim are presented to the Company within three years from the date of the accident which is the basis of such claim.

C22302DBG(REV.11-99)                                    17

SECTION VIII                GENERAL PROVISIONS

**Entire Contract; Changes.** This Policy, together with any riders, endorsements, amendments, applications, enrollment forms, and attached papers, if any, make up the entire contract between the Policyholder and the Company. In the absence of fraud, all statements made by the Policyholder or any Insured Person will be considered representations and not warranties. No written statement made by an Insured Person will be used in any contest unless a copy of the statement is furnished to the Insured Person or his or her beneficiary or personal representative.

No change in this Policy will be valid until approved by an officer of the Company. The approval must be noted on or attached to this Policy. No agent may change this Policy or waive any of its provisions.

**Incontestability.** The validity of this Policy will not be contested after it has been in force for two year(s) from the Policy Effective Date. except as to nonpayment of premiums.

After an Insured Person has been insured under this Policy for two year(s) during his lifetime, no statement made by the Insured Person, except a fraudulent one, will be used to contest a claim under this Policy. The Company may only contest coverage if the misstatement is made in a written instrument signed by the Insured Person and a copy is given to the Policyholder, the Insured Person or the beneficiary.

**Beneficiary Designation and Change.** The Insured Person's designated beneficiary(ies) is (are) the person(s) so named by the Insured Person as shown on the Policyholder's records kept on this Policy.

A legally competent Insured Person over the age of majority may change his or her beneficiary designation at any time, unless an irrevocable designation has been made. The change may be executed, without the consent of the designated beneficiary(ies), by providing the Company or, if agreed upon in advance by the Company, the Policyholder with a written request for change. When the request is received by the Company or, if agreed upon in advance by the Company, the Policyholder, whether the Insured Person is then living or not, the change of beneficiary will relate back to and take effect as of the date of execution of the written request, but without prejudice to the Company on account of any payment which is made prior to receipt of the request.

Except with regard to the Survivor's Benefit described in Section IV of this Policy, if applicable, in the event that there is no designated beneficiary, or if no designated beneficiary is living after the Insured Person's death, the benefits will be paid, in equal shares, to the survivors in the first surviving class of those that follow: The Insured Person's: (1) Spouse; (2) children; (3) parents; or (4) brothers and sisters. If no class has a survivor, the beneficiary is the Insured Person's estate.

**Physical Examination and Autopsy.** The Company has the right, at its own expense, to examine the person of any Insured Person whose Injury is the basis of a claim, when and as often as it may be reasonably required during the pendency of the claim. In the case of a disability claim, the Company also has the right to require the Insured Person, at the Company's expense, to submit to an Occupational Assessment and/or a Functional Capacity Examination. The Company may also require an autopsy where it is not prohibited by law.

**Legal Actions.** No legal action for a claim can be brought against the Company until 60 days after receipt of proof of loss. No legal action for a claim can be brought against the Company more than three years after the time for giving proof of loss.

**Noncompliance With Policy Requirements.** Any express waiver by the Company of any requirements of this Policy will not constitute a continuing waiver of such requirements. Any failure by the Company to insist upon compliance with any Policy provision will not operate as a waiver or amendment of that provision.

C22382OBG(REV.11-99)                18

GENERAL PROVISIONS (Continued)

**Conformity With State Statutes.** Any provision of this Policy which, on its effective date, is in conflict with the statutes of the state in which the Policy was delivered, is hereby amended to conform to the minimum requirements of such laws.

**Clerical Error.** Clerical error, whether by the Policyholder, the Administrator, or the Company in keeping records pertaining to this Policy, will not: (1) invalidate coverage otherwise validly in force, or (2) continue coverage otherwise validly terminated.

**Data Required.** The Policyholder and the Administrator must maintain adequate records acceptable to the Company and provide any information required by the Company relating to this insurance.

**Audit.** The Company will have the right to inspect and audit, at any reasonable time, all records and procedures of the Policyholder, and the Administrator that may have a bearing on this insurance.

**Assignment.** This Policy is non-assignable. An Insured Person may not assign any of his or her rights, privileges or benefits under the Policy.

**Subrogation.** To the total extent the Company pays for losses incurred, the Company may assume the rights and remedies of the Insured Person relating to such loss. The Insured Person agrees to assist the Company in preserving its rights against those responsible for such loss, including but not limited to, signing subrogation forms supplied by the Company.

**Right to Recover Overpayments.** In addition to any rights of recovery, reimbursement or subrogation provided to the Company herein, when payments have been made by the Company with respect to a Covered Loss in an amount in excess of the maximum amount of payment necessary to satisfy an obligation under the terms of this Policy, the Company shall have the right to recover such excess payment, from any one or more of the following: Any person to whom such payments were made (i.e. medical providers, etc.), the Insured Person, any insurance company, or any other organization(s) which received, or should have received, the payment.

**Conditional Claim Payment.** If an Insured Person suffers a Covered Loss(es) as the result of Injuries for which, in the opinion of the Company, a third party may be liable, the Company will pay the amount of benefits otherwise payable under this Policy. However, if the Insured Person receives payment from the third party, the Insured Person agrees to refund to the Company the lesser of: (1) the amount actually paid by the Company for such Covered Loss(es); or (2) an amount equal to the sum actually received from the third party for such Covered Loss(es). If the Insured Person does not receive payment from the third party for such Covered Loss(es), the Company reserves the right to subrogate under the Subrogation clause of this Policy.

At the time such third party liability is determined and satisfied, this amount shall be paid whether determined by settlement, judgment, arbitration or otherwise. This provision shall not apply where prohibited by law.

**Offset.** The Company will have, and may exercise at any time, the right to offset any balance or balances, whether on account of premiums or otherwise, due from the Policyholder to the Company against any balance or balances, whether on account of losses or otherwise, due from the Company to the Policyholder.

**Other Insurance.** If the Insured Person incurs losses for which benefits are payable under more than one like policy issued by the Company or one of its affiliates, the coverage under this Policy is in excess of such other insurance, and will not contribute to such a loss with such other insurance. This condition does not apply to: (1) the Accident Medical Expense benefit described in Section IV of this Policy; or (2) other insurance which the Insured Person has procured to apply in excess of the coverage under this Policy.

C22382DBG(REV.11-99)                                    19

GENERAL PROVISIONS (Continued)

**Plan and Exposure Changes.** The Policyholder must notify the Company of any subsidiary or affiliated company that is to be covered under this Policy. Such notice must be sent within 30 days of the acquisition of such subsidiary or affiliated company. If such notice is not provided, the newly acquired entity will not be considered a part of the Policyholder, or a covered affiliate or subsidiary, and the Insured Persons from the newly acquired entity will not be considered as Insured Persons of the Policyholder, or a covered affiliate or subsidiary for Policy purposes, until the date that notice is provided. The Company has the right to adjust premium based on the changing exposure.

**Non-Duplication of Workers' Compensation Benefits.** No benefits shall be payable under this Policy for any loss for which the Insured Person claims coverage under any workers' compensation, employers' liability, occupational disease or similar law. The Company reserves the right to recover, from the Insured Person, any benefits paid under this Policy which are subsequently claimed under any workers' compensation, employers' liability, occupational disease or similar law.

C22382OBG(REV.11-99)                              20

**AIG** AIG Domestic Accident & Health Division
A Division of American International Companies®

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder: Godwin Materials, Inc.
Policy Number: TRK 9056434

### HEMORRHOIDS COVERAGE RIDER

This Rider is attached to and made part of the Policy effective May 1, 2004. It applies only with respect to Hemorrhoids provided such injury is sustained on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Hemorrhoids Coverage.** Exclusion 7 in Section VI of the Policy is hereby waived with respect to the following benefit(s): Temporary Total Disability and Accident Medical Expense.

Any reference to an injury or accident as defined in the policy is hereby deemed to include Hemorrhoids. Benefits shall be payable for a Covered Loss caused in whole or in part by, contributed to in whole or in part by, or resulting in whole or in part from, the Insured Person's Hemorrhoids, provided such Hemorrhoids are surgically repaired while the Insured Person's coverage is in force under this Policy, subject to the following:

1.  With respect to the Temporary Total Disability Benefit the period for which such indemnity shall be payable for all periods of disability, subject to the Temporary Total Disability Benefit Waiting Period, shall not exceed the Hemorrhoids Lifetime Maximum Benefit Period shown in the Schedule.

2.  With respect to the Accident Medical Expense Benefit, benefits payable for or in connection with the Insured Person's Hemorrhoids, subject to the Accident Medical Expense Deductible Amount, if any, shall not exceed the Hemorrhoids Lifetime Maximum Benefit Amount shown in the Schedule.

**Hemorrhoid(s)** - as used in this Rider, means a mass of dilated veins in swollen tissue at the margin of the anus or nearby within the rectum.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Rider.

President                                    Secretary

C22390DBG

**AIG** AIG Domestic Accident & Health Division
A Division of American International Companies®

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder:   Godwin Materials, Inc.
Policy Number: TRK 9056434

### HERNIA COVERAGE RIDER

This Rider is attached to and made part of the Policy effective May 1, 2004. It applies only with respect to Hernia provided such injury is sustained on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Hernia Coverage.** Exclusion 6 in Section VI of the Policy is hereby waived with respect to the following benefit(s): Temporary Total Disability and Accident Medical Expense.

Any reference to an injury or accident as defined in the policy is hereby deemed to include Hernia. Benefits shall be payable for a Covered Loss caused in whole or in part by, contributed to in whole or in part by, or resulting in whole or in part from, the Insured Person's Hernia, provided such Hernia is surgically repaired while the Insured Person's coverage is in force under this Policy, subject to the following:

1.   With respect to the Temporary Total Disability Benefit, the period for which such indemnity shall be payable for all periods of disability, subject to the Temporary Total Disability Benefit Waiting Period, shall not exceed the Hernia Lifetime Maximum Benefit Period shown in the Schedule.

2.   With respect to the Accident Medical Expense Benefit, benefits payable for or in connection with the Insured Person's Hernia, subject to the Accident Medical Expense Deductible Amount, if any, shall not exceed the Hernia Lifetime Maximum Benefit Amount shown in the Schedule.

**Hernia** - as used in this Rider, means a protrusion of an organ or part through connective tissue or through a wall of the cavity in which it is normally enclosed. Hernia does not include diaphragmatic (hiatal) hernia.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Rider.

President

Secretary

C22391DBG



## AMERICAN INTERNATIONAL COMPANIES®

### NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder:   Godwin Materials, Inc.
Policy Number:  TRK 9056434

### NON-OCCUPATIONAL COVERAGE RIDER

This Rider is attached to and made part of the Policy effective May 1, 2004. It applies only with respect to accidents that occur on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Non-Occupational Coverage.** References in the Policy to an injury or accident, where applicable, are hereby deemed to include Non-Occupational Injury and Non-Occupational accident, respectively.

Benefits shall be payable for only those Covered Losses listed in the Schedule under Non-Occupational Accident Benefits, and shall be subject to the Non-Occupational Accident Benefit limitations shown therein.

**Non-Occupational** - as used in this Rider, means, with respect to an activity, accident, incident, circumstances or condition involving an Insured Person, that it does not occur or arise out of or in the course of the Insured Person performing Occupational services for the Policyholder, while under Dispatch.

**Non-Occupational Injury** - as used in this Rider, means, bodily injury caused by a Non-Occupational accident occurring while this Policy is in force as to the person whose injury is the basis of claim and resulting directly and independently of all other causes in a Covered Loss.

All injuries sustained by an Insured Person in any one accident shall be considered a single injury.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Rider.

President                                        Secretary

C22393DBG

**AIG** AIG Domestic Accident & Health Division
A Division of American International Companies®

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder: Godwin Materials, Inc.
Policy Number: TRK 9056434

### PRE-EXISTING CONDITIONS COVERAGE RIDER

This Rider is attached to and made part of the Policy effective May 1, 2004. It applies only with respect to Covered Losses that occur on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Pre-Existing Conditions Coverage.** Exclusion 3 in Section VI of the Policy is hereby waived for a Covered Loss described in Section IV of the Policy, however, in no event will benefits be payable for any Covered Losses caused in whole or in part by, or resulting in whole or in part from, any Pre-Existing Conditions, exceeding the Maximum Benefit Amount shown in the Schedule.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Rider.

President

Secretary

C22396DBG

**AIG** AIG Domestic Accident & Health Division

## Privacy Notice
Administrative Offices
600 King Street, Wilmington, DE 19801

### Our Customer's Privacy is Important to Us

We are committed to providing individuals covered by our accident and health insurance policies (our "Customers") with top-notch products backed by top-quality customer service. While information is fundamental to our ability to do this, we recognize the great importance of keeping our Customers' non-public personal information secure. Accordingly, we, the Domestic Accident and Health Division of the American International Companies* listed below, have established practices and procedures with respect to the collection and sharing of our current and former Customers' non-public personal financial and health information ("Customer Information").

### Information Collection

We may obtain information about our Customers from enrollment forms, applications, transactions, and other interactions with us or our affiliates, as well as from credit reporting agencies and other third parties. We will collect and disclose this information only in accordance with applicable laws or regulations or in response to our Customer's request for a product or service from us. The information we gather helps us identify who our Customers are, manage our relationship with them, and develop products and services that meet their needs.

### Information Sharing

We may share Customer Information with third parties under the following circumstances:

- **Affiliates:** We may share Customer Information with our affiliates. These affiliates may include providers of financial services such as other insurance companies, banks, securities, broker-dealers, and insurance agents and agencies. They may also include affiliated non-financial entities such as marketing companies, e-commerce service providers, and companies providing administrative services.

  We will not share our Customer's non-public personal *financial* information with our affiliates, other than transaction or experience-related information, without first providing our Customer an opportunity to direct that such information not be shared. Furthermore, we will not share our Customer's non-public personal *health* information with affiliates except as directed or authorized by our Customer.

- **Non-Affiliates:** We may also share Customer Information with non-affiliated companies for administrative purposes, the purposes of risk management, underwriting, to detect and prevent fraud, as directed or authorized by our Customer, or as otherwise permitted or required by law.

  From time to time, we may also enter into joint marketing and/or service agreements to share Customer non-public personal *financial* information with non-affiliated third parties as permitted by law. These third parties may include providers of financial products or services such as insurance companies, financial institutions, and securities firms.

The types of information we may share in these circumstances include identifying information (e.g., name or address), application information (e.g., income or assets), transactional information (e.g., premium history), and/or information received from a consumer reporting agency (e.g., credit history). Because we do not share Customer Information in any other way, there is no need for an opt-out process in our privacy procedures.

### Information Protection

We maintain physical, electronic, and procedural safeguards designed to protect Customer Information and permit only authorized insurance agents, administrators, and employees who are trained in the proper handling of Customer Information, to have access to that information.

We expect any non-affiliated third party that serves our Customers on our behalf to adhere to our privacy policy. These third parties are legally bound to use our Customers' information only for the purposes for which it was provided, and to not disclose it or use it in any way. These third parties are also subject to and governed by federal and state privacy laws and regulations, and we are not responsible for their misuse of information.

### Our Customers Can Depend on Us

We are committed to maintaining our trusted relationship with our Customers. We consider it our privilege to serve our Customers' insurance and financial needs and we value the trust they have placed in us. Our Customers' privacy is a top priority with us and thus we will continue to monitor our privacy practices in order to protect and respect that privacy and will comply with state privacy laws that require more restrictive practices than those set out in this notice.

**AIG** AIG Domestic Accident & Health Division

* National Union Fire Insurance Company of Pittsburgh, Pa. • The Insurance Company of the State of Pennsylvania
• American International South Insurance Company • American Home Assurance Company • Illinois National Insurance Company
• AIG Life Insurance Company • American International Life Assurance Company of New York
Members of American International Group, Inc.

0009.030e (3/15/02)

** TOTAL PAGE.33 **

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OLLIE GODWIN,                                )
                                             )
        PLAINTIFF,                           )
                                             )
V.                                           )       CASE NO: _____
                                             )
NATIONAL UNION FIRE INSURANCE                )       From Circuit Court of Crenshaw County
COMPANY OF PITTSBURGH, INC.,                 )       Case No. CV05-69
ET AL.,                                      )
                                             )
        DEFENDANTS.                          )

## NOTICE OF REMOVAL

COMES NOW, pursuant to 28 U.S.C. § 1446, the Defendant AIG d/b/a National Union

Fire Insurance Company of Pittsburgh, Inc. ("National") and respectfully files this Notice of

Removal to remove this civil action from the Circuit Court of Crenshaw County, Alabama,

wherein it was filed as CV-05-69, to the United States District Court for the Middle District of

Alabama, Northern Division, and, in support thereof, shows unto this Honorable Court as

follows:

        1.      As detailed in this Notice of Removal, the Plaintiff's claims against the non-

diverse Defendants Palomar Insurance Corporation ("Palomar") and Godwin Material Services,

Inc. ("Godwin") fail as a matter of law; they are consequently fraudulently joined.  As a result,

this civil action is properly removed based on diversity of citizenship.

        2.      On or about July 12, 2005, the Plaintiff filed a Complaint in the Circuit Court of

Crenshaw County, Alabama, in the civil action styled Ollie Godwin v. Palomar Insurance

Corporation, et al., Civil Action No. 05-69.  A true and correct copy of all process and pleadings

1

in this matter is attached hereto as **Exhibit A**. The Complaint states only claims of bad faith and breach of contract.

3.    The Summons and Complaint were served upon National on July 14, 2005. Both Palomar and Godwin were served the same day.

4.    This action could have been filed in this Court, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the Plaintiff and the properly joined Defendant and the amount in controversy more likely than not exceeds the sum of $75,000, exclusive of interest and costs.

### DIVERSITY OF CITIZENSHIP

5.    Upon information and belief, the Plaintiff is a resident of Crenshaw County, Alabama. See Complaint at ¶ 1.

6.    National is incorporated in the State of Pennsylvania with its principal place of business in New York. As a result, National is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of Alabama within the meaning of the Acts of Congress relating to the removal of cases.

7.    Palomar is an Alabama corporation. It sold the National policy to Godwin. See Complaint ¶¶ 2 & 6.

8.    Godwin is an Alabama corporation. It is the owner of the insurance policy which is made the basis of this case. See Complaint ¶ 4.

9.    Although the Complaint alleges the Palomar and Godwin are residents of the State of Alabama, their joinder does not preclude diversity jurisdiction because both Palomar and Godwin were fraudulently joined in this action. When a defendant has been fraudulently joined, the court should disregard its citizenship for purposes of determining whether a case is

2

removable based on diversity of citizenship.  See, e.g., Owens v. Life Insurance Co. of Georgia,

289 F. Supp. 2d 1319 (M.D. Ala. 2003); Tapscott v. MS Dealer Service Corp.  77 F.3d 1353,

1360 (11th Cir. 1996) overruled on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069

(11th Cir. 2000).

> 10.    Fraudulent joinder exists in three situations:

>> The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant ... The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts ... [A third situation arises] where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claims against the diverse defendant has no real connection to the claim against the nondiverse defendant.

Id. at 1323-24, quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).

> 11.    There is no possibility the Plaintiff can prove a cause of action against Palomar or

Godwin; therefore, they have been fraudulently joined.  The Plaintiff's claims are solely for bad

faith and breach of contract.  Although Palomar and Godwin are named as defendants, this case

involves National's denial of benefits subsequent to the Plaintiff's submission of claims for

benefits under a occupational accident policy issued by National.  The Plaintiff's claims against

Palomar and Godwin are contrived to avoid federal court jurisdiction.

> 12.    The law is clear in Alabama; an insurance agent cannot be held liable for breach

of an insurance contract or bad faith because the agent is not a party to the insurance contract.

See Owens; Bullock v. United Benefit Ins. Co., 165 F. Supp. 2d 1255, 1257 (M.D. Ala. 2001)

and Ligon Furniture Co., Inc. v. O.M. Hughes Ins. Inc., 551 So. 2d 283 (Ala. 1989).  The

existence of a contractual relationship is a prerequisite to maintaining a claim for breach of

contract or bad faith.  See Employees' Benefit Ass'n v. Grissett,  732 So. 2d 968, 975 (Ala.

1998) (holding under Alabama law, in order to establish a breach of contract, a plaintiff must

3

... 

prove: (1) **the existence of a valid contract binding the parties in the action;** (2) his own performance under the contract; (3) the defendant's non performance; and (4) damages.) (emphasis added); <u>State Farm Fire & Casualty Co. v. Slade</u>, 747 So. 2d 293, 304 (Ala. 1999) (holding under Alabama law, in order to establish a claim for bad faith, a plaintiff must **prove an insurance contract between the parties and a breach thereof by the defendant;** (2) an intentional refusal to pay the insured's claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal; (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason) (emphasis added).   Therefore a breach of contract or bad faith claim may not be maintained against Palomar because it was the agent to the insurance contract and it does not have the requisite contractual relationship with the Plaintiff.

13.     Likewise, a breach of contract or bad faith claim cannot be maintained against Godwin because the insurance contract made the basis of this suit is not between Godwin and the Plaintiff.  As stated above, in order to maintain an action for breach of contract or bad faith, there must be a contract binding the parties.  There is no insurance contract binding Godwin and the Plaintiff.  As admitted by the Plaintiff in the Complaint, Godwin is the policy owner, not the insurer.  Thus no breach of contract or bad faith claim can be maintained against Godwin.

14.     The Plaintiff maintains in his Complaint that Godwin "is joined pursuant to Rule 19(a) of the *Alabama Rules of Civil Procedure*...."  <u>See</u> Complaint ¶ 4.  However, there is no reason under Rule 19(a) that Godwin must be joined in the action.  Rule 19(a) states:

> A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

4

obligations by reason of the claimed interest.

ALA. R. CIV. P. 19(a).  Complete relief can be accorded between the Plaintiff and National

without the joinder of Godwin and Godwin claims no interest in this action.  Therefore, Rule

19(a) is inapplicable to the present action and cannot be used as a reason for the Plaintiff to join

Godwin and destroy diversity.

15.    Although Plaintiff attempts to destroy diversity by naming Palomar and Godwin

as defendants to his breach of contract and bad faith lawsuit against National, it is clear from the

face of the Complaint the entire cause of action arises out of National's alleged **breach of the**

**insurance contract**.  For example, Count I alleges National, Palomar and Godwin "intentionally

refused to pay the Plaintiff's claims **pursuant to the terms of the policy**."  Complaint ¶ 23.

Count II states a claim against all defendants also arising out of the failure and refusal to "fully

perform their **part of the contract/policy**."  Complaint ¶ 35.

## AMOUNT IN CONTROVERSY

16.    In order to meet the $75,000 jurisdictional threshold in a case with an unspecified

claim for damages, Defendant need show only "the amount in controversy more likely than not

exceeds the [now $75,000] jurisdictional requirement."  <u>Owens</u>, 289 F. Supp. 2d at 1327 <u>quoting</u>

<u>Tapscott</u>, 77 F.3d at 1357.

17.    In his Complaint, the Plaintiff's Complaint seeks $59,581.44 in compensatory

damages as well as punitive damages.

18.    Prospective punitive damages must be considered in any calculation of the

amount in controversy.  <u>See Holley Equipment Co. v. Credit Alliance Corp.</u>, 821 F.2d 1531,

1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity

cases, punitive damages must be considered, unless it is apparent to a legal certainty that such

5

cannot be recovered.") (internal citations omitted); Bell v. Preferred Life Assurance Soc'y, 320 U.S. 238, 240 (1943) (claims for compensatory and punitive damages should be aggregated to determine jurisdictional amount in controversy).

19.    "In determining whether the jurisdictional level has been met, this Court may look for guidance to recent decisions rendered in cases on the same type of suit." Bolling v. Union National Life Insurance Co., 900 F. Supp. 400, 404 (M.D. Ala 1995).  Professor George Priest of Yale Law School has conducted an "analysis of Alabama jury verdicts of punitive damages against out-of-state insurance companies." Davis v. Franklin Life Insurance Co., 71 F. Supp. 2d 1197, 1199 (M.D. Ala. 1999).  In his analysis, Professor Priest "concluded that, even after BMW v. Gore, the average punitive damage award affirmed by the Alabama Supreme Court is $874,667." Id.; see also Jackson v. American Bankers Insurance Co. of Florida, 976 F. Supp. 1450, 1452 (S.D. Ala. 1997) (citing similar earlier analysis by Professor Priest).

20.    For the foregoing reasons, it is more likely than not that the jurisdictional amount for diversity jurisdiction is met in this case.

21.    If any question arises as to the existence of the requisite amount in controversy, then National requests the opportunity to submit post-removal evidence in accordance with the procedure adopted by the Eleventh Circuit.  See Sierminski v. Transouth Financial Corp., 216 F.3d 945, 949 (11th Cir. 2000).  In affirming the denial of Plaintiff's motion to remand, the Eleventh Circuit held that the district court properly considered Defendant's post-removal evidence including Defendant's requests for admission directed to the amount in controversy. The Eleventh Circuit explained, "[w]e align ourselves with our sister circuits in adopting a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction." Id.

6

## THE OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED

22.    Because this Notice of Removal is filed within thirty days of service of the Complaint upon the first served Defendant, it is timely under 28 U.S.C. §1446(b).

23.    All properly joined and served Defendants join in and consent to this removal. "For purposes of removal, the court does not consider the citizenship of fictitious defendants in assessing complete diversity." Owens, 289 F. Supp. 2d at 1322 n.2. All other parties, National, Palomar and Godwin, join in this notice of removal.

24.    National, Palomar and Godwin have sought no similar relief with respect to this matter.

25.    The prerequisites for removal under 28 U.S.C. §1441 have been met.

26.    Written notice of the filing of this Notice of Removal will be given to the adverse party as required by law.

27.    A Notice of Filing Notice of Removal, with a copy of this Notice of Removal attached, will be filed simultaneously with the Circuit Court Clerk for the Circuit Court of Crenshaw County.

28.    The allegations of this notice are true and correct, this cause is within the jurisdiction of the United States District Court for the Middle District of Alabama, and this cause is removable to the United States District Court for the Middle District of Alabama.

29.    If any question arises as to the propriety of the removal of this action, National requests the opportunity to present a brief and oral argument in support of its position this case is removable.

WHEREFORE, National, Palomar and Godwin, desiring to remove this case to the United States District Court for the Middle District of Alabama, Northern Division, being the

7

district and division of said Court for the County in which said action is pending, pray that the

filing of this Notice of Removal shall effect the removal of said suit to this Court.

Respectfully submitted,

*[signature: Michelle L. Crunk]*

John W. Dodson (DOD 012)
Michelle L. Crunk (CRU 017)
Attorneys for AIG d/b/a National Union Fire
Insurance Company of Pittsburgh, Inc., Palomar
Insurance Corporation, and Godwin Material
Services, Inc.

OF COUNSEL:

FERGUSON FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243

## CERTIFICATE OF SERVICE

This is to certify that on this the 12th day of  August , 2005 a copy of the foregoing
document has been served upon counsel for all parties to this proceeding via United States Mail:

Arlene M. Richardson
RICHARDSON LEGAL CENTER, LLC
P.O. Box 971
Hayneville, Alabama  36040-0971

*[signature: Michelle L. Crunk]*

OF COUNSEL

COPY SENT VIA U.S. MAIL TO:
Circuit Court Clerk of Crenshaw County
P.O. Box 167
Luverne, Alabama  36049

8

# EXHIBIT A

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN )
)
Plaintiff, )
)
v. )                    Case No.: $CV$-05-69
)
PALOMAR INSURANCE CORPORATION, )
AIG d/b/a NATIONAL UNION FIRE )
INSURANCE COMPANY OF PITTSBURGH, )
INC., GODWIN MATERIAL )
SERVICES, INC., and FICTITIOUS )
DEFENDANTS, A, B, and C, Being those )
persons, firms, corporations, )
and/or any other entity responsible for or )
which carried out the acts and/or )
omissions herein complained of with )
respect to Plaintiff, whose names or )
identities are otherwise unknown at this )
time, but which will be added )
by amendment when ascertained. )
)
Defendant. )

### SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney
pursuant to the Alabama Rules of Civil Procedure.

Notice To:     **PALOMAR INSURANCE CORP.**
**C/O GEORGE W. SKIPPER, III, REGISTERED AGENT**
**4525 EXECUTIVE PARK DRIVE**
**MONTGOMERY, AL 36116-1601**

The Complaint which is attached to this summons is important and you must take immediate action to
protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or
denying each allegation in the Complaint, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at
the following address:

THIS ANSWER MUST
DATE OF DELIVERY OF THI
RECEIPT, OR A JUDGMENT
OR OTHER THINGS DEMAND
OF YOUR ANSWER WITH
THEREAFTER.

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN )
)
    Plaintiff, )
)
v. )
)   Case No.: _CV-05-69_
PALOMAR INSURANCE CORPORATION, )
AIG d/b/a NATIONAL UNION FIRE )
INSURANCE COMPANY OF PITTSBURGH, )
INC., GODWIN MATERIAL )
SERVICES, INC., and FICTITIOUS )
DEFENDANTS, A, B, and C, Being those )
persons, firms, corporations, )
and/or any other entity responsible for or )
which carried out the acts and/or )
omissions herein complained of with )
respect to Plaintiff, whose names or )
identities are otherwise unknown at this )
time, but which will be added )
by amendment when ascertained. )
)
    Defendant. )

## SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

Notice To:    **NATIONAL UNION FIRE INSURANCE COMPANY**
                **C/O CSC LAWYERS INCORPORATING SERVICE, INC., AGENT**
                **57 ADAMS AVENUE**
                **MONTGOMERY, AL 36104-4001**

    The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

THIS ANSWER MUS
DATE OF DELIVERY OF
RECEIPT, OR A JUDGMEN
OR OTHER THINGS DEMA
OF YOUR ANSWER WIT
THEREAFTER.

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN                                            )
                                                       )
    Plaintiff,                     )
                                                       )
v.                                                     )    Case No.: *CV-05-69*
                                                       )
PALOMAR INSURANCE CORPORATION,                         )
AIG d/b/a NATIONAL UNION FIRE                           )
INSURANCECOMPANY OF PITTSBURGH,                         )
INC., GODWIN MATERIAL                                   )
SERVICES, INC., and FICTITIOUS                          )
DEFENDANTS, A, B, and C, Being those                   )
persons, firms, corporations,                          )
and/or any other entity responsible for or             )
which carried out the acts and/or                      )
omissions herein complained of with                    )
respect to Plaintiff, whose names or                   )
identities are otherwise unknown at this               )
time, but which will be added                           )
by amendment when ascertained.                         )
                                                       )
    Defendant.                     )
                                                       )

## SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's atto..., pursuant to the Alabama Rules of Civil Procedure.

Notice To:    **GODWIN MATERIALS SERVICE, INC.**
              **C/O LORENZO GODWIN, REGISTERED AGENT**
              **P.O. BOX 12**
              **BRANTLEY, AL 36009**

    The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

    Richardson Legal Center, LLC

THIS ANSWER MUS[T]
DATE OF DELIVERY OF T[
RECEIPT, OR A JUDGMEN[T]
OR OTHER THINGS DEMA[N]
THEREAFTER.



CV-05-69

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Godwin Materials Services
C/o Lorenzo Godwin
P.O. Box 12
Brantley AL 36009

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN )
)
    Plaintiff, )
)
    v. )
)
PALOMAR INSURANCE CORPORATION, )
AIG d/b/a NATIONAL UNION FIRE )
INSURANCE COMPANY OF PITTSBURGH, )
INC., GODWIN MATERIAL )
SERVICES, INC., and FICTITIOUS )
DEFENDANTS, A, B, and C, Being those )
persons, firms, corporations, )
and/or any other entity responsible for or )
which carried out the acts and/or )
omissions herein complained of with )
respect to Plaintiff, whose names or )
Identities are otherwise unknown at this )
time, but which will be added )
by amendment when ascertained. )
)
    Defendant. )

Case No.: _CV-05-69_

### COMPLAINT AND DEMAND FOR JURY TRIAL

    COMES NOW, the Plaintiff, Ollie Godwin, by and through the undersigned attorney of

record, and would show this Honorable court as follows:

### PARTIES

    1    The Plaintiff, Ollie Godwin, is over the age of nineteen years and is a resident of

Crenshaw County, Alabama. Hereafter referred to as Plaintiff.

    2.    Defendant, Palomar Insurance Corporation, is a duly licensed Corporation doing

business in Alabama, with offices in Montgomery, Alabama, through its agents/agencies,

including Crenshaw County. It is in the business of providing Alabama businesses with

Occupational Accident insurance. Hereafter referred to as Defendant Palomar

3    Defendant, AIG d/b/a National Union Insurance Company, is duly licensed with the Alabama Secretary of State as a corporation doing business in Alabama including Montgomery County and Crenshaw County, Alabama and is the corporation underwriter for the Palomar Occupational Accident policy that is made the basis of this complaint

4    Defendant, Godwin Material Services Inc., a duly licensed Corporation doing business in Crenshaw County Alabama, is joined pursuant to Rule 19(a) of the *Alabama Rule of Civil Procedure* and is the owner of the insurance policy which is made the basis of this complaint. Hereafter referred to as Godwin Inc.

5.    Defendants A, B, and C are underwriters for Defendant Palomar Insurance Corporation, employees, and/or agents of Palomar Insurance Corporation, doing business in Alabama, including Crenshaw County, Alabama and committed acts complained of herein and will be named and added appropriately when known.

## STATEMENT OF FACTS

6.    Godwin Inc., purchased an Occupational Accident Insurance Policy from Palomar Insurance Corporation (hereinafter referred to as Palomar) to insure their truck drivers, including Plaintiff, Ollie Godwin. Policy number 9056434 is underwritten by AIG d/b/a National Union Insurance Company. (Hereinafter referred to as AIG/National)   Copy of Policy 9056434 is attached as Exhibit A.

7    The Policy became effective on May 01, 2003 and renewed on the anniversary date for years 2004 and 2005. The Occupational Policy was such that the policy would renew every year.

8.    Plaintiff was a truck driver for Godwin Inc., and was insured under the terms of the aforementioned policy.

9    Plaintiff was paying premiums that were deducted by Godwin Inc, from his checks on a regular basis.

10.    Said premiums were paid pursuant to the terms of the policy.

11.    On or about October/November 2003 the Plaintiff suffered an occupational injury that resulted in the Plaintiff having surgery for hernia. Said Policy 9056434 has a special Hernia Coverage Rider and, pursuant to the policy terms, said injury should have been covered

12.    Plaintiff was under dispatch at the time of his injury and Godwin Inc , wrote to AIG/National and reported that the Plaintiff was under dispatch.

13.    AIG/National ignored Godwin Inc., request and classified the Plaintiff's injury as non-occupational and did not pay his claim pursuant to the occupational classification under the policy.

14.    Plaintiff on or about October 27, 2004 was again injured while on dispatch  Said injury to his knee and hip has resulted in collapse of his left hip which required surgery

15.    Again, AIG/National has refused to pay any of the Plaintiff's expenses relating to his injury of October 27, 2004 pursuant to the occupational accident Policy number 9056434

16    The Defendants, as of the date of this complaint, have failed and/or refused to compensate the Plaintiff pursuant to all terms of the policy.

17.    The Defendants, as of May 01, 2005, have refused to renew/cover the Plaintiff under the policy.

## COUNT I
### BAD FAITH

18    Plaintiff repeats, realleges and incorporates by reference all of the preceding allegations of this Complaint, as if more fully set out herein.

19.    That on or about the October/November 2003 and October 27, 2004 the Plaintiff was injured in two separate accidents while he was on dispatch for Godwin Inc

20.    Plaintiff timely gave Defendant Palomar, AIG/National, Godwin Inc and Fictitious Defendants A, B, and C notice of both injuries, pursuant to the terms under said po and made claims for benefits thereunder.

21    Defendant Palomar, AIG/National, Godwin Inc, and Fictitious Defendants A B and C did pay some of the Plaintiff's expenses on his injury of October/November 2003, bu classified his injury as non-occupational whereby they would not be required to pay as much as if the injury had been classified as occupational.

22.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A B. and C have intentionally refused to pay any of the Plaintiff's expenses pertaining to his injur of October 27, 2004.

23.    Defendant Palomar, AIG/National, Godwin Inc, and Fictitious Defendants A B. and C intentionally refused to pay the Plaintiff's claims pursuant to the terms of the policy a correspondence dated February 27, 2004 pertaining to his October/November 2003 injury and correspondence dated February 19, 2005 pertaining to the Plaintiff's October 27, 2004 injury and has denied the Plaintiff's claims without lawful justification

24.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A B. and C's refusal to pay said claims was not based upon any reasonably legitimate, arguable or debatable reason.

25.    Defendant Palomar, AIG/National, Godwin Inc, and Fictitious Defendants A B. and C knew that there was no legitimate, arguable or debatable reason for denying the claims when Defendants refused to pay said claims.

26.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C intentionally failed to investigate the claim to determine whether or not there was a lawful basis for its refusal to pay said claim.

27.    Defendant Palomar, AIG/National, Godwin, Inc., and Fictitious Defendants A, B, and C's determination that the Plaintiff's injury of October/November 2003 was a non-occupational injury and that the Plaintiff's October 27, 2004 injury was caused by an underlying medical condition and not occupational related are false and unsubstantiated.

28.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C acted in bad faith in refusing to pay Plaintiff's claims.

29.    Plaintiff claims punitive damages of Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C.

30.    Because of Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C's refusal to pay, the Plaintiff has been damaged and caused to suffer in that he has had to bear all medical costs associated with his injuries, the Plaintiff was not paid the disability benefits due under the policy, and the Plaintiff has not, otherwise, been compensated pursuant to the terms of the policy for which he has been paying premiums.

## COUNT II
### BREACH OF CONTRACT

31.    Plaintiff repeats, realleges and incorporates by reference all of the preceding allegations of this Complaint, as if more fully set out herein.

32.    That on or about May 01, 2003 and May 01, 2004 Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C renewed the Plaintiff's Occupational Accident Policy which covered the Plaintiff in the event of occupational accidents

33    That Policy Number 9056434, drafted by Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C and issued to Godwin Inc., and the Plaintiff is a written contract of insurance between the Plaintiff and Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C in which they agreed to certain stipulations and requirements of each party, i.e., Plaintiff would pay the monthly premiums and adhere to certain requirements in the event of a claim and Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C would pay for losses pursuant to the terms of the contract/policy. A copy of the policy is herewith attached as Exhibit A.

34.    Plaintiff has performed all of the stipulations, conditions, requirements, and agreements pursuant to the terms of the contract/policy.

35    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C has failed and refused, and continues to fail and refuse, to fully perform their part of the contract/policy.

36.    Due to Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C's failure to perform, the Plaintiff has been damaged and caused to suffer in that he has had to bear the cost of extensive medical treatment, was not paid his disability benefits due him, has lost time from work which has caused him financial hardship, and he has not been otherwise compensated pursuant to the terms of the policy.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment, by a fair and impartial jury, against Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C for compensatory damages in the amount of the $59,581.44 and punitive damages in an amount to be determined by a jury plus all costs associated with this legal action.

Respectfully submitted this 7 day of ___July___ 2005

_OLLIE GODWIN, PLAINTIFF_

_ARLENE M. RICHARDSON (RIC045)_

**RICHARDSON LEGAL CENTER, LLC**
Post Office Box 971
Hayneville, Alabama 36040
Phone. (334) 548-5660
Fax    (334) 548-5661

7

# IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

| | |
|---|---|
| OLLIE GODWIN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No.: *CV-05-69* |
| | ) |
| PALOMAR INSURANCE CORPORATION, | ) |
| AIG d/b/a NATIONAL UNION FIRE | ) |
| INSURANCE COMPANY OF PITTSBURGH, | ) |
| INC., GODWIN MATERIAL | ) |
| SERVICES, INC., and FICTITIOUS | ) |
| DEFENDANTS, A, B, and C, Being those | ) |
| persons, firms, corporations, | ) |
| and/or any other entity responsible for or | ) |
| which carried out the acts and/or | ) |
| omissions herein complained of with | ) |
| respect to Plaintiff, whose names or | ) |
| identities are otherwise unknown at this | ) |
| time, but which will be added | ) |
| by amendment when ascertained. | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S FIRST REQUEST FOR INTERROGATORIES, and
## FIRST REQUEST FOR PRODUCTION,
## PROPOUNDED TO DEFENDANT, PALOMAR INSURANCE CORPORATION

COMES NOW, the Plaintiff, by and through his attorney of record, and pursuant to Rule

33, 34 and 36 of the Alabama Rules of Civil Procedure, hereby request that the Defendants

answer the following interrogatories and request for admissions in writing and under oath and to

produce all requested production within thirty (45) days from the receipt thereof.

## INSTRUCTIONS

A.     All information is to be divulged which is in your possession or within your

knowledge including information in the possession of your attorneys, agents, employees or other

representatives of you and or your employer

B.    Where an individual interrogatory calls for an answer, which involves more than one part, each part of the answer should be clearly set out so that it is understandable. If any of the interrogatories cannot be answered in full, please answer to the extent possible and submit any supplemental information as soon as it is available.

C    If you lack the information necessary to answer any interrogatories, please describe what efforts were made by you or anyone on your behalf to ascertain the information and state as definitely as possible when you anticipate obtaining the information and supplementing your response.

D.    These interrogatories are intended as continuing interrogatories, requiring you to answer by supplementing any of your answers, setting forth any information within the scope of the interrogatories as may be required by you, your attorneys, agents, representatives or employer, subsequent to your original answers. Such supplemental responses are to be filed and served upon the Plaintiff within fifteen (15) days of receipt of such information, but no later than the time of trial.

1.    Please state the name, address, phone number, title and association to the Defendant, Palomar Insurance Corporation of the person answering these interrogatories

2.    Please state, in specific detail, the steps taken to determine the cause of the Plaintiff's injuries of October/November 2004 and October 27, 2004

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN                                     )
                                                 )
        Plaintiff,                               )
                                                 )
v.                                               )      Case No.: _CV-05-69_
                                                 )
PALOMAR INSURANCE CORPORATION,                   )
AIG d/b/a NATIONAL UNION FIRE                    )
INSURANCE COMPANY OF PITTSBURGH,                 )
INC., GODWIN MATERIAL                            )
SERVICES, INC., and FICTITIOUS                   )
DEFENDANTS, A, B, and C, Being those             )
persons, firms, corporations,                    )
and/or any other entity responsible for or       )
which carried out the acts and/or                )
omissions herein complained of with              )
respect to Plaintiff, whose names or             )
identities are otherwise unknown at this         )
time, but which will be added                    )
by amendment when ascertained.                   )
                                                 )
        Defendant.                               )

### PLAINTIFF'S FIRST REQUEST FOR INTERROGATORIES, and FIRST REQUEST FOR PRODUCTION, PROPOUNDED TO DEFENDANT, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, INC.

COMES NOW, the Plaintiff, by and through his attorney of record, and pursuant to Rule 33, 34 and 36 of the Alabama Rules of Civil Procedure, hereby request that the Defendants answer the following interrogatories and request for admissions in writing and under oath and to produce all requested production within thirty (45) days from the receipt thereof

### INSTRUCTIONS

A.      All information is to be divulged which is in your possession or within your knowledge including information in the possession of your attorneys, agents, employees or other representatives of you and or your employer.

B      Where an individual interrogatory calls for an answer, which involves more than one part, each part of the answer should be clearly set out so that it is understandable. If any of the interrogatories cannot be answered in full, please answer to the extent possible and supply any supplemental information as soon as it is available

C.     If you lack the information necessary to answer any interrogatories, please describe what efforts were made by you or anyone on your behalf to ascertain the information and state as definitely as possible when you anticipate obtaining the information and supplementing your response.

D      These interrogatories are intended as continuing interrogatories, requiring you to answer by supplementing any of your answers, setting forth any information within the scope of the interrogatories as may be required by you, your attorneys, agents, representatives or employer, subsequent to your original answers. Such supplemental responses are to be filed and served upon the Plaintiff within fifteen (15) days of receipt of such information, but no later than the time of trial.

1.     Please state the name, address, phone number, title and association to the Defendant, National Union Fire Insurance Company of Pittsburgh, Inc., of the person answering these interrogatories.


2      Please state, in specific detail, the steps taken to determine the cause of the Plaintiff's injuries of October/November 2004 and October 27, 2004.

3.    Please state the Title, name, address, phone number, and qualifications of the person who investigated the Plaintiff's claims.

4    Please state the specific date and time of the aforementioned investigations

5    Please state the usual and customary procedure that National Union Fire Insurance Company of Pittsburgh Inc., uses to investigate and determine whether or not claims are paid

6.    Please state the specific details as to how National Union Fire Insurance Company of Pittsburgh Inc., came to issue an Occupational Accident policy to Godwin Inc.

7.    Please state the name, address, and phone number of each and every person who contacted Ollie Godwin and/or Godwin, Inc., in regards to the Plaintiff's claims.

8    Have you been advised that your answers are made under oath, and may be used as material testimony in the event of a hearing, and must be updated in writing if your aforementioned responses change?

_____

Signature of Person Answering Interrogatories

STATE OF ALABAMA              )
COUNTY OF _____       )

    I, the undersigned authority, a Notary Public in and for said State and County, hereby certify that _____, whose name is signed to the foregoing interrogatories, who is known to me, acknowledged before me this day that, being informed of the contents of this document, he/she executed the same voluntarily on the day the same bears date.

    Given under my hand and seal of office this the _____ day of _____, 2005

_____

Notary Public – State at Large
My Commission Expires. _____

## REQUEST FOR PRODUCTION PROPOUNDED TO DEFENDANTS
## INSTRUCTIONS

Pursuant to Rule 34 of the Alabama Rules of Civil Procedure the Plaintiffs by and through their undersigned counsel, hereby submits this their first Request for Production of Documents, and hereby demands that the Defendants produce, for the inspection and copying each of the documents requested herein within 45 days of service.

In lieu of producing the documents required herein at a place to be agreed upon by the parties, legible photocopies may be delivered to the office of Richardson Legal Center, LLC, 133 Hayneville Plaza or Post Office Box 971, Hayneville, Alabama 36040.

### DEFINITIONS

As used in this request, the term "document" is defined as including writings, recordings, photographs (including video tapes), as defined by Rule 1001 of the Alabama Rules of Evidence

### REQUEST FOR PRODUCTION

1    Please produce a copy of the signed policy of insurance issued to Godwin Material Services, Inc.

2    Please produce a copy of your investigator's report in reference to the Plaintiff's claims

3.    Please produce all documents, reports, pictures, video recordings, witness statements, notes, writings, memorandums, tape recordings of interview with Plaintiff, or any and all other things including, but not limited to, all investigation reports, relating to the Plaintiff's claims of October/November 2003 and October 27, 2004.

4.    Please produce the name, address, and phone number of any expert witness retained by you in the defense of this case

5      Please produce any and all documents, photographs, audio/video recordings or

other evidence obtained by you, whether or not such evidence is intended to be introduced at the

trial of this cause.

Foregoing discovery to National Union Fire Insurance Company of Pittsburgh is

respectfully submitted the 7th day of July 2005

Arlene M. Richardson (RIC045)
Attorney for the Plaintiffs


RICHARDSON LEGAL CENTER, LLC
Post Office Box 971
Hayneville, Alabama 36040
Telephone. (334) 548-5660
Fax  (334) 548-5661

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN                )

      Plaintiff,           )

v.                    )    Case No.: *CV-05-69*

PALOMAR INSURANCE CORPORATION,  )
AIG d/b/a NATIONAL UNION FIRE  )
INSURANCE COMPANY OF PITTSBURGH,  )
INC., GODWIN MATERIAL  )
SERVICES, INC., and FICTITIOUS  )
DEFENDANTS, A, B, and C, Being those  )
persons, firms, corporations,  )
and/or any other entity responsible for or  )
which carried out the acts and/or  )
omissions herein complained of with  )
respect to Plaintiff, whose names or  )
identities are otherwise unknown at this  )
time, but which will be added  )
by amendment when ascertained.  )
                    )

      Defendant.          )

## PLAINTIFF'S FIRST REQUEST FOR INTERROGATORIES, and FIRST REQUEST FOR PRODUCTION, PROPOUNDED TO DEFENDANT, GODWIN MATERIALS SERVICE, INC.

COMES NOW, the Plaintiff, by and through his attorney of record, and pursuant to Rule

33, 34 and 36 of the Alabama Rules of Civil Procedure, hereby request that the Defendants

answer the following interrogatories and request for admissions in writing and under oath and to

produce all requested production within thirty (45) days from the receipt thereof

### INSTRUCTIONS

A.    All information is to be divulged which is in your possession or within your

knowledge including information in the possession of your attorneys, agents, employees or other

representatives of you and or your employer.

B.    Where an individual interrogatory calls for an answer, which involves more than one part, each part of the answer should be clearly set out so that it is understandable. If all the interrogatories cannot be answered in full, please answer to the extent possible and submit any supplemental information as soon as it is available.

C.    If you lack the information necessary to answer any interrogatories, please describe what efforts were made by you or anyone on your behalf to ascertain the information and state as definitely as possible when you anticipate obtaining the information and supplementing your response.

D.    These interrogatories are intended as continuing interrogatories, requiring you to answer by supplementing any of your answers, setting forth any information within the scope of the interrogatories as may be required by you, your attorneys, agents, representatives or employer, subsequent to your original answers. Such supplemental responses are to be filed and served upon the Plaintiff within fifteen (15) days of receipt of such information, but no later than the time of trial.

1    Please state the name, address, phone number, title and association to the Defendant, Godwin Inc., of the person answering these interrogatories.

2.    Please state, in specific detail, any information you have as to how Palomar Insurance and National Union Fire Insurance investigated the Plaintiff's claims, i e phone call conversation, questionnaires, correspondence with either of the aforementioned insurance companies. Include dates and details of conversations, questionnaires, and/or correspondence

3    Please state the Title, name, address, phone number, and qualifications of all persons/agents of Palomar Insurance and/or National Union Fire Insurance who contacted Godwin Inc., during the investigative process of the Plaintiff's claims.

4    Please state the usual and customary procedure that Palomar Insurance and National Union Fire Insurance used in the past to investigate other employee claims.

5    Please state the usual and customary procedure that Godwin Inc., used to investigate the Plaintiff's claims.

6    Please state the specific details as to how Palomar Insurance Corporation came to issue an Occupational Accident policy to Godwin Inc.

7    Please state the name, address, and phone number of each and every person/agent of Palomar Insurance and/or National Union Fire Insurance who contracted with Godwin, Inc. during the purchase of the Occupational Accident policy.

8.    Please state the name, address, and phone numbers of each person/employee and/or independent contractor who filed claims on the Palomar Insurance/National Union Insurance occupational policy within the last two (2) years, include dates, incident details whether or not the claims were paid, and under what category each claim was classified

9.    Do you understand that your answers are made under oath, and may be used as material testimony in the event of a hearing, and must be updated in writing if your aforementioned responses change?


_____
Signature of Person Answering Interrogatories


STATE OF ALABAMA          )
COUNTY OF _____    )
          I, the undersigned authority, a Notary Public in and for said State and County, hereby certify that _____, whose name is signed to the foregoing interrogatories, who is known to me, acknowledged before me this day that, being informed of the contents of this document, he/she executed the same voluntarily on the day the same bears date.
          Given under my hand and seal of office this the ____ day of _____, 2005

_____
Notary Public – State at Large
My Commission Expires. _____

## REQUEST FOR PRODUCTION PROPOUNDED TO DEFENDANTS
### INSTRUCTIONS

Pursuant to Rule 34 of the Alabama Rules of Civil Procedure the Plaintiffs by and

through their undersigned counsel, hereby submits this their first Request for Production of

Documents, and hereby demands that the Defendants produce, for the inspection and copying,

each of the documents requested herein within 45 days of service

In lieu of producing the documents required herein at a place to be agreed upon by the

parties, legible photocopies may be delivered to the office of Richardson Legal Center, L L C,

133 Hayneville Plaza or Post Office Box 971, Hayneville, Alabama 36040.

### DEFINITIONS

As used in this request, the term "document" is defined as including writings, recordings

photographs (including video tapes), as defined by Rule 1001 of the Alabama Rules of Evidence

### REQUEST FOR PRODUCTION

1      Please produce a copy of the signed policy of insurance issued to Godwin

Material Services, Inc., by Palomar Insurance Company/National Union Fire Insurance

2      Please produce a complete copy of the Plaintiff's accident file, insurance file,

and/or claims file, or any file maintained by you which contains information related to accidents,

claims and/or insurance for Ollie Godwin.

3      Please produce a copy of your investigator's report in reference to the Plaintiff's

claims

4.     Please produce all documents, reports, pictures, video recordings, witness

statements, notes, writings, memorandums, tape recordings of interviews with Palomar

Insurance, National Union Fire Insurance, and the Plaintiff, including but not limited to all

investigation reports, relating to the Plaintiff's claims of October/November 2003 and October 27, 2004

5    Please produce any/all documentation of claims, under the policy in question filed by other employees for the past two (2) years.

6    Please produce the name, address, and phone number of any expert witness retained by you in the defense of this case.

7    Please produce any and all documents, photographs, audio/video recordings or other evidence obtained by you, whether or not such evidence is intended to be introduced at the trial of this cause.

Foregoing discovery to Godwin Inc., respectfully submitted the 7th day of July, 2005

Arlene M. Richardson (RJC045)
Attorney for the Plaintiffs

RICHARDSON LEGAL CENTER, LLC
Post Office Box 971
Hayneville, Alabama 36040
Telephone: (334) 548-5660
Fax (334) 548-5661

5.    Please produce any and all documents, photographs, audio/video recordings or

other evidence obtained by you, whether or not such evidence is intended to be introduced at the

trial of this cause.

Foregoing discovery to Palomar Insurance Corporation respectfully submitted the 7th

day of *July* 2005.

Arlene M. Richardson (RIC045)
Attorney for the Plaintiffs

RICHARDSON LEGAL CENTER, LLC
Post Office Box 971
Hayneville, Alabama 36040
Telephone: (334) 548-5660
Fax: (334) 548-5661

3.    Please state the Title, name, address, phone number, and qualifications of the person who investigated the Plaintiff's claims

4.    Please state the specific date and time of the aforementioned investigations

5.    Please state the usual and customary procedure that Palomar Insurance uses to investigate and determine whether or not claims are paid.

6.    Please state the specific details as to how Palomar Insurance Corporation came to issue an Occupational Accident policy to Godwin Inc

7.    Please state the name, address, and phone number of each and every person who contacted Ollie Godwin and/or Godwin, Inc., in regards to the Plaintiff's claims

8.    Have you been advised that your answers are made under oath, and may be used as material testimony in the event of a hearing, and must be updated in writing if your aforementioned responses change?

_____
Signature of Person Answering Interrogatories

STATE OF ALABAMA                    )
COUNTY OF _____             )

    I, the undersigned authority, a Notary Public in and for said State and County, here by certify that _____, whose name is signed to the foregoing interrogatories, who known to me, acknowledged before me this day that, being informed of the contents of this document, he/she executed the same voluntarily on the day the same bears date.

    Given under my hand and seal of office this the ____ day of _____, 2005

_____
Notary Public – State at Large
My Commission Expires: _____

## REQUEST FOR PRODUCTION PROPOUNDED TO DEFENDANTS
### INSTRUCTIONS

Pursuant to Rule 34 of the Alabama Rules of Civil Procedure the Plaintiffs by and through their undersigned counsel, hereby submits this their first Request for Production of Documents, and hereby demands that the Defendants produce, for the inspection and copying each of the documents requested herein within 45 days of service.

In lieu of producing the documents required herein at a place to be agreed upon by the parties, legible photocopies may be delivered to the office of Richardson Legal Center, L L C 133 Hayneville Plaza or Post Office Box 971, Hayneville, Alabama 36040.

### DEFINITIONS

As used in this request, the term "document" is defined as including writings, recordings, photographs (including video tapes), as defined by Rule 1001 of the Alabama Rules of Evidence.

### REQUEST FOR PRODUCTION

1.     Please produce a copy of the signed policy of insurance issued to Goodwin Material Services, Inc.

2.     Please produce a copy of your investigator's report in reference to the Plaintiff's claims

3     Please produce all documents, reports, pictures, video recordings, witness statements, notes, writings, memorandums, tape recordings of interview with Plaintiff, or any and all other things including, but not limited to, all investigation reports, relating to the Plaintiff's claims of October/November 2003 and October 27, 2004

4     Please produce the name, address, and phone number of any expert witness retained by you in the defense of this case.

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY

OLLIE GODWIN,            )
                                 )
        PLAINTIFF,     )
                                 )
V.                           )   **CASE NO: CV05-69**
                                 )
NATIONAL UNION FIRE INSURANCE)
COMPANY OF PITTSBURGH, INC.,  )
ET AL.,                     )
                                 )
        DEFENDANTS.   )
                                 )

*RECEIVED AUG 2005 ANN W. TATE CIRCUIT CLERK* (stamp)

## NOTICE TO CIRCUIT CLERK AND PLAINTIFF FILING NOTICE OF REMOVAL

TO:    Circuit Court Clerk of Crenshaw County
       P.O. Box 167
       Luverne, Alabama 36049

       Arlene M. Richardson
       RICHARDSON LEGAL CENTER, LLC
       P.O. Box 971
       Hayneville, Alabama 36040-0971

**YOU ARE HEREBY NOTIFIED** of the filing of a Notice of Removal to the United States District Court for the Middle District of Alabama Northern Division, in the case of <u>Ollie Godwin v. National Union Fire Insurance Company of Pittsburgh, Inc., et al.</u>, being Civil Action Number: CV05-69, in the Circuit Court of Crenshaw County, Alabama, in accordance with the provisions of 28 USC §1446. A copy of the Notice of Removal is attached hereto as **Exhibit 1**.

DATED this the _12th_ day of _August_, 2005.

_Michelle R. Crunk_

John W. Dodson (DOD 012)
Michelle L. Crunk (CRU 017)
Attorneys for AIG d/b/a National Union Fire
Insurance Company of Pittsburgh, Inc., Palomar
Insurance Corporation, and Godwin Material
Services, Inc.

OF COUNSEL:

FERGUSON FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243

## CERTIFICATE OF SERVICE

This is to certify that on this the _12th_ day of _August_ , 2005, a copy of the forgoing document has been served upon counsel for all parties to this proceeding by the following method:

    ✓        mailing the same by first-class United States mail, properly addressed and postage pre-paid

_____ hand delivery

_____ via facsimile

Arlene M. Richardson
RICHARDSON LEGAL CENTER, LLC
P.O. Box 971
Hayneville, Alabama  36040-0971
_Attorney for Plaintiff_

_Michelle R Crunk_

OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| OLLIE GODWIN, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | )    CASE NO: _____ |
| | ) |
| NATIONAL UNION FIRE INSURANCE | )    From Circuit Court of Crenshaw County |
| COMPANY OF PITTSBURGH, INC., | )    Case No:  CV05-69 |
| ET AL., | ) |
| | ) |
| DEFENDANTS. | ) |
| | ) |

## NOTICE OF REMOVAL

COMES NOW, pursuant to 28 U.S.C. § 1446, the Defendant AIG d/b/a National Union

Fire Insurance Company of Pittsburgh, Inc. ("National") and respectfully files this Notice of

Removal to remove this civil action from the Circuit Court of Crenshaw County, Alabama,

wherein it was filed as CV-05-69, to the United States District Court for the Middle District of

Alabama, Northern Division, and, in support thereof, shows unto this Honorable Court as

follows:

1.    As detailed in this Notice of Removal, the Plaintiff's claims against the non-

diverse Defendants Palomar Insurance Corporation ("Palomar") and Godwin Material Services,

Inc. ("Godwin") fail as a matter of law; they are consequently fraudulently joined.  As a result,

this civil action is properly removed based on diversity of citizenship.

2.    On or about July 12, 2005, the Plaintiff filed a Complaint in the Circuit Court of

Crenshaw County, Alabama, in the civil action styled Ollie Godwin v. Palomar Insurance

Corporation, et al., Civil Action No. 05-69.  A true and correct copy of all process and pleadings

1

in this matter is attached hereto as **Exhibit A**. The Complaint states only claims of bad faith and breach of contract.

3.      The Summons and Complaint were served upon National on July 14, 2005. Both Palomar and Godwin were served the same day.

4.      This action could have been filed in this Court, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the Plaintiff and the properly joined Defendant and the amount in controversy more likely than not exceeds the sum of $75,000, exclusive of interest and costs.

## DIVERSITY OF CITIZENSHIP

5.      Upon information and belief, the Plaintiff is a resident of Crenshaw County, Alabama. See Complaint at ¶ 1.

6.      National is incorporated in the State of Pennsylvania with its principal place of business in New York. As a result, National is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of Alabama within the meaning of the Acts of Congress relating to the removal of cases.

7.      Palomar is an Alabama corporation. It sold the National policy to Godwin. See Complaint ¶¶ 2 & 6.

8.      Godwin is an Alabama corporation. It is the owner of the insurance policy which is made the basis of this case. See Complaint ¶ 4.

9.      Although the Complaint alleges the Palomar and Godwin are residents of the State of Alabama, their joinder does not preclude diversity jurisdiction because both Palomar and Godwin were fraudulently joined in this action. When a defendant has been fraudulently joined, the court should disregard its citizenship for purposes of determining whether a case is

2

removable based on diversity of citizenship.  See, e.g., Owens v. Life Insurance Co. of Georgia,

289 F. Supp. 2d 1319 (M.D. Ala. 2003); Tapscott v. MS Dealer Service Corp.  77 F.3d 1353,

1360 (11th Cir. 1996) overruled on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069

(11th Cir. 2000).

     10.    Fraudulent joinder exists in three situations:

> The first is when there is no possibility that the plaintiff can prove a cause
> of action against the resident (non-diverse) defendant ... The second is
> when there is outright fraud in the plaintiff's pleading of jurisdictional
> facts ... [A third situation arises] where a diverse defendant is joined with
> a nondiverse defendant as to whom there is no joint, several or alternative
> liability and where the claims against the diverse defendant has no real
> connection to the claim against the nondiverse defendant.

Id. at 1323-24, quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).

     11.    There is no possibility the Plaintiff can prove a cause of action against Palomar or

Godwin; therefore, they have been fraudulently joined.  The Plaintiff's claims are solely for bad

faith and breach of contract.  Although Palomar and Godwin are named as defendants, this case

involves National's denial of benefits subsequent to the Plaintiff's submission of claims for

benefits under a occupational accident policy issued by National.  The Plaintiff's claims against

Palomar and Godwin are contrived to avoid federal court jurisdiction.

     12.    The law is clear in Alabama; an insurance agent cannot be held liable for breach

of an insurance contract or bad faith because the agent is not a party to the insurance contract.

See Owens; Bullock v. United Benefit Ins. Co., 165 F. Supp. 2d 1255, 1257 (M.D. Ala. 2001)

and Ligon Furniture Co., Inc. v. O.M. Hughes Ins. Inc., 551 So. 2d 283 (Ala. 1989).  The

existence of a contractual relationship is a prerequisite to maintaining a claim for breach of

contract or bad faith.  See Employees' Benefit Ass'n v. Grissett, 732 So. 2d 968, 975 (Ala.

1998) (holding under Alabama law, in order to establish a breach of contract, a plaintiff must

3

prove: (1) **the existence of a valid contract binding the parties in the action;** (2) his own performance under the contract; (3) the defendant's non performance; and (4) damages.) (emphasis added); <u>State Farm Fire & Casualty Co. v. Slade</u>, 747 So. 2d 293, 304 (Ala. 1999) (holding under Alabama law, in order to establish a claim for bad faith, a plaintiff must **prove an insurance contract between the parties and a breach thereof by the defendant;** (2) an intentional refusal to pay the insured's claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal; (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason) (emphasis added).  Therefore a breach of contract or bad faith claim may not be maintained against Palomar because it was the agent to the insurance contract and it does not have the requisite contractual relationship with the Plaintiff.

13.    Likewise, a breach of contract or bad faith claim cannot be maintained against Godwin because the insurance contract made the basis of this suit is not between Godwin and the Plaintiff.  As stated above, in order to maintain an action for breach of contract or bad faith, there must be a contract binding the parties.  There is no insurance contract binding Godwin and the Plaintiff.  As admitted by the Plaintiff in the Complaint, Godwin is the policy owner, not the insurer.  Thus no breach of contract or bad faith claim can be maintained against Godwin.

14.    The Plaintiff maintains in his Complaint that Godwin "is joined pursuant to Rule 19(a) of the *Alabama Rules of Civil Procedure*...."  <u>See</u> Complaint ¶ 4.  However, there is no reason under Rule 19(a) that Godwin must be joined in the action.  Rule 19(a) states:

> A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

4

obligations by reason of the claimed interest.

ALA. R. CIV. P. 19(a). Complete relief can be accorded between the Plaintiff and National without the joinder of Godwin and Godwin claims no interest in this action. Therefore, Rule 19(a) is inapplicable to the present action and cannot be used as a reason for the Plaintiff to join Godwin and destroy diversity.

15. Although Plaintiff attempts to destroy diversity by naming Palomar and Godwin as defendants to his breach of contract and bad faith lawsuit against National, it is clear from the face of the Complaint the entire cause of action arises out of National's alleged **breach of the insurance contract**. For example, Count I alleges National, Palomar and Godwin "intentionally refused to pay the Plaintiff's claims **pursuant to the terms of the policy.**" Complaint ¶ 23. Count II states a claim against all defendants also arising out of the failure and refusal to "fully perform their **part of the contract/policy.**" Complaint ¶ 35.

## AMOUNT IN CONTROVERSY

16. In order to meet the $75,000 jurisdictional threshold in a case with an unspecified claim for damages, Defendant need show only "the amount in controversy more likely than not exceeds the [now $75,000] jurisdictional requirement." Owens, 289 F. Supp. 2d at 1327 quoting Tapscott, 77 F.3d at 1357.

17. In his Complaint, the Plaintiff's Complaint seeks $59,581.44 in compensatory damages as well as punitive damages.

18. Prospective punitive damages must be considered in any calculation of the amount in controversy. See Holley Equipment Co. v. Credit Alliance Corp., 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such

5

cannot be recovered.") (internal citations omitted); Bell v. Preferred Life Assurance Soc'y, 320

U.S. 238, 240 (1943) (claims for compensatory and punitive damages should be aggregated to

determine jurisdictional amount in controversy).

19.    "In determining whether the jurisdictional level has been met, this Court may look

for guidance to recent decisions rendered in cases on the same type of suit." Bolling v. Union

National Life Insurance Co., 900 F. Supp. 400, 404 (M.D. Ala 1995).  Professor George Priest of

Yale Law School has conducted an "analysis of Alabama jury verdicts of punitive damages

against out-of-state insurance companies." Davis v. Franklin Life Insurance Co., 71 F. Supp. 2d

1197, 1199 (M.D. Ala. 1999).  In his analysis, Professor Priest "concluded that, even after BMW

v. Gore, the average punitive damage award affirmed by the Alabama Supreme Court is

$874,667." Id.; see also Jackson v. American Bankers Insurance Co. of Florida, 976 F. Supp.

1450, 1452 (S.D. Ala. 1997) (citing similar earlier analysis by Professor Priest).

20.    For the foregoing reasons, it is more likely than not that the jurisdictional amount

for diversity jurisdiction is met in this case.

21.    If any question arises as to the existence of the requisite amount in controversy,

then National requests the opportunity to submit post-removal evidence in accordance with the

procedure adopted by the Eleventh Circuit.  See Sierminski v. Transouth Financial Corp., 216

F.3d 945, 949 (11th Cir. 2000).  In affirming the denial of Plaintiff's motion to remand, the

Eleventh Circuit held that the district court properly considered Defendant's post-removal

evidence including Defendant's requests for admission directed to the amount in controversy.

The Eleventh Circuit explained, "[w]e align ourselves with our sister circuits in adopting a more

flexible approach, allowing the district court when necessary to consider post-removal evidence

in assessing removal jurisdiction." Id.

6

## THE OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED

22.    Because this Notice of Removal is filed within thirty days of service of the Complaint upon the first served Defendant, it is timely under 28 U.S.C. §1446(b).

23.    All properly joined and served Defendants join in and consent to this removal. "For purposes of removal, the court does not consider the citizenship of fictitious defendants in assessing complete diversity." Owens, 289 F. Supp. 2d at 1322 n.2. All other parties, National, Palomar and Godwin, join in this notice of removal.

24.    National, Palomar and Godwin have sought no similar relief with respect to this matter.

25.    The prerequisites for removal under 28 U.S.C. §1441 have been met.

26.    Written notice of the filing of this Notice of Removal will be given to the adverse party as required by law.

27.    A Notice of Filing Notice of Removal, with a copy of this Notice of Removal attached, will be filed simultaneously with the Circuit Court Clerk for the Circuit Court of Crenshaw County.

28.    The allegations of this notice are true and correct, this cause is within the jurisdiction of the United States District Court for the Middle District of Alabama, and this cause is removable to the United States District Court for the Middle District of Alabama.

29.    If any question arises as to the propriety of the removal of this action, National requests the opportunity to present a brief and oral argument in support of its position this case is removable.

WHEREFORE, National, Palomar and Godwin, desiring to remove this case to the United States District Court for the Middle District of Alabama, Northern Division, being the

7

district and division of said Court for the County in which said action is pending, pray that the

filing of this Notice of Removal shall effect the removal of said suit to this Court.

Respectfully submitted,

*Michelle L. Crunk*

John W. Dodson (DOD 012)
Michelle L. Crunk (CRU 017)
Attorneys for AIG d/b/a National Union Fire
Insurance Company of Pittsburgh, Inc., Palomar
Insurance Corporation, and Godwin Material
Services, Inc.

OF COUNSEL:

FERGUSON FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243

## CERTIFICATE OF SERVICE

This is to certify that on this the 12<u>th</u> day of <u>August</u>, 2005 a copy of the foregoing
document has been served upon counsel for all parties to this proceeding via United States Mail:

Arlene M. Richardson
RICHARDSON LEGAL CENTER, LLC
P.O. Box 971
Hayneville, Alabama  36040-0971

*Michelle L. Crunk*

OF COUNSEL

COPY SENT VIA U.S. MAIL TO:
Circuit Court Clerk of Crenshaw County
P.O. Box 167
Luverne, Alabama  36049

8

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN )
)
Plaintiff, )
)
v. )       Case No.: CV-05-69
)
PALOMAR INSURANCE CORPORATION, )
AIG d/b/a NATIONAL UNION FIRE )
INSURANCECOMPANY OF PITTSBURGH, )
INC., GODWIN MATERIAL )
SERVICES, INC., and FICTITIOUS )
DEFENDANTS, A, B, and C, Being those )
persons, firms, corporations, )
and/or any other entity responsible for or )
which carried out the acts and/or )
omissions herein complained of with )
respect to Plaintiff, whose names or )
identities are otherwise unknown at this )
time, but which will be added )
by amendment when ascertained. )
)
Defendant. )

### SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

Notice To:    **PALOMAR INSURANCE CORP.**
**C/O GEORGE W. SKIPPER, III, REGISTERED AGENT**
**4525 EXECUTIVE PARK DRIVE**
**MONTGOMERY, AL 36116-1601**

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

THIS ANSWER MUST
DATE OF DELIVERY OF THI
RECEIPT, OR A JUDGMENT I
OR OTHER THINGS DEMAND
OF YOUR ANSWER WITH
THEREAFTER.

CV-05-69

SENDER: COMPLETE THIS SECTION / COMPLETE THIS SECTION ON DELIVERY

Article Addressed to:
Palomar Ins. Corp
c/o Geo. W. Skipper III
4525 Executive Dr
Montgomery AL 36116-1601

2. Article Number
(Transfer from service label) 7003 0500 0004 3006 4185

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN            )
                                )
    Plaintiff,           )
                                )
v.                    )    Case No.: _CV-05-69_
                                )
PALOMAR INSURANCE CORPORATION,  )
AIG d/b/a NATIONAL UNION FIRE  )
INSURANCECOMPANY OF PITTSBURGH,  )
INC., GODWIN MATERIAL  )
SERVICES, INC., and FICTITIOUS  )
DEFENDANTS, A, B, and C, Being those  )
persons, firms, corporations,  )
and/or any other entity responsible for or  )
which carried out the acts and/or  )
omissions herein complained of with  )
respect to Plaintiff, whose names or  )
identities are otherwise unknown at this  )
time, but which will be added  )
by amendment when ascertained.  )
                                )
    Defendant.           )

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

Notice To:    **NATIONAL UNION FIRE INSURANCE COMPANY**
                    **C/O CSC LAWYERS INCORPORATING SERVICE, INC., AGENT**
                    **57 ADAMS AVENUE**
                    **MONTGOMERY, AL 36104-4001**

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

THIS ANSWER MUS[T]
DATE OF DELIVERY OF [THE]
RECEIPT, OR A JUDGMEN[T]
OR OTHER THINGS DEMA[NDED]
OF YOUR ANSWER WIT[H]
THEREAFTER.

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

National Union Fire Ins
C/o CSC Lawyers Inc Srv.
57 Adams Ave
MonTgomery AL 36104-4001

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ □ Agent / □ Addressee
B. Received by ( Printed Name )    C. Date of Delivery
JAMES R. BRILAMY
Agent for Capell & Howard, P.C.

D. Is delivery address different from item 1? □ Yes
   If YES, enter delivery address below: □ No

3. Service Type
☒ Certified Mail    □ Express Mail
□ Registered    □ Return Receipt for Merchandise
□ Insured Mail    □ C.O.D.
4. Restricted Delivery? (Extra Fee)    □ Yes

2. Article Number

# IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN       )

 Plaintiff,        )
            )
            )
v.            )  Case No.: *CV-05-69*
            )
PALOMAR INSURANCE CORPORATION, )
AIG d/b/a NATIONAL UNION FIRE   )
INSURANCE COMPANY OF PITTSBURGH, )
INC., GODWIN MATERIAL     )
SERVICES, INC., and FICTITIOUS   )
DEFENDANTS, A, B, and C, Being those )
persons, firms, corporations,     )
and/or any other entity responsible for or )
which carried out the acts and/or   )
omissions herein complained of with  )
respect to Plaintiff, whose names or  )
identities are otherwise unknown at this )
time, but which will be added    )
by amendment when ascertained.   )
            )
 Defendant.        )

## SUMMONS

 This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney, pursuant to the Alabama Rules of Civil Procedure.

Notice To:  **GODWIN MATERIALS SERVICE, INC.**
     **C/O LORENZO GODWIN, REGISTERED AGENT**
     **P.O. BOX 12**
     **BRANTLEY, AL 36009**

 The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

   Richardson Legal Center, LLC

THIS ANSWER MUST
DATE OF DELIVERY OF T
RECEIPT, OR A JUDGMENT
OR OTHER THINGS DEMA
OF YOUR ANSWER WITH
THEREAFTER.

*CV-05-69*

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

 Godwin Materials Services
 C/o Lorenzo Godwin
 P. O. Box 12
 Brantley AL 36009

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X _____ Annie Godwin_____ □ Agent / □ Addressee
B. Received by (Printed Name) C. Date of Delivery
 Annie Godwin
D. Is delivery address different from item 1? □ Yes
 If YES, enter delivery address below: □ No

3. Service Type
□ Certified Mail □ Express Mail
□ Registered □ Return Receipt for Merchandise
□ Insured Mail □ C.O.D.

4. Restricted Delivery? (Extra Fee) □ Yes

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN              )

                        )

    Plaintiff,           )

                        )    Case No.: _CV-05-69_

v.                  )

                        )

PALOMAR INSURANCE CORPORATION,  )

AIG d/b/a NATIONAL UNION FIRE   )

INSURANCE COMPANY OF PITTSBURGH,  )

INC., GODWIN MATERIAL        )

SERVICES, INC., and FICTITIOUS   )

DEFENDANTS, A, B, and C, Being those )

persons, firms, corporations,        )

and/or any other entity responsible for or )

which carried out the acts and/or    )

omissions herein complained of with   )

respect to Plaintiff, whose names or   )

Identities are otherwise unknown at this )

time, but which will be added      )

by amendment when ascertained.    )

                        )

    Defendant.          )



RECEIVED
JUL 2005
[...] TATE
CIRCUIT CLERK

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, Ollie Godwin, by and through the undersigned attorney of record, and would show this Honorable court as follows:

### PARTIES

1.    The Plaintiff, Ollie Godwin, is over the age of nineteen years and is a resident of Crenshaw County, Alabama. Hereafter referred to as Plaintiff.

2.    Defendant, Palomar Insurance Corporation, is a duly licensed Corporation doing business in Alabama, with offices in Montgomery, Alabama, through its agents/agencies. including Crenshaw County. It is in the business of providing Alabama businesses with Occupational Accident insurance. Hereafter referred to as Defendant Palomar

3       Defendant, AIG d/b/a National Union Insurance Company, is duly licensed with the Alabama Secretary of State as a corporation doing business in Alabama including Montgomery County and Crenshaw County, Alabama and is the corporation underwriter for the Palomar Occupational Accident policy that is made the basis of this complaint

4.      Defendant, Godwin Material Services Inc., a duly licensed Corporation doing business in Crenshaw County Alabama, is joined pursuant to Rule 19(a) of the *Alabama Rules of Civil Procedure* and is the owner of the insurance policy which is made the basis of this complaint. Hereafter referred to as Godwin Inc.

5.      Defendants A, B, and C are underwriters for Defendant Palomar Insurance Corporation, employees, and/or agents of Palomar Insurance Corporation, doing business in Alabama, including Crenshaw County, Alabama and committed acts complained of herein and will be named and added appropriately when known.

## STATEMENT OF FACTS

6.      Godwin Inc., purchased an Occupational Accident Insurance Policy from Palomar Insurance Corporation (hereinafter referred to as Palomar) to insure their truck drivers, including Plaintiff, Ollie Godwin.  Policy number 9056434 is underwritten by AIG d/b/a National Union Insurance Company. (Hereinafter referred to as AIG/National)  Copy of Policy 9056431 is attached as Exhibit A.

7       The Policy became effective on May 01, 2003 and renewed on the anniversary date for years 2004 and 2005.  The Occupational Policy was such that the policy would renew every year.

8.      Plaintiff was a truck driver for Godwin Inc., and was insured under the terms of the aforementioned policy.

9    Plaintiff was paying premiums that were deducted by Godwin Inc., from his checks on a regular basis.

10.    Said premiums were paid pursuant to the terms of the policy.

11.    On or about October/November 2003 the Plaintiff suffered an occupational injury that resulted in the Plaintiff having surgery for hernia. Said Policy 9056434 has a special Hernia Coverage Rider and, pursuant to the policy terms, said injury should have been covered

12.    Plaintiff was under dispatch at the time of his injury and Godwin Inc., wrote to AIG/National and reported that the Plaintiff was under dispatch.

13.    AIG/National ignored Godwin Inc., request and classified the Plaintiff's injury as non-occupational and did not pay his claim pursuant to the occupational classification under the policy.

14.    Plaintiff on or about October 27, 2004 was again injured while on dispatch. Said injury to his knee and hip has resulted in collapse of his left hip which required surgery

15.    Again, AIG/National has refused to pay any of the Plaintiff's expenses relating to his injury of October 27, 2004 pursuant to the occupational accident Policy number 9056434

16    The Defendants, as of the date of this complaint, have failed and/or refuse to compensate the Plaintiff pursuant to all terms of the policy.

17.    The Defendants, as of May 01, 2005, have refused to renew/cover the Plaintiff under the policy.

### COUNT I
### BAD FAITH

18.    Plaintiff repeats, realleges and incorporates by reference all of the preceding allegations of this Complaint, as if more fully set out herein.

19.    That on or about the October/November 2003 and October 27, 2004 the Plaintiff was injured in two separate accidents while he was on dispatch for Godwin Inc

20.    Plaintiff timely gave Defendant Palomar, AIG/National, Godwin Inc and Fictitious Defendants A, B, and C notice of both injuries, pursuant to the terms under said po and made claims for benefits thereunder.

21    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A B and C did pay some of the Plaintiff's expenses on his injury of October/November 2003, bu classified his injury as non-occupational whereby they would not be required to pay as much as if the injury had been classified as occupational.

22.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A B and C have intentionally refused to pay any of the Plaintiff's expenses pertaining to his injury of October 27, 2004.

23.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A B and C intentionally refused to pay the Plaintiff's claims pursuant to the terms of the policy a correspondence dated February 27, 2004 pertaining to his October/November 2003 injury and correspondence dated February 19, 2005 pertaining to the Plaintiff's October 27, 2004 injury and has denied the Plaintiff's claims without lawful justification

24.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A B and C's refusal to pay said claims was not based upon any reasonably legitimate, arguable or debatable reason.

25.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A B and C knew that there was no legitimate, arguable or debatable reason for denying the claims when Defendants refused to pay said claims.

26.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C intentionally failed to investigate the claim to determine whether or not there was a lawful basis for its refusal to pay said claim.

27    Defendant Palomar, AIG/National, Godwin, Inc., and Fictitious Defendants A and C's determination that the Plaintiff's injury of October/November 2003 was a non occupational injury and that the Plaintiff's October 27, 2004 injury was caused by an underlying medical condition and not occupational related are false and unsubstantiated.

28.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B and C acted in bad faith in refusing to pay Plaintiff's claims.

29.    Plaintiff claims punitive damages of Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C.

30.    Because of Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C's refusal to pay, the Plaintiff has been damaged and caused to suffer in that he has had to bear all medical costs associated with his injuries, the Plaintiff was not paid his disability benefits due under the policy, and the Plaintiff has not, otherwise, been compensated pursuant to the terms of the policy for which he has been paying premiums.

## COUNT II
## BREACH OF CONTRACT

31    Plaintiff repeats, realleges and incorporates by reference all of the preceding allegations of this Complaint, as if more fully set out herein.

32.    That on or about May 01, 2003 and May 01, 2004 Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C renewed the Plaintiff's Occupational Accident Policy which covered the Plaintiff in the event of occupational accidents

33    That Policy Number 9056434, drafted by Defendant Palomar, AIG/National

Godwin Inc , and Fictitious Defendants A, B, and C and issued to Godwin Inc., and the Plaint tl

is a written contract of insurance between the Plaintiff and Defendant Palomar, AIG/National

Godwin Inc., and Fictitious Defendants A, B, and C in which they agreed to certain stipulat  s

and requirements of each party, i.e., Plaintiff would pay the monthly premiums and adhere to

certain requirements in the event of a claim and Defendant Palomar, AIG/National, Godwin I

and Fictitious Defendants A, B, and C would pay for losses pursuant to the terms of  e

contract/policy. A copy of the policy is herewith attached as Exhibit A.

34.    Plaintiff has performed all of the stipulations, conditions, requirements, and

agreements pursuant to the terms of the contract/policy.

35.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A  B

and C has failed and refused, and continues to fail and refuse, to fully perform their part of the

contract/policy.

36.    Due to Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants

A, B, and C's failure to perform, the Plaintiff has been damaged and caused to suffer in that he

has had to bear the cost of extensive medical treatment, was not paid his disability benefits  e

him, has lost time from work which has caused him financial hardship, and he has not be

otherwise compensated pursuant to the terms of the policy.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment, b  a

fair and impartial jury, against Defendant Palomar, AIG/National, Godwin Inc , and Fictitious

Defendants A, B, and C for compensatory damages in the amount of the $59,581.44 and puni  e

damages in an amount to be determined by a jury plus all costs associated with this legal acti

Respectfully submitted this 7 day of July 2005

_OLLIE Godwin_
OLLIE GODWIN, PLAINTIFF

_Arlene M. Richardson_
ARLENE M. RICHARDSON (RIC045)

RICHARDSON LEGAL CENTER, LLC
Post Office Box 971
Hayneville, Alabama 36040
Phone. (334) 548-5660
Fax   (334) 548-5661

7

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

| | |
|---|---|
| OLLIE GODWIN | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No.: *CV-05-69* |
| | ) |
| PALOMAR INSURANCE CORPORATION, | ) |
| AIG d/b/a NATIONAL UNION FIRE | ) |
| INSURANCE COMPANY OF PITTSBURGH, | ) |
| INC., GODWIN MATERIAL | ) |
| SERVICES, INC., and FICTITIOUS | ) |
| DEFENDANTS, A, B, and C, Being those | ) |
| persons, firms, corporations, | ) |
| and/or any other entity responsible for or | ) |
| which carried out the acts and/or | ) |
| omissions herein complained of with | ) |
| respect to Plaintiff, whose names or | ) |
| identities are otherwise unknown at this | ) |
| time, but which will be added | ) |
| by amendment when ascertained. | ) |
| | ) |
| Defendant. | ) |

### PLAINTIFF'S FIRST REQUEST FOR INTERROGATORIES, and
### FIRST REQUEST FOR PRODUCTION,
### PROPOUNDED TO DEFENDANT, PALOMAR INSURANCE CORPORATION

COMES NOW, the Plaintiff, by and through his attorney of record, and pursuant to Rule

33, 34 and 36 of the Alabama Rules of Civil Procedure, hereby request that the Defendants

answer the following interrogatories and request for admissions in writing and under oath and to

produce all requested production within thirty (45) days from the receipt thereof.

### INSTRUCTIONS

A.     All information is to be divulged which is in your possession or within your

knowledge including information in the possession of your attorneys, agents, employees or other

representatives of you and or your employer.

B.     Where an individual interrogatory calls for an answer, which involves more than one part, each part of the answer should be clearly set out so that it is understandable. If any of the interrogatories cannot be answered in full, please answer to the extent possible and submit any supplemental information as soon as it is available.

C     If you lack the information necessary to answer any interrogatories, please describe what efforts were made by you or anyone on your behalf to ascertain the information and state as definitely as possible when you anticipate obtaining the information and supplementing your response.

D.     These interrogatories are intended as continuing interrogatories, requiring you to answer by supplementing any of your answers, setting forth any information within the scope of the interrogatories as may be required by you, your attorneys, agents, representatives or employer, subsequent to your original answers. Such supplemental responses are to be filed and served upon the Plaintiff within fifteen (15) days of receipt of such information, but no later than the time of trial.

1.     Please state the name, address, phone number, title and association to the Defendant, Palomar Insurance Corporation of the person answering these interrogatories

2.     Please state, in specific detail, the steps taken to determine the cause of the Plaintiff's injuries of October/November 2004 and October 27, 2004

# IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

| | |
|---|---|
| OLLIE GODWIN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: _CV-05-69_ |
| | ) |
| PALOMAR INSURANCE CORPORATION, | ) |
| AIG d/b/a NATIONAL UNION FIRE | ) |
| INSURANCE COMPANY OF PITTSBURGH, | ) |
| INC., GODWIN MATERIAL | ) |
| SERVICES, INC., and FICTITIOUS | ) |
| DEFENDANTS, A, B, and C, Being those | ) |
| persons, firms, corporations, | ) |
| and/or any other entity responsible for or | ) |
| which carried out the acts and/or | ) |
| omissions herein complained of with | ) |
| respect to Plaintiff, whose names or | ) |
| identities are otherwise unknown at this | ) |
| time, but which will be added | ) |
| by amendment when ascertained. | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S FIRST REQUEST FOR INTERROGATORIES, and FIRST REQUEST FOR PRODUCTION, PROPOUNDED TO DEFENDANT, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, INC.

COMES NOW, the Plaintiff, by and through his attorney of record, and pursuant to Rule 33, 34 and 36 of the Alabama Rules of Civil Procedure, hereby request that the Defendants answer the following interrogatories and request for admissions in writing and under oath and to produce all requested production within thirty (45) days from the receipt thereof.

## INSTRUCTIONS

A.     All information is to be divulged which is in your possession or within your knowledge including information in the possession of your attorneys, agents, employees or other representatives of you and or your employer.

1

B        Where an individual interrogatory calls for an answer, which involves more than one part, each part of the answer should be clearly set out so that it is understandable. If any of the interrogatories cannot be answered in full, please answer to the extent possible and supply any supplemental information as soon as it is available.

C.        If you lack the information necessary to answer any interrogatories, please describe what efforts were made by you or anyone on your behalf to ascertain the information and state as definitely as possible when you anticipate obtaining the information and supplementing your response.

D        These interrogatories are intended as continuing interrogatories, requiring you to answer by supplementing any of your answers, setting forth any information within the scope of the interrogatories as may be required by you, your attorneys, agents, representatives or employer, subsequent to your original answers. Such supplemental responses are to be filed and served upon the Plaintiff within fifteen (15) days of receipt of such information, but no later than the time of trial.

1.        Please state the name, address, phone number, title and association to the Defendant, National Union Fire Insurance Company of Pittsburgh, Inc., of the person answering these interrogatories.

2        Please state, in specific detail, the steps taken to determine the cause of the Plaintiff's injuries of October/November 2004 and October 27, 2004.

3.    Please state the Title, name, address, phone number, and qualifications of the person who investigated the Plaintiff's claims.

4     Please state the specific date and time of the aforementioned investigations

5     Please state the usual and customary procedure that National Union Fire Insurance Company of Pittsburgh Inc., uses to investigate and determine whether or not claims are paid

6.    Please state the specific details as to how National Union Fire Insurance Company of Pittsburgh Inc., came to issue an Occupational Accident policy to Godwin Inc.

7.    Please state the name, address, and phone number of each and every person who contacted Ollie Godwin and/or Godwin, Inc., in regards to the Plaintiff's claims.

8.    Have you been advised that your answers are made under oath, and may be used as material testimony in the event of a hearing, and must be updated in writing if your aforementioned responses change?

_____

Signature of Person Answering Interrogatories

**STATE OF ALABAMA**                    )
**COUNTY OF _____**          )

    I, the undersigned authority, a Notary Public in and for said State and County, hereby certify that _____, whose name is signed to the foregoing interrogatories, who is known to me, acknowledged before me this day that, being informed of the contents of this document, he/she executed the same voluntarily on the day the same bears date.

    Given under my hand and seal of office this the _____ day of _____, 2005

_____

Notary Public – State at Large
My Commission Expires. _____

4

## REQUEST FOR PRODUCTION PROPOUNDED TO DEFENDANTS
## INSTRUCTIONS

Pursuant to Rule 34 of the Alabama Rules of Civil Procedure the Plaintiffs by and through their undersigned counsel, hereby submits this their first Request for Production of Documents, and hereby demands that the Defendants produce, for the inspection and copying each of the documents requested herein within 45 days of service.

In lieu of producing the documents required herein at a place to be agreed upon by the parties, legible photocopies may be delivered to the office of Richardson Legal Center, LLC, 133 Hayneville Plaza or Post Office Box 971, Hayneville, Alabama 36040.

### DEFINITIONS

As used in this request, the term "document" is defined as including writings, recordings, photographs (including video tapes), as defined by Rule 1001 of the Alabama Rules of Evidence

### REQUEST FOR PRODUCTION

1     Please produce a copy of the signed policy of insurance issued to Godwin Material Services, Inc.

2     Please produce a copy of your investigator's report in reference to the Plaintiff's claims

3.     Please produce all documents, reports, pictures, video recordings, witness statements, notes, writings, memorandums, tape recordings of interview with Plaintiff, or any and all other things including, but not limited to, all investigation reports, relating to the Plaintiff's claims of October/November 2003 and October 27, 2004.

4.     Please produce the name, address, and phone number of any expert witness retained by you in the defense of this case.

5    Please produce any and all documents, photographs, audio/video recordings or other evidence obtained by you, whether or not such evidence is intended to be introduced at the trial of this cause.

Foregoing discovery to National Union Fire Insurance Company of Pittsburgh is respectfully submitted the 7th day of July 2005

*Arlene M. Richardson*
Arlene M. Richardson (RIC045)
Attorney for the Plaintiffs

RICHARDSON LEGAL CENTER, LLC
Post Office Box 971
Hayneville, Alabama 36040
Telephone. (334) 548-5660
Fax  (334) 548-5661

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN                                    )
                                                )
    Plaintiff,                                  )
                                                )
v.                                              )     Case No.: _CV-05-69_
                                                )
PALOMAR INSURANCE CORPORATION,                  )
AIG d/b/a NATIONAL UNION FIRE                   )
INSURANCE COMPANY OF PITTSBURGH,                )
INC., GODWIN MATERIAL                           )
SERVICES, INC., and FICTITIOUS                  )
DEFENDANTS, A, B, and C, Being those            )
persons, firms, corporations,                   )
and/or any other entity responsible for or      )
which carried out the acts and/or               )
omissions herein complained of with             )
respect to Plaintiff, whose names or            )
identities are otherwise unknown at this        )
time, but which will be added                   )
by amendment when ascertained.                  )
                                                )
    Defendant.                                  )

### PLAINTIFF'S FIRST REQUEST FOR INTERROGATORIES, and
### FIRST REQUEST FOR PRODUCTION,
### PROPOUNDED TO DEFENDANT, GODWIN MATERIALS SERVICE, INC.

COMES NOW, the Plaintiff, by and through his attorney of record, and pursuant to Rule

33, 34 and 36 of the Alabama Rules of Civil Procedure, hereby request that the Defendants

answer the following interrogatories and request for admissions in writing and under oath and to

produce all requested production within thirty (45) days from the receipt thereof

### INSTRUCTIONS

A.     All information is to be divulged which is in your possession or within your

knowledge including information in the possession of your attorneys, agents, employees or other

representatives of you and or your employer.

B.    Where an individual interrogatory calls for an answer, which involves more than one part, each part of the answer should be clearly set out so that it is understandable. If all of the interrogatories cannot be answered in full, please answer to the extent possible and submit any supplemental information as soon as it is available.

C.    If you lack the information necessary to answer any interrogatories, please describe what efforts were made by you or anyone on your behalf to ascertain the information and state as definitely as possible when you anticipate obtaining the information and supplementing your response.

D.    These interrogatories are intended as continuing interrogatories, requiring you to answer by supplementing any of your answers, setting forth any information within the scope of the interrogatories as may be required by you, your attorneys, agents, representatives or employer, subsequent to your original answers. Such supplemental responses are to be filed and served upon the Plaintiff within fifteen (15) days of receipt of such information, but no later than the time of trial.

1    Please state the name, address, phone number, title and association to the Defendant, Godwin Inc., of the person answering these interrogatories.

2.    Please state, in specific detail, any information you have as to how Palomar Insurance and National Union Fire Insurance investigated the Plaintiff's claims, i.e. phone call, conversation, questionnaires, correspondence with either of the aforementioned insurance companies. Include dates and details of conversations, questionnaires, and/or correspondence

3.    Please state the Title, name, address, phone number, and qualifications of all persons/agents of Palomar Insurance and/or National Union Fire Insurance who contacted Godwin Inc., during the investigative process of the Plaintiff's claims.

4.    Please state the usual and customary procedure that Palomar Insurance and National Union Fire Insurance used in the past to investigate other employee claims.

5    Please state the usual and customary procedure that Godwin Inc., used to investigate the Plaintiff's claims.

6    Please state the specific details as to how Palomar Insurance Corporation came to issue an Occupational Accident policy to Godwin Inc.

7    Please state the name, address, and phone number of each and every person/agent of Palomar Insurance and/or National Union Fire Insurance who contracted with Godwin, Inc., during the purchase of the Occupational Accident policy.

8.   Please state the name, address, and phone numbers of each person/employee and/or independent contractor who filed claims on the Palomar Insurance/National Union Insurance occupational policy within the last two (2) years, include dates, incident details whether or not the claims were paid, and under what category each claim was classified

9.   Do you understand that your answers are made under oath, and may be used as material testimony in the event of a hearing, and must be updated in writing if your aforementioned responses change?

_____
Signature of Person Answering Interrogatories

STATE OF ALABAMA            )
COUNTY OF _____     )
     I, the undersigned authority, a Notary Public in and for said State and County, hereby certify that _____, whose name is signed to the foregoing interrogatories, who is known to me, acknowledged before me this day that, being informed of the contents of this document, he/she executed the same voluntarily on the day the same bears date.
     Given under my hand and seal of office this the ____ day of _____, 2005

_____
Notary Public – State at Large
My Commission Expires. _____

## REQUEST FOR PRODUCTION PROPOUNDED TO DEFENDANTS
## INSTRUCTIONS

Pursuant to Rule 34 of the Alabama Rules of Civil Procedure the Plaintiffs by and through their undersigned counsel, hereby submits this their first Request for Production of Documents, and hereby demands that the Defendants produce, for the inspection and copying, each of the documents requested herein within 45 days of service.

In lieu of producing the documents required herein at a place to be agreed upon by the parties, legible photocopies may be delivered to the office of Richardson Legal Center, L L C , 133 Hayneville Plaza or Post Office Box 971, Hayneville, Alabama 36040.

### DEFINITIONS

As used in this request, the term "document" is defined as including writings, recordings, photographs (including video tapes), as defined by Rule 1001 of the Alabama Rules of Evidence.

## REQUEST FOR PRODUCTION

1    Please produce a copy of the signed policy of insurance issued to Godwin Material Services, Inc., by Palomar Insurance Company/National Union Fire Insurance

2    Please produce a complete copy of the Plaintiff's accident file, insurance file, and/or claims file, or any file maintained by you which contains information related to accidents, claims and/or insurance for Ollie Godwin.

3.    Please produce a copy of your investigator's report in reference to the Plaintiff's claims

4.    Please produce all documents, reports, pictures, video recordings, witness statements, notes, writings, memorandums, tape recordings of interviews with Palomar Insurance, National Union Fire Insurance, and the Plaintiff, including but not limited to all

investigation reports, relating to the Plaintiff's claims of October/November 2003 and October 27, 2004

     5     Please produce any/all documentation of claims, under the policy in question filed by other employees for the past two (2) years.

     6     Please produce the name, address, and phone number of any expert witness retained by you in the defense of this case.

     7     Please produce any and all documents, photographs, audio/video recordings or other evidence obtained by you, whether or not such evidence is intended to be introduced at the trial of this cause.

Foregoing discovery to Godwin Inc., respectfully submitted the 7th day of July, 2005

Arlene M. Richardson (RIC045)
Attorney for the Plaintiffs


RICHARDSON LEGAL CENTER, LLC
Post Office Box 971
Hayneville, Alabama 36040
Telephone: (334) 548-5660
Fax (334) 548-5661

3      Please state the Title, name, address, phone number, and qualifications of the person who investigated the Plaintiff's claims

4      Please state the specific date and time of the aforementioned investigations

5.     Please state the usual and customary procedure that Palomar Insurance uses to investigate and determine whether or not claims are paid.

6.     Please state the specific details as to how Palomar Insurance Corporation came to issue an Occupational Accident policy to Godwin Inc

7.     Please state the name, address, and phone number of each and every person who contacted Ollie Godwin and/or Godwin, Inc., in regards to the Plaintiff's claims

8      Have you been advised that your answers are made under oath, and may be used as material testimony in the event of a hearing, and must be updated in writing if your aforementioned responses change?

_____
Signature of Person Answering Interrogatories

STATE OF ALABAMA            )
COUNTY OF _____    )

    I, the undersigned authority, a Notary Public in and for said State and County, hereby certify that _____, whose name is signed to the foregoing interrogatories, who is known to me, acknowledged before me this day that, being informed of the contents of this document, he/she executed the same voluntarily on the day the same bears date.

    Given under my hand and seal of office this the _____ day of _____, 2005

_____
Notary Public – State at Large
My Commission Expires: _____

## <u>REQUEST FOR PRODUCTION PROPOUNDED TO DEFENDANTS</u>
### <u>INSTRUCTIONS</u>

Pursuant to Rule 34 of the Alabama Rules of Civil Procedure the Plaintiffs by and through their undersigned counsel, hereby submits this their first Request for Production of Documents, and hereby demands that the Defendants produce, for the inspection and copying each of the documents requested herein within 45 days of service.

In lieu of producing the documents required herein at a place to be agreed upon by the parties, legible photocopies may be delivered to the office of Richardson Legal Center, L L C 133 Hayneville Plaza or Post Office Box 971, Hayneville, Alabama 36040.

### DEFINITIONS

As used in this request, the term "document" is defined as including writings, recordings, photographs (including video tapes), as defined by Rule 1001 of the Alabama Rules of Evidence

### <u>REQUEST FOR PRODUCTION</u>

1.    Please produce a copy of the signed policy of insurance issued to Goodwin Material Services, Inc.

2.    Please produce a copy of your investigator's report in reference to the Plaintiff's claims

3.    Please produce all documents, reports, pictures, video recordings, witness statements, notes, writings, memorandums, tape recordings of interview with Plaintiff, or any and all other things including, but not limited to, all investigation reports, relating to the Plaintiff's claims of October/November 2003 and October 27, 2004

4    Please produce the name, address, and phone number of any expert witness retained by you in the defense of this case.

5. Please produce any and all documents, photographs, audio/video recordings or other evidence obtained by you, whether or not such evidence is intended to be introduced at the trial of this cause.

Foregoing discovery to Palomar Insurance Corporation respectfully submitted the __ day of _July_ 2005.


Arlene M. Richardson (RIC045)
Attorney for the Plaintiffs


RICHARDSON LEGAL CENTER, LLC
Post Office Box 971
Hayneville, Alabama 36040
Telephone: (334) 548-5660
Fax: (334) 548-5661

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

| | |
|---|---|
| **OLLIE GODWIN** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) Case No.: *CV-05-69* |
| | ) |
| **PALOMAR INSURANCE CORPORATION,** | ) |
| **AIG d/b/a NATIONAL UNION FIRE** | ) |
| **INSURANCE COMPANY OF PITTSBURGH,** | ) |
| **INC., GODWIN MATERIAL** | ) |
| **SERVICES, INC., and FICTITIOUS** | ) |
| **DEFENDANTS, A, B, and C, Being those** | ) |
| **persons, firms, corporations,** | ) |
| **and/or any other entity responsible for or** | ) |
| **which carried out the acts and/or** | ) |
| **omissions herein complained of with** | ) |
| **respect to Plaintiff, whose names or** | ) |
| **identities are otherwise unknown at this** | ) |
| **time, but which will be added** | ) |
| **by amendment when ascertained.** | ) |
| | ) |
| **Defendant.** | ) |

RECEIVED
JUL 2005
ANN W. TATE
CIRCUIT CLERK

### COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW,** the Plaintiff, Ollie Godwin, by and through the undersigned attorney of record, and would show this Honorable court as follows:

### PARTIES

1.      The Plaintiff, Ollie Godwin, is over the age of nineteen years and is a resident of Crenshaw County, Alabama. Hereafter referred to as Plaintiff.

2.      Defendant, Palomar Insurance Corporation, is a duly licensed Corporation doing business in Alabama, with offices in Montgomery, Alabama, through its agents/agencies, including Crenshaw County.  It is in the business of providing Alabama businesses with Occupational Accident insurance.  Hereafter referred to as Defendant Palomar.

1

3.     Defendant, AIG d/b/a National Union Insurance Company, is duly licensed with the Alabama Secretary of State as a corporation doing business in Alabama including Montgomery County and Crenshaw County, Alabama and is the corporation underwriter for the Palomar Occupational Accident policy that is made the basis of this complaint.

4.     Defendant, Godwin Material Services Inc., a duly licensed Corporation doing business in Crenshaw County Alabama, is joined pursuant to Rule 19(a) of the *Alabama Rules of Civil Procedure* and is the owner of the insurance policy which is made the basis of this complaint.  Hereafter referred to as Godwin Inc.

5.     Defendants A, B, and C are underwriters for Defendant Palomar Insurance Corporation, employees, and/or agents of Palomar Insurance Corporation, doing business in Alabama, including Crenshaw County, Alabama and committed acts complained of herein and will be named and added appropriately when known.

### STATEMENT OF FACTS

6.     Godwin Inc., purchased an Occupational Accident Insurance Policy from Palomar Insurance Corporation (hereinafter referred to as Palomar) to insure their truck drivers, including Plaintiff, Ollie Godwin.  Policy number 9056434 is underwritten by AIG d/b/a National Union Insurance Company. (Hereinafter referred to as AIG/National)  Copy of Policy 9056434 is attached as Exhibit A.

7.     The Policy became effective on May 01, 2003 and renewed on the anniversary date for years 2004 and 2005.  The Occupational Policy was such that the policy would renew every year.

8.     Plaintiff was a truck driver for Godwin Inc., and was insured under the terms of the aforementioned policy.

2

9.      Plaintiff was paying premiums that were deducted by Godwin Inc., from his checks on a regular basis.

10.     Said premiums were paid pursuant to the terms of the policy.

11.     On or about October/November 2003 the Plaintiff suffered an occupational injury that resulted in the Plaintiff having surgery for hernia.  Said Policy 9056434 has a special Hernia Coverage Rider and, pursuant to the policy terms, said injury should have been covered.

12.     Plaintiff was under dispatch at the time of his injury and Godwin Inc., wrote to AIG/National and reported that the Plaintiff was under dispatch.

13.     AIG/National ignored Godwin Inc., request and classified the Plaintiff's injury as non-occupational and did not pay his claim pursuant to the occupational classification under the policy.

14.     Plaintiff on or about October 27, 2004 was again injured while on dispatch.  Said injury to his knee and hip has resulted in collapse of his left hip which required surgery.

15.     Again, AIG/National has refused to pay any of the Plaintiff's expenses relating to his injury of October 27, 2004 pursuant to the occupational accident Policy number 9056434.

16.     The Defendants, as of the date of this complaint, have failed and/or refuse to compensate the Plaintiff pursuant to all terms of the policy.

17.     The Defendants, as of May 01, 2005, have refused to renew/cover the Plaintiff under the policy.

## COUNT I
## BAD FAITH

18.     Plaintiff repeats, realleges and incorporates by reference all of the preceding allegations of this Complaint, as if more fully set out herein.

19.    That on or about the October/November 2003 and October 27, 2004 the Plaintiff was injured in two separate accidents while he was on dispatch for Godwin Inc.

20.    Plaintiff timely gave Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C notice of both injuries, pursuant to the terms under said policy, and made claims for benefits thereunder.

21.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C did pay some of the Plaintiff's expenses on his injury of October/November 2003, but they classified his injury as non-occupational whereby they would not be required to pay as much as if the injury had been classified as occupational.

22.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C have intentionally refused to pay any of the Plaintiff's expenses pertaining to his injury of October 27, 2004.

23.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C intentionally refused to pay the Plaintiff's claims pursuant to the terms of the policy via correspondence dated February 27, 2004 pertaining to his October/November 2003 injury and correspondence dated February 19, 2005 pertaining to the Plaintiff's October 27, 2004 injury and has denied the Plaintiff's claims without lawful justification.

24.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C's refusal to pay said claims was not based upon any reasonably legitimate, arguable, or debatable reason.

25.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C knew that there was no legitimate, arguable or debatable reason for denying the claims, when Defendants refused to pay said claims.

26.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C intentionally failed to investigate the claim to determine whether or not there was any lawful basis for its refusal to pay said claim.

27.    Defendant Palomar, AIG/National, Godwin, Inc., and Fictitious Defendants A, B, and C's determination that the Plaintiff's injury of October/November 2003 was a non-occupational injury and that the Plaintiff's October 27, 2004 injury was caused by an underlying medical condition and not occupational related are false and unsubstantiated.

28.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C acted in bad faith in refusing to pay Plaintiff's claims.

29.    Plaintiff claims punitive damages of Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C.

30.    Because of Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C's refusal to pay, the Plaintiff has been damaged and caused to suffer in that he has had to bear all medical costs associated with his injuries, the Plaintiff was not paid his disability benefits due under the policy, and the Plaintiff has not, otherwise, been compensated pursuant to the terms of the policy for which he has been paying premiums.

## COUNT I I
## BREACH OF CONTRACT

31.    Plaintiff repeats, realleges and incorporates by reference all of the preceding allegations of this Complaint, as if more fully set out herein.

32.    That on or about May 01, 2003 and May 01, 2004 Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C renewed the Plaintiff's Occupational Accident Policy which covered the Plaintiff in the event of occupational accidents.

33.    That Policy Number 9056434, drafted by Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C and issued to Godwin Inc., and the Plaintiff, is a written contract of insurance between the Plaintiff and Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C in which they agreed to certain stipulations and requirements of each party, i.e., Plaintiff would pay the monthly premiums and adhere to certain requirements in the event of a claim and Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C would pay for losses pursuant to the terms of the contract/policy. A copy of the policy is herewith attached as Exhibit A.

34.    Plaintiff has performed all of the stipulations, conditions, requirements, and agreements pursuant to the terms of the contract/policy.

35.    Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C has failed and refused, and continues to fail and refuse, to fully perform their part of the contract/policy.

36.    Due to Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C's failure to perform, the Plaintiff has been damaged and caused to suffer in that he has had to bear the cost of extensive medical treatment, was not paid his disability benefits due him, has lost time from work which has caused him financial hardship, and he has not been otherwise compensated pursuant to the terms of the policy.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff demands judgment, by a fair and impartial jury, against Defendant Palomar, AIG/National, Godwin Inc., and Fictitious Defendants A, B, and C for compensatory damages in the amount of the $59,581.44 and punitive damages in an amount to be determined by a jury plus all costs associated with this legal action.

Respectfully submitted this 7 day of ___July___ 2005.

_Ollie Godwin_
OLLIE GODWIN, PLAINTIFF

_Arlene M. Richardson_
ARLENE M. RICHARDSON (RIC045)

**RICHARDSON LEGAL CENTER, LLC**
Post Office Box 971
Hayneville, Alabama 36040
Phone: (334) 548-5660
Fax:    (334) 548-5661

7

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN                                        )
                                                    )
    Plaintiff,                  )
                                                    )
v.                                                  )    Case No.: *CV-05-69*
                                                    )
PALOMAR INSURANCE CORPORATION,                      )
AIG d/b/a NATIONAL UNION FIRE                        )
INSURANCE COMPANY OF PITTSBURGH,                    )
INC., GODWIN MATERIAL                               )
SERVICES, INC., and FICTITIOUS                      )
DEFENDANTS, A, B, and C, Being those                )
persons, firms, corporations,                       )
and/or any other entity responsible for or          )
which carried out the acts and/or                   )
omissions herein complained of with                 )
respect to Plaintiff, whose names or                )
identities are otherwise unknown at this            )
time, but which will be added                        )
by amendment when ascertained.                      )
                                                    )
    Defendant.                   )

### PLAINTIFF'S FIRST REQUEST FOR INTERROGATORIES, and
### FIRST REQUEST FOR PRODUCTION,
### PROPOUNDED TO DEFENDANT, PALOMAR INSURANCE CORPORATION

    **COMES NOW**, the Plaintiff, by and through his attorney of record, and pursuant to Rule

33, 34 and 36 of the Alabama Rules of Civil Procedure, hereby request that the Defendants

answer the following interrogatories and request for admissions in writing and under oath and to

produce all requested production within thirty (45) days from the receipt thereof.

### INSTRUCTIONS

    A.    All information is to be divulged which is in your possession or within your

knowledge including information in the possession of your attorneys, agents, employees or other

representatives of you and or your employer.

1

B.      Where an individual interrogatory calls for an answer, which involves more than one part, each part of the answer should be clearly set out so that it is understandable. If any of the interrogatories cannot be answered in full, please answer to the extent possible and submit any supplemental information as soon as it is available.

C.      If you lack the information necessary to answer any interrogatories, please describe what efforts were made by you or anyone on your behalf to ascertain the information and state as definitely as possible when you anticipate obtaining the information and supplementing your response.

D.      These interrogatories are intended as continuing interrogatories, requiring you to answer by supplementing any of your answers, setting forth any information within the scope of the interrogatories as may be required by you, your attorneys, agents, representatives or employer, subsequent to your original answers. Such supplemental responses are to be filed and served upon the Plaintiff within fifteen (15) days of receipt of such information, but no later than the time of trial.

1.      Please state the name, address, phone number, title and association to the Defendant, Palomar Insurance Corporation of the person answering these interrogatories.

2.      Please state, in specific detail, the steps taken to determine the cause of the Plaintiff's injuries of October/November 2004 and October 27, 2004.

3.     Please state the Title, name, address, phone number, and qualifications of the person who investigated the Plaintiff's claims.

4.     Please state the specific date and time of the aforementioned investigations.

5.     Please state the usual and customary procedure that Palomar Insurance uses to investigate and determine whether or not claims are paid.

6.     Please state the specific details as to how Palomar Insurance Corporation came to issue an Occupational Accident policy to Godwin Inc.

7.     Please state the name, address, and phone number of each and every person who contacted Ollie Godwin and/or Godwin, Inc., in regards to the Plaintiff's claims.

8.     Have you been advised that your answers are made under oath, and may be used as material testimony in the event of a hearing, and must be updated in writing if your aforementioned responses change?

3

_____
Signature of Person Answering Interrogatories

**STATE OF ALABAMA**                    )
**COUNTY OF** _____           )
    I, the undersigned authority, a Notary Public in and for said State and County, hereby certify that _____, whose name is signed to the foregoing interrogatories, who is known to me, acknowledged before me this day that, being informed of the contents of this document, he/she executed the same voluntarily on the day the same bears date.
    Given under my hand and seal of office this the ____ day of _____, 2005.

_____
Notary Public – State at Large
My Commission Expires: _____

4

## REQUEST FOR PRODUCTION PROPOUNDED TO DEFENDANTS
## INSTRUCTIONS

Pursuant to Rule 34 of the Alabama Rules of Civil Procedure the Plaintiffs by and through their undersigned counsel, hereby submits this their first Request for Production of Documents, and hereby demands that the Defendants produce, for the inspection and copying, each of the documents requested herein within 45 days of service.

In lieu of producing the documents required herein at a place to be agreed upon by the parties, legible photocopies may be delivered to the office of Richardson Legal Center, L.L.C., 133 Hayneville Plaza or Post Office Box 971, Hayneville, Alabama 36040.

## DEFINITIONS

As used in this request, the term "document" is defined as including writings, recordings, photographs (including video tapes), as defined by Rule 1001 of the Alabama Rules of Evidence.

## REQUEST FOR PRODUCTION

1.    Please produce a copy of the signed policy of insurance issued to Godwin Material Services, Inc.

2.    Please produce a copy of your investigator's report in reference to the Plaintiff's claims.

3.    Please produce all documents, reports, pictures, video recordings, witness statements, notes, writings, memorandums, tape recordings of interview with Plaintiff, or any and all other things including, but not limited to, all investigation reports, relating to the Plaintiff's claims of October/November 2003 and October 27, 2004.

4.    Please produce the name, address, and phone number of any expert witness retained by you in the defense of this case.

5

5.     Please produce any and all documents, photographs, audio/video recordings, or other evidence obtained by you, whether or not such evidence is intended to be introduced at the trial of this cause.

Foregoing discovery to Palomar Insurance Corporation respectfully submitted the 7th day of July, 2005.

Arlene M. Richardson (RIC045)
Attorney for the Plaintiffs

RICHARDSON LEGAL CENTER, LLC
Post Office Box 971
Hayneville, Alabama 36040
Telephone: (334) 548-5660
Fax: (334) 548-5661

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

| | |
|---|---|
| OLLIE GODWIN | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No.: *CV-05-69* |
| | ) |
| PALOMAR INSURANCE CORPORATION, | ) |
| AIG d/b/a NATIONAL UNION FIRE | ) |
| INSURANCE COMPANY OF PITTSBURGH, | ) |
| INC., GODWIN MATERIAL | ) |
| SERVICES, INC., and FICTITIOUS | ) |
| DEFENDANTS, A, B, and C, Being those | ) |
| persons, firms, corporations, | ) |
| and/or any other entity responsible for or | ) |
| which carried out the acts and/or | ) |
| omissions herein complained of with | ) |
| respect to Plaintiff, whose names or | ) |
| identities are otherwise unknown at this | ) |
| time, but which will be added | ) |
| by amendment when ascertained. | ) |
| | ) |
| Defendant. | ) |

### PLAINTIFF'S FIRST REQUEST FOR INTERROGATORIES, and
### FIRST REQUEST FOR PRODUCTION,
### PROPOUNDED TO DEFENDANT, NATIONAL UNION FIRE INSURANCE
### COMPANY OF PITTSBURGH, INC.

COMES NOW, the Plaintiff, by and through his attorney of record, and pursuant to Rule

33, 34 and 36 of the Alabama Rules of Civil Procedure, hereby request that the Defendants

answer the following interrogatories and request for admissions in writing and under oath and to

produce all requested production within thirty (45) days from the receipt thereof.

### INSTRUCTIONS

A.     All information is to be divulged which is in your possession or within your

knowledge including information in the possession of your attorneys, agents, employees or other

representatives of you and or your employer.

1

B.     Where an individual interrogatory calls for an answer, which involves more than one part, each part of the answer should be clearly set out so that it is understandable. If any of the interrogatories cannot be answered in full, please answer to the extent possible and submit any supplemental information as soon as it is available.

C.     If you lack the information necessary to answer any interrogatories, please describe what efforts were made by you or anyone on your behalf to ascertain the information and state as definitely as possible when you anticipate obtaining the information and supplementing your response.

D.     These interrogatories are intended as continuing interrogatories, requiring you to answer by supplementing any of your answers, setting forth any information within the scope of the interrogatories as may be required by you, your attorneys, agents, representatives or employer, subsequent to your original answers. Such supplemental responses are to be filed and served upon the Plaintiff within fifteen (15) days of receipt of such information, but no later than the time of trial.

1.     Please state the name, address, phone number, title and association to the Defendant, National Union Fire Insurance Company of Pittsburgh, Inc., of the person answering these interrogatories.


2.     Please state, in specific detail, the steps taken to determine the cause of the Plaintiff's injuries of October/November 2004 and October 27, 2004.

3.    Please state the Title, name, address, phone number, and qualifications of the person who investigated the Plaintiff's claims.

4.    Please state the specific date and time of the aforementioned investigations.

5.    Please state the usual and customary procedure that National Union Fire Insurance Company of Pittsburgh Inc., uses to investigate and determine whether or not claims are paid.

6.    Please state the specific details as to how National Union Fire Insurance Company of Pittsburgh Inc., came to issue an Occupational Accident policy to Godwin Inc.

7.    Please state the name, address, and phone number of each and every person who contacted Ollie Godwin and/or Godwin, Inc., in regards to the Plaintiff's claims.

8.    Have you been advised that your answers are made under oath, and may be used as material testimony in the event of a hearing, and must be updated in writing if your aforementioned responses change?

3

_____

Signature of Person Answering Interrogatories

**STATE OF ALABAMA**                    )
**COUNTY OF _____**            )

    I, the undersigned authority, a Notary Public in and for said State and County, hereby certify that _____, whose name is signed to the foregoing interrogatories, who is known to me, acknowledged before me this day that, being informed of the contents of this document, he/she executed the same voluntarily on the day the same bears date.

    Given under my hand and seal of office this the _____ day of _____, 2005.

_____

Notary Public – State at Large
My Commission Expires: _____

## REQUEST FOR PRODUCTION PROPOUNDED TO DEFENDANTS
## INSTRUCTIONS

Pursuant to Rule 34 of the Alabama Rules of Civil Procedure the Plaintiffs by and through their undersigned counsel, hereby submits this their first Request for Production of Documents, and hereby demands that the Defendants produce, for the inspection and copying, each of the documents requested herein within 45 days of service.

In lieu of producing the documents required herein at a place to be agreed upon by the parties, legible photocopies may be delivered to the office of Richardson Legal Center, L.L.C., 133 Hayneville Plaza or Post Office Box 971, Hayneville, Alabama 36040.

## DEFINITIONS

As used in this request, the term "document" is defined as including writings, recordings, photographs (including video tapes), as defined by Rule 1001 of the Alabama Rules of Evidence.

## REQUEST FOR PRODUCTION

1.    Please produce a copy of the signed policy of insurance issued to Godwin Material Services, Inc.

2.    Please produce a copy of your investigator's report in reference to the Plaintiff's claims.

3.    Please produce all documents, reports, pictures, video recordings, witness statements, notes, writings, memorandums, tape recordings of interview with Plaintiff, or any and all other things including, but not limited to, all investigation reports, relating to the Plaintiff's claims of October/November 2003 and October 27, 2004.

4.    Please produce the name, address, and phone number of any expert witness retained by you in the defense of this case.

5

5.    Please produce any and all documents, photographs, audio/video recordings, or other evidence obtained by you, whether or not such evidence is intended to be introduced at the trial of this cause.

Foregoing discovery to National Union Fire Insurance Company of Pittsburgh Inc., respectfully submitted the 7th day of July 2005.

_Arlene M. Richardson_
Arlene M. Richardson (RIC045)
Attorney for the Plaintiffs

**RICHARDSON LEGAL CENTER, LLC**
Post Office Box 971
Hayneville, Alabama 36040
Telephone: (334) 548-5660
Fax: (334) 548-5661

6

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN )
)
    Plaintiff, )
)
v. )    Case No.: _CV-05-69_
)
PALOMAR INSURANCE CORPORATION, )
AIG d/b/a NATIONAL UNION FIRE )
INSURANCE COMPANY OF PITTSBURGH, )
INC., GODWIN MATERIAL )
SERVICES, INC., and FICTITIOUS )
DEFENDANTS, A, B, and C, Being those )
persons, firms, corporations, )
and/or any other entity responsible for or )
which carried out the acts and/or )
omissions herein complained of with )
respect to Plaintiff, whose names or )
identities are otherwise unknown at this )
time, but which will be added )
by amendment when ascertained. )
)
    Defendant. )

**RECEIVED
JUL 2005
ANN W. TATE
CIRCUIT CLERK**

### PLAINTIFF'S FIRST REQUEST FOR INTERROGATORIES, and
### FIRST REQUEST FOR PRODUCTION,
### PROPOUNDED TO DEFENDANT, GODWIN MATERIALS SERVICE, INC.

COMES NOW, the Plaintiff, by and through his attorney of record, and pursuant to Rule 33, 34 and 36 of the Alabama Rules of Civil Procedure, hereby request that the Defendants answer the following interrogatories and request for admissions in writing and under oath and to produce all requested production within thirty (45) days from the receipt thereof.

### INSTRUCTIONS

A.    All information is to be divulged which is in your possession or within your knowledge including information in the possession of your attorneys, agents, employees or other representatives of you and or your employer.

1

B.    Where an individual interrogatory calls for an answer, which involves more than one part, each part of the answer should be clearly set out so that it is understandable. If any of the interrogatories cannot be answered in full, please answer to the extent possible and submit any supplemental information as soon as it is available.

C.    If you lack the information necessary to answer any interrogatories, please describe what efforts were made by you or anyone on your behalf to ascertain the information and state as definitely as possible when you anticipate obtaining the information and supplementing your response.

D.    These interrogatories are intended as continuing interrogatories, requiring you to answer by supplementing any of your answers, setting forth any information within the scope of the interrogatories as may be required by you, your attorneys, agents, representatives or employer, subsequent to your original answers. Such supplemental responses are to be filed and served upon the Plaintiff within fifteen (15) days of receipt of such information, but no later than the time of trial.

1.    Please state the name, address, phone number, title and association to the Defendant, Godwin Inc., of the person answering these interrogatories.

2.    Please state, in specific detail, any information you have as to how Palomar Insurance and National Union Fire Insurance investigated the Plaintiff's claims, i.e. phone call conversation, questionnaires, correspondence with either of the aforementioned insurance companies. Include dates and details of conversations, questionnaires, and/or correspondence.

2

3.     Please state the Title, name, address, phone number, and qualifications of all persons/agents of Palomar Insurance and/or National Union Fire Insurance who contacted Godwin Inc., during the investigative process of the Plaintiff's claims.

4.     Please state the usual and customary procedure that Palomar Insurance and National Union Fire Insurance used in the past to investigate other employee claims.

5.     Please state the usual and customary procedure that Godwin Inc., used to investigate the Plaintiff's claims.

6.     Please state the specific details as to how Palomar Insurance Corporation came to issue an Occupational Accident policy to Godwin Inc.

7.     Please state the name, address, and phone number of each and every person/agent of Palomar Insurance and/or National Union Fire Insurance who contracted with Godwin, Inc., during the purchase of the Occupational Accident policy.

3

8.      Please state the name, address, and phone numbers of each person/employee and/or independent contractor who filed claims on the Palomar Insurance/National Union Insurance occupational policy within the last two (2) years; include dates, incident details, whether or not the claims were paid, and under what category each claim was classified.

9.      Do you understand that your answers are made under oath, and may be used as material testimony in the event of a hearing, and must be updated in writing if your aforementioned responses change?

_____
Signature of Person Answering Interrogatories

**STATE OF ALABAMA**                )
**COUNTY OF** _____         )
        I, the undersigned authority, a Notary Public in and for said State and County, hereby certify that _____, whose name is signed to the foregoing interrogatories, who is known to me, acknowledged before me this day that, being informed of the contents of this document, he/she executed the same voluntarily on the day the same bears date.
        Given under my hand and seal of office this the \_\_\_\_ day of _____, 2005.

_____
Notary Public – State at Large
My Commission Expires: _____

4

## REQUEST FOR PRODUCTION PROPOUNDED TO DEFENDANTS
## INSTRUCTIONS

Pursuant to Rule 34 of the Alabama Rules of Civil Procedure the Plaintiffs by and through their undersigned counsel, hereby submits this their first Request for Production of Documents, and hereby demands that the Defendants produce, for the inspection and copying, each of the documents requested herein within 45 days of service.

In lieu of producing the documents required herein at a place to be agreed upon by the parties, legible photocopies may be delivered to the office of Richardson Legal Center, L.L.C., 133 Hayneville Plaza or Post Office Box 971, Hayneville, Alabama 36040.

### DEFINITIONS

As used in this request, the term "document" is defined as including writings, recordings, photographs (including video tapes), as defined by Rule 1001 of the Alabama Rules of Evidence.

## REQUEST FOR PRODUCTION

1.      Please produce a copy of the signed policy of insurance issued to Godwin Material Services, Inc., by Palomar Insurance Company/National Union Fire Insurance.

2.      Please produce a complete copy of the Plaintiff's accident file, insurance file, and/or claims file, or any file maintained by you which contains information related to accidents, claims and/or insurance for Ollie Godwin.

3.      Please produce a copy of your investigator's report in reference to the Plaintiff's claims.

4.      Please produce all documents, reports, pictures, video recordings, witness statements, notes, writings, memorandums, tape recordings of interviews with Palomar Insurance, National Union Fire Insurance, and the Plaintiff, including but not limited to, all

5

investigation reports, relating to the Plaintiff's claims of October/November 2003 and October 27, 2004.

5.     Please produce any/all documentation of claims, under the policy in question, filed by other employees for the past two (2) years.

6.     Please produce the name, address, and phone number of any expert witness retained by you in the defense of this case.

7.     Please produce any and all documents, photographs, audio/video recordings, or other evidence obtained by you, whether or not such evidence is intended to be introduced at the trial of this cause.

Foregoing discovery to Godwin Inc., respectfully submitted the 7th day of July 2005.

_Arlene M. Richardson_
Arlene M. Richardson (RIC045)
Attorney for the Plaintiffs

RICHARDSON LEGAL CENTER, LLC
Post Office Box 971
Hayneville, Alabama 36040
Telephone: (334) 548-5660
Fax: (334) 548-5661

6

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN )
)
    Plaintiff, )
)
v. )    Case No.: _____
)
PALOMAR INSURANCE CORPORATION, )
AIG d/b/a NATIONAL UNION FIRE )
INSURANCECOMPANY OF PITTSBURGH, )
INC., GODWIN MATERIAL )
SERVICES, INC., and FICTITIOUS )
DEFENDANTS, A, B, and C, Being those )
persons, firms, corporations, )
and/or any other entity responsible for or )
which carried out the acts and/or )
omissions herein complained of with )
respect to Plaintiff, whose names or )
identities are otherwise unknown at this )
time, but which will be added )
by amendment when ascertained. )
)
    Defendant. )

## SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

Notice To:    **PALOMAR INSURANCE CORP.**
            **C/O GEORGE W. SKIPPER, III, REGISTERED AGENT**
            **4525 EXECUTIVE PARK DRIVE**
            **MONTGOMERY, AL 36116-1601**

    The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written **Answer**, either admitting or denying each allegation in the **Complaint**, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

               **Richardson Legal Center, LLC**
                   Post Office Box 971
                   Hayneville, AL 36040
                Phone: (334) 548-5660

    **THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT WITHIN A REASONABLE TIME THEREAFTER.**

                          _____
                          Clerk of Court
                          Date: _____

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN                                        )
                                                    )
    Plaintiff,                  )
                                                    )
v.                                                  )    Case No.: _____
                                                    )
PALOMAR INSURANCE CORPORATION,                      )
AIG d/b/a NATIONAL UNION FIRE                       )
INSURANCECOMPANY OF PITTSBURGH,                     )
INC., GODWIN MATERIAL                               )
SERVICES, INC., and FICTITIOUS                      )
DEFENDANTS, A, B, and C, Being those               )
persons, firms, corporations,                       )
and/or any other entity responsible for or          )
which carried out the acts and/or                   )
omissions herein complained of with                 )
respect to Plaintiff, whose names or                )
identities are otherwise unknown at this            )
time, but which will be added                        )
by amendment when ascertained.                      )
                                                    )
    Defendant.                  )
                                                    )

### SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

Notice To:    **NATIONAL UNION FIRE INSURANCE COMPANY**
                        **C/O CSC LAWYERS INCORPORATING SERVICE, INC., AGENT**
                        **57 ADAMS AVENUE**
                        **MONTGOMERY, AL 36104-4001**

    The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written **Answer**, either admitting or denying each allegation in the **Complaint**, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

### Richardson Legal Center, LLC
Post Office Box 971
Hayneville, AL 36040
Phone: (334) 548-5660

    **THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT WITHIN A REASONABLE TIME THEREAFTER.**

                                          _____
                                          Clerk of Court
                                          Date: _____

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN                                     )
         Plaintiff,                       )
                                          )
v.                                               )          Case No.: _____
                                                 )
PALOMAR INSURANCE CORPORATION,                   )
AIG d/b/a NATIONAL UNION FIRE                    )
INSURANCECOMPANY OF PITTSBURGH,                  )
INC., GODWIN MATERIAL                            )
SERVICES, INC., and FICTITIOUS                   )
DEFENDANTS, A, B, and C, Being those             )
persons, firms, corporations,                    )
and/or any other entity responsible for or       )
which carried out the acts and/or                )
omissions herein complained of with              )
respect to Plaintiff, whose names or             )
identities are otherwise unknown at this         )
time, but which will be added                     )
by amendment when ascertained.                   )
                                                 )
         Defendant.                       )

## SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

Notice To:    **GODWIN MATERIALS SERVICE, INC.**
                **C/O LORENZO GODWIN, REGISTERED AGENT**
                **P.O. BOX 12**
                **BRANTLEY, AL 36009**

    The Complaint which is attached to this summons is important and you must take immediate action to protect your rights.  You are required to mail or hand deliver a copy of a written **Answer**, either admitting or denying each allegation in the **Complaint**,  to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

**Richardson Legal Center, LLC**
Post Office Box 971
Hayneville, AL 36040
Phone: (334) 548-5660

    **THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.  YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT WITHIN A REASONABLE TIME THEREAFTER.**

                                                  _____
                                                  Clerk of Court
                                                  Date: _____

IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN                                    )
    Plaintiff,                                )
                                              )
v.                                              )
                                              )    Case No.: *CV-05-69*
PALOMAR INSURANCE CORPORATION,                  )
AIG d/b/a NATIONAL UNION FIRE                   )
INSURANCECOMPANY OF PITTSBURGH,                 )
INC., GODWIN MATERIAL                           )
SERVICES, INC., and FICTITIOUS                  )
DEFENDANTS, A, B, and C, Being those            )
persons, firms, corporations,                   )
and/or any other entity responsible for or      )
which carried out the acts and/or               )
omissions herein complained of with             )
respect to Plaintiff, whose names or            )
identities are otherwise unknown at this        )
time, but which will be added                   )
by amendment when ascertained.                  )
                                              )
    Defendant.                                )
                                              )

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

Notice To:    **PALOMAR INSURANCE CORP.**
        **C/O GEORGE W. SKIPPER, III, REGISTERED AGENT**
        **4525 EXECUTIVE PARK DRIVE**
        **MONTGOMERY, AL 36116-1601**

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written **Answer**, either admitting or denying each allegation in the **Complaint**, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

    **Richardson Legal C**

THIS ANSWER MUST
DATE OF DELIVERY OF TH
RECEIPT, OR A JUDGMENT
OR OTHER THINGS DEMAN
OF YOUR ANSWER WITH
THEREAFTER.



CV-05-69

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Palomar Ins. Corp.
C/o Geo. W. Skipper II
4525 Executive Dr
Montgomery Al 36116-1601

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _Sharon Brazell_  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
_Sharon Brazell_  7/14/05

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
  ☐ Certified Mail  ☐ Express Mail
  ☐ Registered  ☐ Return Receipt for Merchandise
  ☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
  (Transfer from service label)   7003 0500 0004 3006 4185

## IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN

    Plaintiff,               )
                                )
                                )

v.                               )

PALOMAR INSURANCE CORPORATION,  )    Case No.: _CV-05-69_
AIG d/b/a NATIONAL UNION FIRE     )
INSURANCE COMPANY OF PITTSBURGH, )
INC., GODWIN MATERIAL        )
SERVICES, INC., and FICTITIOUS    )
DEFENDANTS, A, B, and C, Being those )
persons, firms, corporations,      )
and/or any other entity responsible for or )
which carried out the acts and/or    )
omissions herein complained of with   )
respect to Plaintiff, whose names or    )
identities are otherwise unknown at this )
time, but which will be added       )
by amendment when ascertained.    )
                                )

    Defendant.           )
                                )

### SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

Notice To:    **NATIONAL UNION FIRE INSURANCE COMPANY
C/O CSC LAWYERS INCORPORATING SERVICE, INC., AGENT
57 ADAMS AVENUE
MONTGOMERY, AL 36104-4001**

    The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written **Answer**, either admitting or denying each allegation in the **Complaint**, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

**THIS ANSWER MUS[...]
DATE OF DELIVERY OF [...]
RECEIPT, OR A JUDGMEN[...]
OR OTHER THINGS DEMA[...]
OF YOUR ANSWER WIT[...]
THEREAFTER.**

IN THE CIRCUIT COURT OF CRENSHAW COUNTY, ALABAMA

OLLIE GODWIN

    Plaintiff,        )
                  )
v.                   )

PALOMAR INSURANCE CORPORATION,  )    Case No.: CV-05-69
AIG d/b/a NATIONAL UNION FIRE    )
INSURANCECOMPANY OF PITTSBURGH, )
INC., GODWIN MATERIAL          )
SERVICES, INC., and FICTITIOUS      )
DEFENDANTS, A, B, and C, Being those )
persons, firms, corporations,        )
and/or any other entity responsible for or )
which carried out the acts and/or     )
omissions herein complained of with   )
respect to Plaintiff, whose names or    )
identities are otherwise unknown at this )
time, but which will be added       )
by amendment when ascertained.    )
                   )
    Defendant.         )
                   )

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

Notice To:    **GODWIN MATERIALS SERVICE, INC.**
           **C/O LORENZO GODWIN, REGISTERED AGENT**
           **P.O. BOX 12**
           **BRANTLEY, AL 36009**

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written **Answer**, either admitting or denying each allegation in the **Complaint**, to the Crenshaw County Court and to the lawyer for the Plaintiff(s) at the following address:

Richardson Legal Center, LLC

THIS ANSWER MUS[...]
DATE OF DELIVERY OF T[...]
RECEIPT, OR A JUDGMEN[...]
OR OTHER THINGS DEMA[...]
OF YOUR ANSWER WITH[...]
THEREAFTER.