# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| OLLIE GODWIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 2:05-cv-00783-SRW |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, INC., | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff and submits his response to defendants Motion for Summary Judgment as follows:

### STANDARD OF REVIEW

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Green v. Pittsburgh Plate & Glass Co., 224 F. Supp. 2d 1348, 1352 (N.D. Ala. 2002)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A judge's guide is the same standard necessary to direct a verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether [*3] it is so one-sided that one party must prevail as a matter of law.'" Id. at 259. "Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." Id. at 255.

Fraley v. Cincinnati Ins. Co., 2006 U.S. Dist. LEXIS 64158, 2-3 (D. Ala. 2006).

# STATEMENT OF DISPUTED FACTS

## 2003 INJURY CLAIM

1.      On October 22, 2003 Ollie Godwin, while rolling a tarp on his trailer, slipped and the tarp bracket hit him in the side. He reported this injury to Cindy Jordon at Godwin Materials, Inc. The injury gave Mr. Godwin a little problem, but wasn't bad. (Exhibit 1 pg. 65:17-23 and 66: 1-8 and 69).[1]

2.      Mr. Godwin continued to work after getting hurt on October 22 (Exhibit 1 pg. 72:10-23 and 73: 1-5) and (Exhibit 2).[2]

3.      One month later, Godwin was working on his truck and dropped a muffler on the same place he had injured in the earlier accident. This resulted in Mr. Godwin seeking medical treatment and ultimately surgery to repair a hernia. (Exhibit 3).[3]

4.      It was after Godwin was hurt on November 22, 2003 that the hernia came up. (Exhibit 4).[4]

5.      On November 22, 2004 Godwin was under dispatch for Godwin Materials, Inc. (Exhibit 5).[5]

6.      Godwin had made three deliveries on the day of his injury. Godwin was repairing one of his trucks that had blown an exhaust pipe at around 11:00 a.m. before hauling another load. (Exhibit 1 pg. 77). (Exhibit 5).

7.      The NUFI occupational accident policy defines "Owner Operator" as one who 1)"owns or leases a vehicle which he or she is operating for the purpose of performing Occupational services in the course and scope of contractual obligations for the Policyholder [Godwin Materials, Inc.] 2) is an independent contractor as defined by law; and 3) is not an employee of the policy holder. (Exhibit 6 pg. 2).[6]

---

[1] Exhibit 1: Excerpts from Deposition of Ollie Godwin.
[2] Exhibit 2: Commission Report
[3] Exhibit 3: Stabler Hosptial Record 12/29/03
[4] Exhibit 4: Report of Dr. Danny Hood 12/4/03
[5] Exhibit 5: Commission Report for 11/22/06
[6] Exhibit 6: Excerpt pg.2NUFI Policy

8.     Godwin performs repairs on his trucks as part of his contractual obligations to the Policyholder, Godwin Materials, Inc. (Exhibit 7 ¶1).[7]

9.     The NUFI occupational accident policy defines "Occupational" as "with respect to any activity, accident, incident, circumstance or condition involving an Insured, that the activity, accident, incident, circumstance or condition occurs or arises out of or in the course of the Insured performing services within the course and scope of contractual obligations for the Policyholder, while under Dispatch. Occupational does not encompass any period of time during the course of everyday travel to and from work." (Exhibit 6 pg.2).

10.    The NUFI policy defines "Dispatch" as "the period of time during which an insured operates his or her vehicle, or performs vehicle repair, while being in route to pick up a load, picking up a load, en route to deliver a load, and unloading a load." (Exhibit 6 pg. 2).

11.    Godwin reported his injury to Cindy Jordan at Godwin Materials, Inc. He worked the rest of the week and went to see Doctor Danny Hood eleven days later.(Exhibit 4).

12.    Cindy Jordan filled out the initial claim form sent to Palomar Ins. She wrote on the form that Mr. Godwin was at home. However, the question asked was "where was the driver scheduled to be at the time of the accident? (Exhibit 11 pg. 15: 8-12 and Exhibit 12).[8] Ollie Godwin was at his home shop making repairs but was scheduled to pick up and deliver loads. (Exhibit 7 pg. 1 ¶ 2). All of the claim forms filled out by Godwin and his medical provider's state: "Came home to fix muffler. Working on truck, muffler hit me in the lower stomach on Nov. 22, 2003 around 11:00 a.m." (Exhibit 20 pg. 1-5).[9] Additionally, Godwin's Commission reports show he had made three deliveries that day. (Exhibit 5).

13.    Cindy Jordon does not consider making necessary repairs to a truck "under dispatch". (Exhibit 11 pg. 17:10-23 and pg. 18: 1-11). When filling out the initial claim form for Godwin, she answered the question: "If unloaded, was the driver under dispatch to pick up the load?" No. Where was

---

[7] Exhibit 7: Affidavit of Ollie Godwin
[8] Exhibit 11: Deposition of Cindy Jordon.
[9] Exhibit 20: NUFI Proof of Loss Forms

the driver scheduled to be at the time of the accident? Home." (Exhibit 12). Jordon admits that she is not

familiar with the AIG policy and has never seen it. (Exhibit 11 pg. 20: 11-23).

14.     Dr. Hood diagnosed Godwin with a hernia and referred him for surgery. (Exhibit 4).

15.     On December 10, 2003 Palomar Insurance Agency, faxed Godwin Materials a claim form

for use by Godwin. Godwin filled out a proof of loss claim form and submitted it to Palomar agent

Suzanne Adger. (Exhibit 8).[10]

16.     The NUFI policy states: "Claim Forms. The Company will send claim forms to the

Claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after giving

of notice, the claimant will be deemed to have met the proof of loss requirements upon submitting, within

the time fixed in the Policy for filing proofs of loss, written proof covering the occurrence, the character

and the extent of the loss for which the claim is made. The notice should include the insured's name, the

Policyholder's name and the Policy number.

17.     Godwin filled out the initial claim form when it was made available to him; eighteen days

after the injury and within the time allowed under the policy. (Exhibit 12)[11](Exhibit 1 pg. 87-88) and

(Exhibit 8).[12]

18.     The policy states: "Proof of Loss. Written proof of loss must be furnished to the Company

within 90 days after the date of loss. ... Failure to furnish proof within the time required neither

invalidates nor reduces any claim if it was not reasonably possible and in no event, except in the absence

of legal capacity of the claimant, later than one year from the time proof is otherwise required." (Exhibit 9

No. 3).[13]

---

[10] Exhibit 8: Faxed Proof of Loss Claim Form 12/10/03

[11] Exhibit 12: Initial Claim Form dated 12/10/03

[12] Exhibit 8: Cover letter for Initial Claim Form 12/9/03

[13] Exhibit 9: Excerpt NUFI Policy pg. 13

19.    The NUFI insurance policy has a "Hernia Coverage Rider" which waives the exclusion of hernias in the policy and allows recovery of Temporary Total Disability and Accident Medical Expense and in pertinent part states as follows(Exhibit 10 ¶2):

"Any reference to an injury or accident as defined in the policy is hereby deemed to include Hernia. Benefits will be payable for a Covered Loss caused in whole or in part by, contributed to in whole or in part by, contributed to in whole or in part by, or resulting in whole or in part from, the Insured Person's Hernia, provided such Hernia is surgically repaired while the Insured Person's coverage is in force under the policy, subject to the following:

20.    With respect to the Temporary Total Disability Benefit, the period for which such indemnity shall be payable for all periods of disability, subject to the Temporary Total Disability Benefit Waiting Period, shall not exceed the Hernia Lifetime Maximum Benefit Period shown in the schedule. (Exhibit 10 No. 1).[14]

21.    Godwin made a claim for disability benefits under the policy. NCUI determined that the claim was "non-occupational" therefore, disability benefits were not paid. (Exhibit 17).[15]

23.    Jerry Godwin sent a letter to NUFI explaining that Godwin was under dispatch on both days he was hurt. (Exhibit 19).[16]

## ARGUMENT

There are four elements a plaintiff must prove in a breach of contract claim.

A plaintiff can establish a breach-of-contract claim in Alabama by showing "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293, 303 (Ala. 1999) (quoting Southern Medical Health Systems, Inc. v. Vaughn, 669 So. 2d 98, 99 (Ala. 1995).

Black-Gammons v. Zurich Am. Ins. Co., 2006 U.S. Dist. LEXIS 1942 (D. Ala. 2006)

---

[14] Exhibit 10: Hernia Coverage Rider ¶2 and No. 1 and 2
[15] Exhibit 17: Denial letter 2/27/04
[16] Exhibit 19: Letter from Jerry Godwin 3/17/2004.

In this case the first element is not in dispute because there is a valid insurance contract between NCUI and Ollie Godwin.

### 2003 HERNIA CLAIM

The Defendants assert that they fulfilled their obligations under the insurance contract when they paid the Non-Occupational Accident Medical Expense Benefit of $7,500.00 for Mr. Godwin's hernia operation. A factual dispute exists between the Plaintiff and Defendant about whether the injury was an "Occupational Injury" thereby entitling Godwin to disability payments of $500.00 per week while he was recuperating after the hernia surgery.

Godwin relies on the policy language defining "Dispatch" as "the period of time during which an insured operates his or her vehicle, **or performs vehicle repair**, while being in route to pick up a load, picking up a load, en route to deliver a load, and unloading a load." Godwin meets this definition because he was performing a vehicle repair while in route to pick up a load. Godwin was operating his vehicle which is shown in the Commission Report. Godwin owns three trucks, all of which are leased to Godwin Materials, Inc. The truck he was working on at the time of his injury was in route to pick up a load for Godwin Materials' and Godwin was repairing it under his contractual obligation to Godwin Materials. All three of the trucks Godwin owns were making deliveries pursuant to the contract between Godwin and Godwin Materials. The policy clearly covers performance of "vehicle repairs" made while picking up and delivering loads. Godwin was performing a necessary repair after which he would have delivered or picked up another load (Exhibit 1 pg. 77). The definition of Occupational as defined in the policy covers these circumstances:

"Occupational" as "with respect to any activity, accident, incident, circumstance or condition involving an Insured, that the activity, accident, incident, circumstance or condition occurs or arises out of or in the

course of the Insured performing services within the course and scope of contractual obligations for the Policyholder, while under Dispatch.

Certainly under the circumstances presented it can be concluded that Godwin was under dispatch and performing an occupational activity when the injury occurred. At the very least the policy does not preclude Godwin from swapping trucks with another driver to make a necessary and unexpected repair while hauling to and from Godwin materials. Godwin is covered so long as he is performing services within the course and scope of his contractual obligations and he is under dispatch if he performs vehicle repairs while en route.

Furthermore, the policy does not exclude Godwin's home shop which happens to be located in north Crenshaw County, between Godwin Materials and the Hyundai Plant where deliveries were being made.

This is not a case of "strained or twisted reasoning" as the Defendants have suggested. The question which must ultimately be answered by the jury is whether or not Mr. Godwin was en route to pick up or deliver for Godwin Materials when he repaired the muffler on the truck. The Commission Reports show that Mr. Godwin had delivered three loads the day of his injury. The repair of the muffler was made while he was traveling between the pickup and delivery point. He intended, but for the injury, to continue on his delivery route after the muffler was repaired. He was under dispatch and working pursuant to his contract with Godwin Materials when the injury occurred.

In this case the plain meaning of the policy should apply with the usual and ordinary understanding of a truck driver such as Ollie Godwin. The policy includes time spent "performing vehicle repairs while being in route to pick up a load, picking up a load, en route to deliver a load, and unloading a load." The Defendants attempt to twist the plain meaning of the policy by saying that because he was not driving the same truck that he did when he started work that morning he was not under dispatch. Godwin was under dispatch no matter which truck he was driving or working on. Mr. Godwin's business

involves three trucks hauling from one place to another. Which truck he is driving or repairing does not

determine whether he is en route, it is the fact that he is in the process of hauling loads from one place to

another that determines whether he is en route to pick up or deliver.

The exclusion in the policy is to prevent claims by persons who are not using their trucks for work

purposes. It defines a period of time, not limited by specific hours, by describing the work truck drivers

do. The purpose of the exclusion is extremely important because work situations vary from day to day. In

order to accomplish the job at hand a person needs to be flexible without fearing that the variation will

result in a loss of coverage. On this issue the Alabama Supreme Court has found:

> The exclusion should not be broadened to include circumstances that may vary from day to day but are
> still within the purpose intended by the language of the policy. "Further, this Court has ruled that
> exceptions to coverage must be interpreted as narrowly as possible to provide the maximum coverage
> available." Porterfield v. Audubon Indem. Co., 856 So. 2d 789, 799-800 (Ala. 2002) citing Sullivan v.
> State Farm Mut. Auto. Ins., 513 So. 2d 992, 994 (Ala. 1987).

> It is the duty of the courts to take the words of an insurance policy as they are found in it, and as
> persons with usual and ordinary understanding would construe them when used to express the purpose for
> which they were employed. Alabama Farm Bureau Mut. Casualty Ins. Co. v. Goodman, 279 Ala. 538, 541
> (Ala. 1966) citing Holloway v. State Farm Mutual Automobile Ins.Co., 275 Ala. 41, 151 So.2d 774;
> Franklin Life Ins.Co. v. Lewis, 36 Ala.App. 313, 55 So.2d 518.

In looking at the purpose of the exclusion it is easy to see that Godwin was under dispatch because

he was tending to a repair that needed to be made to continue picking up and delivery on the day in

question.

The Defendants wrongly state that the injury to Mr. Godwin, when he fell while rolling back the

tarp on his truck, for which he did not seek treatment does not change the benefits under the policy. The

Hernia Coverage Rider states:

> **Any reference to an injury or accident** as defined in the policy is hereby deemed to
> include Hernia. **Benefits shall be payable for a Covered Loss caused in whole or in part
> by, contributed to in whole or in part by, or resulting in whole or in part from, the
> Insured Person's Hernia**, provided such Hernia is surgically repaired while the Insured
> Person's coverage is in force under this Policy. (Emphasis added). (Exhibit 10 ¶ 3).

Godwin hurt himself on October 22, 2003 but decided not to pursue medical treatment. Godwin's hernia may have happened when he fell in October, however it was not so bad that Godwin couldn't work or felt he needed medical treatment. When the muffler fell on him a month later he saw a doctor and was diagnosed with a hernia. The prior incident is covered by the language contained in the Hernia Rider if it partially contributed to the hernia. The exclusion language in the Rider is that the Hernia be surgically repaired and Godwin's hernia was surgically repaired. It is the fact that the hernia requires surgery that triggers coverage.

Godwin followed the procedure of reporting accidents to Godwin Materials when he filed a claim regarding his hernia on December 10, 2003 eighteen days after the accident. Suzanne Adger, the Palomar Agent sent the form to Cindy Jordon on the date of the accident (Exhibit 12).[17] NUFI required additional forms to be filled out later and Godwin did fill them out as requested.

Godwin therefore meets all the requirements of an occupational injury and any dispute about whether he was under dispatch is a fact to be determined by a jury.

### 2004 HIP CLAIM

#### STATEMENT OF DISPUTED FACTS

1.    Mr. Godwin had been working driving his truck without physical pain or problems during the year 2004. (Exhibit 7).

2.    On October 27, 2004 Mr. Godwin had delivered a load of concrete and as he was getting out of his truck, he misjudged the distance between the step and the ground and fell. He thought he had twisted his knee. (Exhibit 1 pg. 116: 1-23 and Exhibit 18).[18]

3.    On November 11, 2004 Dr. Adam's X-Ray report notes that "Bony structures are intact with no evidence of fracture or arthritic change. Cartilage space in the hip is well maintained.

---

[17] Exhibit 12: Claim Form signed by Cindy Jordan on 11/22/03.
[18] Exhibit 18: Commission Report 10/27/2004

4.      Nineteen days later Dr. Adam's assessment of Godwin's X-Rays revealed that there was Osteonecrosis of both femoral heads, bone marrow edema on the left femoral head and neck, bilateral hip effusions greater on the left and edema in the left quadratus femoris musculature.

5.      Godwin was referred to Dr. Barrington who found "osteonecrosis in both hips with collapse on the left side." Dr. Barrington also expressed "I do think it appears to be work related." (Exhibit 14 pg 2).[19]

6.      The NUFI policy defines injury as follows:

"Injury means bodily injury to an Insured person caused by an occupational accident while coverage is in force under the Policy, which results directly and independently of all other causes in a Covered Loss. All injuries sustained by an Insured Person in any one accident shall be considered a single injury."

7.      Despite the fact that NUFI denied Godwin's claim because "policy covers accidents only, sickness not covered," (Exhibit 21)[20] NUFI paid claims for the same accident on four different occasions totaling $2,193.02. (Exhibit 13).[21]

## ARGUMENT

This claim involves the interpretation of "Injury" as defined in the policy. The defendants assert a strict interpretation of the language stating that the injury "result directly and independently of all other causes." Ollie Godwin suffered from a latent disease, osteonecrosis, which he did not know he had until he injured himself stepping out of his truck. Before the accident, Godwin had been routinely working with no pain. After the injury he became unable to work due to the pain in his knee and hip. The Eleventh Circuit has addressed the strict interpretation of directly and independently of all other causes language in insurance policies.

---

[19] Exhibit 14: Medical Notes; Doctor Barrington 12/3/04
[20] Exhibit 21: Explanation of Benefits form denying claims for 10/27/03 accident.
[21] Exhibit 13: Explanation of Benefits form paying claims for 10/27/03 accident.

We are persuaded by the reasoning of the Fourth Circuit. The coverage provided under the LINA policy at issue would be rendered almost meaningless if we were to adopt the strict interpretation advanced by Appellee. As the Fourth Circuit rightly pointed out, an overly strict interpretation of "directly and from no other causes" would provide insureds, or their beneficiaries, with coverage only where the insured was in perfect health at the time of an accident. The "substantially contributed" test gives this exclusionary language reasonable content without unreasonably limiting coverage. And, it advances ERISA's purpose to promote the interests of employees and their beneficiaries. See Firestone, 489 U.S. at 113, 109 S. Ct. 956. We therefore adopt the "substantially contributed" test as the federal common law of this circuit. Thus, we will not consider Mr. Dixon's pre-existing heart disease as a cause unless it substantially contributed to his death.

Dixon v. Life Ins. Co. of N. Am., 389 F.3d 1179, 1182-1185 (11th Cir. 2004).

No doubt Godwin's condition did in fact exist at the time of his fall; however it had not manifested itself into a disabling condition until after Godwin fell. Prior to the fall, Godwin was able to work each day. (Exhibit 2).[22] After the fall Godwin continued to work, although in pain, until November. (Exhibit 2). The medical records show that his condition continued to worsen after the fall.

The Alabama Court of Civil Appeals addressed similar circumstances and found:

The defendant's assertion that plaintiff's preexisting condition is the sole cause of his current problems and disability and that the heart attack is not the cause of his disability is not supported by the evidence. To conclude that plaintiff would have suffered his present disability absent the occurrence of the heart attack is, at best, speculative. While it is possible that plaintiff's coronary artery disease would have become sufficiently symptomatic, in time, to result in by-pass surgery even in the absence of the heart attack, the fact remains that the preexisting condition did not prevent plaintiff from working in a normal manner prior to the attack, and plaintiff's treating physician considered plaintiff's condition under control prior to that time.

City of Fort Payne v. Barton, 621 So. 2d 993, 995-996 (Ala. Civ. App. 1993).

Applying the same reasoning to Godwin, to conclude that his osteonecrosis would have required him to have a hip replacement in the future, regardless of the accident, is speculative. While it is possible he would have began to suffer symptoms which would have required a hip replacement at some point in the future doesn't negate the fact that he was working up until the day of his fall without symptoms.

---

[22] Exhibit 2: Commission Report pgl. 1-7

In dealing with accident policies whose coverage is defined by the general terms, such as death resulting directly and solely from the accidental injury, exclusive or independent of all other causes, this court has approved and adopted the rule announced by other courts to the following effect: . . . Where accidental injury aggravated a disease and hastened death so as to cause it to occur at an earlier period than it would have occurred but for the accident, it is the direct, independent, and exclusive cause of death at the time.

This view of proximate cause is applied in our cases, notwithstanding the grave condition of the disease, and notwithstanding the accidental injury was such as not to be fatal but for the disease or bodily infirmity.

Liberty Nat'l Life Ins. Co. v. Bailey, 34 Ala. App. 199, 202-203 (Ala. Ct. App. 1949).

The Defendants rely on the decision in Black-Gammons because the immaterial facts are similar to Godwin's. Black-Gammons was a truck driver who was injured on the job and was covered by an occupational accident policy. However, the similarity ends there. In Black-Gammons the insurance company, after paying disability benefits, determined that Black-Gammons accidental injuries had healed and she was suffering from carpal-tunnel syndrome. An administrative law judge found that Black-Gammon's accidental injuries had healed and she had submitted no evidence showing that her remaining injuries were caused by the accident. Black-Gammons conceded that "except for her herniated discs . . . none of her diagnosed conditions is eligible for benefit coverage." Black-Gammons "did not argue that her degenerative disk disease was precipitated by the accident." Black-Gammons v. Zurich Am. Ins. Co., 2006 U.S. Dist. LEXIS 1942 pg. 8-10.

The facts present here show that Godwin was working before the accident and experienced pain which caused him to seek medical treatment after the accident. The initial x-rays did not show a collapse of the femoral head but later an MRI showed collapse. Dr. Barrington stated in his examination report that "I do think it appears that this is work related." (Exhibit 14 pg. 4). Dr. Barrington later explained his findings in a letter to Stephanie Pine of NUFI stating: "Probably he had an aggravation of a previously

underlying condition, which was the avascular necrosis. The injury probably caused him to collapse it and therefore have the pain that resulted in his need for the hip replacement operation." (Exhibit 15).[23]

Whether the accidental injury caused the hip to collapse is a question of material fact to be decided by a jury. Even Defendant's expert Dr. Daniel Michael does not exclude the possibility that but for the accident the hip would not have collapsed. He merely states that considering the time it takes for avascular necrosis to develop, in his opinion there was no relationship between the accident and the subsequent problems in Godwin's hip. (Exhibit 16 pg. 2 ¶ 6).[24]

> [U]nder Alabama law, "when an insurer denies coverage based on an exclusionary clause it bears the burden of proving the applicability of that exclusion." Jordan v. National Acc. Ins. Underwriters Inc., 922 F.2d 732, 735 (11th Cir.1991).

> A review of the Alabama cases and decisions of this Court shows that considerable latitude must be allowed the jury in determining the question of causation. An insurer cannot escape liability simply by showing that some disease may have contributed to some extent to the insured's death.

> Union Central Life Ins. Co. v. Scott, 286 Ala. 10, 236 So. 2d 328 (1970).

Tate v. Government Employees Ins. Co., 997 F.2d 1433, 1439 (11th Cir. 1993).

> In Union Central Life Ins. Co. v. Scott the Alabama Court spells out its reasoning:

> A review of the Alabama cases and the decisions of this Court show that considerable latitude must be allowed the jury in determining the question of causation. An insurer cannot escape liability simply by showing that some disease may have contributed to some extent to the insured's death. Most elderly people have some ailment, some latent disease. When an old person is injured, almost invariably an ailment is aggravated, a dormant disease is activated, and the effects of the injury intensified because of general frailty and lack of resistance to illness. Progressive weakness and increasing complications follow any time an old person is put to bed for any length of time. In every case therefore it is difficult to separate the effects of the accident from the effects of disease. The insurer would have us hold that there can be no recovery unless Death is present at the scene of the accident, or openly waits in continuous attendance on an injured insured from the moment of injury to the moment of death. Alabama courts, and this Court, take a more reasonable view.

---

[23] Exhibit 15: Letter from Dr. Barrington to AIG 3/2/2005
[24] Exhibit 16: Affidavit of Dr. Daniel W. Michael

13

Union Central Life Ins. Co. v. Scott, 286 Ala. 10, 12-14; 236 So. 2d 328 (Ala. 1970). The same reasoning applies in Godwin's case. Thus Godwin's breach of contract claim for the injury to his hip should proceed to a jury.

## II.    GODWINS BAD FAITH CLAIM DOES NOT FAIL AS A MATTER OF LAW

The Plaintiff does not dispute the elements of a bad faith claim as set out by the defendants in their brief and therefore will not reiterate them here.

### HERNIA

Godwin disputes that there was no breach of his insurance contract in this case. NUFI denied Godwin's occupational hernia claim stating that the reason for denial was "Not under dispatch nor was it loaded" (Exhibit 17 ¶ 1).[25] As explained above, Godwin was under dispatch as the term is defined in the policy. The policy does not require a truck to be "loaded" because when a truck driver has delivered a load he must then pick one up. Such is the nature of truck driving and it would be ludicrous to believe that the only time the insurance policy covered Mr. Godwin was when his truck was loaded. The Commission Reports which were submitted to NUFI substantiate that Godwin was in fact making deliveries on the day in question. (Exhibit 2 and 5). NUFI was aware that Godwin was under dispatch. An e-mail from Suzanne Adger (Palomar Agent) to Patricia Gambino (NUFI Agent) verifies that they knew Godwin had been working on the date of the accident. It states: "Pat, I have attached a letter from Godwin, as well as the earnings that were sent in that show he did work on 11-22-03 which is also the date of his injury." (Exhibit 19).[26] Although, NUFI paid on Godwin's hernia claim, they paid on the claim as "non-occupational" which relieved them of the obligation to pay disability benefits of $500.00 per week. Even with proof that Godwin was delivering loads on the day of his injury, NUFI denied his disability claim.

---

[25] Exhibit 17: Letter of Denial 2/27/2004
[26] Exhibit 19: E-mail Correspondence

NUFI had no good reason to deny Godwin's claim as "non-occupational." When NUFI had proof that he did work on the day in question, and they did not investigate any further before denying his claim. Had they taken the time to talk directly to Ollie Godwin they would have known that he was repairing a muffler in his shop between deliveries. If they had read the hernia rider they also would have discovered that "Any reference to an injury or accident as defined in the policy is hereby deemed to include Hernia. Benefits will be payable for a Covered Loss caused in whole or in part by, contributed to in whole or in part by, contributed to in whole or in part by, or resulting in whole or in part from, the Insured Person's Hernia. . ." The fact that Godwin's hernia resulted from two on the job injuries does make a difference because it resulted or contributed "in whole or in part" to the hernia. If either accident caused the hernia, the one where he was pulling the tarp over the load or the one where he was repairing the muffler, contributed to the hernia the claim should have been covered. (Exhibit 19). [27] It can be inferred that NUFI was looking for ways to deny coverage.

**HIP**

NUFI denied Godwin's claim for injury to his hip because he did not meet the definition of injury under the policy. Specifically they stated that the injury must have resulted "directly from and independent of all other causes." NUFI went on to explain that they had spoken with Dr. Barrington directly and he stated "your condition was an underlying condition that was aggravated by work. He states that you had this condition but were not aware of it."

NUFI knew or should have known that Alabama law would not relieve them of the duty to pay Godwin's claim simply because it was discovered that a latent disease was present prior to the injury. Especially when Godwin's doctor had stated that the condition was aggravated by work and the "injury probably caused him to collapse it and therefore have the pain that resulted in his need for the hip replacement surgery." (Exhibit 15).

---

[27] Exhibit 19: Letter from Jerry Godwin to NUFI.

In bad faith cases the plaintiff must ultimately "show that the insurance company had no legal or factual defense to the insurance claim. The debatable reason means an arguable reason, one that is open to dispute. Old Southern Life Ins. Co. v. Spann, 472 So. 2d 987 (Ala. 1985). In this case, as discussed above, NUFI did not have a disputable legal reason to deny Godwin's claim simply because Godwin was found to have a disease. Under Alabama law that is not enough. They would be required to investigate further and examine whether the accident caused the chain of events which ultimately caused Godwin's hip to collapse.

NUFI denied some of Godwin's claims related to his accident on October 27, 2004, but paid $2,193.02 worth claims on the same accident. (Exhibit 21 and 13). This shows that NUFI, at some point, believed the claim was covered by the policy.

The evidence submitted by Godwin, when considered in the light most favorable to him, shows that NUFI denied his claim because of the underlying disease even though they were aware that the accident had aggravated the underlying disease and possibly caused his hip to collapse. Therefore they are not entitled to a judgment as a matter of law.

## CONCLUSION

Godwin has produced credible evidence that he was under dispatch when he was injured in 2003 and had a hernia surgically repaired. Godwin has also shown that there was no arguable reason to deny his hernia claim because information was provided to the insurer showing that Godwin was in fact working on the days he was injured.

Godwin has produced credible evidence that his hip injury aggravated an underlying disease that he did not know he had. The injury set into motion a chain of events that led to a collapse of his hip and surgical repair. The language in the policy does not exclude accidental injuries worsened by disease. To find that a person has to be disease free or taken into emergency surgery when they have an accident would be an unfair interpretation of the language of the policy. Under Alabama law the exclusionary

16

clause "directly and independently of all other causes" is not interpreted so strictly that it excludes an injury aggravated by a disease.

For these and all of the foregoing reasons, Defendants Motion for Summary Judgment is due to be denied.

Respectfully Submitted this the 27th day of October, 2006.

**s/Arlene M. Richardson**

Bar Number ASB 9452-I60A
Attorney for the Plaintiff
**Richardson Legal Center, L.L.C**.
P.O. Box 971
Hayneville, Alabama 36040
Telephone: (334) 548-5660
Fax: (334) 548-5661
E-mail: arlawyer@htcnet.net

## CERTIFICATE OF SERVICE

I hereby certify that on October 27 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Michelle L. Crunk | mlc@ffdlaw.com |
| John W. Dodson | jwd@ffdlaw.com, amj@ffdlaw.com |

And certify that I have hereby mailed by United States Postal Service the document to the following non-CM/ECF participants:

NONE

Respectfully submitted,

**s/Arlene M. Richardson**

Bar Number ASB 9452-I60A
Attorney for the Plaintiff
**Richardson Legal Center, L.L.C**.
P.O. Box 971
Hayneville, Alabama 36040
Telephone: (334) 548-5660
Fax: (334) 548-5661
E-mail: arlawyer@htcnet.net

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

OLLIE GODWIN )
                     )
      Plaintiff, )
                     )
v. )
                     )    2:05-cv-00783-SRW
NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, INC., )
ET AL., )
                     )
      Defendants. )

## EXHIBIT LIST

| Exhibit Number | Description |
|---|---|
| 1. | Excerpts Deposition of Ollie Godwin |
| 2. | Commission Report of Ollie Godwin 10/22/03 |
| 3. | Stabler Hospital Record 12/29/03 |
| 4. | Report of Dr. Danny Hood 12/4/03 |
| 5. | Commission Report of Ollie Godwin 11/22/03 |
| 6. | Excerpt NUFI Policy pg. 2 |
| 7. | Affidavit of Ollie Godwin |
| 8. | Faxed Proof of Loss Claim Form 12/10/03 |
| 9. | Excerpt NUFI Policy |
| 10. | Excerpt NUFI Policy Hernia Coverage Rider |
| 11. | Excerpts Deposition of Cindy Jordon |
| 12. | NUFI Claim Form signed by Cindy Jordon |
| 13. | Explanation of Benefits Forms paying claims for 10/27/04 accident |
| 14. | Medical Notes; Doctor Barrington 12/3/04 |

15.        Letter from Dr. Barrington to AIG 3/2/05

16.        Affidavit of Dr. Daniel W. Michael

17.        Letter of Denial 2/27/04

18.        Commission Report of Ollie Godwin 10/27/04

19.        E-mail Correspondence

20.        NUFI Proof of Loss Forms

21.        Explanation of Benefits Forms Unpaid Claims

OLLIE GODWIN
NATIONAL UNION FIRE INSURANCE COMPANY

OLLIE GODWIN
July 10, 2006

Page 69

1    A.    I don't remember. I hurt
2  myself then, but I kept working, you
3  know. And then when the muffler fell on
4  me, that's when I had to have something
5  done about it.
6    Q.    You stated earlier that after
7  the tarp rack hit you, you told somebody
8  at Godwin Material about that?
9    A.    Yes.
10   Q.    Cindy Jordan; is that correct?
11   A.    Yes.
12   Q.    What did you tell Cindy?
13   A.    I told her I fell on the tarp
14 rack and hurt my stomach. It swolled up
15 and it bruised, so I told her, you know,
16 in case anything come up about it.
17   Q.    Did you fill out a claim for
18 that injury?
19   A.    No.
20   Q.    Did you request Cindy to fill
21 out a claim for you?
22   A.    No. I just -- they always
23 tell us to call when something happens so

Page 70

1  they'll have it on record.
2    Q.    Did you call Cindy to let her
3  know that you had been injured or did you
4  speak to her in person?
5    A.    I called her.
6    Q.    What did she say to you in
7  response?
8    A.    She just said, okay, she'd
9  make a note of it, put it on file, you
10 know.
11   Q.    Did you go see a doctor after
12 your injury on October 25th?
13   A.    No, not right then.
14   Q.    Do you know if you did miss
15 any work on October 26th or not?
16   A.    I'm not sure.
17   Q.    Okay. Looking at the sheets
18 that your attorney just gave me, I'm
19 missing the month of November, 2003.
20        MS. CRUNK: Do you have those
21 sheets?
22        MS. RICHARDSON: No.
23        MS. CRUNK: I have October

Page 71

1  2003, and then the next sheet starts on
2  December 12th, 2003.
3        MS. RICHARDSON: Let's see.
4  Maybe we just didn't copy it. Were you
5  out of work? No. We don't have those.
6        MS. CRUNK: Okay.
7    Q.    (BY MS. CRUNK:) These sheets
8  that I have in front of me, these
9  commission reports, are these documents
10 that you maintain or did you get these
11 from Godwin Material?
12   A.    No. We maintain them.
13   Q.    So would you have in your
14 possession the records for the month of
15 November 2003?
16   A.    Yes.
17   Q.    And we could get those?
18   A.    These are what comes in with
19 your settlement each month so you'll know
20 exactly how many loads you hauled.
21   Q.    Okay.
22   A.    Yeah, she'd have that.
23   Q.    Okay. So, on October 25th,

Page 72

1  you were injured with the tarp rack, and
2  called in Cindy and told her that you
3  were hurt, but you did not file a claim
4  at that time; is that correct?
5    A.    That's correct.
6    Q.    And then what happened in --
7  let's go back. On October 25th, you had
8  just unloaded a load; is that correct?
9    A.    That's correct.
10   Q.    Did you go pick up a load
11 after you hurt yourself?
12   A.    Yeah.
13   Q.    That same day; is that
14 correct?
15   A.    No, not that day. The next
16 day I did.
17   Q.    So -- I'm sorry to interrupt
18 you. The load that you had just unloaded
19 on October 25th before you injured
20 yourself was your last load for that day?
21   A.    That's correct.
22   Q.    And as far as you know, you
23 went the next day?

18 (Pages 69 to 72)

Tyler Eaton Morgan Nichols & Pritchett Inc.

PLAINTIFF'S
EXHIBIT
1

OLLIE GODWIN
NATIONAL UNION FIRE INSURANCE COMPANY

OLLIE GODWIN
July 10, 2006

Page 73

1    A.   I worked the next day.
2    Q.   Worked the next day. Okay.
3    A.   The papers show it. I'm not
4  one just to run to the doctor just every
5  little bump.
6    Q.   After you were hit with the
7  tarp rack, did you go immediately home?
8    A.   Yeah.
9    Q.   Did you call Cindy from your
10 house?
11   A.   Yes.
12   Q.   You stated that Godwin
13 Material requested that you call in every
14 time you had an injury; is that correct?
15   A.   Anything that something might
16 occur from it later on, yeah.
17   Q.   Prior to being hit with a tarp
18 rack on October 25th, 2003, had you ever
19 called any other injury in to Godwin
20 Material?
21   A.   Not that I can remember.
22   Q.   You stated earlier that on
23 November 25th, 2003 you hit yourself with

Page 74

1  a muffler; is that correct?
2    A.   Yeah, with a muffler.
3    Q.   What time of day did this
4  occur?
5    A.   I think it was around about
6  11:00.
7    Q.   What time of day was it when
8  you were hit with the tarp rack in that
9  paper?
10   A.   Probably around 4:30 or 5:00.
11   Q.   Do you typically finish work
12 daily around 4:30 or 5:00?
13   A.   Well, I did then because if
14 you notice, all the tickets is that
15 concrete company, TCC. That's just --
16 that's when they was building the Hyundai
17 plant. I was hauling sand from one side
18 of Montgomery, from the north side to the
19 south side. So most of it all run out
20 about the same time.
21   Q.   It looks like during the month
22 of December 2003 and also over here in
23 February 2004 that TCC is also the same

Page 75

1  company that you're driving for. Is this
2  also in relation to building the Hyundai
3  plant?
4    A.   Yeah.
5    Q.   So for how long did you do
6  that?
7    A.   About seven or eight months.
8  It was a long time. Some days we'd fill
9  them up and go somewhere else, but I was
10 their primary hauler for them.
11   Q.   When you were delivering sand
12 from north of Montgomery to south of
13 Montgomery for TCC, what time in the
14 morning would you start?
15   A.   Most of the time it'd be about
16 7:00.
17   Q.   So am I correct in
18 understanding that from about 7:00 to
19 about 5:00 in the evening you would just
20 make continuous runs hauling sand from
21 north of Montgomery to south of
22 Montgomery? Is that correct?
23   A.   Yeah.

Page 76

1    Q.   Okay. Tell me what happened
2  the day that you were hit with a muffler.
3    A.   On a big truck, you got big
4  mufflers. I took the top clamp off. I
5  took the bottom clamps off to pick it up.
6  On a T-600 Kenworth, you've got a guard
7  comes around. You have to pick the
8  muffler up over the guard and out. When
9  I picked it up over the guard and coming
10 out with it at an angle, I had to come
11 out of the bracket at the top. And it
12 was pushing me backwards.
13       So when I tripped, the
14 muffler -- I fell on my back, and the
15 muffler hit me in the stomach, same place
16 I hit the tarp rack.
17   Q.   Where were you working on the
18 muffler?
19   A.   At home, my shop.
20   Q.   You stated earlier that this
21 happened around 11:00 a.m.; is that
22 correct?
23   A.   Yes.

Tyler Eaton Morgan Nichols & Pritchett Inc.

PLAINTIFF'S
EXHIBIT

OLLIE GODWIN
NATIONAL UNION FIRE INSURANCE COMPANY

OLLIE GODWIN
July 10, 2006

| Page 77 |
| --- |

1     Q.   Had you made any deliveries
2 that day?
3     A.   No. It's been a while back.
4 I don't believe so. Seemed like the
5 truck was loaded with pea gravel when the
6 pipe blowed out. You have to fix it
7 because DOT will shut the truck down if
8 they catch you because of exhaust going
9 to the cab of the truck with the driver.
10     Q.   When had the pipe broke?
11     A.   Bringing it in, you know,
12 fixing to take a load to haul it. We was
13 taking a load off. He brought it in to
14 the house because the pipe busted.
15     Q.   Who brought it into the house?
16     A.   I forgot who was driving for
17 me then. I can check on it.
18     Q.   This was not the truck you
19 were driving at that time?
20     A.   Not right there at the time,
21 it wasn't. But I was going to take it
22 off.
23     Q.   So would this have been Clyde

| Page 78 |
| --- |

1 or Mark who was driving the truck?
2     A.   No, wouldn't be one of those.
3     Q.   But it was another person with
4 whom you had contracted to drive one of
5 your trucks; is that correct?
6     A.   Yeah. It was my truck.
7     Q.   When the pipe burst, you were
8 not driving the truck; is that correct?
9     A.   No.
10     Q.   Would you have records at home
11 that would be able to show who the driver
12 was on that truck at that time?
13     A.   I might have. I would have to
14 look. I should have receipts for the
15 parts that were purchased to fix the
16 truck.
17     Q.   Did you purchase the parts to
18 fix that truck from Godwin Material?
19     A.   I don't remember if I got them
20 from them or the parts house.
21     Q.   Where is the parts house?
22 What is that?
23     A.   Well, we use several different

| Page 79 |
| --- |

1 ones: Capitol Volvo, Fleet Pride,
2 Freightliner, Kenworth, Peterbilt.
3     Q.   So I'm correct that you don't
4 purchase all of your parts from Godwin
5 Material; is that correct?
6     A.   No.
7     Q.   Is there a shop at Godwin
8 Material where you can work on your
9 trucks?
10     A.   They have their own shop,
11 yeah.
12     Q.   Does the shop at Godwin
13 Material ever make any repairs on the
14 trucks you own?
15     A.   They have when my hips was --
16 I had surgery on my hip.
17     Q.   When Godwin Material did work
18 on your trucks when you were injured with
19 your hip, in addition to any parts that
20 you had to purchase for those trucks, did
21 you have to pay Godwin Material for any
22 labor?
23     A.   No.

| Page 80 |
| --- |

1     Q.   Did you have to pay for
2 anything besides parts?
3     A.   No.
4     Q.   Have you ever worked on a
5 truck at the shop at Godwin Material?
6     A.   Yeah.
7     Q.   When have you worked on a
8 truck at Godwin's shop?
9     A.   It's been a couple of years
10 back. I put a back end in one,
11 transmission on one.
12     Q.   Was this work you were doing
13 on trucks you owned?
14     A.   On my trucks, yeah.
15     Q.   How do you decide whether to
16 do the work at your house or at the shop
17 at Godwin when you're repairing your own
18 trucks?
19     A.   Well, it's according to where
20 it breaks down at. We take it to the
21 closest place.
22     Q.   Do you do all your repair on
23 your own trucks?

Tyler Eaton Morgan Nichols & Pritchett Inc.

PLAINTIFF'S
EXHIBIT
1

OLLIE GODWIN
NATIONAL UNION FIRE INSURANCE COMPANY

OLLIE GODWIN
July 10, 2006

Page 85

1    paper. I forgot exactly which day I did
2    go.
3        Q.    On this paper?
4        A.    No. It was on one my wife
5    left.
6            MS. RICHARDSON: The package
7    that I gave you earlier with the
8    insurance coverages.
9            MS. CRUNK: Okay. All the
10   sheets that you gave me earlier relate to
11   the hip problem.
12       Q.    (BY MS. CRUNK:) Did you go to
13   the doctor the next day?
14       A.    I'm not sure. I think -- I
15   would have to see exactly which day it
16   fell. I went a couple of days after,
17   next day or a couple after. I can find
18   the records at the house if you want me
19   to.
20           MS. RICHARDSON: Well, it will
21   be reflected in the medical records, too,
22   I'm sure.
23       A.    Yeah.

Page 86

1        Q.    Did you call Cindy or anyone
2    else at Godwin Material the day of the
3    accident to let them know?
4        A.    The next day I did.
5        Q.    Who did you speak with?
6        A.    Cindy.
7        Q.    What did you tell Cindy?
8        A.    Told her I had a muffler fall
9    on me, hit me in the same place I hurt
10   myself with the tarp rack.
11       Q.    Did you fill out a claim at
12   that time?
13       A.    No.
14       Q.    Did you request that Cindy
15   make a claim at that time?
16       A.    No. They don't ever ask you
17   to make a claim. They just tell you to
18   report it. And then when you go to the
19   doctor and everything, then you'll get
20   your papers and fill them all out. The
21   doctor fills his part out.
22       Q.    Who did you get the papers
23   from that you filled out for your hernia?

Page 87

1        A.    I think from Cindy. On the
2    hernia, I went to see Dr. Hood, and then
3    Dr. Hood called Dr. McGowin. He was the
4    surgeon.
5        Q.    Take a look at these two
6    sheets for me, if you will.
7        A.    (Reviewing document.)
8        Q.    Do you remember filling out
9    that form?
10       A.    My wife filled the top part
11   out, I know.
12       Q.    Is that your signature on the
13   bottom of the page?
14       A.    Yes.
15       Q.    Both pages?
16       A.    Yes.
17       Q.    Okay.
18       A.    Some of this I believe is what
19   the doctors filled out.
20           MS. RICHARDSON: Can we mark
21   that?
22           MS. CRUNK: Sure.
23           (Whereupon, Defendant's

Page 88

1            Exhibit 2 was marked for
2            identification.)
3        Q.    (BY MS. CRUNK:) Okay. It
4    looks like to me here it said the injury
5    occurred on the 11/22nd/03. And here it
6    says, "When is the first date that you
7    consulted a physician for this condition?
8    December 4th, 2003." Do you agree with
9    me that that's what it says?
10       A.    That's what it looks like it
11   says. Yes.
12       Q.    This sheet that you signed is
13   dated January 8th, 2004. Is that the
14   first form you filled out regarding your
15   hernia claim?
16       A.    I'm not sure.
17       Q.    Okay.
18       A.    The 8th, the 8th is when I
19   went back to have the staples taken out.
20       Q.    Okay. This is a copy of the
21   complaint that you filed, and I'm going
22   ask you to look at page three,
23   specifically paragraphs 11 and 12. Would

Tyler Eaton Morgan Nichols & Pritchett Inc.

PLAINTIFF'S
EXHIBIT

OLLIE GODWIN
NATIONAL UNION FIRE INSURANCE COMPANY

OLLIE GODWIN
July 10, 2006

Page 113

1   Ms. Gambino about this information being
2   incorrect in this letter?
3       A.   I don't remember if I did or
4   not.
5       Q.   So your dispute with your
6   hernia claim is that you should have been
7   paid $500 a week for disability payments;
8   is that correct?
9       A.   Yes.
10          MS. CRUNK:  Let's take a
11  break.
12          (Recess.)
13      Q.   (BY MS. CRUNK:)  I have a
14  couple more questions with regard to your
15  hernia claim.  When the driver of the
16  truck called and told you that the pipe
17  had busted, did you tell him to bring the
18  truck into your shop?  Is that correct?
19      A.   Yes.
20      Q.   Did the truck have to be towed
21  or could he drive it that far?
22      A.   No.  He drove it in.
23      Q.   Okay.  Did you notify anyone

Page 114

1   at Apek that the load was not going to be
2   delivered that evening?
3       A.   No.
4       Q.   Did you notify anyone at
5   Godwin that the load would not be
6   delivered?
7       A.   No.
8       Q.   Did you notify anybody at
9   Godwin that the pipe had burst on the
10  truck?
11      A.   No.
12      Q.   So the decision to fix the
13  muffler was your decision?
14      A.   Yes.  Well, it was filling the
15  cab up with smoke.  And the DOT will shut
16  you down for that.  Then you will tow it
17  in or fix it beside the highway.
18      Q.   So the first time anyone at
19  Godwin knew that there was something
20  wrong with the truck is when you called
21  to report the muffler falling on you; is
22  that correct?
23      A.   That's correct.

Page 115

1       Q.   These sheets that you produced
2   to me today indicate that your last day
3   of work in 2003 was 12/22/03; is that
4   correct?
5       A.   That's correct.
6       Q.   And your first day of work
7   after your hernia was February 3rd, 2004;
8   is that correct?
9       A.   That's correct.
10      Q.   Okay.  Let's move on from your
11  hernia injury to your hip injury.  Tell
12  me what happened in October of 2004 when
13  you injured your hip and knee.
14      A.   Well, I was hauling to the
15  concrete company.
16      Q.   The same company that you were
17  hauling to in February of 2004?
18      A.   Yeah.
19          MS. RICHARDSON:  Hang on just
20  a second.
21          (Off-the-record discussion.)
22          MS. RICHARDSON:  Okay.
23      Q.   (BY MS. CRUNK:)  So you were

Page 116

1   hauling to the concrete company?
2       A.   That's correct.
3       Q.   And then what happened?
4       A.   Well, I got out, opened the
5   tailgate of my truck, dumped my load of
6   sand out, pulled my truck forward.  And I
7   started letting my bed down, so I stepped
8   out of the truck.  And the front wheel
9   had went up on a mound, and I didn't know
10  it.  I misjudged it.  When I stepped out,
11  the bottom step was about two foot high
12  instead of about a foot high.  And I
13  misjudged it, and I fell, which at the
14  time I thought I twisted my knee, you
15  know.
16      Q.   When that accident happened or
17  when you twisted your knee, did you get
18  back in the truck and drive for the rest
19  of the day?
20      A.   Yes.  Well, I got up.  You
21  know, I thought I would kick it off.  I
22  was walking around kicking my knee, you
23  know, trying to get it to feel better.

EXHIBIT

PLAINTIFF'S EXHIBIT

| Date | Number | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 10/20/03 | 51205078 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 29.42 | $2.80 | $85.32 | 90.00% | $76.79 |
| 10/20/03 | 51205089 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 28.31 | $2.80 | $85.00 | 90.00% | $76.50 |
| 10/20/03 | 51205909 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 28.34 | $2.80 | $85.09 | 90.00% | $76.58 |
| 10/20/03 | 51205909 | TCC-DOZIER | SOUTH MONTGOMERY | COARSE SAND | 28.52 | $2.80 | $85.61 | 90.00% | $77.05 |
| 10/20/03 | 51123660 | TCC-DOZIER | SOUTH MONTGOMERY | 57/67 GRAVEL | 28.81 | $2.90 | $83.55 | 90.00% | $75.20 |
| 10/20/03 | 51123566 | TCC-DOZIER | SOUTH MONTGOMERY | 57/67 GRAVEL | 29.21 | $2.90 | $84.71 | 90.00% | $76.24 |
| 10/20/03 | 51205922 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 29.19 | $2.80 | $84.65 | 90.00% | $76.19 |
| 11/03 | 51205926 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 29.15 | $2.80 | $84.54 | 90.00% | $76.09 |
| 10/21/03 | 51205935 | TCC-CITY PIT | SOUTH MONTGOMERY | 57/67 GRAVEL | 29.19 | $2.90 | $84.56 | 90.00% | $76.10 |
| 10/21/03 | 51123687 | TCC-DOZIER | SOUTH MONTGOMERY | COARSE SAND | 29.16 | $2.80 | $84.91 | 90.00% | $76.42 |
| 10/21/03 | 51205964 | TCC-DOZIER | SOUTH MONTGOMERY | COARSE SAND | 29.26 | $2.80 | $85.35 | 90.00% | $76.82 |
| 10/21/03 | 51205971 | TCC-DOZIER | SOUTH MONTGOMERY | COARSE SAND | 29.43 | $2.80 | $85.35 | 90.00% | $76.82 |
| 10/21/03 | 51205979 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 29.19 | $2.80 | $84.65 | 90.00% | $76.19 |
| 10/21/03 | 51206023 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 29.52 | $2.80 | $85.61 | 90.00% | $77.05 |
| 10/21/03 | 51206033 | TCC-MONTGOMERY | SOUTH MONTGOMERY | COARSE SAND | 29.18 | $2.80 | $84.62 | 90.00% | $76.16 |
| 10/21/03 | 51206041 | TCC-MONTGOMERY | SOUTH MONTGOMERY | COARSE SAND | 29.52 | $2.90 | $85.61 | 90.00% | $77.05 |
| 10/21/03 | 51206051 | TCC-DOZIER | SOUTH MONTGOMERY | COARSE SAND | 29.06 | $2.80 | $84.27 | 90.00% | $75.84 |
| 10/21/03 | 377268 | TCC-DOZIER | SOUTH MONTGOMERY | 87 GRAVEL | 29.2 | $2.80 | $84.68 | 90.00% | $76.21 |
| 10/21/03 | 51123773 | TCC-DOZIER | SOUTH MONTGOMERY | COARSE SAND | 28.84 | $2.80 | $83.93 | 90.00% | $75.54 |
| 10/21/03 | 51206010 | TCC-DOZIER | SOUTH MONTGOMERY | COARSE SAND | 29.49 | $2.80 | $85.52 | 90.00% | $76.97 |
| 10/21/03 | 51206094 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 28.97 | $2.80 | $84.01 | 90.00% | $75.61 |
| 10/21/03 | 51206096 | TCC-MONTGOMERY | SOUTH MONTGOMERY | COARSE SAND | 29.21 | $2.80 | $84.71 | 90.00% | $76.24 |
| 10/21/03 | 51206113 | TCC-MONTGOMERY | SOUTH MONTGOMERY | COARSE SAND | 28.42 | $2.80 | $82.42 | 90.00% | $74.18 |
| 10/21/03 | 51206122 | TCC-MONTGOMERY | SOUTH MONTGOMERY | COARSE SAND | 28.36 | $2.80 | $85.14 | 90.00% | $76.63 |
| 10/21/03 | 51206134 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 29.14 | $2.90 | $84.51 | 90.00% | $76.06 |
| 10/24/03 | 51206140 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 28.77 | $2.80 | $83.43 | 90.00% | $75.09 |
| 10/24/03 | 51206144 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 28.1 | $2.90 | $81.49 | 90.00% | $73.34 |
| 11/03 | 51206149 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 28.27 | $2.80 | $81.95 | 90.00% | $73.78 |
| 11/03 | 51206153 | TCC-CITY PIT | SOUTH MONTGOMERY | 87 GRAVEL | 28.32 | $2.90 | $82.13 | 90.00% | $73.91 |
| 11/03 | 377366 | TCC-DOZIER | SOUTH MONTGOMERY | 57/67 GRAVEL | 29.49 | $2.90 | $85.52 | 90.00% | $76.97 |
| 11/03 | 51123899 | TCC-DOZIER | SOUTH MONTGOMERY | COARSE SAND | 28.79 | $2.90 | $83.49 | 90.00% | $75.14 |
| 11/03 | 51206109 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 29.19 | $2.90 | $84.65 | 90.00% | $76.19 |
| 11/03 | 51206193 | TCC-MONTGOMERY | SOUTH MONTGOMERY | COARSE SAND | 29.21 | $2.90 | $84.71 | 90.00% | $76.24 |
| 11/03 | 51206194 | TCC-MONTGOMERY | SOUTH MONTGOMERY | COARSE SAND | 29.29 | $2.90 | $84.94 | 90.00% | $76.45 |
| 11/03 | 51206200 | TCC-DOZIER | SOUTH MONTGOMERY | 57/67 GRAVEL | 29.43 | $2.90 | $85.35 | 90.00% | $76.82 |
| 11/03 | 51123908 | TCC-DOZIER | SOUTH MONTGOMERY | CONCRETE SAND | 29.33 | $2.90 | $85.06 | 90.00% | $76.55 |
| 11/03 | 51123980 | TCC-MONTGOMERY | SOUTH MONTGOMERY | 57/67 GRAVEL | 29.42 | $2.90 | $85.32 | 90.00% | $76.79 |
| 11/03 | 51123989 | TCC-MONTGOMERY | SOUTH MONTGOMERY | COARSE SAND | 29.18 | $2.90 | $84.62 | 90.00% | $76.16 |
| 11/03 | 51123903 | TCC-MONTGOMERY | SOUTH MONTGOMERY | COARSE SAND | 28.81 | $2.90 | $83.55 | 90.00% | $75.20 |
| 11/03 | 51205212 | TCC-MONTGOMERY | SOUTH MONTGOMERY | COARSE SAND | 29.18 | $2.90 | $84.82 | 90.00% | $76.16 |
| 11/03 | 51209018 | TCC-CITY PIT | SOUTH MONTGOMERY | COARSE SAND | 29.37 | $2.90 | $85.17 | 90.00% | $76.65 |
| 11/03 | 51209220 | TCC-MONTGOMERY | SOUTH MONTGOMERY | COARSE SAND | | | | | |

DEC-10-2003 10:05 AM   GC 1IN MATERIAL SERVICE   334 5 78725   P.08



IV STABLER HOSPITAL
PO BOX 19
ATLANTA GA 30384-8139
334322671

GODWIN OLLIE                    656 ODIS FAULK DR HONORAVILLE AL 36042

01241954 M M 122903 11 2 2 09 01 000140572

Godwin Materials

GODWIN OLLIE
656 ODIS FAULK DR

HONORAVILLE AL 36042

| 42 REV. CD. | 43 DESCRIPTION | 44 HCPCS / RATES | 45 SERV. DATE | 46 SERV. UNITS | 47 TOTAL CHARGES | 48 NON-COVERED CHARGES | 49 |
|---|---|---|---|---|---|---|---|
| 0250 | PHARMACY | | 123003 | 23 | 3135 25 | | |
| 0250 | PHARMACY | | 122903 | 24 | 770 00 | | |
| 0258 | IV SOLUTIONS | | 122903 | 2 | 172 50 | | |
| 0258 | IV SOLUTIONS | | 123003 | 2 | 145 00 | | |
| 0270 | MED-SUR SUPPLIES | | 122903 | 50 | 3032 00 | | |
| 0300 | DRAWING BLOOD | | 123003 | 1 | 11 00 | | |
| 0301 | BASIC METABOLIC PANEL | 80048 | 123003 | 1 | 295 25 | | |
| 0305 | AUTOMATED HEMOGRAM | | 123003 | 1 | 117 50 | | |
| 0360 | REPAIR INGUINAL HERNIA | 49507RT | 122903 | 1 | 2741 00 | | |
| 0460 | BREATING CAPACITY TEST | | 122903 | 1 | 56 75 | | |
| 0710 | RECOVERY ROOM | | 122903 | 1 | 1187 25 | | |
| 0762 | OBSERVATION RM | | 122903 | 22 | 642 00 | | |

001    TOTAL CHARGES                                          12315 50

| 50 PAYER | 51 PROVIDER NO. | | 54 PRIOR PAYMENTS | 55 EST. AMOUNT DUE | 56 |
|---|---|---|---|---|---|
| BLUE CROSS ALABAMA | 158SMH | Y Y | | | |

DUE FROM PATIENT

| 58 INSURED'S NAME | 59 P.REL | 60 CERT. - SSN - HIC. - ID NO. | 61 GROUP NAME | 62 INSURANCE GROUP NO. |
|---|---|---|---|---|
| GODWIN OLLIE | 18 | XAA | | 05543 |
| | 18 | | 8056434 | |

| 63 TREATMENT AUTHORIZATION CODES | 64 ESC | 65 EMPLOYER NAME | 66 EMPLOYER LOCATION |
|---|---|---|---|
| | | OLLIE GODWIN TRUCKING | |

PLAINTIFF'S EXHIBIT 3

| 67 PRIN. DIAG. CD. | | | | | 76 DRG | FPG CODE |
|---|---|---|---|---|---|---|
| 55010 | 4019 | 2724 | | | 55010 | |

| 69 P.C. | 80 PRINCIPAL PROCEDURE CODE | DATE | 82 ATTENDING PHYS. ID | |
|---|---|---|---|---|
| 5 | 5304 | 122903 | C70865 MCGOWIN NORMA | |
| | | | 83 OTHER PHYS. ID  C70865 MCGOWIN NORMA | |

84 REMARKS
BLUE CROSS ALABAMA
450 RIVERCHASE PKWY
BIRMINGHAM AL 35298

9-92 HCFA-1450

Godwin, Ollie    Danny Hood, M.D.    02/07/2004

Godwin, Ollie R    13344    12/04/2003 19:41

SUBJECTIVE:
Ollie presents to the office today with stomach pain. He has been nauseated and vomiting. He has had some diarrhea. The patient also has an inguinal hernia, which came up a couple of weeks ago. This needed checking. He was having some hemorrhoid problems

ALLERGIES:
The patient reports no known drug allergies.

CURRENT MEDICATIONS.
Zestoretic 20/12.5 q.d.
Zocor 20 mgs. q.d.

PHYSICAL EXAMINATION·
VS  BP: 142/100.    HR: 80.    WT: 217 lbs.
HEENT: Unremarkable.
NECK: Neck is supple.
CHEST. Chest is clear to auscultation and percussion.
CV: RRR.
ABDOMEN: Unremarkable.
RECTAL EXAM: Rectal exam reveals some thrombosed hemorrhoids, but area responding with sitz baths.
EXTREMITIES: The right inguinal region revealed a large direct inguinal hernia.

PLAN·
(1.) I will have Dr. McGowin see him for repair of the hernia.
(2.) I gave him Lortab 7.5 mgs., #20, along with sitz baths to see if we can resolve his other problem.

Danny T Hood, M.D., F.A.C.P.

DTH/dm·

·Printed on 02/07/2004 at 07:43 PM



PLAINTIFF'S
EXHIBIT
4
Palomar 132

Wednesday, December 10, 2003

## Commission Report / LEASE

| Date | Number | Lease | 106 | OLLIE GODWIN | | | Godwin Material Service, Inc. | | |
|---|---|---|---|---|---|---|---|---|---|
| 11/19/03 | 51207271 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.43 | $2.90 | $85.35 | 90.00% | $76.82 |
| 11/19/03 | 51207203 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 28.99 | $2.90 | $84.07 | 90.00% | $75.69 |
| 11/19/03 | 51207294 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.23 | $2.90 | $84.94 | 90.00% | $76.45 |
| 11/19/03 | 51207501 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.55 | $2.90 | $85.69 | 90.00% | $77.13 |
| 11/19/03 | 51207312 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.65 | $2.90 | $86.89 | 90.00% | $77.39 |
| 11/19/03 | 51207317 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.48 | $2.90 | $85.49 | 90.00% | $76.94 |
| 11/19/03 | 51207327 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.51 | $2.90 | $85.55 | 90.00% | $77.02 |
| 11/19/03 | 51207329 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 28.98 | $2.90 | $84.04 | 90.00% | $75.64 |
| 11/19/03 | 51207337 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29 | $2.90 | $84.10 | 90.00% | $75.69 |
| 11/20/03 | 51207344 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.9 | $2.90 | $86.71 | 90.00% | $78.04 |
| 11/20/03 | 51207353 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.37 | $2.90 | $85.17 | 90.00% | $76.65 |
| 11/20/03 | 51207357 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.26 | $2.93 | $84.85 | 90.00% | $76.36 |
| 11/20/03 | 51207356 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.75 | $2.90 | $86.28 | 90.00% | $77.66 |
| 11/21/03 | 51207373 | TCC-CITY PIT | SOUTH MONTGOMERY | COURSE AGG BLEN | 29.58 | $2.90 | $85.78 | 90.00% | $77.20 |
| 11/21/03 | 51207373 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29 | $2.90 | $84.10 | 90.00% | $75.69 |
| 11/21/03 | 51207304 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 28.05 | $2.90 | $84.25 | 90.00% | $75.83 |
| 11/21/03 | 51207393 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.49 | $2.90 | $85.52 | 90.00% | $76.97 |
| 11/21/03 | 51207408 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.26 | $2.90 | $85.17 | 90.00% | $76.65 |
| 11/21/03 | 51207420 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.65 | $2.90 | $84.85 | 90.00% | $76.39 |
| 11/21/03 | 51207435 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.66 | $2.90 | $85.99 | 90.00% | $77.39 |
| 11/21/03 | 51207443 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.55 | $2.90 | $85.72 | 90.00% | $77.15 |
| 11/21/03 | 51207455 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.55 | $2.90 | $85.70 | 90.00% | $77.11 |
| 11/22/03 | 51207462 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.43 | $2.90 | $85.52 | 90.00% | $76.97 |
| 11/22/03 | 51207470 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.29 | $2.90 | $84.94 | 90.00% | $76.45 |
| 11/24/03 | 51207475 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 28.94 | $2.90 | $83.93 | 90.00% | $75.54 |
| 11/24/03 | 51207485 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.66 | $2.90 | $86.01 | 90.00% | $77.41 |
| 11/24/03 | 51207491 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.9 | $2.90 | $85.71 | 90.00% | $78.04 |
| 11/24/03 | 51207501 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.9 | $2.90 | $86.71 | 90.00% | $78.04 |
| 11/24/03 | 51207512 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.9 | $2.90 | $85.71 | 90.00% | $78.04 |
| 11/24/03 | 51207521 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 29.34 | $2.90 | $85.09 | 90.00% | $76.58 |
| 11/24/03 | 51207531 | TCC-CITY PIT | SOUTH MONTGOMERY | CONCRETE SAND | 28.36 | $2.90 | $84.24 | 90.00% | $74.02 |
| 11/25/03 | 51123301 | TCC-DOZER | SOUTH MONTGOMERY | CONCRETE SAND | 29.32 | $2.90 | $85.03 | 90.00% | $76.53 |
| 11/25/03 | 51123320 | TCC-DOZER | SOUTH MONTGOMERY | CONCRETE SAND | 29.79 | $2.90 | $86.39 | 90.00% | $77.75 |
| 11/25/03 | 51123325 | TCC-DOZER | SOUTH MONTGOMERY | 57/67 GRAVEL | 29.45 | $2.90 | $85.41 | 90.00% | $76.87 |
| 11/25/03 | 51123335 | TCC-DOZER | SOUTH MONTGOMERY | 57/67 GRAVEL | 29.69 | $2.90 | $86.10 | 90.00% | $77.49 |
| 11/25/03 | 51123549 | TCC-DOZER | SOUTH MONTGOMERY | 57/67 GRAVEL | 29.33 | $2.90 | $85.00 | 90.00% | $76.55 |
| 11/25/03 | 51123772 | TCC-DOZER | SOUTH MONTGOMERY | 57/67 GRAVEL | 29.56 | $2.90 | $85.73 | 90.00% | $77.15 |
| 11/25/03 | 51123381 | TCC-DOZER | SOUTH MONTGOMERY | 57/67 GRAVEL | 29.4 | $2.90 | $85.26 | 90.00% | $76.73 |
| 11/26/03 | 51207537 | TCC-CITY PIT | SOUTH MONTGOMERY | 57/67 GRAVEL | 29.69 | $2.90 | $86.10 | 90.00% | $77.49 |
| 11/26/03 | 40599 | B&R | COUCH-GREENVILLE | CONCRETE SAND | 29.34 | $4.00 | $117.38 | 90.00% | $105.62 |
| 11/26/03 | 51125423 | TCC-DOZER | GREENVILLE | CONCRETE SAND | 29.63 | $2.90 | $85.93 | 90.00% | $77.34 |
| 11/26/03 | 51125629 | TCC-DOZER | SOUTH MONTGOMERY | 57/67 GRAVEL | 28.94 | $2.90 | $83.94 | 90.00% | $75.28 |
| | | | | CONCRETE SAND | 28.8 | $2.90 | $83.52 | 90.00% | $75.17 |
| | | | | | | | $11,101.14 | | $8,991.09 |

Palomar 81

PLAINTIFF'S EXHIBIT 5

DEC-10-2003 10:07 AM   Gr   IIN MATERIAL SERVICE   8345   8728   P.12

Accident Medical Expense Benefit:

Commencement Period .................................................................................................. 90 days
Deductible Amount.............................................................................................................. $0
Maximum Benefit Period .......................................................................................... 52 weeks
Dental Maximum......................................................................................................... $1,000.
Maximum Benefit Amount .......................................................................................... $7,500.

## 5.  DEDUCTIBLE AND LIMITS OF LIABILITY

**Occupational Coverage**

PLAINTIFF'S
EXHIBIT
6

Per-Insured Person Limit of Liability (Combined Single Limit) ........................................ $1,000,000.
(all Covered Losses with respect to any one Occupational accident)

Aggregate Limit of Liability.......................................................................................... $2,000,000.
(all Covered Losses with respect to all Insured Persons in any one Occupational accident)

**Non-Occupational Coverage**

Per-Insured Person Limit of Liability (Combined Single Limit) ..................................... $10,000.
(all Covered Losses with respect to any one accident)

Aggregate Limit of Liability........................................................................................... $20,000.
(all Covered Losses with respect to all Insured Persons in any one accident)

## DEFINITIONS

**Administrator** means the Administrator named in the Schedule.

**Co-Owner** means a person who has partial ownership of a vehicle which is being operated by an Owner-Operator for the purpose of performing Occupational services in the course and scope of contractual obligations for the Policyholder.

**Combined Single Limit** means, with respect to any one Insured Person, the total amount of benefits that are payable under the Policy for or in connection with Injury sustained as the result of any one accident.  When the Combined Single Limit has been reached, no further benefits shall be payable under the Policy, with respect to that Insured Person, for or in connection with Injury sustained as the result of that one accident.

**Contract Driver** means a person who: (1)  drives a vehicle owned or leased by an Owner-Operator for the purpose of performing Occupational services; (2) who is on file with the Company; and  (3) who is not an employee of the Policyholder or Owner-Operator.

**Contractee** means the person, firm or other entity with whom the Insured Person has contracted to provide Occupational services.

**Covered Loss(es)** means one or more of the losses or expenses described in the Benefits section of this Description of Coverage.

**Dependent Child(ren)** means the Insured Person's unmarried children, including natural children from the moment of birth, step or foster children, or adopted children, from the moment of placement in the home of the Insured Person, under age 19 (25 if attending an accredited institution of higher learning on a full-time basis) and primarily dependent on the Insured Person for support and maintenance.  It also includes any unmarried Dependent Children of the Insured Person who are incapable of self-sustaining employment by reason of mental or physical incapacity, and who are primarily dependent on the Insured Person for support and maintenance.

The Company may require proof of the Dependent Child(ren)'s incapacity and dependency within 60 days before the Dependent Child(ren) reach the age limit specified above. The Company may request that satisfactory proof of the Dependent Child(ren)'s continued incapacity and dependency be submitted to the Company on an annual basis. If the requested proof is not furnished within 31 days of the request, such child(ren) shall no longer be considered Dependent Child(ren) as of the end of that 31 day period.

**Dispatch** means the period of time during which an Insured operates his or her vehicle, or performs vehicle repair, while being en route to pick up a load, picking up a load, en route to deliver a load, and unloading a load.

**Functional Capacity Examination (FCE)** means a test performed by a physical therapy professional to evaluate and estimate physical limitations.

**Immediate Family Member** means a person who is related to the Insured Person in any of the following ways: Spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or placed for adoption, or stepchild).

**Injury** means bodily Injury to an Insured Person caused by an Occupational accident while coverage is in force under the Policy, which results directly from and independently of all other causes in a Covered Loss. All Injuries sustained by an Insured Person in any one accident shall be considered a single Injury.

All Injuries sustained by an Insured Person in any one accident shall be considered a single Injury.

**Insured** means a person who: (1) is a member of an eligible class as described in the Schedule of this Description of Coverage; (2) has enrolled for coverage; and (3) has paid the required premium.

**Insured Person** means an Insured.

**Occupational** means, with respect to an activity, accident, incident, circumstance or condition involving an Insured, that the activity, accident, incident, circumstance or condition occurs or arises out of or in the course of the Insured performing services within the course and scope of contractual obligations for the Policyholder, while under Dispatch. Occupational does not encompass any period of time during the course of everyday travel to and from work.

**Occupational Assessment** means a test of vocational capabilities. The process includes a review of medical records, Injury and treatment, history and background (education, military, previous occupation(s)), evaluation of basic skills such as reading, understanding, spelling and/or math capabilities, and vocational alternatives.

**Occupational Cumulative Trauma** means bodily Injury to an Insured caused by the combined effect of repetitive physical Occupational activities extending over a period of time, where: (1) such condition is diagnosed by a Physician; (2) the Insured's last day of last performance of the activities causing the Injury occurred during the Policy Period; and (3) such activities resulted directly and independently of all other causes in a Covered Loss.

**Occupational Disease** means a sickness which results in disability or death, and is caused by exposure to environmental or physical hazards during the course of the Insured's Occupational activities, where: (1) such condition is diagnosed by a Physician, and is generally accepted by the National Centers for Disease Control to be a disease caused by such hazards; (2) exposure to such hazards is not an accident but is caused or aggravated by the conditions under which the Insured Person performs Occupational services; (3) the Insured's last day of last exposure to the environmental or physical hazards causing such condition occurs during the Policy Period; and (4) such exposure results directly and independently of all other causes in a Covered Loss.

**Owner-Operator** means a person who: (1) owns or leases a vehicle which he or she is operating for the purpose of performing Occupational services in the course and scope of contractual obligations for the Policyholder; (2) is an independent contractor as defined by law; and (3) is not an employee of the Policyholder. The term Owner-Operator will include a Co-Owner if the Co-Owner otherwise meets the definition of Owner-Operator.

**Physician** means a practitioner of the healing arts acting within the scope of his or her license who is not: (1) the Insured Person; or (2) an Immediate Family Member; or (3) a practitioner retained by the Policyholder or Contractee.

**Pre-Existing Condition** means a condition for which an Insured Person has sought or received medical advice or treatment during the twelve months immediately preceding his or her effective date of coverage under this Policy.

**Schedule** means the Schedule of Benefits shown in this Description of Coverage.

**Spouse** means the Insured Person's legal spouse.

Palomar 4

P.O. BOX 11128
MONTGOMERY, AL. 36111-0128
PHONE 800-482-7394
DIRECT 334-409-3136
FAX 334-323-0585
EMAIL SUZANNEA@PALOMARINS.COM



# Fax

| | | | |
|---|---|---|---|
| To: | Godwin Materials | From: | SUZANNE ADGER |
| Fax: | 334-527-8723 | Pages: | 2 |
| Phone: | | Date: | 12-10-03 |
| Re: | Ollie Godwin/Non-Occ Claim | CC: | |

☐ Urgent    X For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

## Comments:  I have received a call from Mr. Godwin's doctors office reporting that he dropped a muffler and injured his stomach, while working on his truck at home.  Please complete this PLIR and fax it back to me.

Thanks,

Suzanne Adger

Palomar 127



PLAINTIFF'S EXHIBIT
8

2. Claim Forms. The Company will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed in the Policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the Insured's name, the Policyholder's name and the Policy number.

3. **Proof of Loss.** Written proof of loss must be furnished to the Company within 90 days after the date of the loss. If the loss is one for which the Policy requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as the Company may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

4. **Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of an Insured Person will be made to the Insured Person's beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section. Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the Insured Person suffering the loss. If an Insured Person dies before all payments due have been made, the amount still payable will be paid to his or her beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section.

   If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at the Company's option, to any relative by blood or connection by marriage of the payee, who, in the Company's opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

   The Company may pay benefits directly to any Hospital or person rendering covered services, unless the Insured Person requests otherwise in writing. Such request must be made no later than the time proof of loss is filed. Any payment the Company makes in good faith fully discharges the Company's liability to the extent of the payment made.

5. **Time of Payment of Claims.** Benefits payable under the Policy for any loss other than loss for which the Policy provides any periodic payment will be paid immediately upon the Company's receipt of due written proof of the loss. Subject to the Company's receipt of due written proof of loss, all accrued benefits for loss for which the Policy provides periodic payment will be paid at the expiration of each month during the continuance of the period for which the Company is liable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

6. **Commutation of Losses.** It is agreed that, at the Company's option, at any time later than two years from the date of any accident resulting in a claim under the Policy, the Company may advise the Insured Person of its desire to be released from liability with respect to any such claim. In that event, the Company will appoint an actuary or appraiser to investigate, determine and capitalize such claim, and the payment by the Company of the capitalized value of such claim will constitute a complete and final release of the Company with respect to such claim.

7. **Sunset.** No claim made for losses sustained by Insured Persons will be considered valid and collectible in accordance with the Policy unless full details of such claim are presented to the Company within three years from the date of the accident which is the basis of such claim.

Palomar 12

PLAINTIFF'S
EXHIBIT
9

## GENERAL PROVISIONS

1. **Entire Contract; Changes.** The Policy, together with any riders, endorsements, amendments, applications, enrollment forms, and attached papers, if any, make up the entire contract between the Policyholder and the Company. In the absence of fraud, all statements made by the Policyholder or any Insured Person will be considered representations and not warranties. No written statement made by an Insured Person will be used in any contest unless a copy of the statement is furnished to the Insured Person or his or her beneficiary or personal representative.

   No change in the Policy will be valid until approved by an officer of the Company. The approval must be noted on or attached to the Policy. No agent may change the Policy or waive any of its provisions.

**AIG**

## AIG Domestic Accident & Health Division

A Division of American International Companies®

# NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270

(212) 770-7000

(a capital stock company, herein referred to as the Company)

Policyholder:   Godwin Materials, Inc.
Policy Number: TRK 9056434

### HERNIA COVERAGE RIDER

This Rider is attached to and made part of the Policy effective May 1, 2004. It applies only with respect to Hernia provided such Injury is sustained on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Hernia Coverage.** Exclusion 6 in Section VI of the Policy is hereby waived with respect to the following benefit(s): Temporary Total Disability and Accident Medical Expense.

Any reference to an injury or accident as defined in the policy is hereby deemed to include Hernia. Benefits shall be payable for a Covered Loss caused in whole or in part by, contributed to in whole or in part by, or resulting in whole or in part from, the Insured Person's Hernia, provided such Hernia is surgically repaired while the Insured Person's coverage is in force under this Policy, subject to the following:

1.   With respect to the Temporary Total Disability Benefit, the period for which such indemnity shall be payable for all periods of disability, subject to the Temporary Total Disability Benefit Waiting Period, shall not exceed the Hernia Lifetime Maximum Benefit Period shown in the Schedule.

2.   With respect to the Accident Medical Expense Benefit, benefits payable for or in connection with the Insured Person's Hernia, subject to the Accident Medical Expense Deductible Amount, if any, shall not exceed the Hernia Lifetime Maximum Benefit Amount shown in the Schedule.

**Hernia** - as used in this Rider, means a protrusion of an organ or part through connective tissue or through a wall of the cavity in which it is normally enclosed. Hernia does not include diaphragmatic (hiatal) hernia.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Rider.

President                                    Secretary

PLAINTIFF'S EXHIBIT
10

Palomar-37

C22391DBG

Taylor Reporting
411 McMillan St., PO Box 369
Repton, Alabama 36475
taylorreporting@aol.com    (251)248-2108    www.taylorcourtreporting.com

1    Q        No?  They can't pick up loads at

2    Godwin Materials?

3              MS. CRUNK:  Object to the form.

4    A        Not that I'm aware of, no.

5    BY MS. RICHARDSON:

6    Q        How many independent contractor

7    drivers do you have?  Do you have an estimate?

8    A        I believe at this time there is 23.

9    Q        Do you remember at all talking with

10   Suzanne Adger or any other Palomar agent about

11   either one of Ollie Godwin's claims?

12   A        Not that I recall.

13   Q        Does Godwin have any -- do they keep

14   any records as to how many claims are filed under

15   these occupational accident insurance policies?

16   A        No, ma'am.

17   Q        Did you talk with Ollie Godwin at all

18   after he had filed his claim?

19   A        Not that I remember.

20             MS. CRUNK:  Object to the form.

21   BY MS. RICHARDSON:

22   Q        Did you talk with Jerry about either

23   one of Ollie Godwin's claims?

PLAINTIFF'S
EXHIBIT
11
Cindy Jordan

411 McMillan St., PO Box 369
Repton, Alabama 36475
taylorreporting@aol.com    (251)248-2108    www.taylorcourtreporting.com

17

```
1    Q          So if Palomar sends you something to
2    fill out you just --
3    A          Right.
4    Q          -- go through the motions of filling
5    it out?
6    A          Right.  And this is just a typical
7    form if they usually have a claim.
8    Q          Okay.  It says here on Number 5:
9    Where was the driver scheduled to be at the time
10   of the accident?
11              And that's your handwriting that says
12   "home"?
13   A          Yes, ma'am.
14   Q          Okay.  Did you talk with Ollie about
15   that?
16   A          I do not remember the specific
17   details.  If I had to guess, I got that
18   information from Ollie.
19   Q          But you don't recall that?
20   A          No, ma'am.
21   Q          When you are asked to fill out forms
22   like these, what is your general procedure or
23   what do you do in order to be able to fill these
```

*Ollie Godwin vs. National Union Fire, et al.*

PLAINTIFF'S
EXHIBIT

Cindy Jordan

1    out?  And we are looking at Godwin Materials 28.

2                MS. CRUNK:  Object to the form.

3    BY MS. RICHARDSON:

4    Q          Let me ask you some small questions

5    and maybe that will help.

6    A          Okay.

7    Q          Is the first thing that you do when

8    you obtain -- get one of these forms from Palomar

9    is to call the driver?  I mean, that would be an

10   example.

11   A          Not necessarily.

12   Q          Would you look for information in a

13   file or somewhere to be able to fill out this

14   form?

15               MS. CRUNK:  Object to the form.

16   BY MS. RICHARDSON:

17   Q          I mean, how is the information on

18   there?  It says:  Was the vehicle loaded?

19   A          Okay.  That, I would guess, that I got

20   that information from Ollie.

21   Q          Okay.

22   A          Number 4, where it says, you know,

23   "for the past three months," I would have just

 1    schedule.  You know, the first load they pick it

 2    up here and they deliver it there.  And then

 3    their second load, they pick up again and deliver

 4    it there.  And then from then, they're off duty

 5    and they're at home.

 6    Q        Okay.  So as long as they are driving

 7    from delivering and picking up loads, in your

 8    opinion --

 9    A        In my opinion that's dispatch.

10    Q        -- that's under dispatch?

11    A        Yes, ma'am.

12    Q        Now, are you familiar the AIG policy?

13    A        No, ma'am.

14    Q        So you wouldn't know or you're not

15    familiar with the fact that the AIG policy

16    defines "dispatch" differently?

17            MS. CRUNK:  Object to the form.

18    A        No, ma'am.

19    BY MS. RICHARDSON:

20    Q        Have you ever read it?

21    A        No, ma'am, I have never seen it.

22    Q        In other words, I guess what I'm

23    asking is, did you fill out this form based on

*Ollie Godwin vs. National Union Fire, et al.*          *Cindy Jordan*



AMERICAN INTERNATIONAL COMPANIES®
ACCIDENT & HEALTH CLAIMS DIVISION
OCCUPATIONAL ACCIDENT UNIT
P.O. Box 11129 • Montgomery, AL • 36111-0129
Phone. (800)452-7394 • (334) 409-3136
Fax: (334) 323-0585

## POLICYHOLDER LOSS INFORMATION REPORT

To: __Palomar Insurance Corporation__         Fax Number __(334) 323-0585__

Policy Number __8056434__                     Policyholder/Participating Organization· __GODWIN__

Driver Name: __OLLIE GODWIN__                 Driver Social Security No.: ⬛⬛⬛⬛⬛

Driver's Company· __GODWIN MATERIALS__        Company Location: __BRANTLEY, AL__

Dispatcher Name· _____             Dispatcher Phone No.· __334-527-3540__

Unit No.: __G105__                            Order No.· _____

Date of Injury: __11-22-03__     Time of Injury· _____ Member / Claim Tracking No.: _____

*In addition to the information provided above, if the claimant is a Helper (i.e. Lumper, Casual Laborer, Co-Driver),
please provide the following information:*

Helper Name· _____                 Helper Social Security No : _____

Helper Address: _____

Helper Telephone Number _____

**Please answer the following questions about the listed claimant, and then fax or mail back to the fax
number or address above.**

1.  Was the vehicle loaded at the time of the accident?        ☐ Yes    ☒ No
2.  If unloaded, was the driver under dispatch to pick up a load? ☐ Yes   ☒ No
3.  What was the last day worked by this claimant? _____
4.  Please indicate the claimant's earnings for the last three (3) months (please include an earnings statement).
    __29,410. 53__
5.  Where was the driver scheduled to be at the time of the accident? __home__
6.  General Comments:_____

    _____

Verified by (print name): __Cindy Brdan__   Signature: __Cindy Brdan__
Date verified: __12-10-03__

Thank you for assisting us by providing the information requested herein  Please feel free to contact our office at
(800) 452-7394, should you have any questions

Sent by· __Suzanne Adger__                    Date· __11-22-03__

PLAINTIFF'S
EXHIBIT
Palomar 57   12

CHECK      60318497 WAS ISSUED 07/28/2005
IN THE AMOUNT OF $387. PAYABLE TO:
AMEDISYS OF MONTGOMERY
ALABAMA
11100 MEAD RD STE 300
BARON ROGUE            LA  70816

# NON NEGOTIABLE

PROC1A

# EXPLANATION OF BENEFITS

INSURED:

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE        AL  36042

Policy Holder: GODWIN MATERIALS, INC.
Policy No: 000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: W1000319
Insured ID Number: R043430028
Claim Number: A97730226
Claim Office: 024
Date Paid: 07/28/2005
Examiner Code: STT
Loss Date: 10/27/2004
RW

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|---|---|---|---|---|---|---|---|---|---|---|
| AMEDISYS OF | 0323 032305 | 04 | 83 | 129.00 | | | 129.00 | 100 | 129.00 | |
| AMEDISYS OF | 0330 033005 | 04 | 83 | 129.00 | | | 129.00 | 100 | 129.00 | |
| AMEDISYS OF | 0406 040605 | 04 | 83 | 129.00 | | | 129.00 | 100 | 129.00 | |
| **Totals** | | | | $387.00 | | | $387.00 | | $387.00 | |

Reduced Because of Other Insurance

Total Amount Paid This Claim            $387.00

## Checks Issued

| Payee Name | Amount |
|---|---|
| AMEDISYS OF MONTGOMERY | $387.00 |

## Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY             AL 36116

## Description of Remark Codes*

## Description of Benefit Codes

83 - PHYS THERAPY

PLAINTIFF'S EXHIBIT 13

Thank you for the opportunity to service this claim.
Please call (800)551-0824  with any questions you have.
The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

672

CHECK      60292741 WAS ISSUED      04/21/2005
IN THE AMOUNT OF $370.52 PAYABLE TO:
AMEDISYS OF MONTGOMERY
11100 MEAD ROAD
SUITE 300
BATON ROUGE                    LA  70816

## NON NEGOTIABLE

PROC1A

INSURED:

## EXPLANATION OF BENEFITS

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE          AL  36042

Patient Name: OLLIE GODWIN
Patient Account Number: W100319
Insured ID Number: R043430028
Claim Number: A97730214
Claim Office: 024
Date Paid: 04/21/2005
Examiner Code: AWR
Loss Date: 10/27/2004
RW

Policy Holder: GODWIN MATERIALS, INC.
Policy No: 000090564340

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|----------|-------------------|----------|--------------|---------------|-------------|------------|-------------------|---|-------------|--------------|
| AMEDISYS | 0214 021405 | 99 | 93 | 6.00 | | | 6.00 | 100 | 6.00 | |
| AMEDISYS | 0214 021405 | 10 | 93 | 3.60 | | | 3.60 | 100 | 3.60 | |
| AMEDISYS | 0214 021405 | 01 | 93 | 1.92 | | | 1.92 | 100 | 1.92 | |
| AMEDISYS | 0214 021405 | 01 | 81 | 115.00 | | | 115.00 | 100 | 115.00 | |
| AMEDISYS | 0216 021605 | 04 | 83 | 129.00 | | | 129.00 | 100 | 129.00 | |
| AMEDISYS | 0216 021605 | 01 | 81 | 115.00 | | | 115.00 | 100 | 115.00 | |
| | **Totals** | | | **$370.52** | | | **$370.52** | | **$370.52** | |

Reduced Because of Other Insurance

### Checks Issued

| Payee Name | Amount |
|------------|--------|
| AMEDISYS OF MONTGOMERY | $370.52 |

Total Amount Paid This Claim      $370.52

### Broker/Agent

PALOMAR INSURANCE CORPORA
4525   EXECUTIVE PARK DR
MONTGOMERY                    AL 36116

### Description of Remark Codes*

### Description of Benefit Codes

93 - MED SUPPLIES
81 - PHYSICIAN VISIT
83 - PHYS THERAPY

PLAINTIFF'S EXHIBIT 13

Thank you for the opportunity to service this claim.
Please call (800)551-0824  with any questions you have.
The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

672

CHECK   60266175 WAS ISSUED   01/15/2005
IN THE AMOUNT OF $1,376.50 TO:
ALABAMA ORTHOPEDIC SPLTS
PO BOX 235003
MONTGOMERY   AL   36123

**NON NEGOTIABLE**

1415.00
1376.50
38.50

PROC1A

# EXPLANATION OF BENEFITS

**INSURED:**

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE        AL   36042

Policy Holder: GODWIN MATERIALS, INC.
Policy No:  000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: 84328
Insured ID Number: R043430028
Claim Number: A97730202
Claim Office: 024
Date Paid: 01/15/2005
Examiner Code: SNP
Loss Date: 10/27/2004
RW

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|---|---|---|---|---|---|---|---|---|---|---|
| ALA ORTHOP | 1122 112204 | 01 | 73 | 95.00 | 25.00 | | 70.00 | 100 | 70.00 | 88 |
| ALA ORTHOP | 1130 113004 | 01 | 73 | 530.00 | | | 530.00 | 100 | 530.00 | 88 |
| ALA ORTHOP | 1130 113004 | 01 | 73 | 740.00 | 2.50 | | 737.50 | 100 | 737.50 | 88 |
| ALA ORTHOP | 1203 120304 | 01 | 73 | 50.00 | 11.00 | | 39.00 | 100 | 39.00 | 88 |
| **Totals** | | | | **$1,415.00** | **$38.50** | | **$1,376.50** | | **$1,376.50** | |

Reduced Because of Other Insurance

Total Amount Paid This Claim      $1,376.50

## Checks Issued

| Payee Name | Amount |
|---|---|
| ALABAMA ORTHOPEDIC SPLTS | $1,376.50 |

## Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY               AL 36116

## Description of Remark Codes*

PAID ACCORDING TO NOVANET
88-PREFERRED PROVIDER DISCOUNT/SAVINGS, PATIENT NOT LIABLE.

## Description of Benefit Codes

73 - ADD'L ACC EXP

PLAINTIFF'S
EXHIBIT
13

**Thank you for the opportunity to service this claim.**
**Please call (800)551-0824  with any questions you have.**

The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

CHECK     60266174 WAS ISSUED     01/15/2005
IN THE AMOUNT OF:          59.98 PAYABLE TO:
SOUTHERN MEDICAL PRODUCTS
PO BOX 601
HELENA                              AL    35080

# NON NEGOTIABLE

PROC1A

# EXPLANATION OF BENEFITS

INSURED:

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE            AL   36042

Policy Holder: GODWIN MATERIALS, INC.
Policy No:  000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: 00011233
Insured ID Number: R043430028
Claim Number: A97730201
Claim Office: 024
Date Paid: 01/15/2005
Examiner Code: SNP
Loss Date: 10/27/2004
RW

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|----------|-------------------|----------|--------------|---------------|-------------|------------|-------------------|---|-------------|--------------|
| SOUTHERN | 1203 120304 | 01 | 73 | 59.00 | | | 59.00 | 100 | 59.00 | |
| **Totals** | | | | **$59.00** | | | **$59.00** | | **$59.00** | |

Reduced Because of Other Insurance

Total Amount Paid This Claim          $59.00

## Checks Issued

| Payee Name | Amount |
|------------|--------|
| SOUTHERN MEDICAL PRODUCTS | $59.00 |

## Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY                    AL 36116

## Description of Remark Codes*

## Description of Benefit Codes

73 - ADD'L ACC EXP

PLAINTIFF'S EXHIBIT 13

**Thank you for the opportunity to service this claim.**
**Please call (800)551-0824   with any questions you have.**

The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

0672

*Attn: Stephanie Pine*
*6 pages thanks for*
*fax 334-272-9621*

**AIG**

AIG Claim Services, Inc.®
A&H Claims Department
P. O. Box 15701
Wilmington, DE 19850-5701
800.551.0524

**# 84328**

**To:** STEVEN A. BARRINGTON, M.D.
**Company:** ALABAMA ORTHOPAEDIC SPECIALISTS
**Phone:** 334 274 9000
**Fax:** 334 274 0857

**From:** STEPHANIE PINE
**Company:** AIG--A&H CLAIMS-- OCCUPATIONAL ACCIDENT UNIT
**Phone:** 302 661 8865
**Fax:** 302 661 8962

**Date:** 1/25/2005
**Pages including this cover page:** 1 INCLUDING COVER SHEET

**Comments:**

Dear Dr. Barrington,

In order to complete our review of Mr. Ollie Godwin's claim for Temporary Total Disability and Medical Benefits we need to request the following information. Please provide us with priority handling and return your replies by fax.

Is the claimant's disability due to injuries he sustained on 10/27/2004? If no, please explain in detail. *See attached notes*

Is the claimant's disability due to a congenital and/or degenerative disease? If yes please explain. *See attached notes*

Please submit medical records and office notes for the period 1/1/2004 to present. *attached*

Thank you for giving our request your expeditious attention.

Sincerely, Stephanie Pine/ Claims Examiner

A Member Company of
American International Group, Inc.

\*\* TOTAL PAGE.01 \*\*



PLAINTIFF'S EXHIBIT
14

①

8 4328
Dr MB

GODWIN, OLLIE R.
84328
12-03-04
DR. BARRINGTON
C

HISTORY OF PRESENT ILLNESS: Mr. Godwin is here for followup for his MRI of the left knee and both hips. The left knee MRI showed some mild patellar chondromalacia with an osteochondral lesion of the lateral femoral condyle. The MRI of the hip showed osteonecrosis of both femoral heads with collapse on the left. He notes he had not had any difficulty with these prior to an injury about 6 weeks ago at work. That was on October 27. He noticed it then and it has been bothering him since. He is to the point now where he has a great deal of difficulty getting around. He has fallen a couple of times, in fact, because it gives way on him and it collapses.

PHYSICAL EXAMINATION: Today does reveal significant tenderness with internal and external rotation of the hip. This is of the left hip. He has less tenderness in the right hip and he does have some knee pain as well. The bulk of his pain seems to be coming from the left hip and going down the leg.

ASSESSMENT:
1. Avascular necrosis both hips with collapse on the left.
2. Left knee pain with a lateral femoral condyle osteochondral lesion.

PLAN: We discussed it with him. I do think it appears that this is work related. We will see about getting it preapproved for total hip arthroplasty on the left. We also talked to him about the possibility of doing a core decompression or being involved the Hedrocel rod study for the right hip to try to prevent collapse on that. He is to the point where he really cannot get around with the left hip and so we need to address that before we can reasonably address the right hip. We will see about getting that set up. We did discuss risks, benefits, and options in detail including risk of infection, bleeding, damaged to tendons, blood vessels and nerves, risk of continued pain, risk of deep venous thrombosis, pulmonary embolus, myocardial infarction, CVA, pneumonia, death, blood transfusion reaction or transmission of disease including hepatitis and AIDS. He appears to understand and would like to see about getting it set up so he can get back to activity and we will go from there.
SAB/llm            12-06-04



2

GODWIN, OLLIE R.
84328
11-22-04
DR. BARRINGTON (DICTATED BY P.A. WOODS)
C

Mr. Godwin is here with a complaint of pain in the left leg and hip. He says that he has not had any specific injury to the hip. 3 weeks ago he was stepping out of his truck, he does drive the big rig trucks, and he had a twisting injury and he started to have pain on the lateral aspect of the left knee. He denies any effusion to it. He says that it does not click or catch on him and it does not give way. He says that walking makes it worse. The date of injury was approximately 10-27-04. His doctor is Dr. K. Adams and he is the referring physician.

## ALLERGIES: HE HAS NO KNOWN DRUG ALLERGIES.

CURRENT MEDICATIONS: Zocor, Lisinopril, HCTZ, Naproxen, and Ultracet.

PAST SURGICAL HISTORY: He has had surgery on his hand and surgery on a hernia. No dates are given.

SOCIAL HISTORY: He is married and his wife is with him today. He has 3 children and 1 pet. He occasionally drinks alcohol. He is right hand dominant.

FAMILY HISTORY: he has a family history of high blood pressure and stroke, heart trouble, and diabetes.

PAST MEDICAL HISTORY: He has a past medical history of high blood pressure.

REVIEW OF SYSTEMS: His review of systems is pertinent only for the joint pain.

PHYSICAL EXAM: Patient is alert and oriented x 3 and has an appropriate affect. Cranial nerves are grossly intact. Sensation is grossly intact. Scleras are nonicteric. Pupils are equal, round and reactive to light. Hearing is grossly intact with no drainage from the auditory canal. Neck is supple and non-tender with full range of motion. The patient breathes without wheezes or use of accessory muscles. Skin exam reveals no rashes, lesions, or abrasions.

MUSCULOSKELETAL EXAM: The musculoskeletal exam shows that he has pain with internal and external rotation of the left hip in the inguinal region. He does not have tenderness over the iliotibial band and greater trochanteric bursa. The left knee has pain over the lateral joint line and lateral collateral ligaments although a varus stress does not elicit pain, valgus stress does elicit pain along the lateral joint line. There is no effusion today. He has excellent range of motion. Anterior and posterior drawer are negative. His straight leg raise is negative and his lumbosacral spine has no tenderness to palpation. There are no trigger points.


PLAINTIFF'S
EXHIBIT
14

③

54328 11-2224
SB Cont

RADIOGRAPHIC EXAM: AP, pelvis, and lateral of the left hip show flattening of the left femoral head. The left knee series appears normal. The lumbosacral spine series shows minimal degenerative joint change.

ASSESSMENT:
1. Low back pain.
2. Left hip pain.
3. Left knee pain.

PLAN: We are going to get a MRI of the left knee and bilateral hips. The bilateral hips are to rule out AVN. He is going to follow up with us post MRI. This patient was seen in the clinic with Dr. Barrington.
SAB:rg          11-23-04
CC: Dr. Kynard Adams -- Thank You

30-04 - MRI BILAT HIPS + LEFT KNEE COMPLETED AT AOS-
12-3-04 SB                                                          BR

AOS Billing Department - Precert section

Procedure: L THA @ Jay
Scheduled Procedure Date: TBA per Jackie
Insurance Co.: Palomar
Precert Required: Y or (N)    Precert Approved: Y or (N)
Precert Number: N/A
Insurance Co Rep name & phone: Palomar - Amy @ 800-482-7394
Patient Notified: Y or N    Note made to computer system: (Y) or N
AOS Precert Clerk initials: NS
Date: 12/7/04



PLAINTIFF'S
EXHIBIT
14

(4)

# A.O.S

## ALABAMA ORTHOPAEDIC SPECIALISTS, P.A.

4294 Lomac Street   Montgomery, Alabama 36123-5003
Telephone: (334) 274-9000   Fax: (334) 274-0857
www.aosonline.net

**PATIENT NAME: GODWIN, OLLIE**       **DOB: 1-24-54**       **CHART # 84328**
**DATE: 11-30-04**
**REFERRING PHYSICIAN: DR. BARRINGTON**
**EXAM: MRI LEFT KNEE W/O CONTRAST**
**DIAGNOSIS: TWISTING INJURY TO LEFT KNEE**

### X-RAY REPORT

TECHNIQUE:
Multi planar, multi echo MR of the left knee.

There is a metallic low signal artifact in the anterior medial aspect of the knee that extends into the medial femoral condyle on the fat suppressed images.

The bone marrow signal appears unremarkable. There is an 8mm osteochondral lesion in the anterior aspect of the lateral femoral condyle. The extensor mechanism appears within normal limits. There is thinning of the articular cartilage in the medial and lateral patellar facets. There is a small knee effusion. The medial and lateral meniscus appear normal. The ACL and PCL appear normal.

**IMPRESSION:**
PATELLAR CHONDROMALACIA. SMALL OSTEOCHONDRAL LESION ON THE LATERAL FEMORAL CONDYLE.

SIGNED: JEFFREY ADAMS, M.D.
Transcribed: EDA
Technologist: Betsy Powers, RT (R) (MR)



# A.O.S

### ALABAMA ORTHOPAEDIC SPECIALISTS, P.A.

4294 Lomac Street    Montgomery, Alabama 36123-5003
Telephone: (334) 274-9000    Fax: (334) 274-0857
www.aosonline.net

**PATIENT NAME: GODWIN, OLLIE**          **DOB: 1-24-54**          **CHART #**
**84328**
**DATE: 11-30-04**
**REFERRING PHYSICIAN: DR. BARRINGTON**
**EXAM: MRI HIPS W/O CONTRAST**
**DIAGNOSIS: HIP AND LEG PAIN**

### X-RAY REPORT

**TECHNIQUE:**
Axial T1 weighted and proton density fat suppressed images performed. Coronal T1
weighted inversion recovery images performed of both hips.

**FINDINGS:**
There are areas of serpiginous low signal involving a large portion of the anterior and
superior aspect of both femoral heads consistent with osteonecrosis. There is a small right
hip effusion.

There is a moderate sized left hip effusion. Also there is ill defined bone marrow edema in
the base of the left femoral head and extend into the femoral head and extend into the
femoral neck and inter trochanteric region near the lesser trochanter. There are also a few
areas of patchy bone marrow edema in the acetabulum. I see no linear signal abnormalities
to suggest a fracture line. There is ill defined edema within the musculature of the
quadratus femoris.

**IMPRESSION:**
OSTEONECROSIS OF BOTH FEMORAL HEADS.

BONE MARROW EDEMA IN THE LEFT FEMORAL HEAD AND NECK.

BILATERAL HIP EFFUSIONS GREATER ON THE LEFT.

EDEMA IN THE LEFT QUADRATUS FEMORIS MUSCULATURE.

SIGNED: JEFFREY ADAMS, M.D.
Transcribed: EDA
Technologist: Betsy Powers, RT (R) (MR)



(6)



## A·O·S
### ALABAMA ORTHOPAEDIC
### SPECIALISTS, P.A.

THOMAS G. WELLS, M.D.
Orthopaedic Surgery and Arthroscopic Surgery

D.D. THORNBURY, M.D.
Foot & Ankle and Orthopaedic Surgery

EDWARD E. PALMER, JR., M.D.
Hand Surgery and Orthopaedic Surgery

STEVEN A. BARRINGTON, M.D.
Joint Replacement and Orthopaedic Surgery

**RECEIVED**

**MAR 15 2005**

**A&H CLAIMS
AIGCS**

CHARLES W. HARTZOG, JR., M.D.
Sports Medicine and Arthroscopic Surgery

G. DEXTER WALCOTT, JR., M.D.
Sports Medicine and Arthroscopic Surgery

MICHAEL E. DAVIS, M.D.
Spine Surgery and Orthopaedic Surgery

RONALD P. O'NEAL, MPH, CHE
Administrator

W. SCOTT GULLEY, CPA
Controller

Marcy 2, 2005

AIG
Stephanie Pine
P.O. Box 15701
Wilmington, DE 19850-5701

Re: Ollie Robert Godwin
Chart #: 84328

9 056434  RO 43436028

Dear Ms. Pine:

    As you know we have treated Mr. Godwin for avascular necrosis with collapse of his left hip. He related to me that he injured it when he was stepping out of his truck back in November and has had basically increased pain in that left side since then. Probably he had an aggravation of a previously unknown underlying condition, which was the avascular necrosis. The injury probably caused him to collapse it and therefore have the pain that resulted in his need for the hip replacement operation.

    If you need any further clarification, do not hesitate to contact my office.

Sincerely,

Steven A. Barrington, M.D.

SAB/aw

PLAINTIFF'S
EXHIBIT
15

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

OLLIE GODWIN,                                   )
                                                )
      PLAINTIFF,                            )
                                                )
V.                                              )   CASE NO: 2:05-cv-00783-SRW
                                                )
NATIONAL UNION FIRE INSURANCE                   )   From Circuit Court of Crenshaw Co.
COMPANY OF PITTSBURGH, INC.,                    )   Case No: CV05-69
ET AL.,                                         )
                                                )
      DEFENDANTS.                           )
                                                )

### AFFIDAVIT OF DR. DANIEL W. MICHAEL

STATE OF ALABAMA        )
COUNTY OF JEFFERSON     )

My name is Dr. Daniel W. Michael. I am over the age of nineteen years and have personal knowledge of the facts set forth herein.

1. I am a medical doctor practicing in the State of Alabama. A copy of my curriculum vitae outlining my educational and professional background is attached hereto as Exhibit A.

2. I reviewed the medical records of Mr. Godwin subpoenaed in the course of the above-styled lawsuit as well as the x-rays and MRIs of Mr. Godwin maintained in Dr. Barrington's office.

3. The x-rays and MRIs reveal bilateral avascular necrosis of the hips – a disease process that was definitely present prior to Mr. Godwin's alleged injury on October 27, 2004.

4. Avascular necrosis is a disease resulting from loss of blood supply to the bones.

5. The first x-rays and MRIs I reviewed are dated early November 2004, and on review, there is apparent avascular necrosis of the left hip with no collapse of the femoral head. Although on the x-ray film the right hip appears normal, the MRI shows avascular necrosis in the right hip as well.



PLAINTIFF'S
EXHIBIT
16

6.  Because of the normal time that it takes for avascular necrosis to develop, particularly to the point it had developed in his left hip, it is my opinion that there is no relationship between the alleged October 2004 accident and the onset and subsequent problems Mr. Godwin had in both hips from the avascular necrosis of the femoral heads.

Further affiant saith not:

_____
Dr. Daniel W. Michael

STATE OF ALABAMA          )
COUNTY OF JEFFERSON       )

BEFORE ME, the undersigned Notary Public in and for said County and State, personally appeared Dr. Daniel W. Michael, whose name is signed to the foregoing Affidavit, and who is known to me and who, being by me first duly sworn, on oath deposes and says that he has personal knowledge of the statements contained in the foregoing Affidavit and that they are true and correct.

SWORN TO and subscribed before me on this the 4th day of October, 2006.

_____
NOTARY PUBLIC

My Commission Expires: 6/7/09

137388



ORTHOPEDIC SURGEONS, P.C.
#151 HIGHLAND AVENUE
SUITE 300
BIRMINGHAM, ALABAMA 05205

DANIEL W. MICHAEL M.D.

TELEPHONE
(205) 309-1000

### Daniel W. Michael, M. D.

#### Curriculum Vitae

| | |
|---|---|
| Auburn University-B.S. Degree-Cum Laude | -1973 |
| University of Alabama, Birmingham-M.D. Degree | -1977 |
| Internship-Surgical-Carraway Methodist Medical Center | -1977-1978 |
| Residency-Orthopedic Surgery-Medical Center, University of Alabama | -1978-1982 |
| Private Practice | -1982-Present |
| Licensed by: Alabama State Board of Medical examiners | -1977 |
| Board Certified-American Board of Orthopedic Surgery | -1984 |
| Clinical Instructor, Div of Orthopedic Surgery University of Alabama in Birmingham | -1982-Present |
| Consultant, Kerner-Quarterback Sports Medicine Institute of Alabama, Birmingham, Alabama | -1982-Present |

MEDICAL ORGANIZATIONS AND SOCIETIES:

Alabama Orthopedic Society, Inc.

American Medical Association

Medical Association of the State of Alabama

Jefferson County Medical Society

Jefferson County Orthopedic Surgical Society

Fellowship American College of Surgeons



PLAINTIFF'S EXHIBIT
16

EXHIBIT



AIG Claim Services, Inc.®
A&H Claims Department
P. O. Box 15701
Wilmington, DE 19850-5701
800.551.0824

On behalf of:
AIG Life Insurance
Company

February 27, 2004

Ollie Godwin
656 Ottis Faulk Drive
Honoraville, AL 36042

RE: Ollie Godwin
Member #: R04080009
Policy #: 8056434.
Claim #: I061424
DOI: 11/22/03

Dear Mr. Godwin:

We are in receipt of you claim for the above captioned injury and have reviewed same. According to the information we received, you were not under dispatch nor was your truck loaded at the time of the accident. Under the terms of your policy through Godwin Materials this is then considered a non occupational accident. The maximum amount payable under this portion of the policy is $7500.00 in medical expenses and there are no disability benefits.

We have issued a check in the amount of $7500.00 to LV Stabler Hospital for services of 12/29/03 to 12/30/03.

We are glad to communicate with you and to receive any further information that you may provide to aid us in determining your claim. Of course, we must respectfully request that you understand that we reserve all of our rights and defenses under the policy and the law, and none of our communications may be construed so as to waive any of those rights. We appreciate your cooperation.

Sincerely,

Patricia M. Gambino
Claims Examiner
Cc: Palomar

PLAINTIFF'S
EXHIBIT
17

A Member Company of
American International Group, Inc.

# Commission Report / LEASE    106    OLLIE GODWIN    Godwin Material Service, Inc.

| Date | Ticket | Pit | Vendor | Road | Material | Weight | Rate | Amount | % | Net |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/20/04 | 51143901 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 28.75 | $3.15 | $90.56 | 90.00% | $81.50 |
| 10/20/04 | 51143915 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.52 | $3.15 | $92.99 | 90.00% | $83.69 |
| 10/20/04 | 51143930 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.78 | $3.15 | $93.81 | 90.00% | $84.43 |
| 10/20/04 | 51143949 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.73 | $3.15 | $93.65 | 90.00% | $84.29 |
| 10/20/04 | 51143965 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.57 | $3.15 | $93.84 | 90.00% | $84.46 |
| 10/21/04 | 51144002 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 28.95 | $3.15 | $91.19 | 90.00% | $82.07 |
| 10/21/04 | 51144011 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 28.6 | $3.15 | $92.07 | 90.00% | $82.87 |
| 10/21/04 | 51144020 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.6 | $3.15 | $93.92 | 90.00% | $83.92 |
| 10/21/04 | 51144026 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.4 | $3.15 | $83.24 | 90.00% | $83.24 |
| 10/21/04 | 51144032 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.4 | $3.15 | $92.61 | 90.00% | $83.35 |
| 11/1/04 | 51213368 | CITY PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 29.35 | $3.15 | $92.45 | 90.00% | $83.21 |
| 11/1/04 | 51144038 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 29.4 | $3.15 | $92.61 | 90.00% | $83.35 |
| 11/2/04 | 51144045 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.24 | $3.15 | $92.11 | 90.00% | $82.90 |
| 11/2/04 | 51144050 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 28.75 | $3.15 | $90.56 | 90.00% | $81.50 |
| 11/2/04 | 51144057 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.66 | $3.15 | $90.56 | 90.00% | $84.00 |
| 11/2/04 | 51144061 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.41 | $3.15 | $92.64 | 90.00% | $83.38 |
| 11/2/04 | 51144066 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.09 | $3.15 | $92.67 | 90.00% | $83.40 |
| 11/2/04 | 51144075 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.42 | $3.15 | $93.24 | 90.00% | $83.92 |
| 11/2/04 | 51144088 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.41 | $3.15 | $93.38 | 90.00% | $83.64 |
| 10/25/04 | 51144104 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.5 | $3.15 | $93.90 | 90.00% | $83.57 |
| 11/5/04 | 51144118 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.48 | $3.15 | $92.93 | 90.00% | $83.38 |
| 11/5/04 | 51144143 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 29.13 | $3.15 | $93.64 | 90.00% | $83.57 |
| 11/5/04 | 51144168 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.39 | $3.15 | $92.86 | 90.00% | $83.32 |
| 11/6/04 | 51144184 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.08 | $3.15 | $91.60 | 90.00% | $82.44 |
| 11/6/04 | 51144195 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 29.31 | $3.15 | $92.33 | 90.00% | $83.10 |
| 11/6/04 | 51144209 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 29.06 | $3.15 | $91.64 | 90.00% | $82.39 |
| 11/6/04 | 51144225 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 7 GRAVEL | 28.75 | $3.15 | $93.07 | 90.00% | $84.34 |
| 11/6/04 | 51144233 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.53 | $3.15 | $93.08 | 90.00% | $83.77 |
| 11/6/04 | 51144248 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 28.93 | $3.15 | $93.02 | 90.00% | $83.72 |
| 11/7/04 | 51144261 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 7 GRAVEL | 28 | $3.15 | $91.13 | 90.00% | $82.02 |
| 11/7/04 | 51144275 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.37 | $3.15 | $93.00 | 90.00% | $79.38 |
| 11/7/04 | 51144289 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 27.62 | $3.15 | $88.20 | 90.00% | $83.27 |
| 11/7/04 | 51144297 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 29.11 | $3.15 | $92.52 | 90.00% | $83.27 |
| 11/8/04 | 51144319 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 28.97 | $3.15 | $91.79 | 90.00% | $82.61 |
| 10/8/04 | 51144325 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 29.14 | $3.15 | $91.70 | 90.00% | $82.53 |
| 10/8/04 | 51144329 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | 57/67 GRAVEL | 28.71 | $3.15 | $90.44 | 90.00% | $81.40 |
| 10/8/04 | 51144335 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 29.77 | $3.15 | $93.78 | 90.00% | $84.40 |
| 10/8/04 | 51144340 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 25.38 | $3.15 | $79.88 | 90.00% | $71.89 |
| 10/8/04 | 51144352 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 29.45 | $3.15 | $92.77 | 90.00% | $83.49 |
| 10/29/04 | 51144358 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 28.34 | $3.15 | $92.96 | 90.00% | $83.66 |
| 10/29/04 | 51144366 | DOZIER PIT | LAFARGE-SOUTH MONTGO | TEAGUE ROAD | CONCRETE SAND | 29.39 | $3.15 | $80.34 | 90.00% | $80.34 |

PLAINTIFF'S EXHIBIT 18

American International Companies®
AIG Life Insurance Company

A&H Claims Department
P. O. Box 15701
Wilmington, DE  19850-5701
800-551-0824/302-761-3700


PLAINTIFF'S
EXHIBIT
20

PROOF OF LOSS

NAME OF GROUP:      . GODWIN MATERIALS
POLICY NUMBER:      . 8056434
CLAIMANT:               Ollie Godwin

## OCCUPATIONAL ACCIDENT MEDICAL CLAIM FORM

**INSTRUCTIONS:**
1.) You must have SECTION A fully completed by a designated official of the Participating Organization.
2.) SECTION B is to be completed, signed and dated by the Claimant.
3.) If claimant is treated in the hospital, please attach an itemized hospital bill.
4.) If claimant is treated by a doctor, SECTION C is to be completed, signed and dated by the Attending Physician or attach an itemized bill.
5.) Attach itemized bills for all medical expenses being claimed including the claimant's name, condition being treated (diagnosis), description of services, date of service(s) and the charge made for each service.
6.) Mail completed form to the address indicated above.

The furnishing of this form, or its acceptance by the Company, must not be construed as an admission of any liability on the Company, nor a waiver of any of the conditions of the insurance contract.

### SECTION A- PARTICIPATING ORGANIZATION STATEMENT

NAME / ADDRESS OF PARTICIPATING ORGANIZATION  Ollie Robert Godwin Godwin Sr

| CLAIMANT'S FULL NAME | SOCIAL SECURITY NUMBER | DATE OF BIRTH | NAME OF SUPERVISOR |
| --- | --- | --- | --- |
| Nov. 22 2003 | | !-24-54 | @ Jerry Godwin |

DATE OF INJURY: came home to fix muffer on truck   WAS HE/SHE INJURED ON YOUR JOB?   ☑ YES   ☐ NO

muffler hit in lower stomach
DESCRIBE HOW, WHEN AND WHERE ACCIDENT OCCURRED

| DATE CLAIMANT WAS CONTRACTED: | EFFECTIVE DATE OF COVERAGE UNDER PLAN | DATE COVERAGE TERMINATED (IF APPLICABLE) |
| --- | --- | --- |

| PARTICIPATING ORGANIZATION REPRESENTATIVE (PLEASE PRINT OR TYPE) | TITLE | DAYTIME TELEPHONE NUMBER ( ) - |
| --- | --- | --- |

| SIGNATURE OF PARTICIPATING ORGANIZATION REPRESENTATIVE | DATE |
| --- | --- |

### SECTION B- CLAIMANT'S STATEMENT

| CLAIMANT'S FULL NAME (PLEASE PRINT) | SOCIAL SECURITY NUMBER |
| --- | --- |
| Ollie R Godwin | 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 |

| STREET ADDRESS | CITY | STATE | ZIP |
| --- | --- | --- | --- |
| 656 Dns Faul K DR. | Honoraville | AL | 36042 |

| DATE OF BIRTH | TELEPHONE |
| --- | --- |
| 1-24-54 | ( ) |

GIVE FULL DESCRIPTION OF INJURY OR DISEASE FROM WHICH YOU ARE NOW SUFFERING. IF AN INJURY, TELL WHEN IT HAPPENED (DATE AND TIME), PLACE WHERE ACCIDENT OCCURRED, WHAT YOU WERE DOING AND HOW IT HAPPENED. Came home to fix muffler.    Around
working on truck muffler hit me in the stomach on Nov 22 2003 . 11:00 am

HAVE YOU EVER HAD THIS, OR A SIMILAR CONDITION IN THE PAST?   ☐ YES   ☑ NO.   Lower
IF YES, STATE THE NATURE OF THE CONDITION, DATES OF TREATMENT AND NAMES AND ADDRESSES OF TREATING DOCTORS, HOSPITALS AND CLINICS.

WHEN DID YOU FIRST CONSULT A PHYSICIAN FOR THIS CONDITION?

HOSPITALS (GIVE COMPLETE NAMES, ADDRESSES AND DATES OF CONFINEMENT.)

GIVE NAMES, ADDRESSES AND TELEPHONE NUMBERS OF ALL ATTENDING PHYSICIANS.

GIVE NAME, ADDRESS AND TELEPHONE NUMBER OF USUAL FAMILY PHYSICIAN.

WHAT OTHER ACCIDENT, SICKNESS OR DISABILITY INSURANCE DO YOU CARRY AND WHAT OTHER ORGANIZATIONS OR COMPANIES HAVE PAID YOU BENEFITS FOR SICKNESS OR INJURY?

I HEREBY CERTIFY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

AUTHORIZATION

I, the undersigned authorize any hospital or other medical-care institution, physician or other medical professional, pharmacy, insurance support organization, governmental agency, group policyholder, insurance company, association, employer or benefit plan administrator to furnish to the Insurance Company named above or its representatives, any and all information with respect to any injury or sickness suffered by the medical history of, or any consultation, prescription or treatment provided to, the person whose death, injury, sickness or loss is the basis of claim and copies of all of that person's hospital or medical records, including information relating to mental illness and use of drugs and alcohol, to determine eligibility for benefit payments under the Policy Number identified above. I authorize the group policyholder, employer or benefit plan administrator to provide the Insurance Company named above with financial and employment-related information. I understand that this authorization is valid for the term of coverage of the Policy identified above and that a copy of this authorization shall be considered as valid as the original. I understand that I or my authorized representative may request a copy of this authorization.

For your protection, California law requires the following to appear on this form:
Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

| SIGN YOUR FULL NAME | DATED: |
| --- | --- |
| Ollie R Godwin Sr | 2-23-05 |

A&H Claims Department
P. O. Box 15701
Wilmington, DE 19850-5701
800-551-0824/302-761-3700

| NAME OF GROUP: | GOODWIN |
|---|---|
| POLICY NUMBER: | 8056434 |
| CLAIMANT: | Ollie Godwin |

## OCCUPATIONAL ACCIDENT DISABILITY CLAIM FORM

INSTRUCTIONS:
1.) You must have SECTION A fully completed by a designated official of the Participating Organization.
2.) SECTION B is to be completed, signed and dated by the Attending Physician.
3.) SECTION C is to be completed, signed and dated by Claimant.
4.) Mail completed form to the address indicated above.

The furnishing of this form, or its acceptance by the Company, must not be construed as an admission of any liability on the Company, nor a waiver of any of the conditions of the insurance contract.

### SECTION A- PARTICIPATING ORGANIZATION STATEMENT FOR DISABILITY

NAME / ADDRESS OF PARTICIPATING ORGANIZATION

| CLAIMANT'S FULL NAME | SOCIAL SECURITY NUMBER | DATE OF BIRTH | NAME OF SUPERVISOR |
|---|---|---|---|
| | | | |

| DATE OF INJURY: | WAS HE/SHE INJURED ON YOUR JOB? ☐ YES   ☐ NO | DESCRIBE HOW, WHEN AND WHERE ACCIDENT OCCURRED |
|---|---|---|

| DATE CLAIMANT WAS CONTRACTED: | EFFECTIVE DATE OF COVERAGE UNDER PLAN: | DATE LAST WORKED: | TIME LAST WORKED: |
|---|---|---|---|

| DATE LOSS TIME STARTED: | WEEKLY EARNINGS (PLEASE INCLUDE PAYROLL RECORDS FOR THE 3 MONTH PERIOD PRECEDING LOSS DATE) |
|---|---|

| WILL CLAIMANT BE RECONTRACTED?   ☐ YES   ☐ NO | DATE RETURNED TO WORK: |
|---|---|

| PARTICIPATING ORGANIZATION REPRESENTATIVE (PLEASE PRINT OR TYPE) | TITLE | DAYTIME TELEPHONE NUMBER ( ) |
|---|---|---|

| SIGNATURE OF PARTICIPATING ORGANIZATION REPRESENTATIVE | DATE |
|---|---|

### SECTION B- ATTENDING PHYSICIAN'S STATEMENT FOR DISABILITY

PATIENT NAME AND ADDRESS: OLLIE GODWIN

WHEN DID SYMPTOMS FIRST APPEAR OR ACCIDENT HAPPEN?   DATE: 11-22-03

IF ACCIDENT DESCRIBE, HOW, WHEN AND WHERE ACCIDENT OCCURRED. _lint grain muffle_ NOV 22 03

DIAGNOSIS AND CONCURRENT CONDITIONS (IF FRACTURE OR DISLOCATION, DESCRIBE NATURE AND LOCATION): _caught @ inc hernia_

IS CONDITION DUE TO AN INJURY OR SICKNESS ARISING OUT OF PATIENT'S EMPLOYMENT?   ☒ YES   ☐ NO

IF "YES," EXPLAIN. _Working on truck when he ___ lifted._

WHEN DID PATIENT FIRST CONSULT YOU FOR THIS CONDITION?   DATE: 12-4-03

HAS PATIENT EVER HAD THE SAME OR SIMILAR CONDITION?   ☐ YES   ☒ NO

IF "YES," STATE WHEN AND DESCRIBE:

NATURE AND DATE OF SURGICAL PROCEDURE, IF ANY (DESCRIBE FULLY) _Hernia Surgery - inguinal hern_   DATE: 12-29-03

PROVIDE DATES OF OTHER MEDICAL TREATMENT AND DESCRIBE: _hernia Recheck 1-8-04_

WHAT OTHER SERVICES, IF ANY, DID YOU PROVIDE OR PRESCRIBE PATIENT? (PROVIDE DATES.)

IS PATIENT STILL UNDER YOUR CARE FOR THIS CONDITION?   ☐ YES   ☒ NO

IF "NO," GIVE DATE YOUR SERVICES TERMINATED.   DATE: 1-8-04                          ( DATES REQUIRED)

HOW LONG WAS OR WILL PATIENT BE CONTINUOUSLY TOTALLY DISABLED (UNABLE TO WORK)?   FROM: 11/26/03  TO: 1/26/04

HOW LONG WAS OR WILL PATIENT BE PARTIALLY DISABLED?   FROM: 11/26/03  TO: 1/8/04

IF PERMANENT PARTIAL DISABILITY, INDICATE PERCENTAGE OF IMPAIRMENT:

TO YOUR KNOWLEDGE, DOES PATIENT HAVE OTHER HEALTH INSURANCE OR HEALTH PLAN COVERAGE?   ☐ YES   ☐ NO

IF "YES" IDENTIFY.

| DATE 1/8/04 | SIGNATURE (ATTENDING PHYSICIAN) | DEGREE MD | TELEPHONE 334-382-6864 |
|---|---|---|---|
| STREET ADDRESS POB 398 | CITY OR TOWN GEORGIANA | STATE OR PROVINCE AL | ZIP CODE 36033 |

PLAINTIFF'S
EXHIBIT
20

Palomar 111

American International Companies®
AIG Life Insurance Company
A&H Claims Department
P. O. Box 15701
Wilmington, DE 19850-5701
800-551-0824/302-761-3700

**PROOF OF LOSS**

| NAME OF GROUP: | GODWIN MATERIALS |
|---|---|
| POLICY NUMBER: | 8058434 |
| CLAIMANT: | Ollie Godwin |

## OCCUPATIONAL ACCIDENT MEDICAL CLAIM FORM

**INSTRUCTIONS:**
(1.) You must have SECTION A fully completed by a designated official of the Participating Organization.
(2.) SECTION B is to be completed, signed and dated by the Claimant.
(3.) If claimant is treated in the hospital, please attach an itemized hospital bill.
(4.) If claimant is treated by a doctor, SECTION C is to be completed, signed and dated by the Attending Physician or attach an itemized bill.
(5.) Attach itemized bills for all medical expenses being claimed including the claimant's name, condition being treated (diagnosis), description of services, date of service(s) and the charge made for each service.
(6.) Mail completed Form to the address indicated above.

The furnishing of this form, or its acceptance by the Company, must not be construed as an admission of any liability on the Company, nor a waiver of any of the conditions of the insurance contract.

### SECTION A- PARTICIPATING ORGANIZATION STATEMENT

NAME / ADDRESS OF PARTICIPATING ORGANIZATION  *Ollie Robert Godwin Godwin SO*

| CLAIMANT'S FULL NAME | SOCIAL SECURITY NUMBER | DATE OF BIRTH | NAME OF SUPERVISOR |
|---|---|---|---|
| *Nov 22 2003* | | *1-24-54* | *Jerry Godwin* |

DATE OF INJURY *came home to fix muffler on truck* WAS HE/SHE INJURED ON YOUR JOB? ☒ YES ☐ NO
DESCRIBE HOW, WHEN AND WHERE ACCIDENT OCCURRED *muffler hit lower stomach*

DATE CLAIMANT WAS CONTRACTED:    EFFECTIVE DATE OF COVERAGE UNDER PLAN:    DATE COVERAGE TERMINATED (IF APPLICABLE)

PARTICIPATING ORGANIZATION REPRESENTATIVE (PLEASE PRINT OR TYPE)   TITLE   DAYTIME TELEPHONE NUMBER ( )

SIGNATURE OF PARTICIPATING ORGANIZATION REPRESENTATIVE   DATE

### SECTION B- CLAIMANT'S STATEMENT

CLAIMANT'S FULL NAME (PLEASE PRINT) *Ollie R Godwin*   SOCIAL SECURITY NUMBER *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*
STREET ADDRESS *656 Ths Faulk DR.*   CITY *Honoraville*   STATE *AL.*   ZIP *36042*
DATE OF BIRTH *1-24-54*   TELEPHONE ( )

GIVE FULL DESCRIPTION OF INJURY OR DISEASE FROM WHICH YOU ARE NOW SUFFERING. IF AN INJURY, TELL WHEN IT HAPPENED (DATE AND TIME), PLACE WHERE ACCIDENT OCCURRED, WHAT YOU WERE DOING AND HOW IT HAPPENED. *Came home to fix muffler. Working on truck muffler hit me in the lower stomach on Nov. 22 2003 around 11:00 am*
HAVE YOU EVER HAD THIS, OR A SIMILAR CONDITION, IN THE PAST? ☐ YES ☒ NO *Lower*
IF YES, STATE THE NATURE OF THE CONDITION, DATES OF TREATMENT AND NAMES AND ADDRESSES OF TREATING DOCTORS, HOSPITALS AND CLINICS.

WHEN DID YOU FIRST CONSULT A PHYSICIAN FOR THIS CONDITION?

HOSPITALS (GIVE COMPLETE NAMES, ADDRESSES AND DATES OF CONFINEMENT.)

GIVE NAMES, ADDRESSES AND TELEPHONE NUMBERS OF ALL ATTENDING PHYSICIANS.

GIVE NAME, ADDRESS AND TELEPHONE NUMBER OF USUAL FAMILY PHYSICIAN.

WHAT OTHER ACCIDENT, SICKNESS OR DISABILITY INSURANCE DO YOU CARRY AND WHAT OTHER ORGANIZATIONS OR COMPANIES HAVE PAID YOU BENEFITS FOR SICKNESS OR INJURY?

I HEREBY CERTIFY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

**AUTHORIZATION**

I, the undersigned authorize any hospital or other medical-care institution, physician or other medical professional, pharmacy, insurance support organization, governmental agency, group policyholder, insurance company, association, employer or benefit plan administrator to furnish to the Insurance Company named above or its representatives, any and all information with respect to any injury or sickness suffered by, the medical history of, or any consultation, prescription or treatment provided to, the person whose death, injury, sickness or loss is the basis of claim and copies of all of that person's hospital or medical records, including information relating to mental illness and use of drugs and alcohol, to determine eligibility for benefit payments under the Policy Number identified above. I authorize the group policyholder, employer or benefit plan administrator to provide the Insurance Company named above with financial and employment-related information. I understand that this authorization is valid for the term of coverage of the Policy identified above and that a copy of this authorization shall be considered as valid as the original. I understand that I or my authorized representative may request a copy of this authorization.

For your protection, California law requires the following to appear on this form:
Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

SIGN YOUR FULL NAME *Ollie R Godwin Sr*   DATED: *2-23-05*


PLAINTIFF'S EXHIBIT 20

**SECTION C - CLAIMANT'S STATEMENT FOR DISABILITY**

CLAIMANT'S FULL NAME (PLEASE PRINT): Ollie R Godwin

SOCIAL SECURITY NUMBER: ▓▓▓▓▓▓

Street Address: 656 Otis Faulk Dr.    City: Honoraville    State: Al.    Zip: 36042

Date Of Birth: 1-24-54    Height And Weight: 5'11" 210    Marital Status: Married    Telephone: (334) 537-9506

Occupation: Truck owner book on trucks Maint.    Duties: Drive Truck and all tires.    Monthly Earnings: $1,000 to $2,000 my truck - from $200 to $1,000 according on work    Weekly Earnings:

| | | |
|---|---|---|
| (1) | Give Full Description Of Injury Or Disease From Which You Are Now Suffering. If An Injury, Tell When It Happened (Date and Time), Place Where Accident Occurred, What You Were Doing And How It Happened. | Came home to fix truck, muffler hit me in lower stomach. |
| (2A) | Have You Ever Had This, Or A Similar Condition, In The Past? | ☐ Yes   ☒ No |
| (B) | If yes, state the nature of the condition, dates of treatment and names and addresses of treating doctors, hospitals and clinics. | |
| (3A) | Give exact date when illness began, or injury occurred. | (A) Date: NOV. 22. 2003 |
| (B) | When did you first consult a physician for this condition? | (B) Date: 12-4-03 |
| (C) | When did you become totally disabled (unable to work)? | (C) Date: 12-29-03 |
| (D) | When were you able to again perform part of your occupational duties? | (D) Date: Feb 2, 2004 |
| (E) | When were you able to again perform all of your occupational duties? | (E) Date: Feb 2, 2004 |
| (F) | If still totally disabled, when do you expect your disability to end? | (F) Date: |
| (4) | Hospitals (Give complete names, addresses and dates of confinement.) | Greenville Hospital Corp. Highway 10 west. Greenville, Al. Dec 29, 30, Got out on 31  2003 |
| (5A) | Give names, addresses and telephone numbers of all attending physicians. | Norman F McGowin III. Greenville, Ala. 382-1667 |
| (B) | Give name, address and telephone number of usual family physician. | Danny Hood Greenville, Al. 382-1667 |
| (6) | What other accident, sickness or disability insurance do you carry and what other organizations or companies have paid you benefits for sickness or injury? | Blue Cross Blue Sheild |
| (7) | What other medical or surgical treatment has been received during the past 5 years? (Give dates, nature of illness or injury and names and addresses of all treating doctors, hospitals and clinics.) | Had a wrecky Broke hand - had Surgery. 1998 |
| (8) | Names, addresses and telephone numbers of employers and length of employment with each. | Been with Godwin materials for 20 years before that Capital Victorian - 11 years (went out of Busn.) |

I HEREBY CERTIFY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

AUTHORIZATION

I, the undersigned authorize any hospital or other medical-care institution, physician or other medical professional, pharmacy, insurance support organization, governmental agency, group policyholder, insurance company, association, employer or benefit plan administrator to furnish to the insurance Company named above or its representatives, any and all information with respect to any injury or sickness suffered by, the medical history of, or any consultation, prescription or treatment provided to, the person whose death, injury, sickness or loss is the basis of claim and copies of all of that person's hospital or medical records, including information relating to mental illness and use of drugs and alcohol, to determine eligibility for benefit payments under the Policy Number identified above. I authorize the group policyholder, employer or benefit plan administrator to provide the Insurance Company named above with financial and employment-related information. I understand that this authorization is valid for the term of coverage of the Policy identified above and that a copy of this authorization shall be considered as valid as the original. I understand that I or my authorized representative may request a copy of this authorization.

For claimants not residing in California, New York, or Pennsylvania: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

SIGN YOUR FULL NAME: Ollie Roberts Godwin    DATED: 2-23-05



PLAINTIFF'S EXHIBIT 20

**PROOF OF LOSS**

American International Companies®
AIG Life Insurance Company

A&H Claims Department
P. O. Box 15701
Wilmington, DE 19850-5701
800-551-0824/302-761-3700

| NAME OF GROUP: | GOODWIN |
| POLICY NUMBER: | 8055434 |
| CLAIMANT: | Ollie Godwin |

## OCCUPATIONAL ACCIDENT DISABILITY CLAIM FORM

**INSTRUCTIONS:**
1.) You must have SECTION A fully completed by a designated official of the Participating Organization.
2.) SECTION B is to be completed, signed and dated by the Attending Physician.
3.) SECTION C is to be complete, signed and dated by Claimant.
4.) Mail completed form to the address indicated above.

The furnishing of this form, or its acceptance by the Company, must not be construed as an admission of any liability on the Company, nor a waiver of any of the conditions of the insurance contract.

### SECTION A- PARTICIPATING ORGANIZATION STATEMENT FOR DISABILITY
NAME / ADDRESS OF PARTICIPATING ORGANIZATION

| CLAIMANT'S FULL NAME | SOCIAL SECURITY NUMBER | DATE OF BIRTH | NAME OF SUPERVISOR |
| Ollie R Godwin | | 1-24-54 | Jerry Godwin |

DATE OF INJURY: Nov. 22, 2003 ☒ YES ☐ NO
WAS HE/SHE INJURED ON YOUR JOB

DESCRIBE HOW, WHEN AND WHERE ACCIDENT OCCURRED: truck muffler hit me in the lower stomach.

DATE CLAIMANT WAS CONTRACTED: date the policy begins
EFFECTIVE DATE OF COVERAGE UNDER PLAN: Been working for Godwin Dan 28 weeks ago
DATE LAST WORKED: 12-25-03 to do pre op
TIME LAST WORKED:

DATE LOSS TIME STARTED: Jan 5 2004
WEEKLY EARNINGS (PLEASE INCLUDE PAYROLL RECORDS FOR THE 3 MONTH PERIOD PRECEDING LOSS DATE): Suppose received $500 a week

WILL CLAIMANT BE RECONTRACTED? ☐ YES ☐ NO
DATE RETURNED TO WORK: Feb 2nd 2004

| PARTICIPATING ORGANIZATION REPRESENTATIVE (PLEASE PRINT OR TYPE) | TITLE | DAYTIME TELEPHONE NUMBER ( ) |

SIGNATURE OF PARTICIPATING ORGANIZATION REPRESENTATIVE | DATE

### SECTION B- ATTENDING PHYSICIAN'S STATEMENT FOR DISABILITY
PATIENT NAME AND ADDRESS:

WHEN DID SYMPTOMS FIRST APPEAR OR ACCIDENT HAPPEN? DATE: _____

IF ACCIDENT DESCRIBE, HOW, WHEN AND WHERE ACCIDENT OCCURRED. _____

DIAGNOSIS AND CONCURRENT CONDITIONS (IF FRACTURE OR DISLOCATION, DESCRIBE NATURE AND LOCATION): _____

IS CONDITION DUE TO AN INJURY OR SICKNESS ARISING OUT OF PATIENT'S EMPLOYMENT? ☐ YES ☐ NO

IF "YES," EXPLAIN. _____

WHEN DID PATIENT FIRST CONSULT YOU FOR THIS CONDITION? DATE: _____

HAS PATIENT EVER HAD THE SAME OR SIMILAR CONDITION? ☐ YES ☐ NO

IF "YES," STATE WHEN AND DESCRIBE: _____

NATURE AND DATE OF SURGICAL PROCEDURE, IF ANY (DESCRIBE FULLY) _____ DATE: _____

PROVIDE DATES OF OTHER MEDICAL TREATMENT AND DESCRIBE: _____

WHAT OTHER SERVICES, IF ANY, DID YOU PROVIDE OR PRESCRIBE PATIENT? (PROVIDE DATES.) _____

IS PATIENT STILL UNDER YOUR CARE FOR THIS CONDITION? ☐ YES ☐ NO

IF "NO," GIVE DATE YOUR SERVICES TERMINATED. DATE: _____ ( DATES REQUIRED)

HOW LONG WAS OR WILL PATIENT BE CONTINUOUSLY TOTALLY DISABLED (UNABLE TO WORK)? FROM: _____ TO: _____

HOW LONG WAS OR WILL PATIENT BE PARTIALLY DISABLED? FROM: _____ TO: _____

IF PERMANENT PARTIAL DISABILITY, INDICATE PERCENTAGE OF IMPAIRMENT: _____

TO YOUR KNOWLEDGE, DOES PATIENT HAVE OTHER HEALTH INSURANCE OR HEALTH PLAN COVERAGE? ☐ YES ☐ NO

IF "YES" IDENTIFY. _____

| DATE | SIGNATURE (ATTENDING PHYSICIAN) | DEGREE | TELEPHONE ( ) |

| STREET ADDRESS | CITY OR TOWN | STATE OR PROVINCE | ZIP CODE |



PLAINTIFF'S EXHIBIT 20

NON NEGOTIABLE

PROC1A

# EXPLANATION OF BENEFITS

INSURED:

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE                    AL   36042

Policy Holder: GODWIN MATERIALS, INC.
Policy No: 000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: W1000319
Insured ID Number: R043430028
Claim Number: A97730215
Claim Office: 024
Date Paid: 04/22/2005
Examiner Code: SNP
Loss Date: 10/27/2004
RW

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|---|---|---|---|---|---|---|---|---|---|---|
| ...EDISYS | 0218 021805 | 01 | 73 | 244.00 | 244.00 | | .00 | 000 | .00 | R2 |
| **Totals** | | | | $244.00 | $244.00 | | $0.00 | | $0.00 | |

Reduced Because of Other Insurance    _____

Total Amount Paid This Claim    _____

## Checks Issued

| Payee Name | Amount |
|---|---|
| | |

### Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY                    AL 36116

## Description of Remark Codes*

R2-POLICY COVERS ACCIDENTS ONLY, SICKNESS NOT COVERED.

## Description of Benefit Codes

73 - ADD'L ACC EXP

PLAINTIFF'S EXHIBIT
21

**Thank you for the opportunity to service this claim.**
**Please call (800)551-0824   with any questions you have.**

The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

## NON NEGOTIABLE

PROCIA

# EXPLANATION OF BENEFITS

**INSURED:**

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE          AL   36042

**Policy Holder:** GODWIN MATERIALS, INC.
**Policy No:** 000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: 84328
Insured ID Number: R043430028
Claim Number: A97730225
Claim Office: 024
Date Paid: 07/14/2005
Examiner Code: SNP
Loss Date: 10/27/2004
RW

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|---|---|---|---|---|---|---|---|---|---|---|
| _A ORTHOP | 0516 051605 | 01 | A7 | 740.00 | 740.00 | | .00 | 000 | .00 | R2 |
| **Totals** | | | | $740.00 | $740.00 | | $0.00 | | $0.00 | |

Reduced Because of Other Insurance

Total Amount Paid This Claim _____

## Checks Issued

| Payee Name | Amount |
|---|---|
| | |

### Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY                    AL 36116

### Description of Remark Codes*

R2-POLICY COVERS ACCIDENTS ONLY, SICKNESS NOT COVERED.

### Description of Benefit Codes

A7 - X-RAY



nank you for the opportunity to service this claim.

ease call (800)551-0824   with any questions you have.

The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

2

## NON NEGOTIABLE

PROC1A

## EXPLANATION OF BENEFITS

**INSURED:**

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE                AL   36042

Policy Holder: GODWIN MATERIALS, INC.
Policy No: 000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: 10720739
Insured ID Number: R043430028
Claim Number: A97730227
Claim Office: 024
Date Paid: 08/23/2005
Examiner Code: SNP
Loss Date: 10/27/2004
RW

| rovider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|---------|-------------------|----------|--------------|---------------|-------------|------------|-------------------|---|-------------|--------------|
| JACKSON | 0607 060705 | 01 | 73 | 9,425.50 | 9,425.50 | | .00 | 000 | .00 | R2 |
| **Totals** | | | | $9,425.50 | $9,425.50 | | $0.00 | | $0.00 | |

Reduced Because of Other Insurance _____

Total Amount Paid This Claim _____

### Checks Issued

| Payee Name | Amount |
|------------|--------|
| | |

### Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY                         AL  36116

### Description of Remark Codes*

R2-POLICY COVERS ACCIDENTS ONLY, SICKNESS NOT COVERED.

### Description of Benefit Codes

73 - ADD'L ACC EXP



**Thank you for the opportunity to service this claim.**
**Please call (800)551-0824   with any questions you have.**

The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

0672

**NON NEGOTIABLE**

PROC1A

# EXPLANATION OF BENEFITS

**INSURED:**

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE                    AL   36042

Policy Holder: GODWIN MATERIALS, INC.
Policy No:  000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: 84328
Insured ID Number: R043430028
Claim Number: A97730224
Claim Office: 024
Date Paid: 07/12/2005
Examiner Code: SNP
Loss Date: 10/27/2004
RW

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code |
|---|---|---|---|---|---|---|---|---|---|---|
| ALA ORTHOP | 0509 050905 | 01 | 81 | 50.00 | 50.00 | | .00 | 000 | .00 | R2 |
| ALA ORTHOP | 0509 050905 | 01 | A7 | 75.00 | 75.00 | | .00 | 000 | .00 | R2 |
| ALA ORTHOP | 0509 050905 | 01 | A7 | 75.00 | 75.00 | | .00 | 000 | .00 | R2 |
| **Totals** | | | | **$200.00** | **$200.00** | | **$0.00** | | **$0.00** | |

Reduced Because of Other Insurance

Total Amount Paid This Claim

## Checks Issued

| Payee Name | Amount |
|---|---|
| | |
| | |
| | |

### Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY                    AL 36116

## Description of Remark Codes*

R2-POLICY COVERS ACCIDENTS ONLY, SICKNESS NOT COVERED.

## Description of Benefit Codes

81 - PHYSICIAN VISIT
A7 - X-RAY

PLAINTIFF'S EXHIBIT 21

**Thank you for the opportunity to service this claim.
Please call ( 800 )551-0824   with any questions you have.**
The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

60672

**NON NEGOTIABLE**

PROC1A

# EXPLANATION OF BENEFITS

**INSURED:**

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE                    AL  36042

Policy Holder: GODWIN MATERIALS, INC.
Policy No: 000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: GODOLOOO 1105
Insured ID Number: R043430028
Claim Number: A97730210
Claim Office: 024
Date Paid: 04/19/2005
Examiner Code: BBA
Loss Date: 10/27/2004
RW

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|---|---|---|---|---|---|---|---|---|---|---|
| RICHARD | 0210 021005 | 01 | A8 | 90.00 | 90.00 | | .00 | 000 | .00 | R2 |
| RICHARD | 0210 021005 | 01 | A8 | 38.00 | 38.00 | | .00 | 000 | .00 | R2 |
| **Totals** | | | | $128.00 | $128.00 | | $0.00 | | $0.00 | |

Reduced Because of Other Insurance _____

## Checks Issued

| Payee Name | Amount |
|---|---|
| | |
| | |

Total Amount Paid This Claim _____

### Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY                    AL 36116

## Description of Remark Codes*

R2-POLICY COVERS ACCIDENTS ONLY, SICKNESS NOT COVERED.

## Description of Benefit Codes

A8 - LAB

**Thank you for the opportunity to service this claim.**
**Please call (800)551-0824   with any questions you have.**

The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

50672

**NON NEGOTIABLE**

PROC1A

# EXPLANATION OF BENEFITS

**INSURED:**

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE          AL   36042

Policy Holder: GODWIN MATERIALS
Policy No: 000080564340

Patient Name: OLLIE GODWIN
Patient Account Number: 457004
Insured ID Number: R040480009
Claim Number: IO6142404
Claim Office: 024
Date Paid: 06/02/2004
Examiner Code: BBA
Loss Date: 11/22/2003
RW

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|----------|-------------------|----------|--------------|---------------|-------------|------------|-------------------|---|-------------|--------------|
| WAHID | 0423 042304 | 01 | A8 | 25.00 | 25.00 | | .00 | 000 | .00 | R2 |
| WAHID | 0423 042304 | 01 | 81 | 10.00 | 10.00 | | .00 | 000 | .00 | R2 |
| **Totals** | | | | $35.00 | $35.00 | | $0.00 | | $0.00 | |

Reduced Because of Other Insurance _____

## Checks Issued

| Payee Name | Amount |
|------------|--------|
| | |

Total Amount Paid This Claim _____

### Broker/Agent

PALOMAR INSURANCE CORP
P O DRAWER 11128
MONTGOMER                AL 36198

## Description of Remark Codes*

R2-POLICY COVERS ACCIDENTS ONLY, SICKNESS NOT COVERED.

## Description of Benefit Codes

A8 - LAB
81 - PHYSICIAN VISIT

**Thank you for the opportunity to service this claim.**
**Please call ( 800 )551-0824   with any questions you have.**

The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

60672

**NON NEGOTIABLE**

PROC1A

# EXPLANATION OF BENEFITS

**INSURED:**

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE                AL   36042

Policy Holder: GODWIN MATERIALS, INC.
Policy No:  000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: R363651.2
Insured ID Number: R043430028
Claim Number: A97730213
Claim Office: 024
Date Paid: 04/19/2005
Examiner Code: BBA
Loss Date: 10/27/2004
RW

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|---|---|---|---|---|---|---|---|---|---|---|
| RADIOLOGY | 0224 022405 | 01 | A7 | 125.00 | 125.00 | | .00 | 000 | .00 | R2 |
| **Totals** | | | | **$125.00** | **$125.00** | | **$0.00** | | **$0.00** | |

Reduced Because of Other Insurance _____

Total Amount Paid This Claim _____

## Checks Issued

| Payee Name | Amount |
|---|---|
| | |

### Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY                    AL  36116

## Description of Remark Codes*

R2-POLICY COVERS ACCIDENTS ONLY, SICKNESS NOT COVERED.

## Description of Benefit Codes

A7 - X-RAY

**Thank you for the opportunity to service this claim.**
**Please call (800)551-0824  with any questions you have.**

The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

50672

**NON NEGOTIABLE**

PROC1A

# EXPLANATION OF BENEFITS

INSURED:

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE                 AL  36042

Policy Holder: GODWIN MATERIALS, INC.
Policy No: 000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: 01-022969
Insured ID Number: R043430028
Claim Number: A97730212
Claim Office: 024
Date Paid: 04/19/2005
Examiner Code: BBA
Loss Date: 10/27/2004
RW

| - Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|---|---|---|---|---|---|---|---|---|---|---|
| HOME MEDI | 0212 021205 | 01 | 93 | 110.00 | 110.00 | | .00 | 000 | .00 | R2 |
| HOME MEDI | 0212 021205 | 01 | 93 | 120.00 | 120.00 | | .00 | 000 | .00 | R2 |
| HOME MEDI | 0212 021205 | 01 | 93 | 140.00 | 140.00 | | .00 | 000 | .00 | R2 |
| **Totals** | | | | $370.00 | $370.00 | | $0.00 | | $0.00 | |

Reduced Because of Other Insurance _____

## Checks Issued

Total Amount Paid This Claim _____

| Payee Name | Amount |
|---|---|
| | |
| | |
| | |

## Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY                 AL 36116

## Description of Remark Codes*

R2-POLICY COVERS ACCIDENTS ONLY, SICKNESS NOT COVERED.

## Description of Benefit Codes

93 - MED SUPPLIES

**Thank you for the opportunity to service this claim.**
**Please call (800)551-0824   with any questions you have.**

The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

60672

**NON NEGOTIABLE**

PROC1A

# EXPLANATION OF BENEFITS

INSURED:

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE                 AL  36042

Policy Holder: GODWIN MATERIALS, INC.
Policy No: 000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: 502-1332M
Insured ID Number: R043430028
Claim Number: A97730211
Claim Office: 024
Date Paid: 04/19/2005
Examiner Code: BBA
Loss Date: 10/27/2004
RW

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|---|---|---|---|---|---|---|---|---|---|---|
| HAYNES | 0213 021305 | 01 | 93 | 275.00 | 275.00 | | .00 | 000 | .00 | R2 |
| HAYNES | 0213 021305 | 01 | 93 | 266.00 | 266.00 | | .00 | 000 | .00 | R2 |
| | **Totals** | | | **$541.00** | **$541.00** | | **$0.00** | | **$0.00** | |

Reduced Because of Other Insurance _____

## Checks Issued

Total Amount Paid This Claim _____

| Payee Name | Amount |
|---|---|
| | |
| | |

### Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY                AL 36116

## Description of Remark Codes*

R2-POLICY COVERS ACCIDENTS ONLY, SICKNESS NOT COVERED.

## Description of Benefit Codes

93 - MED SUPPLIES

**Thank you for the opportunity to service this claim.**
**Please call (800)551-0824  with any questions you have.**

The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

50672

**NON NEGOTIABLE**

PROC1A

## EXPLANATION OF BENEFITS

INSURED:

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE          AL  36042

Policy Holder: GODWIN MATERIALS, INC.
  Policy No: 000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: 10689793
Insured ID Number: R043430028
Claim Number: A97730207
Claim Office: 024
Date Paid: 04/09/2005
Examiner Code: SNP
Loss Date: 10/27/2004
RW

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|----------|-------------------|----------|--------------|---------------|-------------|------------|-------------------|---|-------------|--------------|
| JACKSON | 0210 021305 | 01 | 73 | 28,187.05 | 28,187.05 | | .00 | 000 | .00 | R2 |
| | | | **Totals** | $28,187.05 | $28,187.05 | | $0.00 | | $0.00 | |

Reduced Because of Other Insurance _____

Total Amount Paid This Claim _____

### Checks Issued

| Payee Name | Amount |
|------------|--------|
| | |
| | |
| | |

## Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY          AL  36116

### Description of Remark Codes*

R2-POLICY COVERS ACCIDENTS ONLY, SICKNESS NOT COVERED.

### Description of Benefit Codes

73 - ADD'L ACC EXP

**Thank you for the opportunity to service this claim.**
**Please call ( 800)551-0824  with any questions you have.**

The AIG Life Companies,Accident and Health Claims Department,P.O. Box 15701,
Wilmington,DE 19850-5701

0672

**NON NEGOTIABLE**

# EXPLANATION OF BENEFITS

INSURED:

OLLIE GODWIN
656 OTTIS FAULK DRIVE
HONORAVILLE          AL   36042

Policy Holder: GODWIN MATERIALS, INC.
Policy No:  000090564340

Patient Name: OLLIE GODWIN
Patient Account Number: R363651.1
Insured ID Number: R043430028
Claim Number: A97730208
Claim Office: 024
Date Paid: 04/12/2005
Examiner Code: SNP
Loss Date: 10/27/2004
RW

| Provider | Service From Thru | # Of SVC | Benefit Code | Total Charged | Non Covered | Deductible | Amount Considered | % | Amount Paid | Remark Code* |
|---|---|---|---|---|---|---|---|---|---|---|
| RADIOLOGY | 0127 012705 | 01 | A7 | 28.00 | 28.00 | | .00 | 000 | .00 | R2 |
| **Totals** | | | | $28.00 | $28.00 | | $0.00 | | $0.00 | |

Reduced Because of Other Insurance _____

Total Amount Paid This Claim _____

## Checks Issued

| Payee Name | Amount |
|---|---|
| | |
| | |
| | |

## Broker/Agent

PALOMAR INSURANCE CORPORA
4525  EXECUTIVE PARK DR
MONTGOMERY                    AL 36116

## Description of Remark Codes*

R2-POLICY COVERS ACCIDENTS ONLY, SICKNESS NOT COVERED.

## Description of Benefit Codes

A7 - X-RAY

**Thank you for the opportunity to service this claim.
Please call (800)551-0824   with any questions you have.**

The AIG Life Companies,Accident and Health Claims Department,P.O.Box 15701,
Wilmington,DE 19850-5701

50672

PLAINTIFF'S
EXHIBIT
7

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OLLIE GODWIN                              )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )
                                         )     2:05-cv-00783-SRW
NATIONAL UNION FIRE INSURANCE            )
COMPANY OF PITTSBURGH, INC.,             )
ET AL.,                                  )
                                         )
        Defendants.                      )

## AFFIDAVIT OF OLLIE GODWIN

Before me the undersigned authority, a notary public in and for said State and County, personally appeared Ollie Godwin, who being by me duly sworn, deposes and says the following:

I have personal knowledge of the facts and circumstances pertaining to the above captioned lawsuit and I am over the age of nineteen years.

Part of my job in owning trucks leased exclusively to haul materials for Godwin Materials, Inc. is to make repairs of the vehicle if it breaks down during a work day. On November 22, 2003 I had made three deliveries when one of my trucks blew an exhaust pipe. In order to haul another load and be compliant with DOT regulations the muffler on the truck had to be replaced. My home and shop are about twenty five miles from where we were delivering rock to the Hyundai plant. I met the driver of the broken truck at my home shop and he took my truck to deliver the load. I took his truck and was going to fix the muffler and deliver his load. I took the truck to the shop at my home which was on the way to where we were delivering. While taking off the muffler I fell backward and the muffler landed on my stomach. I was injured as a result.

When an injury occurs while working for Godwin Materials, Inc. the procedure set out for making claims is to notify Cindy Jordon. Ms. Jordon is the person who gets the forms for us to take to the Doctor.

Cindy Jordon filled out the initial claim forms for my injuries. I filled out all the other forms and submitted them to the Doctor and NUFI as soon as reasonably possible.

During the year 2004 I had been working every week as usual. I did not have any pain or problem with my hip. I was getting out of my truck when I misjudged the distance between the step and the ground and fell. I thought I twisted my knee. I continued to work until approximately November 23, 2004.

After seeking medical treatment for the pain in my knee and hip, Dr. Barrington informed me that I had a disease, osteonecrosis, and that I would need a hip replacement. Until that day I did not know that I had a disease and had not suffered any symptoms of disease prior to my fall while stepping out of the truck.


**STATE OF ALABAMA**              )

**LOWNDES COUNTY**                )

_Ollie R. Godwin_
**Signature of Affiant**

Personally appeared before me, the undersigned and Notary Public in and for the State of ALABAMA at Large, OLLIE GODWIN, being by me and first duly sworn, does depose and says that the statement contained in the foregoing affidavit is true and correct.

**SUBSCRIBED AND SWORN TO** before me this 26 day of Oct _____ 2006.

Notary Public
My Commission Expires: 6-12-06 2009
                                    Rm



*Godwin Material Service, Inc.*
*P.O. Box 12*
*Brantley, Alabama 36009*
*334-527-3540*

March 17, 2004

Marion Parker
Palomar Insurance Corporation
Benefits Department
P.O. Box 11128
Montgomery, Alabama 36111-0128

RE:    Patient Name: Ollie Godwin
       Patient Account No: A41000/A3CO000P
       Insured ID No: R040480009
       Claim No: I06142402
       Claim Office: 024
       Examiner Code: PGA
       Loss Date: 11/22/2003

Dear Marion:

This letter is confirming Ollie Godwin was tarping a load in late October of 2003 and Ollie slipped off tarp rack and hit his stomach. Ollie reported this verbally to Cindy Jordan, Godwin Material's Safety Director. Ollie remained in pain, but did not seek medical attention.

On November 22, 2003, Ollie was working on his truck and the muffler fell on Ollie's stomach in the same area as the October accident. Ollie received medical attention. This claim was reported to AIG.

AIG has agreed to pay as a non-occupational claim. This decision was based on their opinion that he was not under dispatch.

However, based on the first fact he was maintaining the truck at the direction of Godwin for DOT purposes. This was required before he could proceed again with a load. The second fact is the November accident was reoccurring from the October accident, where Ollie was clearly under dispatch. Therefore, based on these facts, we feel the claim should be paid as an occupational claim.

I will be glad to confirm these facts in any other manner AIG may deem necessary. Thank you in advance for your reconsideration of this matter.

Sincerely,

Cc: Ollie Godwin, 556 Ottis Faulk Drive, Honoraville, AL 36042

PLAINTIFF'S EXHIBIT 19

Suzanne Adger

From:        Gambino, Patricia [Patricia.Gambino@AIG.com]
Sent:        Wednesday, March 24, 2004 2:35 PM
To:        Suzanne Adger
Subject:        RE: Fax/O Godwin/Godwin/TTD Status

Got it, I will review

Thanks, Pat

-----Original Message-----
From: Suzanne Adger [mailto:SuzanneA@palomarins.com]
Sent: Wednesday, March 24, 2004 3:17 PM
To: Patricia.Gambino@AIG.com
Subject: FW: Fax/O Godwin/Godwin/TTD Status

Pat try this.


Suzanne, nothing attached.
Thanks, PAt

-----Original Message-----
From: Suzanne Adger [mailto:SuzanneA@palomarins.com]
Sent: Monday, March 22, 2004 10:38 AM
To: Gambino, Patricia
Cc: Marion Parker
Subject: FW: Fax/O Godwin/Godwin/TTD Status
Importance: High

Pat, I have attached a letter from Godwin, as well as the earnings that were sent in that show he did work on 11-22-03 which is also his date of injury. Marion asked me to send this and ask if you would review for TTD.

Suzanne Adger
Palomar Insurance Corporation
Special Risk Occupational Accident
Claims Department
Phone: 800-482-7394
Fax: 334-323-0585
Email: Suzannea@palomarins.com

-----Original Message-----
From: Gambino, Patricia [mailto:Patricia.Gambino@AIG.com]
Sent: Wednesday, February 18, 2004 7:06 AM
To: Suzanne Adger
Subject: RE: Fax/O Godwin/Godwin/TTD Status

Good, however I miss read the max. The max for non occ is 7500.00. I do see he has other insurance so that should cover it.

PLAINTIFF'S
EXHIBIT
19

Palomar 77

Thanks, Pat

-----Original Message-----
From: Suzanne Adger [mailto:SuzanneA@palomarins.com]
Sent: Tuesday, February 17, 2004 3:30 PM
To: Gambino, Patricia
Subject: RE: Fax/O Godwin/Godwin/TTD Status

Yes I also told him and noted in my file notes that there was a max limit.  Thanks Pat.


Suzanne

-----Original Message-----
From: Gambino, Patricia [mailto:Patricia.Gambino@AIG.com]
Sent: Tuesday, February 17, 2004 1:35 PM
To: Suzanne Adger
Subject: FW: Fax/O Godwin/Godwin/TTD Status
Importance: High

Suzanne, Michele gave to me and I reviewed claim. Claim is non-occ. No disability due. I will pay the medical bills.


Pat