IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| OLLIE GODWIN, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | )     CASE NO: 2:07cv167-SRW |
| | ) |
| NATIONAL UNION FIRE INSURANCE | ) |
| COMPANY OF PITTSBURGH, INC., | ) |
| *ET AL.,* | ) |
| | ) |
| DEFENDANTS. | ) |

## DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT AND CORRECT NAME OF DEFENDANT "AIG"

COMES NOW Defendant National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "NUFIC" or "this Defendant") and responds and objects to Plaintiff Ollie Godwin's ("Plaintiff") Motion to Amend Complaint and Correct Name of Defendant "AIG." The proposed amended complaint is woefully untimely and seeks not to correct a "misnomer" against a party already before the Court, but to add an entirely new defendant to the action (i.e., AIG Life Insurance Company), as well as re-add a party which was once a defendant in this Court in this action (i.e., Blue Cross Blue Shield of Alabama). Moreover, the proposed amended complaint seeks to add new allegations, as well as claims that were previously disposed of either on summary judgment (i.e., Count I, Bad Faith as to AIG/NUFIC), or by agreement of the parties (i.e., Count III, Breach of Contract as to Blue Cross), or are being asserted for the first time (i.e., Count IV, Unjust Enrichment as to NUFIC and Blue Cross). Accordingly, Plaintiff's motion is due to be denied. In support hereof, NUFIC states as follows:

1

**Introduction**

1.      Plaintiff's primary argument in support of his motion to amend is that AIG Life Insurance Company ("AIG Life") is already before the Court, and thus leave to amend to identify it by its correct legal name (i.e., to correct the misnomer) is freely granted. AIG Life, however, is not before the Court and never has been. As set forth below, and as the Court has previously noted, NUFIC is the sole defendant in this case. Plaintiff sued one entity, "AIG d/b/a National Union Fire Insurance Company of Pittsburgh, Inc.," and he obtained service of process with respect to NUFIC only. Plaintiff has never attempted to serve AIG Life, much less sue or name it in any Complaint, despite his awareness for years of AIG Life's identity and connection to the 2003 group occupational accident insurance policy. Further belying Plaintiff's assertion that AIG Life is already before the Court is his bald, self-serving statement that "[i]t is clear from the documents produced by NUFIC that 'AIG' or AIG Life Ins. and NUFIC are intricately affiliated, if not one and the same." AIG Life and NUFIC, no matter how "affiliated" they may be, are not the same entities, and Plaintiff has been aware or should have been aware of this fact for years.

**Procedural History of Case**

2.      On or about July 12, 2005, Plaintiff, through counsel Ms. Richardson, filed a Complaint in the Circuit Court of Crenshaw County, Alabama, in the civil action styled *Ollie Godwin v. Palomar Insurance Corporation, et al.*, civil action no. CV-05-69. The Complaint listed the defendants as Palomar Insurance Corporation, "AIG d/b/a National Union Fire Insurance Company of Pittsburgh, Inc.," and Godwin Material Services, Inc. Plaintiff has never named, sued, or attempted service in this action on AIG Life. Plaintiff named and served only NUFIC via its registered agent. Without naming or serving AIG

Life with process, neither the state court nor this Court ever obtained personal jurisdiction over AIG Life.

3.      On or about August 15, 2005, NUFIC filed a Notice of Removal with this Court alleging fraudulent joinder of Defendants Palomar and Godwin Material, the two non-diverse defendants. On that occasion, the action was assigned civil action no. 2:05-cv-783-SRW. Following removal, this Court retained jurisdiction of the matter and dismissed Palomar and Godwin Material as fraudulently joined defendants. On August 23, 2005, NUFIC filed its Answer to the Complaint. *See* Answer, Doc. 3 ("COMES NOW the defendant, National Union Fire Insurance Company of Pittsburgh, PA (incorrectly named in the Complaint as "AIG d/b/a National Union Fire Insurance Company of Pittsburgh, PA"), . . . and in response to the plaintiff's Complaint states as follows: . . .").

4.      The entities issuing policies relative to this suit are AIG Life and NUFIC.[1] Specifically, as of May 1, 2003, Godwin Material's group occupational accident insurance was issued by AIG Life, and not NUFIC. Plaintiff's 2003 hernia injury claim stems from an accident that occurred on or about November 22, 2003, thus making AIG Life the relevant insurer for any claim under that policy. In May 2004, Godwin Material's occupational accident insurance was issued through NUFIC. NUFIC served a copy of the subject policies on Plaintiff on December 20, 2005, along with its responses to Plaintiff's discovery requests. The AIG Life policy plainly states on the first page that "[t]his Policy is a legal contract between the Policyholder and the Company." *See* AIG Life Policy, a true and correct copy of which is attached hereto as Exhibit A. Above that language, the policy identifies "the Company" as "AIG LIFE INSURANCE COMPANY" *See id.* Thus, Plaintiff has known of AIG Life's identity and involvement with the underlying policies,

---

[1] AIG Life and NUFIC are separate legal entities.

specifically the 2003 policy, for over two years, yet he waited until days before trial to attempt to add AIG Life as a defendant.

5.     For over a year following removal, the matter progressed in this Court. During that time, written discovery was exchanged, depositions were taken, expert discovery was completed, and on or about October 6, 2006, NUFIC filed a Motion for Summary Judgment. *See* Doc. 23.  In its motion, NUFIC again apprised Plaintiff of his error with respect to the defendants, as follows:

> The plaintiff incorrectly named the defendant in its complaint as "AIG d/b/a National Union Fire Insurance Company of Pittsburgh, Inc."  The entities issuing policies relative to this suit were AIG Life Insurance Company (not "AIG") and National Union Fire Insurance Company of Pittsburgh, PA. Thus, "AIG" had no role in the events made the basis of his suit and is not a proper party in this suit.  Further, service was not perfected or even attempted on "AIG" as the plaintiff merely served this defendant, NUFIC, via registered agent pursuant to Ala. Code § 10-2B-15.10 and ALA. R. CIV. P. 4(c)(6). There was no service on "AIG".  Without service, the lower court from which this case was removed never obtained personal jurisdiction over "AIG".  Ala. R. Civ. P. 4.2.  Thus, no judgment should be entered against "AIG".  *For the purposes of this Motion*, NUFIC responds for both AIG Life and NUFIC.

Doc. 23, n.1 (emphasis added).

6.     The December 16, 2005 Uniform Scheduling Order [Doc. 16] provided that "[a]ny motions to amend the pleadings and to add parties shall be filed on or before March 1, 2006."  After the parties made substantial progress in the litigation, and over seven months after the deadline for amending the pleadings and adding parties had passed, Plaintiff sought on October 23, 2006, to amend his Complaint to add a non-diverse defendant, Blue Cross Blue Shield of Alabama ("Blue Cross"), and moved to remand the action to the Circuit Court of Crenshaw County, Alabama.

7.     On December 15, 2006, the Court remanded the action on the basis that Plaintiff, as argued in his motion to amend and remand, would not be accorded complete

4

relief without the presence of Blue Cross in the action. *See* Doc. 46. The Court noted Plaintiff should not have to litigate his claims against Blue Cross and NUFIC in two separate actions: "If the court refuses to allow joinder of Blue Cross, the plaintiff will have to proceed against it, if at all, in state court. The court concludes that the burden of having to prosecute two separate lawsuits is a significant injury, which, although it does not mandate allowing the amendment, weighs in favor of permitting the joinder of Blue Cross under the circumstances in the present case." The Court further explained that it "recognizes that plaintiff's claims against Blue Cross and his claims against NUFIC are independent of each other. However, the unique circumstances of the case present claims which should, as a matter of equity, be tried in a single action. In view of the potential for inconsistent results and concerns for judicial economy, the equities weigh in favor of allowing amendment to add Blue Cross as a defendant."

8.    Only one month after the Court remanded the action to state court, on January 25, 2007, Plaintiff filed in state court his Notice of Voluntary Dismissal Without Prejudice of Blue Cross, leaving NUFIC once again as the only defendant. The state court dismissed Blue Cross on February 2, 2007. Thus, on February 26, 2007, NUFIC again removed the action to this Court on the basis of subject matter jurisdiction. On that occasion, the action was assigned civil action no. 2:07-cv-167-SRW. Following removal, Plaintiff consented to the jurisdiction of this Court, and the case has remained pending before this Court ever since.

9.    As the deadline for amending the pleadings or adding parties (March 1, 2006) had long since passed when the Court remanded the action in December 2006, no new deadline for amending the pleadings or adding parties was established. On November 16, 2007, the Court reset the case for trial on February 25, 2008. *See* Doc. 22. On

November 28, 2007, the Court granted in part NUFIC's motion for summary judgment, leaving only Plaintiff's breach of contract claim extant. *See* Doc. 23. In its Memorandum Opinion and Order, the Court noted NUFIC is the sole defendant. *See id.* p. 7, n.5.

10.    In preparation for trial, the parties have exchanged witness lists, motions, and other pretrial documents and have submitted to the Court their proposed Order on Pretrial Hearing, in which NUFIC reasserted its position that Plaintiff's breach of contract claim against NUFIC, relating to the November 22, 2003 hernia injury, is due to be dismissed in light of the fact that as of as of May 1, 2003, Godwin Material's group occupational accident insurance was issued by AIG Life and not NUFIC.

11.    Notwithstanding the fact this case is set for trial in three weeks, Plaintiff has once again moved to amend his Complaint, this time to add AIG Life and, incredibly, to once again add Blue Cross as a defendant. *See* proposed Second Amendment to the Complaint. The Court should not countenance Plaintiff's eleventh hour attempt to rectify the fact he has failed, in two and a half years of litigation in both state and federal court, to name AIG Life and serve it with process. Moreover, Plaintiff should not be allowed to name Blue Cross yet again after previously suing Blue Cross in this action and subsequently voluntarily dismissing it.

## ARGUMENT

### Timeliness of Plaintiff's Motion

12.    To resolve the parties' dispute over whether the Court should grant Plaintiff's motion to amend, the Court must first look at whether the motion was timely under its Uniform Scheduling Order and amendments thereto. *See Nobles v. Rural Community Ins. Servs.*, 303 F. Supp. 2d 1279, 1282 (M.D. Ala. 2004). Plaintiff's motion is untimely by almost two years, as any motions to amend the pleadings and to add parties

were due by March 1, 2006.[2] *See Nobles*, 303 F. Supp. 2d at 1283 (determining that the plaintiffs' motion to amend the complaint, seeking to add new defendants and new claims, was not timely).

### Plaintiff's Lack of Diligence and Good Cause

13.     The Court must therefore decide whether to grant Plaintiff's motion despite its untimeliness. *See Nobles*, 303 F. Supp. 2d at 1283. Federal Rules of Civil Procedure 15 and 16 facially guide the Court's decision whether to allow an untimely amendment to the Complaint. *See* 303 F. Supp. 2d at 1283. Rule 15 provides that, if a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." 303 F. Supp. 2d at 1283 (quoting Fed. R. Civ. P. 15(a)). Rule 16, on the other hand, requires the Court to enter a scheduling order that limits the time to join other parties and to amend the pleadings. *See* 303 F. Supp. 2d at 1283 (citing Fed. R. Civ. P. 16(b)(1)). Under Rule 16, the modification of such a scheduling order is to be granted only upon a showing of "good cause." 303 F. Supp. 2d at 1283. Otherwise, scheduling order deadlines would be "meaningless," and the good cause requirement articulated by Rule 16(b) would effectively be read out of the Rules of Civil Procedure. *Anderson v. Board of School Comm'rs of Mobile County, AL*, 78 F. Supp. 2d 1266, 1268-69 (S.D. Ala. 1999).

14.     The Eleventh Circuit has found that Rule 16's good-cause standard governs a party's ability to amend his complaint after the district court has entered a scheduling order. 303 F. Supp. 2d at 1283 (citing *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1418 n.2 (1998) ("[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused.")). **It is only**

---

[2] On that date, this case was pending in this Court and not in state court.

**after the Court addresses whether the proposed amendment may be granted under Rule 16 that the Court is to determine whether it is proper under Rule 15.** *See* 303 F. Supp. 2d at 1283 (citing *Sosa*, 133 F.3d at 1419) ("[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)."); *see also Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997) (describing "two-step analysis" required under Rules 15 and 16 when a motion to amend the pleadings and join additional parties is filed after the scheduling order deadline).

15.    In *Nobles*, having found that the plaintiffs' motion to amend was filed after the scheduling order deadline, the court reasoned it must first determine whether the plaintiffs showed good cause for the court to modify the scheduling order.  *See* 303 F. Supp. 2d at 1283.  The Court's focus in evaluating a motion to amend under Rule 16 is on Plaintiff's *diligence*; that is, the Court may grant the late-filed motion if the pretrial schedule could not reasonably have been met despite Plaintiff's diligence.  *See* 303 F. Supp. 2d at 1284 (citing *Sosa*, 133 F.3d at 1418; *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992) ("The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'") (citations omitted)).

16.    If, on the other hand, the plaintiff was not diligent, "**the court's inquiry should end.**" 303 F. Supp. 2d at 1284 (emphasis added) (citing *Sosa*, 133 F.3d at 1418). Additionally, "[a] district court's decision to enforce its pre-trial order will not be disturbed on appeal absent an abuse of discretion." *Sosa*, 133 F.3d at 1418 (citing *Santiago v. Lykes Bros. Steamship Co.*, 986 F.2d 423, 427 (11th Cir. 1993)).  As Plaintiff waited over two years after learning of AIG Life's identity and relationship to the 2003 policy, and mere

days before the trial of this matter, to add AIG Life and re-add Blue Cross as defendants, it cannot be said he was diligent in any respect. The Court's inquiry should therefore end here. Nor has Plaintiff shown "good cause," as for years he has been acutely aware of AIG Life's identity and its role in this matter. As there is no "good cause" for Plaintiff to amend his Complaint at this extremely late date, and he has showed none, he has failed to satisfy the threshold requirement necessary to obtain leave to amend under Fed. R. Civ. P. 15(a). Plaintiff's motion, consequently, is due to be denied based on its untimeliness and the lack of any diligence whatsoever on Plaintiff's part. *See* 303 F. Supp. 2d at 1284.

**Federal Rule of Civil Procedure 15(c)(3)**

17.    Rule 15(c)(3) sets forth the federal rule for relation back when the amendment seeks to change the party or "the naming of the party." 303 F. Supp. 2d at 1286. Where the plaintiff's failure to name the new defendants was not the result of a mistake, the plaintiff's proposed amended complaint cannot relate back to the date of the original pleading under Rule 15(c)(3). 303 F. Supp. 2d at 1286 ("Nobles and Hales's proposed amended complaint cannot relate back under Rule 15(c)(3) because their failure to name East and Wells Fargo as defendants earlier was not the result of a 'mistake.') (citing Rule 15(c)(3)(B)—"knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.").

18.    As in *Nobles*, Plaintiff has long known of AIG Life's identity and relationship to the 2003 policy. *See* 303 F. Supp. 2d at 1286-87. Thus, his "mistake" was a mistake in legal judgment, not a mistake in the naming of the party, and thus it is not covered by Rule 15(c). *See* 303 F. Supp. 2d at 1287 (citing *Rendall-Speranza v. Nassim*, 107 F.3d 913, 917-18 (D.C. Cir. 1997) ("[A] plaintiff's mistaken belief that A [e.g., NUFIC] is liable for a tort against her when in fact B [e.g., AIG Life] is the responsible

party . . . is one of legal judgment rather than a mere misnomer."); *Powers v. Graff*, 148 F.3d 1223, 1227 (11th Cir. 1998) (finding no abuse of discretion in the district court's refusal to allow relation back when plaintiffs knew defendants' identity before the statute of limitations ran)). The purpose behind Rule 15(c) was not to allow for the correction of this type of "mistake"; indeed, "[n]othing in the Rule or in the [Advisory Committee] Notes indicates that the provision applies to a plaintiff who was fully aware of the potential defendant's identity but not of its responsibility for the harm alleged. 303 F. Supp. 2d at 1287.

WHEREFORE, PREMISES CONSIDERED, Defendant National Union Fire Insurance Company of Pittsburgh, PA respectfully requests the Court to deny Plaintiff's motion to amend the Complaint as improper and untimely.

Respectfully submitted,

s/ L. Jackson Young, Jr.
John W. Dodson
L. Jackson Young, Jr.
*Attorneys for Defendant National Union Fire Ins. Co. of Pittsburgh, PA*

OF COUNSEL:
FERGUSON, FROST & DODSON, LLP.
Post Office Box 530190
Birmingham, Alabama 35253-0190
205-879-8722 (telephone)
205-879-8831 (telecopier)

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this the 1st day of February, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arlene M. Richardson, Esq.
RICHARDSON LEGAL CENTER, LLC
Post Office Box 6
Highland Home, Alabama 36041
arlawyer@mon-cre.net


<u>s/ L. Jackson Young, Jr.</u>
OF COUNSEL


159004

# AIGLIFE

**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

Policyholder:  Crestar Bank, N.A. as Trustee of the WorkGuard Trust
Policy Number:  TRK 805 6434
Participating Organization:  Godwin Materials



EXHIBIT

A

## TRUCKERS OCCUPATIONAL ACCIDENT INSURANCE

This Policy is a legal contract between the Policyholder and the Company. The Company agrees to insure eligible persons of the Policyholder (herein called Insured Person(s)) against loss covered by this Policy, subject to its provisions, limitations and exclusions. The persons eligible to be Insured Persons are all persons described in the Description of Eligible Persons section of the Master Application.

This Policy is issued in consideration of the payment of the required premium when due and the statements set forth in the signed Master Application, which is attached to and made part of this Policy and in the individual enrollment forms, if any.

This Policy begins on the Policy Effective Date shown in the Master Application. This Policy will continue in effect, provided premiums are paid when due, until the Policy Termination Date shown in the Master Application, unless otherwise terminated as further provided in this Policy, or renewed.

## IMPORTANT NOTICE

**THIS IS NOT A WORKERS' COMPENSATION POLICY AND IS NOT A SUBSTITUTE FOR WORKERS' COMPENSATION COVERAGE.**

This Policy is governed by the laws of the state in which it is delivered.

The President and Secretary of AIG Life Insurance Company witness this Policy:

President                                    Secretary

## PLEASE READ THIS POLICY CAREFULLY

C22382

## TABLE OF CONTENTS

Section I          General Definitions ................................................................3

Section II         Effective and Termination Dates........................................5
                   Policy Effective Date ...........................................................5
                   Policy Termination Date ......................................................5
                   Owner-Operator's Effective Date.........................................5
                   Owner-Operator's Termination Date.....................................5
                   Contract Driver's Effective Date...........................................5
                   Contract Driver's Termination Date......................................6

Section III        Premium ..............................................................................7
                   Premiums .............................................................................7
                   Insured Person's Premium...................................................7
                   Grace Period .......................................................................7
                   Waiver of Premium..............................................................7

Section IV         Benefits ...............................................................................8
                   Principal Sum ......................................................................8
                   Deductible............................................................................8
                   Accidental Death Benefit.....................................................8
                   Survivor's Benefit ...............................................................8
                   Exposure and Disappearance.............................................8
                   Accidental Dismemberment Benefit.....................................9
                   Paralysis Benefit.................................................................9
                   Temporary Total Disability Benefit....................................10
                   Continuous Total Disability Benefit ...................................11
                   Accident Medical Expense Benefit.....................................12

Section V          Limits of Liability..............................................................15

Section VI         Exclusions.........................................................................15

Section VII        Claims Provisions ............................................................16

Section VIII       General Provisions............................................................18

<u>SECTION I</u>                              GENERAL DEFINITIONS

**Administrator** means the Administrator named in the Schedule.

**Co-Owner** means a person who has partial ownership of a vehicle which is being operated by an Owner-Operator for the purpose of performing Occupational services .

**Combined Single Limit** means, with respect to any one Insured Person, the total amount of benefits that are payable under this Policy for or in connection with Injury sustained as the result of any one accident. When the Combined Single Limit has been reached, no further benefits shall be payable under this Policy, with respect to that Insured Person, for or in connection with Injury sustained as the result of that one accident.

**Contract Driver** means a person who: (1) drives a vehicle owned or leased by an Owner-Operator for the purpose of performing Occupational services; (2) is on file with the Company; (3) is not an employee of the Policyholder; and (4) is not an employee of an Owner-Operator, unless otherwise permitted by law.

**Covered Loss(es)** means one or more of the losses or expenses described in Section IV of this Policy.

**Dependent Child(ren)** means the Insured Person's unmarried children, including natural children from the moment of birth, step or foster children, or adopted children, from the moment of placement in the home of the Insured Person, under age 19 (25 if attending an accredited institution of higher learning on a full-time basis) and primarily dependent on the Insured Person for support and maintenance. It also includes any unmarried Dependent Child(ren) of the Insured Person who are incapable of self-sustaining employment by reason of mental or physical incapacity, and who are primarily dependent on the Insured Person for support and maintenance.

The Company may require proof of the Dependent Child(ren)'s incapacity and dependency within 60 days before the Dependent Child(ren) reach the age limit specified above. The Company may request that satisfactory proof of the Dependent Child(ren)'s continued incapacity and dependency be submitted to the Company on an annual basis. If the requested proof is not furnished within 31 days of the request, such child(ren) shall no longer be considered Dependent Child(ren) as of the end of that 31 day period.

**Dispatch** means the period of time during which an Insured operates his or her vehicle, or performs vehicle repair, while being en route to pick up a load, picking up a load, en route to deliver a load, and unloading a load.

**Immediate Family Member** means a person who is related to the Insured Person in any of the following ways: Spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or placed for adoption, or stepchild).

**Injury** means bodily injury to an Insured Person caused by an Occupational accident while coverage is in force under this Policy, which results directly from and independently of all other causes in a Covered Loss. All Injuries sustained by an Insured Person in any one accident shall be considered a single Injury.

**Insured** means a person who: (1) is a member of an eligible class as described in the Description of Eligible Persons section of the Master Application; (2) has enrolled for coverage; and (3) has paid the required premium.

**Insured Person** means an Insured.

C22382                              3

**GENERAL DEFINITIONS (Continued)**

**Occupational** means, with respect to an activity, accident, incident, circumstance or condition involving an Insured, that the activity, accident, incident, circumstance or condition occurs or arises out of or in the course of the Insured performing services within the course and scope of contractual obligations for the Policyholder, while under Dispatch. Occupational does not encompass any period of time during the course of everyday travel to and from work.

**Occupational Cumulative Trauma** means bodily Injury to an Insured caused by the combined effect of repetitive physical Occupational activities extending over a period of time, where: (1) such condition is diagnosed by a Physician; (2) the Insured's last day of last performance of the activities causing the Injury occurred during the Policy Period; and (3) such activities resulted directly and independently of all other causes in a Covered Loss.

**Occupational Disease** means a sickness which results in disability or death, and is caused by exposure to environmental or physical hazards during the course of the Insured's Occupational activities, where: (1) such condition is diagnosed by a Physician, and is generally accepted by the National Centers for Disease Control to be a disease caused by such hazards; (2) exposure to such hazards is not an accident but is caused or aggravated by the conditions under which the Insured performs Occupational services; (3) the Insured's last day of last exposure to the environmental or physical hazards causing such condition occurs during the Policy Period; and (4) such exposure results directly and independently of all other causes in a Covered Loss.

**Owner-Operator** means a person who: (1) owns or leases a vehicle which he or she is operating for the purpose of performing Occupational services; (2) is an independent contractor as defined by law; and (3) is not an employee of the Policyholder. The term Owner-Operator will include a Co-Owner if the Co-Owner otherwise meets the definition of Owner-Operator.

**Physician** means a practitioner of the healing arts acting within the scope of his or her license who is not: (1) the Insured Person; or (2) an Immediate Family Member; or (3) a practitioner retained by the Policyholder.

**Pre-Existing Condition** means a condition for which an Insured Person has sought or received medical advice or treatment during the twelve months immediately preceding his or her effective date of coverage under this Policy.

**Schedule** means the Schedule shown in the Master Application for this Policy which is attached to and made a part of this Policy.

**Spouse** means the Insured Person's legal spouse.

C22382                                                4

**SECTION II**                                EFFECTIVE AND TERMINATION DATES

### Policy Effective and Termination Dates

**Policy Effective Date.** This Policy begins on the Policy Effective Date shown in the Master Application at 12:01 A.M. Standard Time at the address of the Policyholder where this Policy is delivered.

**Policy Termination Date.** This Policy may, at any time, be terminated by mutual written consent of the Company and the Policyholder. Otherwise, this Policy will terminate at 12:01 A.M. Standard Time at the Policyholder's address on the earliest of:
1. the Policy Termination Date shown in the Master Application, unless renewed;
2. the premium due date if premiums are not paid when due subject to the Grace Period;
3. the date specified in the written notice of the Company's intent to terminate this Policy, which will be at least 31 days after the date the Company sends such notice to the Policyholder's last known recorded address; or
4. the date specified in the written notice of the Policyholder's intent to terminate this Policy, which will be at least 31 days after the date the Policyholder sends such notice to the Company.

If the Company terminates this Policy, any unearned premium will be returned on a pro-rata basis. If the Policyholder requests termination, the Company will return any unearned premium paid on a short-rate basis. Termination will not affect any claim for a Covered Loss occurring prior to the effective date of termination.

### Owner-Operator's Effective and Termination Dates

**Owner-Operator's Effective Date.** An Owner-Operator's coverage under this Policy begins on the latest of:
1. the Policy Effective Date;
2. the date the person becomes a member of an eligible class of persons as described in the Description of Eligible Persons section of the Master Application;
3. if individual enrollment is required, the date written enrollment is received by the Policyholder; or
4. the date on which the first premium payment is paid when due.

**Owner-Operator's Termination Date.** An Owner-Operator's coverage under this Policy ends on the earliest of:
1. the date this Policy is terminated;
2. the premium due date if premiums are not paid when due;
3. the date the Owner-Operator requests, in writing, that his or her coverage be terminated; or
4. the date the Owner-Operator ceases to be a member of any eligible class(es) of persons as described in the Description of Eligible Persons section of the Master Application.

### Contract Driver's Effective and Termination Dates

**Contract Driver's Effective Date.** A Contract Driver's coverage under this Policy begins on the latest of:
1. the Policy Effective Date;
2. the date the person becomes a member of an eligible class of persons as described in the Description of Eligible Persons section of the Master Application;
3. if individual enrollment is required, the date written enrollment is received by the Policyholder; or
4. the date on which the first premium payment is paid when due.

C22382                                         5

EFFECTIVE AND TERMINATION DATES (Continued)

**Contract Driver's Termination Date.** A Contract Driver's coverage under this Policy ends on the earliest of:

1. the date this Policy is terminated;
2. the premium due date if premiums are not paid when due;
3. the date the Contract Driver requests, in writing, that his or her coverage be terminated;
4. the date the Contract Driver ceases to be a member of any eligible class(es) of persons as described in the Description of Eligible Persons section of the Master Application; or
5. the date the Owner-Operator with respect to whom the Contract Driver is under contract ceases to be a member of any eligible class(es) of persons as described in the Schedule of the Master Application.

A change in an Insured Person's coverage under this Policy due to a change in his or her eligible class or benefit selection becomes effective on the later of: (1) the date the change in his or her eligible class or benefit selection occurs; or (2) if the change requires a change in premium, the date the first changed premium is paid. However, a change in coverage applies only with respect to accidents that occur after the change becomes effective.

Termination of coverage will not affect a claim for a Covered Loss that occurs either before or after such termination if that loss results from an accident that occurred while the Insured Person's coverage was in force under this Policy.

C22382                                   6

## SECTION III                                   PREMIUM

**Premiums.** Premiums are payable to the Company at the rates and in the manner described in the Premiums section of the Master Application. The Company may change the required premiums due on any Policy anniversary date, as measured annually from the Policy Effective Date, by giving the Policyholder at least 31 days advance written notice. The Company may change the required premiums as a condition of any renewal of this Policy. The Company may also change the required premiums at any time when any change affecting premiums is made in this Policy.

**Insured Person's Premium.** The Premium Rate for coverage under this Policy for each Insured Person is shown in the Schedule, and shall be payable as follows:

1. Insured Persons who are enrolled on or prior to the fifteenth of the month shall pay an amount equal to the full monthly premium. No premium shall be payable for the last full or partial month of coverage.

2. Insured Persons who are enrolled after the fifteenth of the month shall pay a premium equal to the full monthly premium beginning on the first of the month following the month during which coverage becomes effective. With respect to the last full or partial month of coverage, Insured Persons shall pay an amount equal to the monthly premium.

**Grace Period.** A Grace Period of 31 days will be provided for the payment of any premium due after the first premium. This Policy will not be terminated for nonpayment of premium during the Grace Period if the Policyholder pays all premiums due by the last day of the Grace Period. This Policy will terminate on the last day of the period for which all premiums have been paid if all premiums due are not paid by the last day of the Grace Period.

If the Company expressly agrees to accept late payment of a premium without terminating this Policy, the Company does so in accordance with the Noncompliance With Policy Requirements provision in Section VIII of this Policy. In such case, the Policyholder will be liable to the Company for any unpaid premiums for the time this Policy is in force, plus all costs and expenses (including, but not limited to, reasonable attorney fees, collection fees and court costs) incurred by the Company in the collection of all overdue amounts.

No Grace Period will be provided if the Company receives notice to terminate this Policy prior to a premium due date.

**Waiver of Premium.** Subject to this Policy remaining in force, all premiums due under this Policy with respect to an Insured Person who is receiving either a Temporary Total Disability Benefit or Continuous Total Disability Benefit under this Policy will be waived. Premiums will be waived from the first premium due date on or after the date the disability begins. Premium payments must be resumed on the premium due date next following the date the Insured Person's Temporary Total Disability Benefit or Continuous Total Disability Benefit ceases. If premium payments are not resumed on that date, the Insured Person's coverage under this Policy shall end on that date.

SECTION IV                              BENEFITS

**Principal Sum.** As applicable to each Insured Person, Principal Sum means the amount of insurance in force under this Policy on the date of the accident, as described in the Schedule.

**Deductible.** The applicable per accident Deductible Amounts shown in the Schedule per Covered Loss apply to each Insured Person sustaining a particular type of Covered Loss. For accidents where more than one Covered Loss applies, each deductible amount is applied to the total benefits payable.

## Accidental Death Benefit

If Injury to the Insured Person results in death within the Incurral Period shown in the Schedule, the Company will pay the Principal Sum, subject to any applicable Deductible Amount for the Accidental Death Covered Loss shown in the Schedule. The Incurral Period starts on the date of the accident that caused such Injury.

## Survivor's Benefit

If the Insured Person suffers accidental death such that an Accidental Death Benefit is payable under this Policy, the Company will pay a monthly Survivor's Benefit to the surviving Spouse, up to the Principal Sum shown in the Schedule. The Monthly Benefit Amount shall be determined by multiplying the Principal Sum by the Monthly Benefit Percentage.

If the Insured Person is not survived by a Spouse, or if the Insured Person's Spouse dies or remarries, the Company will pay or continue to pay the Survivor's Benefit to the Insured Person's surviving Dependent Children, if any. If there is more than one surviving Dependent Child, the Survivor's Benefit will be distributed equally among the surviving Dependent Children. The payment of the monthly Survivor's Benefit will end on the earliest of the following dates:
1. the date the Spouse dies or remarries, if there are no Dependent Children;
2. the date the last Dependent Child dies or is no longer eligible as defined in Section I of this Policy; or
3. the date the Principal Sum has been paid.

If the Insured Person is not survived by a Spouse or any Dependent Children, the Company will pay only the Accidental Death Benefit in accordance with the Payment of Claims provision of this Policy.

## Exposure and Disappearance

If, by reason of an accident, an Insured Person is unavoidably exposed to the elements and as a result of such exposure suffers a loss which is otherwise covered under this Policy, the loss will be considered a Covered Loss under the terms of this Policy.

If the body of an Insured Person has not been found within one year after the disappearance, forced landing, stranding, sinking or wrecking of a conveyance in which that person was an occupant, then it will be deemed, subject to all other terms and provisions of this Policy, that the Insured Person has suffered Accidental Death within the meaning of this Policy.

**BENEFITS (Continued)**

**Accidental Dismemberment Benefit**

If Injury to the Insured Person results in any one of the Losses specified below, within the Incurral Period shown in the Schedule (as measured from the date of the accident that caused such Injury), the Company will pay the Percentage of the Principal Sum shown below for that Loss, subject to any applicable Deductible Amount for the Accidental Dismemberment Covered Loss shown in the Schedule.

| For Loss of: | Percentage of the Principal Sum: |
|---|---|
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| Speech and Hearing in Both Ears | 100% |
| One Arm or One Leg | 75% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Speech or Hearing in Both Ears | 50% |
| Four Fingers of Same Hand | 25% |
| Hearing in One Ear | 25% |
| Thumb and Index Finger of Same Hand | 25% |

"Loss" of a hand or foot means complete severance through or above the wrist or ankle joint. "Loss" of sight of an eye means total and irrecoverable loss of the entire sight in that eye."Loss" of hearing in an ear means total and irrecoverable loss of the entire ability to hear in that ear. "Loss" of speech means total and irrecoverable loss of the entire ability to speak. "Loss" of an arm or leg means complete severance through or above the shoulder or hip joint. "Loss" of four fingers means complete severance through or above the metacarpophalangeal joint of all four digits. "Loss" of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

If more than one Loss is sustained by an Insured Person as a result of the same accident, only one amount, the largest, will be paid.

**Paralysis Benefit**

If Injury to the Insured Person results in any Type of Paralysis specified below, within the Incurral Period shown in the Schedule (as measured from the date of the accident that caused such Injury), the Company will pay the Percentage of the Principal Sum shown below for that Type of Paralysis, subject to any applicable Deductible Amount for the Paralysis Covered Loss shown in the Schedule.

| Type of Paralysis: | Percentage of the Principal Sum: |
|---|---|
| Quadriplegia | 100% |
| Paraplegia | 75% |
| Hemiplegia | 50% |
| Uniplegia | 25% |

"Quadriplegia" means the complete and irreversible paralysis of both upper and both lower limbs. "Paraplegia" means the complete and irreversible paralysis of both lower limbs. "Hemiplegia" means the

**BENEFITS (Continued)**

complete and irreversible paralysis of the upper and lower limbs of the same side of the body. "Uniplegia" means the complete and irreversible paralysis of one limb. "Limb" means entire arm or entire leg.

If the Insured Person sustains more than one Type of Paralysis as a result of the same accident, only the largest single amount will be considered a Covered Loss.

**Temporary Total Disability Benefit**

If Injury to the Insured Person results in Temporary Total Disability within the Commencement Period shown in the Schedule, and if the Insured Person is under age 70 on the day the Temporary Total Disability begins, the Company will pay the Temporary Total Disability Benefit specified below, subject to satisfaction of any applicable Waiting Period shown in the Schedule. The Commencement Period starts on the date of the accident that caused such Injury.

The Temporary Total Disability Benefit with respect to each week of an Insured Person's Temporary Total Disability during a Single Period of Total Disability is equal to the lesser of:
1.  the Participation Percentage (as shown in the Schedule) of the Insured Person's Average Weekly Earnings; or
2.  the Maximum Weekly Benefit Amount shown in the Schedule.

The Temporary Total Disability Benefit shall cease on the earliest of the following dates:
1.  the date the Insured Person is no longer Temporarily Totally Disabled;
2.  the date the Insured Person dies;
3.  the date the Insured Person attains age 70; or
4.  the date the Maximum Benefit Period shown in the Schedule has been reached.

The Temporary Total Disability Benefit with respect to less than a full Benefit Week of Temporary Total Disability equals 1/7th of the weekly Covered Loss for each day of Temporary Total Disability.

As used above in this Temporary Total Disability benefit:

**Average Weekly Earnings** means one-third (1/3) of the Insured Person's weekly income for Occupational services as reported to the Internal Revenue Service on the applicable federal tax document.

**Benefit Week** means a 7-day period of time that begins on the first day of Temporary Total Disability after the Waiting Period shown in the Schedule for Temporary Total Disability and on the same day of each week thereafter.

**Maximum Benefit Period** means, with respect to Temporary Total Disability, the maximum period for which benefits shall be payable for a Temporary Total Disability Covered Loss during a Single Period of Total Disability. The length of the Maximum Benefit Period for Temporary Total Disability is shown in the Schedule.

**Single Period of Total Disability** means all periods of Temporary Total Disability due to the same or related causes (whether or not insurance has been interrupted) except any of the following which are considered separate periods of disability: (1) successive periods of Temporary Total Disability, due to entirely different and unrelated causes, separated by at least one full day during which the Insured Person is not Temporarily Totally Disabled; (2) successive periods of Temporary Total Disability, due to the same or related causes, separated by at least 6 months during which the Insured Person is not Temporarily Totally Disabled.

C22382                                  10

BENEFITS (Continued)

**Temporary Total Disability, Temporarily Totally Disabled** means disability that:   (1) prevents an Insured Person from performing the duties of his or her regular, primary occupation; and (2) requires that, and results in, the Insured Person receiving Continuous Care.

**Continuous Care** means monthly monitoring and/or evaluation of the disabling condition by a Physician. The Company must receive proof of continuing Temporary Total Disability on a monthly basis.

## Continuous Total Disability Benefit

If Injury to the Insured Person, resulting in Temporary Total Disability, subsequently results in Continuous Total Disability, the Company will pay the Continuous Total Disability Benefit specified below, provided:
1.  benefits payable for a Temporary Total Disability Covered Loss ceased solely because the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached, but the Insured Person remains disabled;
2.  the Insured Person is under age 70 on the day after the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached;
3.  the Insured Person has been granted a Social Security Disability Award for their disability; and
4.  their disability is reasonably expected to continue without interruption until the Insured Person dies.

The Continuous Total Disability Benefit with respect to each month of an Insured Person's Continuous Total Disability is equal to four and three-tenths (4.3) times the weekly benefit for Temporary Total Disability, less the Insured Person's primary Social Security Disability Award.

The Continuous Total Disability Benefit with respect to less than a full Benefit Week of Continuous Total Disability equals 1/7th of the weekly Benefit for Temporary Total Disability for each day of Continuous Total Disability.

Benefits payable under the Temporary Total Disability Benefit before the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached, will not be considered a Continuous Total Disability Benefit.

The Continuous Total Disability Benefit shall cease on the earliest of the following dates:
1.  the date the Insured Person is no longer Continuously Totally Disabled.
2.  the date the Insured Person dies.
3.  the date the Insured Person's Social Security Disability Award ceases.
4.  the date the Insured Person attains age 70.
5.  the date the Maximum Benefit Period shown in the Schedule for Continuous Total Disability has been reached.

As used above in this Continuous Total Disability benefit:

**Benefit Week** means a one-week period of time that begins on the day after the Maximum Benefit Period for Temporary Total Disability has been reached and on the same day of each week thereafter.

**Maximum Benefit Period** means, with respect to Continuous Total Disability, the maximum period for which benefits shall be payable for a Continuous Total Disability Covered Loss(es).   The length of the Maximum Benefit Period for Continuous Total Disability is shown in the Schedule.

**Continuous Total Disability, Continuously Totally Disabled** means disability that:   (1) prevents an Insured Person from performing the duties of any occupation for which he or she is qualified by reason of education, training or experience; and (2) requires that, and results in, the Insured Person receiving Continuous Care.

C22382                                          11

BENEFITS (Continued)

**Continuous Care** means at least quarterly monitoring and/or evaluation of the disabling condition by a Physician. The Company must receive proof of continuing Continuous Total Disability on a quarterly basis.

Terms used in this Continuous Total Disability benefit, but which refer to Temporary Total Disability and are defined in the Temporary Total Disability benefit, are to be interpreted as defined in that benefit.

**Accident Medical Expense Benefit**

If an Insured Person suffers an Injury that requires him or her to be treated by a Physician, within the Commencement Period shown in the Schedule, the Company will pay the Usual and Customary Charges incurred for Medically Necessary Covered Accident Medical Services received due to that Injury, up to the Maximum Benefit Amount and Maximum Benefit Period shown in the Schedule per Insured Person for all Injuries caused by a single accident, subject to any applicable Deductible Amount. The Commencement Period starts on the date of the accident that caused such Injury. The Deductible Amount for the Accident Medical Expense Benefit is the Deductible Amount shown in the Schedule, if any, which must be met from Usual and Customary Charges for Medically Necessary Covered Accident Medical Services incurred due to Injuries sustained by the Insured Person in that accident.

As used in this Accident Medical Expense Benefit provision:

**Ambulatory Medical Center** means a licensed public establishment with an organized staff of Physicians and permanent facilities that are equipped and operated primarily for the purpose of providing medical services or performing surgical procedures. Such establishment must provide continuous Physician and registered nursing (RN) services whenever a patient is in the facility. An Ambulatory Medical Center does not include a Hospital, a Physician's office, or a clinic.

**Covered Accident Medical Service(s)** means any of the following services:
1. Hospital semi-private room and board (or room and board in an intensive care unit); Hospital ancillary services (including, but not limited to, use of the operating room or emergency room); or use of an Ambulatory Medical Center;
2. services of a Physician or a registered nurse (RN);
3. ambulance service to or from a Hospital;
4. laboratory tests;
5. radiological procedures;
6. anesthetics and the administration of anesthetics;
7. blood, blood products and artificial blood products, and the transfusion thereof;
8. physical therapy, Occupational therapy, and chiropractic care, up to the Physical Therapy, Occupational Therapy and Chiropractic Care Maximum, if any, shown in the Schedule;
9. rental of Durable Medical Equipment, up to the actual purchase price of such equipment;
10. artificial limbs, artificial eyes or other prosthetic appliances; or
11. medicines or drugs administered by a Physician or that can be obtained only with a Physician's written prescription; or
12. repair or replacement of Sound Natural Teeth damaged or lost as a result of Injury, up to the Dental Maximum, if any, shown in the Schedule.

**Custodial Services** means any services which are not intended primarily to treat a specific Injury. Custodial Services include, but shall not be limited to services: (1) related to watching or protecting the Insured Person; (2) related to performing or assisting the Insured Person in performing any activities of daily living, such as: (a) walking; (b) grooming; (c) bathing; (d) dressing; (e) getting in or out of bed; (f) toileting; (g) eating; (h) preparing foods; or (i) taking medications that can usually be self-administered; and (3) that are not required to be performed by trained or skilled medical or paramedical personnel.

C22382                                          12

**BENEFITS (Continued)**

**Durable Medical Equipment** refers to equipment of a type that is designed primarily for use, and used primarily, by people who are injured (for example, a wheelchair or a hospital bed). It does not include items commonly used by people who are not injured, even if the items can be used in the treatment of injury or can be used for rehabilitation or improvement of health (for example, a stationary bicycle or a spa).

**Hospital** means a facility that: (1) is operated according to law for the care and treatment of injured people; (2) has organized facilities for diagnosis and surgery on its premises or in facilities available to it on a prearranged basis; (3) has 24-hour nursing service by registered nurses (RN), on duty or on call; and (4) is supervised by one or more Physicians. A Hospital does not include: (1) a nursing, convalescent or geriatric unit of a hospital when a patient is confined mainly to receive nursing care; (2) a facility that is, other than incidentally, a rest home, nursing home, convalescent home or home for the aged; nor does it include any ward, room, wing or other section of the hospital that is used for such purposes; or (3) any military or veterans hospital or soldiers home or any hospital contracted for or operated by any national government or government agency for the treatment of members or ex-members of the armed forces.

**Maximum Benefit Period** means, with respect to Accident Medical Expense, the maximum period for which benefits shall be payable for Covered Accident Medical Services for or in connection with a single Accident Medical Expense Covered Loss. The length of the Maximum Benefit Period for Accident Medical Expense is shown in the Schedule.

**Medically Necessary** means that a Covered Accident Medical Service: (1) is essential for diagnosis, treatment or care of the Occupational Injury for which it is prescribed or performed; (2) meets generally accepted standards of medical practice; and (3) is ordered by a Physician and performed under his or her care, supervision or order.

**Personal Comfort or Convenience Item(s)** means those items that are not Medically Necessary for the care and treatment of the Insured Person's Occupational Injury. The term Personal Comfort or Convenience Item(s) includes, but is not limited to: (1) a private Hospital room, unless Medically Necessary; (2) television rental; and (3) Hospital telephone charges.

**Sound Natural Teeth** means natural teeth that either are unaltered or are fully restored to their normal function and are disease free, have no decay, and are not more susceptible to injury than unaltered natural teeth.

**Usual and Customary Charge(s)** means a charge that: (1) is made for a Covered Accident Medical Service; (2) does not exceed the usual level of charges for similar treatment, services or supplies in the locality where the expense is incurred (for a Hospital room and board charge, other than for a Medically Necessary stay in an intensive care unit, does not exceed the Hospital's most common charge for semi-private room and board); and (3) does not include charges that would not have been made if no insurance existed.

In addition to the Exclusions in Section VI of this Policy, Usual and Customary Charges for Covered Accident Medical Services do not include, and benefits are not payable with respect to, any expense for or resulting from:
1. repair or replacement of existing artificial limbs, artificial eyes or other prosthetic appliances or repair of existing Durable Medical Equipment unless for the purpose of modifying the item because Injury has caused further impairment in the underlying bodily condition;
2. new, or repair or replacement of, dentures, bridges, dental implants, dental bands or braces or other dental appliances, crowns, caps, inlays or onlays, fillings or any other treatment of the teeth or gums;

C22382                                   13

**BENEFITS (Continued)**

3. new eye glasses or contact lenses or eye examinations related to the correction of vision or related to the fitting of glasses or contact lenses, unless Injury has caused impairment of sight; or repair or replacement of existing eyeglasses or contact lenses unless for the purpose of modifying the item because Injury has caused further impairment of sight;

4. new hearing aids or hearing examinations unless Injury has caused impairment of hearing; or repair or replacement of existing hearing aids unless for the purpose of modifying the item because Injury has caused further impairment of hearing;

5. rental of Durable Medical Equipment where the total rental expense exceeds the usual purchase expense for similar equipment in the locality where the expense is incurred (but if, in the Company's sole judgment, Accident Medical Expense Benefits for rental of Durable Medical Equipment are expected to exceed the usual purchase expense for similar equipment in the locality where the expense is incurred, the Company may, but is not required to, choose to consider such purchase expense as a Usual and Customary Covered Accident Medical Expense Benefit in lieu of such rental expense);

6. Custodial Services; or

7. Personal Comfort or Convenience Items.

## SECTION V                                          LIMITS OF LIABILITY

**Per-Insured Person Limit of Liability.** The Per-Insured Person Limit of Liability (Combined Single Limit) stated in the Schedule will be the total limit of the Company's liability for all benefits payable under this Policy with respect to any one Insured Person arising out of Injury sustained by such individual as the result of any one accident.

**Aggregate Limit of Liability.** The Aggregate Limit of Liability stated in the Schedule will be the total limit of the Company's liability for all benefits payable under this Policy with respect to all Insured Persons arising out of Injury sustained by one or more Insured Person(s) as the result of any one accident.

If the total of such benefits exceeds the Aggregate Limit of Liability, the Company shall not be liable to any Insured Person for a greater proportion of such Insured Person's benefits than said Aggregate Limit of Liability bears to the total benefits afforded all such Insured Persons under this Policy.

## SECTION VI                                          EXCLUSIONS

This Policy does not cover any losses caused in whole or in part by, or resulting in whole or in part from, the following:

1. suicide or any attempt at suicide; intentionally self-inflicted injury or any attempt at intentionally self-inflicted injury;
2. sickness, disease or infections of any kind, except bacterial infections due to an accidental cut or wound, botulism or ptomaine poisoning;
3. any Pre-Existing Condition, until the Insured Person has been continuously covered under this Policy for twelve consecutive months;
4. Occupational Cumulative Trauma, unless (and to the extent as) specifically provided by this Policy;
5. Occupational Disease, unless (and to the extent as) specifically provided by this Policy;
6. hernia of any kind, unless (and to the extent as) specifically provided by this Policy;
7. hemorrhoids of any kind, unless (and to the extent as) specifically provided by this Policy;
8. performing, learning to perform or instructing others to perform as a master or crew member of any vessel while covered under the Jones Act or the United States Longshore and Harbor Workers' Act, or similar coverage;
9. declared or undeclared war, or any act of declared or undeclared war;
10. full-time active duty in the armed forces of any country or international authority, except the National Guard or organized reserve corps duty;
11. any Injury for which the Insured Person is entitled to benefits pursuant to any workers' compensation law or other similar legislation;
12. any loss insured by employers' liability insurance;
13. accidents occurring while the Insured is working for or under contract with an entity other than the Policyholder;
14. the Insured Person being under the influence of drugs or intoxicants, unless taken under the advice of his or her Physician; or
15. the Insured Person's commission of or attempt to commit a felony; or
16. travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if the Insured Person is:
    a. riding as a passenger in any aircraft not intended or licensed for the transportation of passengers; or
    b. performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft; or
    c. riding as a passenger in an aircraft owned, leased or operated by the Policyholder; or
17. any union "stop work" action

C22382                                              15

## SECTION VII                           CLAIMS PROVISIONS

**Notice of Claim.** Written notice of claim must be given to the Company within 20 days after an Insured Person's loss, or as soon thereafter as reasonably possible. Notice given by or on behalf of the claimant to the Company at American International Companies®, Accident and Health Claims Division, P. O. Box 15701, Wilmington, DE 19850-5701, with information sufficient to identify the Insured Person, is deemed notice to the Company.

**Claim Forms.** The Company will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed in this Policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the Insured's name, the Policyholder's name and the Policy number.

**Proof of Loss.** Written proof of loss must be furnished to the Company within 90 days after the date of the loss. If the loss is one for which this Policy requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as the Company may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

**Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of an Insured Person will be made to the Insured Person's beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section. Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the Insured Person suffering the loss. If an Insured Person dies before all payments due have been made, the amount still payable will be paid to his or her beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at the Company's option, to any relative by blood or connection by marriage of the payee, who, in the Company's opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

The Company may pay benefits directly to any Hospital or person rendering covered services, unless the Insured Person requests otherwise in writing. Such request must be made no later than the time proof of loss is filed. Any payment the Company makes in good faith fully discharges the Company's liability to the extent of the payment made.

**Time of Payment of Claims.** Benefits payable under this Policy for any loss other than loss for which this Policy provides any periodic payment will be paid immediately upon the Company's receipt of due written proof of the loss. Subject to the Company's receipt of due written proof of loss, all accrued benefits for loss for which this Policy provides periodic payment will be paid at the expiration of each month during the continuance of the period for which the Company is liable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

**CLAIMS PROVISIONS (Continued)**

**Commutation of Losses.** It is agreed that, at the Company's option, at any time later than two years from the date of any accident resulting in a claim under this Policy, the Company may advise the Insured Person of its desire to be released from liability with respect to any such claim. In that event, the Company will appoint an actuary or appraiser to investigate, determine and capitalize such claim, and the payment by the Company of the capitalized value of such claim will constitute a complete and final release of the Company with respect to such claim.

**Sunset.** No claim made for losses sustained by Insured Persons will be considered valid and collectible in accordance with this Policy unless full details of such claim are presented to the Company within three years from the date of the accident which is the basis of such claim.

**SECTION VIII**                                        **GENERAL PROVISIONS**

**Entire Contract; Changes.**  This Policy, together with any riders, endorsements, amendments, applications, enrollment forms, and attached papers, if any, make up the entire contract between the Policyholder and the Company.  In the absence of fraud, all statements made by the Policyholder or any Insured Person will be considered representations and not warranties.  No written statement made by an Insured Person will be used in any contest unless a copy of the statement is furnished to the Insured Person or his or her beneficiary or personal representative.

No change in this Policy will be valid until approved by an officer of the Company.  The approval must be noted on or attached to this Policy.  No agent may change this Policy or waive any of its provisions.

**Incontestability.**  The validity of this Policy will not be contested after it has been in force for two year(s) from the Policy Effective Date, except as to nonpayment of premiums.

After an Insured Person has been insured under this Policy for two year(s) during his lifetime, no statement made by the Insured Person, except a fraudulent one, will be used to contest a claim under this Policy.  The Company may only contest coverage if the misstatement is made in a written instrument signed by the Insured Person and a copy is given to the Policyholder, the Insured Person or the beneficiary.

**Beneficiary Designation and Change.**  The Insured Person's designated beneficiary(ies) is (are) the person(s) so named by the Insured Person as shown on the Administrator's records kept on this Policy.

A legally competent Insured Person over the age of majority may change his or her beneficiary designation at any time, unless an irrevocable designation has been made.  The change may be executed, without the consent of the designated beneficiary(ies), by providing the Company or, if agreed upon in advance by the Company, the Administrator with a written request for change.  When the request is received by the Company or, if agreed upon in advance by the Company, the Administrator, whether the Insured Person is then living or not, the change of beneficiary will relate back to and take effect as of the date of execution of the written request, but without prejudice to the Company on account of any payment which is made prior to receipt of the request.

Except with regard to the Survivor's Benefit described in Section IV of this Policy, if applicable, in the event that there is no designated beneficiary, or if no designated beneficiary is living after the Insured Person's death, the benefits will be paid, in equal shares, to the survivors in the first surviving class of those that follow:  The Insured Person's: (1) Spouse; (2) children; (3) parents; or (4) brothers and sisters.  If no class has a survivor, the beneficiary is the Insured Person's estate.

**Physical Examination and Autopsy.**  The Company has the right, at its own expense, to examine the person of any Insured Person whose Injury is the basis of a claim, when and as often as it may be reasonably required during the pendency of the claim.  The Company may also require an autopsy where it is not prohibited by law.

**Legal Actions.**  No legal action for a claim can be brought against the Company until 60 days after receipt of proof of loss.  No legal action for a claim can be brought against the Company more than three years after the time for giving proof of loss.

**Noncompliance With Policy Requirements.**  Any express waiver by the Company of any requirements of this Policy will not constitute a continuing waiver of such requirements.  Any failure by the Company to insist upon compliance with any Policy provision will not operate as a waiver or amendment of that provision.

## GENERAL PROVISIONS (Continued)

**Conformity With State Statutes.** Any provision of this Policy which, on its effective date, is in conflict with the statutes of the state in which the Policy was delivered, is hereby amended to conform to the minimum requirements of such laws.

**Clerical Error.** Clerical error, whether by the Policyholder, the Administrator, or the Company in keeping records pertaining to this Policy, will not: (1) invalidate coverage otherwise validly in force, or (2) continue coverage otherwise validly terminated.

**Data Required.** The Policyholder and the Administrator must maintain adequate records acceptable to the Company and provide any information required by the Company relating to this insurance.

**Audit.** The Company will have the right to inspect and audit, at any reasonable time, all records and procedures of the Policyholder, and the Administrator that may have a bearing on this insurance.

**Assignment.** This Policy is non-assignable.

**Subrogation.** To the total extent the Company pays for losses incurred, the Company may assume the rights and remedies of the Insured Person relating to such loss. The Insured Person agrees to assist the Company in preserving its rights against those responsible for such loss, including but not limited to, signing subrogation forms supplied by the Company.

**Right to Recover Overpayments.** In addition to any rights of recovery, reimbursement or subrogation provided to the Company herein, when payments have been made by the Company with respect to a Covered Loss in an amount in excess of the maximum amount of payment necessary to satisfy an obligation under the terms of this Policy, the Company shall have the right to recover such excess payment, from any one or more of the following: Any person to whom such payments were made (*i.e.* medical providers, etc.), the Insured Person, any insurance company, or any other organization(s) which received, or should have received, the payment.

**Conditional Claim Payment.** If an Insured Person suffers a Covered Loss(es) as the result of Injuries for which, in the opinion of the Company, a third party may be liable, the Company will pay the amount of benefits otherwise payable under this Policy. However, if the Insured Person receives payment from the third party, the Insured Person agrees to refund to the Company the lesser of: (1) the amount actually paid by the Company for such Covered Loss(es); or (2) an amount equal to the sum actually received from the third party for such Covered Loss(es). If the Insured Person does not receive payment from the third party for such Covered Loss(es), the Company reserves the right to subrogate under the Subrogation clause of this Policy.

At the time such third party liability is determined and satisfied, this amount shall be paid whether determined by settlement, judgment, arbitration or otherwise. This provision shall not apply where prohibited by law.

**Offset.** The Company will have, and may exercise at any time, the right to offset any balance or balances, whether on account of premiums or otherwise, due from the Policyholder to the Company against any balance or balances, whether on account of losses or otherwise, due from the Company to the Policyholder.

**Other Insurance.** If the Insured Person incurs losses for which benefits are payable under more than one like policy issued by the Company or one of its affiliates, the coverage under this Policy is in excess of such other insurance, and will not contribute to such a loss with such other insurance. This condition does not apply to other insurance which the Insured Person has procured to apply in excess of the coverage under this Policy.

C22382                                                    19

GENERAL PROVISIONS (Continued)

**Plan and Exposure Changes.** The Policyholder must notify the Company of any subsidiary or affiliated company that is to be covered under this Policy. Such notice must be sent within 30 days of the acquisition of such subsidiary or affiliated company. If such notice is not provided, the newly acquired entity will not be considered a part of the Policyholder, or a covered affiliate or subsidiary, and the Insured Persons from the newly acquired entity will not be considered as Insured Persons of the Policyholder, or a covered affiliate or subsidiary for Policy purposes, until the date that notice is provided. The Company has the right to adjust premium based on the changing exposure.

**Non-Duplication of Workers' Compensation Benefits.** No benefits shall be payable under this Policy for any loss for which the Insured Person claims coverage under any workers' compensation, employers' liability, occupational disease or similar law. The Company reserves the right to recover, from the Insured Person, any benefits paid under this Policy which are subsequently claimed under any workers' compensation, employers' liability, occupational disease or similar law.

# AIGLIFE

**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

Policyholder:  Crestar Bank, N.A. as Trustee of the
WorkGuard Trust
Policy Number:  TRK 805 6434
Participating Organization:  Godwin Materials

### HEMORRHOIDS COVERAGE RIDER

This Rider is attached to and made part of the Policy as of the Policy Effective Date shown in the Policy's Master Application. It applies only with respect to Hemorrhoids provided such Injury is sustained on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

Hemorrhoids Coverage.   Exclusion 7 in Section VI of the Policy is hereby waived with respect to the following benefit(s): Temporary Total Disability and Accident Medical Expense.

Any reference to an injury or accident as defined in the policy is hereby deemed to include Hemorrhoids. Benefits shall be payable for a Covered Loss caused in whole or in part by, contributed to in whole or in part by, or resulting in whole or in part from, the Insured Person's Hemorrhoids, provided such Hemorrhoids are surgically repaired while the Insured Person's coverage is in force under this Policy, subject to the following:

1.    With respect to the Temporary Total Disability Benefit the period for which such indemnity shall be payable for all periods of disability, subject to the Temporary Total Disability Benefit Waiting Period, shall not exceed the Hemorrhoids Lifetime Maximum Benefit Period shown in the Schedule.

2.    With respect to the Accident Medical Expense Benefit, benefits payable for or in connection with the Insured Person's Hemorrhoids, subject to the Accident Medical Expense Deductible Amount, if any, shall not exceed the Hemorrhoids Lifetime Maximum Benefit Amount shown in the Schedule.

Hemorrhoid(s) - as used in this Rider, means a mass of dilated veins in swollen tissue at the margin of the anus or nearby within the rectum.

The President and Secretary of AIG Life Insurance Company witness this Rider.

President

Secretary

C22390

# AIGLIFE

**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

Policyholder: Crestar Bank, N.A. as Trustee of the
WorkGuard Trust
Policy Number: TRK 805 6434
Participating Organization: Godwin Materials

## HERNIA COVERAGE RIDER

This Rider is attached to and made part of the Policy as of the Policy Effective Date shown in the Policy's Master Application. It applies only with respect to Hernia provided such Injury is sustained on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

Hernia Coverage. Exclusion 6 in Section VI of the Policy is hereby waived with respect to the following benefit(s): Temporary Total Disability and Accident Medical Expense.

Any reference to an injury or accident as defined in the policy is hereby deemed to include Hernia. Benefits shall be payable for a Covered Loss caused in whole or in part by, contributed to in whole or in part by, or resulting in whole or in part from, the Insured Person's Hernia, provided such Hernia is surgically repaired while the Insured Person's coverage is in force under this Policy, subject to the following:

1.    With respect to the Temporary Total Disability Benefit, the period for which such indemnity shall be payable for all periods of disability, subject to the Temporary Total Disability Benefit Waiting Period, shall not exceed the Hernia Lifetime Maximum Benefit Period shown in the Schedule.

2.    With respect to the Accident Medical Expense Benefit, benefits payable for or in connection with the Insured Person's Hernia, subject to the Accident Medical Expense Deductible Amount, if any, shall not exceed the Hernia Lifetime Maximum Benefit Amount shown in the Schedule.

Hernia - as used in this Rider, means a protrusion of an organ or part through connective tissue or through a wall of the cavity in which it is normally enclosed. Hernia does not include diaphragmatic (hiatal) hernia.

The President and Secretary of AIG Life Insurance Company witness this Rider.

President                                                    Secretary

C22391

 **AIGLIFE**

Policyholder: Crestar Bank, N.A. as Trustee of the
WorkGuard Trust
Policy Number: TRK 805 6434
Participating Organization: Godwin Materials

**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

## PRE-EXISTING CONDITIONS COVERAGE RIDER

This Rider is attached to and made part of the Policy as of the Policy Effective Date shown in the Policy's Master Application.   It applies only with respect to Covered Losses that occur on or after that date.  It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Pre-Existing Conditions Coverage.**   Exclusion 3 in Section VI of the Policy is hereby waived for a Covered Loss described in Section IV of the Policy, however, in no event will benefits be payable for any Covered Losses caused in whole or in part by, or resulting in whole or in part from, any Pre-Existing Conditions, exceeding the Maximum Benefit Amount shown in the Schedule.

The President and Secretary of AIG Life Insurance Company witness this Rider.

President                                    Secretary

C22396

# AIGLIFE

**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

Policyholder:  Crestar Bank, N.A. as Trustee of the
WorkGuard Trust
Policy Number:  TRK 805 6434
Participating Organization:  Godwin Materials

## NON-OCCUPATIONAL COVERAGE RIDER

This Rider is attached to and made part of the Policy as of the Policy Effective Date shown in the Policy's Master Application. It applies only with respect to accidents that occur on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Non-Occupational Coverage.**  References in the Policy to an Injury or accident, where applicable, are hereby deemed to include Non-Occupational Injury and Non-Occupational accident, respectively.

Benefits shall be payable for only those Covered Losses listed in the Schedule under Non-Occupational Accident Benefits, and shall be subject to the Non-Occupational Accident Benefit limitations shown therein.

**Non-Occupational -** as used in this Rider, means, with respect to an activity, accident, incident, circumstance or condition involving an Insured Person, that it does not occur or arise out of or in the course of the Insured Person performing Occupational services for the Policyholder, while under Dispatch.

**Non-Occupational Injury -** as used in this Rider, means, bodily Injury caused by a Non-Occupational accident occurring while this Policy is in force as to the person whose injury is the basis of claim and resulting directly and independently of all other causes in a Covered Loss.

All Injuries sustained by an Insured Person in any one accident shall be considered a single Injury.

The President and Secretary of AIG Life Insurance Company witness this Rider.

President                                          Secretary

C22393

# AIGLIFE

**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

Policyholder: Crestar Bank, N.A. as Trustee of the
WorkGuard Trust
Policy Number: TRK 805 6434
Participating Organization: Godwin Materials

## PARTICIPATING ORGANIZATION ENDORSEMENT

This Endorsement is attached to and made part of the Policy as of the Policy Effective Date shown in the Policy's Master Application. It applies only with respect to accidents that occur on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Endorsement.

The following definition is added to the Definitions section of the Policy:

**Participating Organization** - means an organization: (1) which elects to offer coverage under this Policy by completing a Participation Organization Application that has been accepted by the Company; (2) which completes a participation agreement with the Policyholder; (3) which remits the required premium when due; and (4) while coverage through the Participating Organization is available under this Policy.

The following provisions are added to the Effective and Termination Dates section of the Policy:

**Participating Organization Effective Date.** A Participating Organization's coverage under this Policy begins on the later of: (1) the Participating Organization Effective Date shown in the Participating Organization Application at 12:01 A.M. Standard Time at the address of the Participating Organization shown in the Participating Organization Application; or (2) the Policy Effective Date shown in the Master Application.

**Participating Organization Termination Date.** The Participating Organization's coverage under this Policy may, at any time, be terminated by mutual written consent of the Company and the Participating Organization. Otherwise, the Participating Organization's coverage under this Policy will terminate at 12:01 A.M. Standard Time at the Participating Organization's address on:

1. the Participating Organization Termination Date shown in the Participating Organization Application, unless renewed;
2. the date required premiums are not paid when due, subject to the Grace Period;
3. the date specified in the written notice of the Company's intent to terminate the Participating Organization's coverage under this Policy, which will be at least 31 days after the date the Company sends such notice to the Participating Organization's last known recorded address;
4. the date specified in the written notice of the Participating Organization's intent to terminate coverage under this Policy, which will be at least 31 days after the date the Participating Organization sends such notice; or
5. the date the Policy terminates.

If the Company terminates this Policy, any unearned premium will be returned on a pro-rata basis. If the Participating Organization requests termination, the Company will return any unearned premium paid on a short-rate basis. Termination will not affect any claim for loss occurring prior to the effective date of termination.

The references in the Policy to "this Policy/coverage under this Policy", "Master Application" and "Policyholder" may also, where applicable, mean "a Participating Organization's coverage under this Policy", "Participating Organization's Application" and "Participating Organization", respectively.

C22400

The following language applies to each Rider attached to the Policy:

Any Riders attached to this Policy apply only with respect to accidents that occur on or after the later of:
(1) the effective date of each Rider; or (2) the effective date of the Participating Organization's coverage
under each Rider. Each Rider applies with respect to a Participating Organization's coverage under this
Policy only if the Participating Organization has elected the coverage described in each Rider as indicated
in the Participating Organization Application.

The President and Secretary of AIG Life Insurance Company witness this Endorsement:

President                                    Secretary

C22400



Policyholder: Crestar Bank, N.A. as Trustee of
the Workguard Trust
Policy Number: TRK 805 6434
Participating Organization: Godwin Materials,
Inc.

AIG LIFE INSURANCE COMPANY
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

## TRUCKERS OCCUPATIONAL ACCIDENT INSURANCE
### Policy Amendment No. 1

This Policy Amendment is attached to and made part of the Policy effective 5/1/2000 at 12:01 A.M.,
Standard Time at the address of the Policyholder. Any changes in coverage apply only with respect to
accidents and Emergency Sicknesses and Covered Losses that occur on or after that date. Any
changes in premium apply as of the first premium due date on or after the effective date of this
Amendment.

### Application C22384

It is hereby agreed and understood that, in consideration of timely payment of the required premium,
item 7 of the Schedule, Policy Period and Signatures, is hereby amended to change the Policy Period
Effective and Termination Dates to be as follows:

| Policy Period: | From: | Policy Effective Date | 5/1/2000 |
| | To: | Policy Termination Date | 5/1/2001 |

This Policy Amendment expires concurrently with the Policy and is subject to all of the provisions,
limitations and conditions of the Policy except as they are specifically modified by this Policy
Amendment.

C22385



Policyholder: Crestar Bank, N.A. as Trustee of
the Workguard Trust
Policy Number: TRK 805 6434
Participating Organization: Godwin Materials Inc.

AIG LIFE INSURANCE COMPANY
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

## TRUCKERS OCCUPATIONAL ACCIDENT INSURANCE
### Policy Amendment 2

This Policy Amendment is attached to and made part of the Policy effective May 1, 2001 at 12:01 A.M., Standard Time at the address of the Policyholder. Any changes in coverage apply only with respect to accidents and Covered Losses that occur on or after that date. Any changes in premium apply as of the first premium due date on or after the effective date of this Amendment.

### Application 805 5836

It is hereby agreed and understood that, in consideration of timely payment of the required premium, that the policy is amended as follows:

Item 7 of the Schedule, Policy Period and Signatures, is hereby amended to change the Policy Period Effective and Termination Dates to be as follows:

| Policy Period: | From: | Policy Effective Date | May 1, 2001 |
|---|---|---|---|
| | To: | Policy Termination Date | May 1, 2002 |

Item 3 of the Schedule Premium Rates, is hereby amended as follows:

Premium Rates for the period May 1, 2001 through August 1, 2001:
Class 1:....................................................... $107.00 (per Insured Person per Month)
Class 2:....................................................... $107.00 (per Insured Person per Month)

Premium Rates for the period August 1, 2001 through May 1, 2002:
Class 1:....................................................... $115.00 (per Insured Person per Month)
Class 2:....................................................... $115.00 (per Insured Person per Month)

This Policy Amendment expires concurrently with the Policy and is subject to all of the provisions, limitations and conditions of the Policy except as they are specifically modified by this Policy Amendment.



**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

Policyholder: Crestar Bank, N.A. as Trustee of
the Workguard Trust
Policy Number: TRK 805 6434
Participating Organization: Godwin Materials Inc.

## TRUCKERS OCCUPATIONAL ACCIDENT INSURANCE
### Policy Amendment 3

This Policy Amendment is attached to and made part of the Policy effective May 1, 2002 at 12:01 A.M., Standard Time at the address of the Policyholder. Any changes in coverage apply only with respect to accidents and Covered Losses that occur on or after that date. Any changes in premium apply as of the first premium due date on or after the effective date of this Amendment.

### Application 805 5836

It is hereby agreed and understood that, in consideration of timely payment of the required premium, that the policy is amended as follows:

Item 7 of the Schedule, Policy Period and Signatures, is hereby amended to change the Policy Period Effective and Termination Dates to be as follows:

| Policy Period: | From: | Policy Effective Date | May 1, 2002 |
| | To: | Policy Termination Date | May 1, 2003 |

Item 3 of the Schedule Premium Rates, is hereby amended as follows:

Premium Rates for the period May 1, 2002 through June 1, 2002:
Class 1:...................................................... $115.00 (per Insured Person per Month)
Class 2:...................................................... $115.00 (per Insured Person per Month)

Premium Rates for the period June 1, 2002 through May 1, 2003:
Class 1:...................................................... $138.00 (per Insured Person per Month)
Class 2:...................................................... $138.00 (per Insured Person per Month)

This Policy Amendment expires concurrently with the Policy and is subject to all of the provisions, limitations and conditions of the Policy except as they are specifically modified by this Policy Amendment.

Jul-07-03   08:42   From-Domestic          770 399 4050          T-139  P.006/006  F-602



AIG LIFE INSURANCE COMPANY
600 KING STREET
WILMINGTON, DELAWARE 19801,
(302) 594-2000
(Herein called the Company)

Policyholder: Crestar Bank N.A. as Trustee of
the Workguard Trust
Policy Number: TRK 805 6434
Participating Organization: Godwin Materials

## TRUCKERS OCCUPATIONAL ACCIDENT INSURANCE

### Policy Amendment  No. 4

This Policy Amendment is attached to and made part of the Policy effective May 1, 2003 at 12:01A.M., Standard Time at the address of the Policyholder.  Any changes in coverage apply only with respect to accidents and Covered Losses that occur on or after that date.  Any changes in premium apply as of the first premium due date on or after the effective date of this Amendment.

### Application 22384

It is hereby agreed and understood that, in consideration of timely payment of the required premium, that the policy is amended as follows:

Item 7 of the Schedule, Policy Period and Signatures, is hereby amended to change the Policy Period Effective and Termination Dates to be as follows:

Policy Period:    From:  Policy Effective Date          May 1, 2003
                  To:    Policy Termination Date        May 1, 2004

Item 3 of the Schedule Premium Rates, is hereby amended as follows:

Premium Rates for the period May 1, 2003 to May 1, 2004:
Class 1: ...........................................$150.00 (per Insured Person per Month)
Class 2: ...........................................$150.00 (per Insured Person per Month)

This Policy Amendment expires concurrently with the Policy and is subject to all of the provisions, limitations and conditions of the Policy except as they are specifically modified by this Policy Amendment.

C22385                                    1



**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

### PARTICIPATING ORGANIZATION APPLICATION FOR
### TRUCKERS OCCUPATIONAL ACCIDENT INSURANCE

Application is hereby made for a policy of accident insurance based upon the following statements and representations:

### SCHEDULE

1.  Name of Policyholder:                          Crestar Bank, N.A. as Trustee of the WorkGuard Trust
    Address:                                       1445 New York Avenue, N.W., Washington, D.C.  20005-2108
    Type of Business or Organization:              Bank
    Covered Affiliates(s) or Subsidiary(ies):      None
    Policy Number:                                 TRK 805 6434
    Identification of Participating Organization:

    Name of Participating Organization:            Godwin Materials, nc.
    Address of Participating Organization:         PO Box 680958  Prattville, AL   36104
    Type of Business or Organization:              Trucking
    Covered Affiliates(s) or Subsidiary(ies):      None

    Name and Address of Administrator (If None, So Indicate):    Palomar Insurance
                                                                 PO Drawer  11128
                                                                 Montgomery AL  36111-0128

2.  Description of Eligible Persons:

    Class        Description of Class

    1            All Owner-Operators of Godwin Materials, Inc. or any of its Covered Affiliates or Subsidiaries,
                 provided they are:  (a) under age 70; (b) driving 30 or more hours per week; and (c) under a
                 long-term lease agreement of 30 days or more, or who have entered into a contract, to provide
                 Occupational services for the Policyholder.

    2            All Independent Contractors of Godwin Materials, Inc. or any of its Covered Affiliates or
                 Subsidiaries, provided they are:  (a) under age 70; (b) driving 30 or more hours per week; and
                 (c) under a long-term lease agreement of 30 days or more, or who have entered into a contract,
                 to provide Occupational services for the Owner Operator.

3.  Premium Rates:
    Class 1& 2................................................................$107.00 (per Insured Person per month)

C22384                                          1

4.  Benefits ("X" indicates coverage is applicable; "NIL" indicates coverage does not apply):

A.  Occupational Accident Benefits:

CLASS 1 & 2

(1)  X  Accidental Death Benefit
        Principal Sum ...................................................................................$50,000
        Incurral Period .................................................................................365 days
        Deductible Amount ................................................................................$0

(2)  X  Survivor's Benefit
        Principal Sum .................................................................................$200,000
        Monthly Benefit Percentage ...................................................................1.0%
        Monthly Benefit Amount .......................................................................$2,000

(3)  X  Accidental Dismemberment Benefit
        Principal Sum .................................................................................$250,000
        Incurral Period .................................................................................365 days
        Deductible Amount ................................................................................$0

(4)  X  Paralysis Benefit
        Principal Sum .................................................................................$250,000
        Incurral Period .................................................................................365 days
        Deductible Amount ................................................................................$0

(5)  X  Temporary Total Disability Benefit
        Commencement Period (Initial Disability) ........................................90 days
        Waiting Period ....................................................................................7 days
        Participation Percentage .........................................................................70%
        Maximum Weekly Benefit Amount ...........................................................$500
        Maximum Benefit Period .....................................................................104 weeks

(6)  X  Continuous Total Disability Benefit (not a Covered Loss until the day after the
        Temporary Total Disability Maximum Benefit Period has been reached)
        Participation Percentage .........................................................................70%
        Maximum Weekly Benefit Amount ...........................................................$500
        Maximum Benefit Period ...................................................................to age 70

(7)  X  Accident Medical Expense Benefit (Primary)
        Commencement Period...........................................................................90 days
        Deductible Amount.....................................................................................$0
        Maximum Benefit Period .....................................................................104 weeks
        Dental Maximum .......................................................................$1,000 per accident
        Maximum Benefit Amount ..............................................................$1,000,000

(8)  X  Hemorrhoids Coverage
        Lifetime Maximum Benefit Period .............................................................90 days
        Lifetime Maximum Benefit Amount ..........................................................$10,000

(9)  X  Hernia Coverage
        Lifetime Maximum Benefit Period .............................................................90 days
        Lifetime Maximum Benefit Amount ..........................................................$10,000

(10)  X  Pre-existing Condition
        Maximum Benefit Amount ........................................................................$25,000

A.    Non-Occupational Accident Benefits:

CLASS 1 & 2

(1)  X  Accidental Death Benefit
          Principal Sum ...............................................................................$10,000
          Incurral Period ............................................................................365 days
          Deductible Amount .............................................................................$0

(2)  X  Accidental Dismemberment Benefit
          Principal Sum ...............................................................................$10,000
          Incurral Period ............................................................................365 days
          Deductible Amount .............................................................................$0

(3)  X  Accident Medical Expense Benefit (Primary)
          Commencement Period...................................................................90 days
          Deductible Amount..............................................................................$0
          Maximum Benefit Period ............................................................. 104 weeks
          Dental Maximum .......................................................$1,000 per accident
          Maximum Benefit Amount .............................................................$7,500

5.    Limits of Liability

    A.    Occupational Coverage

        Per-Insured Person Limit of Liability (Combined Single Limit) ...................................$1,000,000
        (all Covered Losses with respect to
        any one Occupational accident)

        Aggregate Limit of Liability .......................................................................$2,000,000
        (all Covered Losses with respect to all Insured
        Persons in any one Occupational accident)

    B.    Non-Occupational Coverage

        Per-Insured Person Limit of Liability (Combined Single Limit) ........................................$10,000
        (all Covered Losses with respect to
        any one Occupational accident)

        Aggregate Limit of Liability .........................................................................$20,000
        (all Covered Losses with respect to all Insured
        Persons in any one Occupational accident)

C22384                                             3

6.   Benefits, Riders and Endorsements

The following Riders and Endorsements are attached to and made part of the Policy as of the Policy Effective Date, and apply only to Eligible Persons in a class shown in that row. Each Rider and Endorsement is subject to all provisions, limitations and exclusions of the Policy that are not specifically modified by the Rider and Endorsement.

| Class(es) | Benefit Rider(s) | Other Rider(s) and Endorsement(s) |
|---|---|---|
| 1 & 2 | Hemorrhoids Coverage; Hernia Coverage | Pre-existing conditions rider |

Other Riders and Endorsements to the Policy:  Participating Organization Endorsement

7.   Policy Period and Signature(s)

Policy Period:        From:   Policy Effective Date          05/01/1999
                      To:     Policy Termination Date        05/01/2000

Signed by: _____

Title: _____

Signed at _____ on _____

Witness _____
              *(licensed agent where required by law)*